# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| IN RE MICROSOFT CORPORATION ANTITRUST LITIGATION | ) ) ) ) |
| This Document Relates to: | ) ) ) |
| *Burst.com, Inc. v. Microsoft Corp.* | ) ) ) |
| Civil action No. C-02-2930-VRW | ) ) ) |

MDL Docket No. 1332

**MICROSOFT CORPORATION'S
<u>FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>**

Philip L. Graham, Jr.
David B. Tulchin
Marc De Leeuw
**SULLIVAN & CROMWELL**
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
**MICROSOFT CORPORATION**
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Dated: March 14, 2002

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
**PIPER RUDNICK LLP**
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-4115

Karen A. Popp (D.Md. No. 26145)
**SIDLEY AUSTIN BROWN & WOOD LLP**
1501 K Street, N.W.
Washington, DC 20005

Charles W. Douglas
Richard A. Cederoth
John W. Treece
**SIDLEY AUSTIN BROWN & WOOD**
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Microsoft Corporation*

Defendant Microsoft Corporation ("Microsoft") hereby answers the complaint brought by Burst.com, Inc. ("Burst") dated June 18, 2002, and asserts affirmative defenses thereto, as follows:

**INTRODUCTION**

1.    Microsoft admits that Burst.com, Inc. ("Burst") purports to bring claims under Sections 1 and 2 of the Sherman Act, the Cartwright Act, the Unfair Competition Act, and the common law of California.  Microsoft denies that there is any merit to those claims and/or that Burst has standing to bring them.  Microsoft further admits that Burst purports to state claims under the Patent Act and the California Trade Secrets Act, as well as a claim for breach of contract, but Microsoft denies that those claims have merit.  Microsoft has no knowledge as to the subjective basis of Burst's allegations (i.e., whether or why Burst believes the allegations herein are true).  Microsoft maintains that the judicial opinions by United States courts in previous cases involving Microsoft speak for themselves, and that the final allegation in Paragraph 1 (i.e., that facts found in previous cases must be accepted as true in this case) asserts a legal conclusion that need not be affirmed or denied.  Microsoft denies any remaining allegations of Paragraph 1.

2.    Microsoft denies the allegations of Paragraph 2, except for those in the second sentence, which Microsoft admits.

3.    Microsoft admits the allegations of Paragraph 3.

4.    Microsoft maintains that the Findings of Fact of the United States District Court for the District of Columbia (hereinafter, "the D.C. District Court") in *United States v. Microsoft Corp.*, 84 F. Supp.2d 9 (1999), many of which supported legal conclusions that were

subsequently reversed by the appellate court, speak for themselves.  Microsoft respectfully refers this Court to those Findings of Fact (84 F. Supp. 2d 9) and admits that the D.C. District Court purported to find only what is stated therein.  Microsoft denies all other allegations of Paragraph 4.

5.      Microsoft lacks knowledge or information sufficient to form a basis to admit or deny the allegations of paragraph 5 regarding what "innovative technologies" Burst sought to market and therefore, Microsoft denies those allegations.  Microsoft denies the remaining allegations of paragraph 5.

6.      Microsoft denies the allegations of Paragraph 6.

7.      Microsoft denies the allegations of Paragraph 7, except it admits that it entered contracts with RealNetworks.

8.      Microsoft lacks information sufficient to form a belief as to the allegations of Paragraph 8 and therefore denies those allegations.

9.      Microsoft admits that a few meetings and limited discussions occurred between Burst and Microsoft personnel during the period from October 1999 to December 2000, but denies Burst's characterization of those meetings and discussions.  Microsoft also admits that the parties executed a written non-disclosure agreement, which agreement speaks for itself. Microsoft denies the remaining allegations of Paragraph 9.

10.      Microsoft admits the allegations of the first sentence of Paragraph 10. Microsoft denies the remaining allegations of Paragraph 10.

## THE PARTIES

11.    Microsoft lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 11, and therefore denies them.

12.    Microsoft lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 12, and therefore denies them.

13.    Paragraph 13 asserts a legal conclusion that need not be affirmed or denied.  To the extent Paragraph 13 makes factual assertions, Microsoft lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 13, and therefore denies them.

14.    Microsoft admits the allegations of Paragraph 14.

## JURISDICTION

15.    Microsoft admits that Burst purports to state claims under the federal antitrust and patent laws and has asserted that jurisdiction over those claims lies in the United States District Court for the Northern District of California.  The remaining allegations of Paragraph 15 assert legal conclusions to which no response is required.

## VENUE

16.    The allegations of Paragraph 16 assert legal conclusions to which no response is required, except Microsoft denies that it has committed any acts of infringement or any other misconduct that could give rise to the claims asserted herein.

## INTRADISTRICT ASSIGNMENT

17.     The first sentence in Paragraph 17 asserts a legal conclusion to which Microsoft need not respond.  Microsoft lacks sufficient knowledge to admit or deny the allegations of the second sentence of Paragraph 17.  Microsoft denies the remaining allegations of Paragraph 17.

## ANTITRUST VIOLATIONS
### The Relevant Markets
### Intel-Compatible PC Operating Systems

18.     Microsoft (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 18, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft denies the remaining allegations of Paragraph 18.

19.     With respect to the first, third, fourth, and fifth sentences of Paragraph 19, Microsoft (1) admits that the D.C. District Court made Findings of Facts as related in the allegations of Paragraph 18, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft admits the allegations of the second sentence of Paragraph 19.  The allegations of the final and penultimate two sentences in Paragraph 19 are too vague to permit Microsoft to form a responsive pleading, and Microsoft therefore denies them.  Microsoft denies the remaining allegations of Paragraph 19.

20.     Microsoft admits that the Intel 80x86/Pentium (or "PC") class of microprocessors perform central processing unit ("CPU") functions in many personal computers, and that operating systems manage the interaction between the CPU and various pieces of

hardware attached to such computers. Microsoft admits the allegations in the third and fourth sentences of paragraph 20. Microsoft asserts that the first, fifth and sixth sentences of paragraph 20 allege legal conclusions to which no response is required, but that if a response is required, Microsoft denies the allegations of those sentences of paragraph 20.

21.    Microsoft (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 21, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies the remaining allegations of Paragraph 21.

## Video Delivery over Computer (IP) Networks Market.

22.    Microsoft states that the descriptions and characterizations of technology of the first eight sentences of Paragraph 22 are superficial and potentially misleading in the absence of context. Microsoft therefore denies the allegations in the first eight sentences except admits that (1) delivery of video over the Internet requires compatible software on the sending and receiving computers; (2) some client software is referred to as a "media player"; (3) streaming media players permit PC users to display multimedia video and audio content on the Internet without having to completely download the multimedia files; and (4) streaming is accomplished by filling a small amount of storage space called a "buffer." Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the ninth sentence, and therefore denies them; denies the allegations of the tenth sentence of paragraph 22 in part because it is so vague that Microsoft cannot form a response thereto; and states that the last two sentences of paragraph 22 state legal and economic conclusions as to which no response is required but which Microsoft denies if a response is required. Microsoft denies all other allegations of Paragraph 22.

23.    Microsoft admits (1) that Windows Media Player and RealNetworks' RealPlayer are media players compatible with Windows-based personal computers; (2) that Apple produces a player called QuickTime for Windows; (3) that streaming media currently requires server software; and (4) that RealNetworks and Microsoft are suppliers of such server software. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fifth sentence, and therefore denies the same. Microsoft admits that servers equipped with certain streaming media software can serve multiple PCs and perform a variety of functions simultaneously and that streaming media software can be used in a variety of video-on-demand applications. Microsoft denies the allegations of the eighth sentence of paragraph 23. Microsoft denies that the media players of Microsoft, RealNetworks, and Apple constitute a relevant antitrust market and denies the remaining allegations of Paragraph 23.

24.    Microsoft denies that it took anticompetitive actions or enlisted others in anticompetitive agreements. Microsoft denies the remaining allegations of Paragraph 24.

### Microsoft's Combinations To Restrain Trade And Monopolize or Attempt to Monopolize The Relevant Markets. Microsoft's Position in the Intel-Compatible PC Operating System Market

25.    To the extent paragraph 25 makes factual allegations, as opposed to legal and economic allegations to which no response is required, Microsoft denies those allegations.

26.    Microsoft denies the allegations of Paragraph 26, except admits that Burst has correctly quoted, albeit selectively and out of context, certain portions of Paragraphs 34, 39, 40, and 55 of the D.C. District Court's November 9, 1999 Findings of Fact. Microsoft respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.

**Microsoft Has Willfully Acquired, Maintained, and Used Its Monopoly
in Intel-Compatible PC Operating Systems**

27.     Microsoft denies the allegations of Paragraph 27.

28.     Paragraph 28 states a legal conclusion to which no response is required and which Microsoft therefore denies.  Microsoft admits that Burst has correctly quoted, albeit selectively and out of context, from the opinion of the United States Court of Appeals for the District of Columbia Circuit, 253 F.3d 34 (D.C. Cir. 2001), and Microsoft respectfully refers the Court to that opinion for a complete and accurate description of that court's holding.

29.     Microsoft denies the allegations of Paragraph 29.

30.     Microsoft denies the allegations of Paragraph 30.

**Microsoft's Position in the Video Delivery over Computer Networks Market**

31.     Microsoft denies the allegations of the first four sentences of Paragraph 31, except admits (1) that during the 1980s and early 1990s, PCs were more limited in their ability to display full-motion video than they typically are today; and (2) that Apple developed QuickTime, which has the ability "to play video files already resident on [a] computer's hard drive."  Microsoft denies the remaining allegations of paragraph 31.

32.     Microsoft denies the allegations of Paragraph 32.

33.     Microsoft denies the allegations of Paragraph 33.

34.     Microsoft admits that (1) at certain earlier dates, data delivery over the Internet was "constrained," as it is today, by "hardware and communications bandwith considerations"; (2) that at some earlier date, most users' access to the Internet was through dial-

up modems using ordinary telephone lines; (3) that at some earlier date, modems were typically receiving data at the indicated speeds; (4) that it and other companies including Real Networks have been developing audio, video and streaming technologies for many years; (5) that streaming video playback has been limited at times; and (6) that Rob Glaser was at one point an employee of Microsoft. Microsoft denies the remaining allegations of Paragraph 34.

35.    Microsoft denies the allegations of Paragraph 35, except admits that on or about June 5, 1997, Mr. Durkin sent an e-mail that speaks for itself.

36.    Microsoft denies the allegations of Paragraph 36, except admits that streaming media did not and does "not expose a broad range of APIs to independent software vendors."

37.    Microsoft denies the allegations of Paragraph 37.

38.    Microsoft (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 38, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies all remaining allegations of Paragraph 38.

39.    Microsoft denies the allegations of the first and last sentence of paragraph 39. Microsoft admits that DirectX and certain RealNetworks' streaming media software exposed APIs to developers, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 39, and therefore denies them.

40.    Microsoft (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 40, and (2) respectfully refers the Court to the November

5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft denies the remaining allegations of Paragraph 40.

41.    Microsoft (1) admits that the D. C. District Court made Findings of Fact as related in the allegations of Paragraph 41, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft denies all remaining allegations of Paragraph 41.

42.    Microsoft denies the allegations of the first sentence of Paragraph 42; admits that Bruce Jacobsen testified that he spoke with Microsoft Vice-President Robert Muglia in the summer of 1997, and testified that they discussed, among other things, Microsoft's distribution of RealNetworks software with Windows and Internet Explorer; and lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations and therefore denies them.

43.    Microsoft denies the allegations of the first sentence of Paragraph 43.  Microsoft admits that Bruce Jacobsen testified, but denies Burst's characterization of that testimony and its accuracy.

44.    Microsoft denies the allegations of Paragraph 44, except admits that Mr. Jacobsen has testified, but denies Burst's characterization of that testimony, and admits that Mr. Muglia has testified, but denies Burst's characterization of that testimony and its accuracy.

45.    Microsoft denies the allegations of the first sentence of Paragraph 45.  Microsoft admits that the D.C. District Court made Findings of Fact as related in the allegations of the second, third, fourth, and fifth sentences of Paragraph 45, and respectfully refers the Court

to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies the remaining allegations of paragraph 45.

46.     Microsoft denies the allegations of the first sentence of Paragraph 46 and denies the remaining allegations, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations following the first sentence of Paragraph 46, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies the remaining allegations of paragraph 46.

47.     Microsoft denies the allegations of Paragraph 47, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 47, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies the remaining allegation of paragraph 47.

48.     Microsoft denies the allegations of Paragraph 48, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 48, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents. Microsoft denies the remaining allegations of Paragraph 48.

49.     Microsoft admits the allegations of the first sentence of Paragraph 49 and admits that Microsoft employees met with Apple employees in the time period of August to October 1997. Microsoft denies the remaining allegations of Paragraph 49.

50.     Microsoft denies the allegations of Paragraph 50, except admits that in 1998, Mr. Engstrom "informed Apple of Microsoft's effort to develop a new file format called Advanced Authoring Format ('AAF')."

51.     Microsoft denies the allegations of Paragraph 51, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 51, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft denies the remaining allegations of paragraph 51.

52.     Microsoft denies the allegations of Paragraph 52, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of Paragraph 52, and (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents.  Microsoft denies the remaining allegations of paragraph 52.

53.     Microsoft denies the allegations of Paragraph 53.

54.     Microsoft denies the allegations of Paragraph 54.

### Microsoft Has Monopolized and/or Attempted to Monopolize the Market For Video Delivery Over Computer (IP) Networks Microsoft's Agreements With RealNetworks to Reduce Competition in the Relevant Markets

55.     Microsoft denies the allegations of Paragraph 55, except admits that it has entered legitimate, pro-competitive agreements with RealNetworks.

56.     Microsoft denies the allegations of Paragraph 56.

57.    Microsoft admits that the first and second sentences of Paragraph 57 quote selectively from the testimony of Bruce Jacobsen, but denies Mr. Jacobsen's characterization of contractual terms. Microsoft denies all remaining allegations of Paragraph 57.

58.    Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first three sentences of Paragraph 58, and therefore denies them. Microsoft denies all remaining allegations of Paragraph 58, except admits that Burst approached Microsoft seeking a business transaction relating to Burst technology and that Microsoft declined to pursue such a transaction with Burst.

59.    Microsoft denies the allegations of Paragraph 59.

## Microsoft Compels Intel to Reduce Competition in the Relevant Markets

60.    The first and second sentences of Paragraph 60 purport to construe the holdings of judicial opinions and therefore state legal conclusions to which Microsoft need not respond. Microsoft denies the other allegations of Paragraph 60, except (1) admits that the D.C. District Court issued Conclusions of Law which contain the words quoted in the first sentence; (2) respectfully refers the Court to the D.C. District Court's Conclusions of Law (87 F. Supp. 2d 30) for a complete, accurate, and contextual description of their contents; (3) admits that the U.S. Court of Appeals for the District of Columbia affirmed in part, reversed in part, and remanded the district court's rulings; and (4) respectfully refers the Court to the Court of Appeals' opinion (253 F.3d 34) for a complete, accurate, and contextual description of its contents.

61.    Microsoft denies the allegations of Paragraph 61 except admits that "Sun announced in May 1995 that it had developed the Java programming language.".

62.    Microsoft admits that Intel is primarily a hardware manufacturer that also has engaged in software development. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the first sentence of Paragraph 62 and the second sentence of Paragraph 62, and therefore denies those allegations. Microsoft denies all other allegations of Paragraph 62, except (1) admits that the D.C. District Court made Findings of Fact as related in the allegations of the fourth and fifth sentences of Paragraph 62 (except for the language in brackets in Paragraph 62), (2) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents, and (3) denies Burst's characterization of those Findings, which speak for themselves.

63.    Microsoft (1) admits that Intel undertook "initiatives related to Java"; (2) admits that the D.C. District Court made Findings of Fact as related in the allegations of the second, third, and fourth sentences of Paragraph 63; (3) respectfully refers the Court to the November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents; (4) denies Burst's characterizations of those findings, which speak for themselves; and (5) denies all other allegations of Paragraph 63.

64.    Microsoft (1) admits that the opinion of the U.S. Court of Appeals for the District of Columbia Circuit, 253 F.3d 34, discusses the allegations of the first sentence of Paragraph 64 and that the D.C. District Court made Findings of Fact which are quoted in the second, third, fourth, and fifth sentences in Paragraph 64; (2) respectfully refers the Court to the D.C. Circuit's opinion (253 F.3d 34) and to the D.C. District Court's November 5, 1999 Findings of Fact (84 F. Supp. 2d 9) for a complete, accurate, and contextual description of their contents; and (3) denies Burst's characterizations of the D.C. Circuit's and D.C. District Court's opinions.

Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in the last two sentences of paragraph 64, and so denies them. Microsoft denies the remaining allegations of Paragraph 64.

65.     Microsoft denies that it exerted "continued pressure on Intel to desist from competitive software development efforts." Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 65, and therefore denies them.

66.     Microsoft denies the allegations of Paragraph 66.

### Microsoft's Monopolistic Practices Continue Despite the Findings and Conclusions of Two Federal Courts.

67.     Microsoft denies the allegations of Paragraph 67.

68.     Microsoft (1) admits that Frasier Mocke authored an e-mail containing, among others, the phrases quoted (*i.e.*, within quotation marks) in the third sentence of Paragraph 68; (2) admits that Dave Foster authored an e-mail containing, among others, the phrases quoted (*i.e.*, within quotation marks) in the fourth and fifth sentences; and (3) asserts that the e-mails of Messrs. Mocke and Foster speak for themselves and that Paragraph 68's selective quotation and interpretation of them is inaccurate and misleading. Microsoft denies the remaining allegations of Paragraph 68.

69.     Microsoft lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 69, and therefore denies them, except that Microsoft admits that it introduced Windows Media Player 7.0 for customer download, admits that it had discussions

with Burst employees, denies that it made a change in the Microsoft API "calculated" to have any effect on Burst, and denies that it "strategically used its power to disadvantage and delay Burst."

70.    Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first and second sentences of Paragraph 70, and therefore denies the same. Microsoft denies the remaining allegations of Paragraph 70.

71.    Microsoft denies the allegations of Paragraph 71, except (1) admits that Joachim Kempin authored an e-mail containing, among others, the phrases quoted (*i.e.*, within quotation marks) in the third, fourth, fifth, and sixth sentences of Paragraph 68; (2) asserts that the Mr. Kempin's e-mail speaks for itself; (3) denies Burst's characterization of documents in Paragraph 71; and (4) asserts that Paragraph 71's selective quotation and interpretation of the e-mail is inaccurate and misleading.

72.    Microsoft denies the allegations of Paragraph 72.

73.    Microsoft denies the allegations of Paragraph 73.

74.    Microsoft denies that it has engaged in anticompetitive conduct as alleged by Burst, admits that its share of the purported "streaming video market" (a putative market definition which Microsoft denies) increased from early 1997 to early 2002, and lacks knowledge or information to form a brief as to the truth of the remaining allegations of paragraph 74 and so denies them.

75.    The allegations of Paragraph 75 are not allegations of existing fact but are instead predictions of the future to which no responsive pleading is required and which Microsoft

therefore denies. To the extent Microsoft is required to answer the allegations of Paragraph 75, it denies them.

76. Microsoft denies the allegations of Paragraph 76.

## **INTELLECTUAL PROPERTY VIOLATIONS**

77. Microsoft admits that it entered into a written agreement with Burst on or around October 14, 1999, states that the agreement speaks for itself, and denies Burst's characterization of the purpose and content thereof. The remaining allegations of Paragraph 77 are too vague to permit Microsoft to form a responsive pleading, and Microsoft therefore denies them. If and to the extent any allegation in Paragraph 77 is not impermissibly vague and is within the knowledge of Microsoft, Microsoft denies it.

78. Microsoft admits that Microsoft received documents from Burst at meetings that occurred between personnel from the two companies, but lacks sufficient information or knowledge to admit or deny Burst's characterization of those documents and the information in them or otherwise disclosed to Microsoft, and therefore denies those characterizations. Microsoft asserts that the remaining allegations of Paragraph 78 are too vague to permit Microsoft to form a responsive pleading, and Microsoft therefore denies them. If and to the extent any allegation in Paragraph 78 is not impermissibly vague and is within the knowledge of Microsoft, Microsoft denies it.

79. Microsoft lacks sufficient information to admit or deny the allegations of the first sentence of Paragraph 79 and therefore denies them. The second sentence of paragraph 79 contains a legal conclusion to which Microsoft is not required to respond, and Microsoft lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the second sentence and therefore denies them.

80.    Microsoft denies that it "learned precisely" anything or learned anything of value during meetings with Burst and asserts that the allegations of Paragraph 80 are too vague to permit Microsoft to form a responsive pleading, and Microsoft therefore denies them. If and to the extent any allegation in Paragraph 80 is not impermissibly vague and is within the knowledge of Microsoft, Microsoft denies it.

81.    Microsoft admits that Burst presented Microsoft with a purported third party evaluation of Burstware of some type, but denies that it was "convinced … of the substantial value of Burst's technology."  Microsoft lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 81 and therefore denies them.  If and to the extent any allegation in Paragraph 81 is not impermissibly vague and is within the knowledge of Microsoft, Microsoft denies it.

82.    Microsoft admits that it declined to license any of Burst's alleged technologies and that discussions between the parties ceased by early 2001.  Microsoft denies all remaining allegations of Paragraph 82.

83.    Microsoft admits that software referred to as Corona was announced in December 2001, and that Microsoft issued related press and marketing materials which speak for themselves.  To the extent Paragraph 83 characterizes those materials in a manner that departs from them, Microsoft denies those characterizations.   Microsoft denies the remaining allegations of Paragraph 83.

84.     Microsoft denies the allegations of Paragraph 84.

85.     Microsoft admits that it issued a press release regarding Corona and maintains that its press and marketing materials speak for themselves.  To the extent Paragraph 85 characterizes those materials in a manner that departs from them, Microsoft denies the allegations of Paragraph 85.

86.     Microsoft admits that the '995 patent shows on its face that it was filed on December 27, 1988, was issued on October 16, 1990, and is entitled "Audio/Video Transceiver Apparatus Including Compression Means."  Microsoft lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 86 and therefore denies them.

87.     Microsoft admits that the '839 patent shows on its face that it was filed on October 11, 1991, was issued on November 17, 1992, and is entitled "Method for Handling Audio/Video Source Information."  Microsoft lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 87 and therefore denies them.

88.     Microsoft admits that the '705 patent shows on its face that it was filed on July 18, 1997, was issued on November 30, 1999, and is entitled "Burst Transmission Apparatus and Method for Audio/Video Information."  Microsoft lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 88 and therefore denies them.

89.     The allegations of Paragraph 89 assert legal conclusions to which Microsoft is not required to, and does not, respond.  What is and is not covered by the '995 patent will be decided by the Court.  To the extent that Paragraph 89 includes allegations that are not legal conclusions, Microsoft denies them.

90.    The allegations of Paragraph 90 assert legal conclusions to which Microsoft is not required to, and does not, respond. What is and is not covered by the '839 patent will be decided by the Court. To the extent that Paragraph 90 includes allegations that are not legal conclusions, Microsoft denies them.

91.    The allegations of Paragraph 91 assert legal conclusions to which Microsoft is not required to, and does not, respond. What is and is not covered by the '705 patent will be decided by the Court. To the extent any of the allegations of Paragraph 91 are not legal conclusions, Microsoft denies them.

92.    Microsoft admits that it has manufactured, used, and/or distributed software called Corona but denies that it has made, used, or sold any product that incorporates "Plaintiffs patented technology." Microsoft lacks sufficient knowledge to admit or deny the allegations of Paragraph 92 regarding plaintiff's alleged products and where they were sold, and therefore denies such allegations. Microsoft denies all remaining allegations of Paragraph 92.

## CLAIMS FOR RELIEF

**First Claim for Relief: Unlawful Exclusive Dealing
and Other Exclusionary Agreements
(Section 1 of the Sherman Act, Section 3 of the Clayton Act)**

93.    Microsoft incorporates by reference its answers to Paragraphs 1 through 92.

94.    Microsoft denies the allegations of Paragraph 94.

95.    Microsoft denies the allegations of Paragraph 95.

96.    Microsoft denies the allegations of Paragraph 96.

97.     Microsoft denies the allegations of Paragraph 97.

**Second Claim for Relief: Monopolization of the PC Operating
Systems Market
(Section 2 of the Sherman Act)**

98.     Microsoft incorporates by reference its answers to Paragraphs 1 through

97.

99.     Microsoft denies the allegations of Paragraph 99.

100.    Microsoft denies the allegations of Paragraph 100.

101.    Microsoft denies the allegations of Paragraph 101.

102.    Microsoft denies the allegations of Paragraph 102.

**Third Claim for Relief: Monopolization and Attempted
Monopolization of the Market
For Video Delivery Over Computer (IP) Networks
(Section 2 of the Sherman Act)**

103.    Microsoft incorporates by reference its answers to Paragraphs 1 through

102.

104.    The first sentence of paragraph 104 states a legal conclusion to which no

response is required; to the extent a response is required, Microsoft denies the allegations of the

first sentence.  Microsoft denies the remaining allegations of Paragraph 104.

105.    Microsoft denies the allegations of Paragraph 105.

106.    Microsoft denies the allegations of Paragraph 106.

107.    Microsoft denies the allegations of Paragraph 107.

108.    Microsoft denies the allegations of Paragraph 108.

109.    Microsoft denies the allegations of Paragraph 109.

### Fourth Claim for Relief: The Cartwright Act
### (Calif. Bus. And Prof. Code §§ 16720 *et seq.*)

110.    Microsoft incorporates by reference its answers to Paragraphs 1 through 109.

111.    Microsoft denies the allegations of Paragraph 111.

112.    Microsoft denies the allegations of Paragraph 112.

### Fifth Claim for Relief: Unfair Competition Act
### (Calif. Bus. And Prof. Code §§ 17200 *et seq.*)

113.    Microsoft incorporates by reference its answers to Paragraphs 1 through 112.

114.    Microsoft denies the allegations of Paragraph 114.

115.    Microsoft denies the allegations of Paragraph 115.

116.    Microsoft denies the allegations of Paragraph 116.

### Sixth Claim for Relief: Patent Infringement
### (Declaratory Judgment of Patent Infringement)

117.    Microsoft incorporates by reference its answers to Paragraphs 1 through 116.

118.    Paragraph 118 asserts legal conclusions to which Microsoft is not required to respond.  Microsoft lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 118 and therefore denies them.

119.    Microsoft denies the allegations of Paragraph 119.

120.    Microsoft admits that Burst purports to seek a judicial determination that Microsoft has infringed and/or is infringing the '995, '839, and '705 patents.  Microsoft denies all remaining allegations of Paragraph 120.

**Seventh Claim for Relief: Patent Infringement**
**(Patent Infringement Under The Patent Act, 35 U.S.C. §§ 100, _et seq._)**

121.    Microsoft incorporates by reference its answers to  Paragraphs 1 through 120.

122.    Paragraph 122 asserts legal conclusions to which Microsoft is not required to respond.  Microsoft lacks sufficient knowledge to admit or deny the other allegations of Paragraph 122 and therefore denies them.

123.    Microsoft denies the allegations of Paragraph 123.

124.    Microsoft denies the allegations of Paragraph 124.

125.    Microsoft denies the allegations of Paragraph 125.

126.    Microsoft denies the allegations of Paragraph 126.

**Eighth Claim for Relief: Trade Secrets Act**
**(Calif. Civil Code §§ 3426, _et seq._)**

127.    Microsoft incorporates by reference its answers to Paragraphs 1 through 126.

128.    Microsoft denies the allegations of Paragraph 128.

129.    Microsoft denies the allegations of Paragraph 129.

130.    Microsoft denies the allegations of Paragraph 130.

**Ninth Claim for Relief: Common Law Unfair Competition**
**(Common Law of the State of California)**

131.    Microsoft incorporates by reference its answers to  Paragraphs 1 through 130.

132.    Microsoft denies the allegations of Paragraph 132.

133.    Microsoft denies the allegations of Paragraph 133.

134.    Microsoft denies the allegations of Paragraph 134.

135.    Microsoft denies the allegations of Paragraph 135.

136.    Microsoft denies the allegations of Paragraph 136.

### Tenth Claim for Relief: Breach of Contract
### (Common Law of the State of Washington)

137.    Microsoft incorporates by reference its answers to Paragraphs 1 through 136.

138.    Microsoft admits only that it executed an agreement with Burst that speaks for itself.  Microsoft denies the remaining allegations of Paragraph 138.

139.    Microsoft lacks sufficient knowledge to admit or deny the allegations of Paragraph 139 and therefore denies them.

140.    Microsoft denies the allegations of Paragraph 140.

141.    Microsoft denies the allegations of Paragraph 141.

Microsoft denies all allegations of the Complaint not specifically admitted above.

### MICROSOFT'S AFFIRMATIVE DEFENSES

Microsoft asserts the following defenses:

### First Affirmative Defense

Burst has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

Burst's claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

Burst's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

Burst's claims are barred, in whole or in part, by the doctrine of laches.

### Fifth Affirmative Defense

Burst's claims are barred, in whole or in part, by the doctrine of waiver.

### Sixth Affirmative Defense

Burst's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Affirmative Defense

Burst's claims are barred, in whole or in part, by its failure to mitigate injury and its failure to mitigate damages.

### Eighth Affirmative Defense

Burst's claims are barred, in whole or in part, because Microsoft's conduct constitutes permissible competitive activity.

### Ninth Affirmative Defense

Burst cannot satisfy its burden, in whole or in part, of demonstrating that it has standing to assert its claims, nor does Burst have such standing.

### Tenth Affirmative Defense

Burst cannot satisfy its burden, in whole or in part, of demonstrating that it has antitrust standing to assert its claims, nor does Burst have such standing.

### Eleventh Affirmative Defense

Burst cannot satisfy its burden, in whole or in part, of demonstrating that it has suffered any antitrust injury, nor did Burst suffer any such injury.

### Twelfth Affirmative Defense

Burst cannot satisfy its burden, in whole or in part, of demonstrating that it has suffered any injury in fact, nor did Burst suffer any such injury.

### Thirteenth Affirmative Defense

Burst cannot satisfy its burden, in whole or in part, of stating an adequate basis for an award of treble damages under either federal or California law, nor does such a basis exist.

### Fourteenth Affirmative Defense

Burst lacks standing to state a claim of infringement of U.S. Patent Nos. 4,963,995, 5,164,839, or 5,995,705.

### Fifteenth Affirmative Defense

Microsoft has not directly, indirectly, contributorily or by inducement infringed any claim of U.S. Patent Nos. 4,963,995, 5,164,839, or 5,995,705.

### Sixteenth Affirmative Defense

The claims of U.S. Patent Nos. 4,963,995, 5,164,839, or 5,995,705 are invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112.

### Seventeenth Affirmative Defense

The patentee has taken certain positions or done certain acts before the United States Patent and Trademark Office during the prosecution of U.S. Patent Nos. 4,963,995, 5,164,839, or 5,995,705 to achieve allowance of the claims of those patents that estop and/or preclude Burst from contending that Microsoft has infringed any of the claims of those patents.

### Eighteenth Affirmative Defense

Any and all past damages in this action are barred for failure to comply with the Marking Statute, 35 U.S.C. § 287.

### Nineteenth Affirmative Defense

The information that Burst alleges comprises its trade secrets is not secret.

### Twentieth Affirmative Defense

Microsoft has not misappropriated any Burst trade secrets.

### Twenty-first Affirmative Defense

Microsoft has never used the information that Burst alleges comprises its trade secrets to produce any software.

**Twenty-second Affirmative Defense**

The extent that any Microsoft employee had access to any Burst confidential information and also worked on any Microsoft software, that employee used no more than the residuals from his or her knowledge of Burst confidential information in working on such software.

**Twenty-third Affirmative Defense**

By withholding material prior art from the United States Patent & Trademark Office ("PTO") with an intent to deceive the PTO into issuing the '705 patent, inventor Richard Lang and his counsel William Hein committed inequitable conduct which renders the claims of the '705 patent unenforceable.

U.S. Patent No. 4,499,568, was issued on February 12, 1985 to Jacques Gremillet, and as such is prior art to the patents-in-suit. Gremillet discloses subject matter material to the patentability of the asserted claims of the '995, '839, and '705 patents. Specifically, Gremillet discloses a system and process for distributing recorded information at an accelerated speed. On information and belief, a reasonable patent examiner would have at all times considered Gremillet important in deciding whether to allow the applications for the patents-in-suit to issue.

During the prosecution of the '705 patent, Richard Lang and William Hein were aware of Gremillet and its materiality to the patentability of the inventions disclosed and claimed therein. Such awareness is evidenced by, at least, the December 1, 1994 facsimile from Ingrid Fortunati at Burst to Mr. Lang, enclosing the Gremillet reference and indicating that the Gremillet reference came from Mr. Hein's files. Despite this knowledge, Messrs. Lang and Hein did not disclose Gremillet to the PTO at any time during the prosecution of the '705 patent. On

information and belief, this omission was intentional and designed to deceive the PTO. On

information and belief, a reasonable patent examiner would have at all times considered

Gremillet important in deciding whether to allow the application for the '705 patent to issue.

The European Patent Office issued an Office Action dated April 22, 1994 for

Application No. 90 902 741.9, before the filing of the '705 patent. The EPO Office Action

identified, inter alia, the following prior art references: Hildering et al., "Programmable

Compact Disk Picture Memory and Video Processing System," IEEE Transactions on Consumer

Electronics at 838-845 (Aug. 1988); EP Publication No. 0 283 727 (Parker et al., published

September 28, 1988); and EP Publication No. 0 082 077 (Gremillet, published June 22, 1983).

The Australian Patent Office cited Australian Patent Specification 481,151 (Newell, published

September 26, 1974) on July 12, 1991. These four references disclose subject matter material to

the patentability of the asserted claims of the '705 patent. Specifically, Hildering discloses a

transceiver apparatus that is capable of transmitting time compressed audio and video

information. The Parker publication discloses a method and apparatus for producing a recording

using a time compressed transmission. The Gremillet publication discloses a process for

transmitting recorded musical works in time compressed format. Indeed, in the EPO Office

Action, all of the then-pending claims of EP Application No. 90 902 741.9 were deemed not to

be patentable over one or more of the three references. The Newell Specification disclosed an

apparatus for receiving audio and video data, time compressing it, storing it, and transmitting it

in less than its play time. On information and belief, a reasonable U.S. patent examiner would

have at all times considered Hildering, the Parker EP publication, the Gremillet EP publication,

and the Newell Specification important in deciding whether to allow the applications for the

patents-in-suit to issue.

Upon information and belief, the EPO Office Action, dated April 22, 1994, was received by Mr. Hein and Mr. Lang as part of their supervision of Burst's patent prosecution shortly after it was issued by the EPO. Upon information and belief, the Australian Examination Report, dated July 12, 1991, was similarly received by Mr. Hein and Mr. Lang shortly after the Australian Patent Office issued it. As such, before and during the prosecution of the '705 patent, Mr. Hein and Mr. Lang were aware of Hildering, the Parker EP publication, the Gremillet EP publication, and Newell Specification, and their materiality to the patentability of the inventions disclosed and claimed in the patents-in-suit, through their receipt of the EPO and Australian Office Actions. Despite this knowledge, Mr. Hein and Mr. Lang did not disclose these four pieces of art to the PTO at any time during the prosecution of the '705 patent. On information and belief, this omission was intentional and designed to deceive the PTO.

Because of Messrs. Lang and Hein's intentional deception in neglecting to disclose Gremillet, Hildering, the Parker EP publication, the Gremillet EP publication, and Newell Specification the '705 patent is unenforceable.

### Twenty-fourth Affirmative Defense

By withholding material prior art from the United States Patent & Trademark Office ("PTO") with an intent to deceive the PTO into issuing the '839 patent, inventor Richard Lang and his counsel William Hein committed inequitable conduct which renders the claims of the '839 patent unenforceable.

The Australian Patent Office cited Australian Patent Specification 481,151 (Newell, published September 26, 1974) on July 12, 1991. This reference discloses subject matter material to the patentability of the asserted claims of the '839 patent. Specifically, the

31

Newell Specification disclosed an apparatus for receiving audio and video data, time compressing it, storing it, and transmitting it in less than its play time. On information and belief, a reasonable U.S. patent examiner would have at all times considered the Newell Specification important in deciding whether to allow the applications for the patents-in-suit to issue.

Upon information and belief, the Australian Examination Report, dated July 12, 1991, was received by Mr. Hein and Mr. Lang shortly after the Australian Patent Office issued it. As such, before and during the prosecution of the '839 patent, Mr. Hein and Mr. Lang were aware of the Newell Specification, and its materiality to the patentability of the inventions disclosed and claimed in that patent, through their receipt of the Australian Examination Report. Despite this knowledge, Mr. Hein and Mr. Lang did not disclose this art to the PTO at any time during the prosecution of the '839 patent. On information and belief, this omission was intentional and designed to deceive the PTO.

Because of Messrs. Lang and Hein's intentional deception in neglecting to disclose the Newell Specification, the '839 patent is unenforceable.

### Twenty-fifth Affirmative Defense

Messrs. Lang and Hein committed inequitable conduct by withholding material prior art from the PTO during the prosecution of the '705 patent, which renders the claims of the '705 patent unenforceable, and which thereby renders the claims of the '839 patent unenforceable by the doctrine of infectious unenforceability. Specifically, the '995, '839, and '705 patents have an immediate and necessary relationship with each other. The '705 patent is the ultimate continuation of the '839 patent, and the '839 patent is a divisional of a continuation-

in-part of the '995 patent. The specifications of the '839 and '705 patents are substantively identical. The claims of all three patents are directed to apparatus and methods for handling and transmitting audio/video information utilizing time compression.

As stated above, the '705 patent is unenforceable due to Messrs. Lang and Hein's intentional deception in neglecting to disclose Gremillet, Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification. Thus, the '839 patent is infected by the inequitable conduct committed during the prosecution of the '705 patent, and is thereby unenforceable.

### Twenty-sixth Affirmative Defense

Messrs. Lang and Hein committed inequitable conduct by withholding material prior art from the PTO during the prosecution of the '705 patent, which renders the claims of the '705 patent unenforceable, and which thereby renders the claims of the '995 patent unenforceable by the doctrine of infectious unenforceability. Specifically, the '995, '839, and '705 patents have an immediate and necessary relationship with each other. The '705 patent is the ultimate continuation of the '839 patent, and the '839 patent is a divisional of a continuation-in-part of the '995 patent. The specifications of the '839 and '705 patents are substantively identical. The claims of all three patents are directed to apparatus and methods for handling and transmitting audio/video information utilizing time compression.

As stated above, the '705 patent is unenforceable due to Messrs. Lang and Hein's intentional deception in neglecting to disclose Gremillet, Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification. Thus, the '995 patent is infected by

33

the inequitable conduct committed during the prosecution of the '705 patent, and is thereby unenforceable.

### MICROSOFT'S COUNTERCLAIMS AGAINST BURST.COM, INC.

Counter-plaintiff Microsoft Corporation ("Microsoft"), for its counterclaim against Burst.com, Inc. ("Burst), states as follows:

#### Introduction

1.  This is a counterclaim for a declaratory judgment that Microsoft does not infringe, directly or indirectly, any valid claims of certain patents allegedly owned by Burst. This action further seeks a declaration that the claims of these patents are invalid or otherwise unenforceable against Microsoft.

#### The Parties

2.  Plaintiff Microsoft is a Washington corporation with its principal place of business in Redmond, Washington.

3.  Upon information and belief, defendant Burst is a Delaware corporation with its principal place of business in Santa Rose, California.

#### Jurisdiction and Venue

4.  This is an action for Declaratory Judgment that the claims of United States Patent Nos. 4,963,995, 5,164,839, and 5,995,705 (collectively "the Burst patents") are invalid and not infringed. This action is brought under the patent laws of the United States, 35 U.S.C. §§ 101 et seq. and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.

5.  This Court has subject matter jurisdiction over this counterclaim, which arises under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

**Background**

6.  Microsoft is a leading provider of computer software. Among the software distributed by Microsoft is a family of programs called the Windows Media 9 Series. Windows Media 9 Series includes the Windows Media Player 9 Series and Windows Media Services 9 Series. Before their official release, these programs were unofficially known as Corona.

7.  U.S. Patent No. 4,963,995 ("the '995 patent"), entitled "Audio/Video Transceiver Apparatus Including Compression Means," apparently was filed on December 27, 1988 and issued on October 16, 1990. On its face, the '995 patent shows Explore Technology, Inc. as the assignee.

8.  U.S. Patent No. 5,164,839 ("the '839 patent"), entitled "Method for Handling Audio/Video Source Information," apparently was filed on October 11, 1991 and issued on November 17, 1992. On its face, the '839 patent shows Explore Technology, Inc. as the assignee.

9.  U.S. Patent No. 5,995,705 ("the '705 patent"), entitled "Burst Transmission Apparatus and Method for Audio/Video Information," apparently was filed on July 18, 1997 and issued on November 30, 1999. On its face, the '705 patent shows Instant Video Technologies, Inc. as the assignee.

10. Burst has sued Microsoft in the United States District Court for the Northern District of California alleging, inter alia, that Microsoft infringes the '995, '839, and '705 patents. Thus, there exists an actual and justiciable controversy between Burst and Microsoft regarding the invalidity and non-infringement of the Burst patents.

## COUNT I

### <u>Declaration of Non-Infringement of U.S. Patent No. 4,963,995</u>

11. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 10 of this counterclaim.

12. Microsoft has not infringed, induced infringement of, or contributed to the infringement of, any claim of the '995 patent.

13. The continued assertion of the '995 patent against Microsoft, despite the non-infringement of the claims of the '995 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT II

### <u>Declaration of Non-Infringement of U.S. Patent No. 5,164,839</u>

14. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 13 of this counterclaim.

15. Microsoft has not infringed, induced infringement of, or contributed to the infringement of, any claim of the '839 patent.

16. The continued assertion of the '839 patent against Microsoft, despite the non-infringement of the claims of the '839 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT III

### <u>Declaration of Non-Infringement of U.S. Patent No. 5,995,705</u>

17. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 16 of this counterclaim.

18. Microsoft has not infringed, induced infringement of, or contributed to the infringement of, any claim of the '705 patent.

19. The continued assertion of the '705 patent against Microsoft, despite the non-infringement of the claims of the '705 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT IV

### Declaration of Invalidity of U.S. Patent No. 4,963,995

20. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 19 of this counterclaim.

21. The claims of the '995 patent are invalid for failure to comply with the conditions and requirements set forth in the patent statute, including 35 U.S.C. §§ 101, 102, 103 and 112.

22. The continued assertion of the '995 patent against Microsoft, despite the invalidity of the claims of the '995 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT V

### Declaration of Invalidity of U.S. Patent No. 5,164,839

23. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 22 of this counterclaim.

24. The claims of the '839 patent are invalid for failure to comply with the conditions and requirements set forth in the patent statute, including 35 U.S.C. §§ 101, 102, 103 and 112.

37

25. The continued assertion of the '839 patent against Microsoft, despite the invalidity of the claims of the '839 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT VI

### Declaration of Invalidity of U.S. Patent No. 5,995,705

26. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 25 of this counterclaim.

27. The claims of the '705 patent are invalid for failure to comply with the conditions and requirements set forth in the patent statute, including 35 U.S.C. §§ 101, 102, 103 and 112.

28. The continued assertion of the '705 patent against Microsoft, despite the invalidity of the claims of the '705 patent, makes this an exceptional case under 35 U.S.C. § 285.

## COUNT VII

### Declaration of Unenforceability of U.S. Patent No. 5,995,705

29. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 28 of this counterclaim.

30. By withholding material prior art from the United States Patent & Trademark Office ("PTO") with an intent to deceive the PTO into issuing the '705 patent, inventor Richard Lang and his counsel William Hein committed inequitable conduct which renders the claims of the '705 patent unenforceable.

31. U.S. Patent No. 4,499,568, was issued on February 12, 1985 to Jacques Gremillet, and as such is prior art to the patents-in-suit. Gremillet discloses subject matter

material to the patentability of the asserted claims of the '995, '839, and '705 patents. Specifically, Gremillet discloses a system and process for distributing recorded information at an accelerated speed. On information and belief, a reasonable patent examiner would have at all times considered Gremillet important in deciding whether to allow the applications for the patents-in-suit to issue.

32. During the prosecution of the '705 patent, Richard Lang and William Hein were aware of Gremillet and its materiality to the patentability of the inventions disclosed and claimed therein. Such awareness is evidenced by, at least, the December 1, 1994 facsimile from Ingrid Fortunati at Burst to Mr. Lang, enclosing the Gremillet reference and indicating that the Gremillet reference came from Mr. Hein's files. Despite this knowledge, Messrs. Lang and Hein did not disclose Gremillet to the PTO at any time during the prosecution of the '705 patent. On information and belief, this omission was intentional and designed to deceive the PTO. On information and belief, a reasonable patent examiner would have at all times considered Gremillet important in deciding whether to allow the application for the '705 patent to issue.

33. The European Patent Office issued an Office Action dated April 22, 1994 for Application No. 90 902 741.9, before the filing of the '705 patent. The EPO Office Action identified, inter alia, the following prior art references: Hildering et al., "Programmable Compact Disk Picture Memory and Video Processing System," IEEE Transactions on Consumer Electronics at 838-845 (Aug. 1988); EP Publication No. 0 283 727 (Parker et al., published September 28, 1988); and EP Publication No. 0 082 077 (Gremillet, published June 22, 1983). The Australian Patent Office cited Australian Patent Specification 481,151 (Newell, published September 26, 1974) on July 12, 1991. These four references disclose

subject matter material to the patentability of the asserted claims of the '705 patent. Specifically, Hildering discloses a transceiver apparatus that is capable of transmitting time compressed audio and video information. The Parker publication discloses a method and apparatus for producing a recording using a time compressed transmission. The Gremillet publication discloses a process for transmitting recorded musical works in time compressed format. Indeed, in the EPO Office Action, all of the then-pending claims of EP Application No. 90 902 741.9 were deemed not to be patentable over one or more of the three references. The Newell Specification disclosed an apparatus for receiving audio and video data, time compressing it, storing it, and transmitting it in less than its play time. On information and belief, a reasonable U.S. patent examiner would have at all times considered Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification important in deciding whether to allow the applications for the patents-in-suit to issue.

34. Upon information and belief, the EPO Office Action, dated April 22, 1994, was received by Mr. Hein and Mr. Lang shortly after it was issued by the EPO. Upon information and belief, the Australian Examination Report, dated July 12, 1991, was received by Mr. Hein and Mr. Lang shortly after that office issued it. As such, before and during the prosecution of the '705 patent, Mr. Hein and Mr. Lang were aware of Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification, and their materiality to the patentability of the inventions disclosed and claimed in the patents-in-suit, through their receipt of the EPO and Australian Office Actions. Despite this knowledge, Mr. Hein and Mr. Lang did not disclose these four pieces of art to the PTO at any time during the prosecution of the '705 patent. On information and belief, this omission was intentional and designed to deceive the PTO.

35. Because of Messrs. Lang and Hein's intentional deception in neglecting to disclose Gremillet,  Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification, the '705 patent is unenforceable.

## COUNT VIII

### Declaration of Unenforceability of U.S. Patent No. 5,164,839

36. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 35 of this counterclaim.

37. By withholding material prior art from the United States Patent & Trademark Office ("PTO") with an intent to deceive the PTO into issuing the '839 patent, inventor Richard Lang and his counsel William Hein committed inequitable conduct which renders the claims of the '839 patent unenforceable.

38. The Australian Patent Office cited Australian Patent Specification 481,151 (Newell, published September 26, 1974) on July 12, 1991.  This reference discloses subject matter material to the patentability of the asserted claims of the '839 patent.  Specifically, the Newell Specification disclosed an apparatus for receiving audio and video data, time compressing it, storing it, and transmitting it in less than its play time.  On information and belief, a reasonable U.S. patent examiner would have at all times considered the Newell Specification important in deciding whether to allow the applications for the '839 patent to issue.

39. Upon information and belief, the Australian Examination Report, dated July 12, 1991, was received by Mr. Hein and Mr. Lang shortly after the Australian Patent Office issued it.  As such, before and during the prosecution of the '839 patent, Mr. Hein and Mr. Lang were aware of the Newell Specification, and its materiality to the patentability of the

inventions disclosed and claimed in that patent, through their receipt of the Australian Examination Report. Despite this knowledge, Mr. Hein and Mr. Lang did not disclose this art to the PTO at any time during the prosecution of the '839 patent. On information and belief, this omission was intentional and designed to deceive the PTO.

40. Because of Messrs. Lang and Hein's intentional deception in neglecting to disclose the Newell Specification, the '839 patent is unenforceable.

41. Messrs. Lang and Hein also committed inequitable conduct by withholding material prior art from the PTO during the prosecution of the '705 patent, which renders the claims of the '705 patent unenforceable, and which thereby renders the claims of the '839 patent unenforceable by the doctrine of infectious unenforceability. Specifically, the '995, '839, and '705 patents have an immediate and necessary relationship with each other. The '705 patent is the ultimate continuation of the '839 patent, and the '839 patent is a divisional of a continuation-in-part of the '995 patent. The specifications of the '839 and '705 patents are substantively identical. The claims of all three patents are directed to apparatus and methods for handling and transmitting audio/video information utilizing time compression.

42. As stated above, the '705 patent is unenforceable due to Messrs. Lang and Hein's intentional deception in neglecting to disclose Gremillet, Hildering, the Parker EP publication, the Gremillet EP publication, and the Newell Specification. Thus, the '839 patent is infected by the inequitable conduct committed during the prosecution of the '705 patent, and is thereby unenforceable.

## COUNT IX

### <u>Declaration of Unenforceability of U.S. Patent No. 4,963,995</u>

43. Microsoft incorporates by reference herein its allegations in paragraphs 1 – 42

of this counterclaim.

44. Messrs. Lang and Hein committed inequitable conduct by withholding

material prior art from the PTO during the prosecution of the '705 patent, which renders the

claims of the '705 patent unenforceable, and which thereby renders the claims of the '995

patent unenforceable by the doctrine of infectious unenforceability. Specifically, the '995,

'839, and '705 patents have an immediate and necessary relationship with each other. The

'705 patent is the ultimate continuation of the '839 patent, and the '839 patent is a divisional

of a continuation-in-part of the '995 patent. The specifications of the '839 and '705 patents

are substantively identical. The claims of all three patents are directed to apparatus and

methods for handling and transmitting audio/video information utilizing time compression.

45. As stated above, the '705 patent is unenforceable due to Messrs. Lang and

Hein's intentional deception in neglecting to disclose Gremillet, Hildering, the Parker EP

publication, the Gremillet EP publication, and the Newell Specification. Thus, the '995

patent is infected by the inequitable conduct committed during the prosecution of the '705

patent, and is thereby unenforceable.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Microsoft respectfully prays that:

A. This Court adjudge, declare and decree that United States Patent Nos.

4,963,995, 5,164,839, and 5,995,705 are invalid;

B.  This Court adjudge, declare and decree that United States Patent Nos.

4,963,995, 5,164,839, and 5,995,705 are not infringed by Microsoft;

C.  This Court adjudge, declare and decree that United States Patent Nos.

4,963,995, 5,164,839, and 5,995,705 are unenforceable;

D.  Microsoft be awarded its reasonable attorneys' fees and costs; and

E.  Microsoft be granted such other further relief to which it may be entitled.


Respectfully submitted,

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-4115

Philip L. Graham, Jr.
David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL
125 Broad Street
New York, NY  10004-2498
(212) 558-4000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington  98052
(425) 936-8080

Karen A. Popp (D.Md. No. 26145)
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, DC  20005

Charles W. Douglas
Richard A. Cederoth
John W. Treece
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

*Attorneys for Defendant Microsoft Corporation*

44