UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

February 23, 2004

Memo To Counsel Re: Microsoft Corp. Antitrust Litigation
MDL 1332

The Document Relates To:
Burst.com, Inc. v. Microsoft Corp.
Civil No. JFM-02-2952

Dear Counsel:

    I thought it might be useful for me to share with you some of my preliminary thinking prior to the *Markman* hearing to be held later this week. Doing so helps me to clarify my thought process and might enable you to focus your presentations on some of my concerns.

    I am setting forth in this letter (1) my understanding as a layman as to how the "VCR-ET system" (my short-hand for Burst's patented apparatus and methods) would work in practice, (2) my leanings on several of the important issues, and (3) several miscellaneous questions I have. As you read the letter, please do not be concerned that I have made up my mind on any question. I have not, and I look forward to being educated at the hearing. Further, I want you to feel entirely comfortable in telling me that any (or all) of my observations and/or questions reflect a misunderstanding of the underlying technology or of the legal issues. I am neither technically proficient nor a patent law expert, and the only way I know to perform my responsibilities in the claims construction process is to ask questions. If any of the questions are off-base, I need to know that just as much as I need the answers to any questions that are more worthwhile.

### My Understanding of How the VCR-ET System Would Work In Practice

    I see at least three practical applications of the VCR-ET system.

    First, a consumer could use it as a means to copy audio/video material. For example, if he desired to copy a videotape, the consumer would place the tape to be copied in the tape deck. He

1

would then press a button to have the material in the tape deck converted from analog to digital format and compressed. While the material was residing in memory, the consumer could edit it. Then, he would place a blank tape in the tape deck and press a button to have the material decompressed, converted back into analog format and copied.

Second, the VCR-ET could be used in conjunction with a video library. The material in the library would be transmitted in compressed, digital format to the consumer's VCR-ET. The material would then be decompressed and converted from digital to analog format and could be displayed on the consumer's screen.

A third way in which the VCR-ET system could be used would be to communicate audio/video information among groups that want to share the information. For example, one member of a family group could take a home video and, instead of making a copy and mailing it to another family member, could transmit the video in compressed, digital format from his VCR-ET to a connected VCR-ET owned by a second member of the family group. The latter could display and/or copy it on her VCR-ET after it was decompressed and converted to analog

## **My Leanings**

*The meaning of "time compressed"*

Leaning: in favor of Burst

Reason: It does not appear to me that the VCR-ET system is limited to circuit switched connections, an important premise of Microsoft's argument.

*The meaning of "having an associated burst time period"*

Leaning: in favor of Burst.

Reason: It seems to me that the use of the phrase "having an associated burst time period" was a simple and effective way to describe what Mr. Lang contemplated and that it does not necessarily carry the implications Microsoft ascribes to it.

*The meaning of "transceiver"*

Leaning: in favor of Microsoft

Reason: I recognize the patented system contemplates that when two or more connected VCR-ETs work together, one unit transmits audio/video information which is received by another unit at what could be a distant location. Thus, different functions would be performed outside a common housing. However, each of the networked VCR-ETs itself contains all of the component parts of a transceiver in a common housing. Mr Lang does not appear to have envisioned a more open communication system

in which the different parts of a transceiver are themselves diffusely spread.

*Are only complete programs covered by the patents?*

    Leaning: in favor of Microsoft.

    Reason: The prosecution history, specific language in the patents and the general description of how the VCR-ET system works all appear to indicate that an entire program is compressed in a "time compressed representation" before it is transmitted.

*Is an algorithm a structure?*

    Leaning: in favor of Microsoft.

    Reason: It appears to me that standing alone an algorithm is an abstraction and that it does not become a structure until it is programmed into the hardware or software that implements it.

*The meaning of "editing"*

    Leaning: in favor of Microsoft

    Reason: It appears to me that when describing editing, the patents talk about modifying the internal content of audio/video information.

## *Miscellaneous Questions*

    1. As indicated above, it does not appear to me that the patents are limited to circuit switched connections. Are they, however, limited to *direct* connections? If so, is that fact relevant to the issue of claims construction? Will it be relevant to the issue of infringement?

    2. It seems to me that Haskell's definition of time compression should be considered as intrinsic evidence of the meaning Mr. Lang was giving to the term only if drawing a distinction between the different possible meanings was necessary to the granting of Burst's patents. In that regard, it appears the critical distinction Mr. Lang was drawing between his patents and the *Haskell* patent was that the latter contemplated real time transmission. Therefore, although the term "time compression" was certainly *relevant*, it does not seem to have been *material* to the prosecution history. Accordingly, it seems to me that the definition Haskell gave to "time compression" is nothing more than extrinsic evidence of how those (or at least some of those) of ordinary skill in the art might have understood the term. Does this line of reasoning make sense in the context of patent law?

    3. I understand that compression of data always results in "time compression" in the sense Burst construes the term. That fact does to some extent weigh in favor of Microsoft's construction. However, the use of the term "time compressed" before the word "representation" in the patents helps

the reader understand the patents by focusing upon the particular attribute of compression (or data compression) that is important to the system being described. Is the principle relied upon by Microsoft that every word in a patent must be considered to have meaning so strict that it prevents the drafter of a patent from including words that make his meaning more clear to a patent examiner and other readers of the patent?

4. Microsoft states on page 9 of its opening memorandum that the VCR-ET system would need to be significantly redesigned to work with a "packet switched network." Is that fact relevant to the issue of claims construction? Will it be relevant to the issue of infringement?

5. Microsoft likewise states on page 17 of its opening memorandum that in 1988 "[a] software compression implementation would not have been able to compress the video described in the patents at the required rate." Again, is this fact relevant to the issue of claims construction? Will it be relevant to the issue of infringement?

Again, I hope this letter is useful. I look forward to your presentations at the hearing.

Very truly yours,

/s/


J. Frederick Motz
United States District Judge