# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document relates to:

*Burst.com, Inc. v.*
*Microsoft Corp.*

Civil Action No JFM-02-cv-2952

MDL Docket No. 1332

Hon. J. Frederick Motz

**Plaintiff Burst.com, Inc.'s Motion for Clarification and/or Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction**

---

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document relates to:

*Burst.com, Inc. v.*
*Microsoft Corp.*

Civil Action No JFM-02-cv-2952

MDL Docket No. 1332

Hon. J. Frederick Motz

Plaintiff Burst.com, Inc.'s Motion for
Clarification and/or Reconsideration of the
Court's March 12, 2004 Order Concerning
Claim Construction

---

### Table of Contents

| | | | |
|---|---|---|---|
| I. | | Procedural Background | 1 |
| II. | | Argument | 3 |
| | A. | A Time Compressed Representation . . . Having an Associated Time Period that is Shorter than a Time Period Associated with a Real Time Representation of Said Audio/Video Source Information | 3 |
| | | 1. "A Single Associated Burst Time Period" | 3 |
| | | 2. "Of Definite Duration" | 10 |
| | B. | Audio/Video Source Information | 12 |
| | | 1. Continuous Processing and Transmission of Data | 12 |
| | | 2. Entirety of the Data | 12 |
| | C. | Compression Means | 19 |
| III. | | Conclusion | 23 |

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION | MDL Docket No. 1332 |
| This Document relates to: | Hon. J. Frederick Motz |
| *Burst.com, Inc. v. Microsoft Corp.* | **Plaintiff Burst.com, Inc.'s Motion for Clarification and/or Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction** |
| Civil Action No JFM-02-cv-2952 | |

**PLAINTIFF BURST.COM, INC.'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF THE COURT'S MARCH 12, 2004 ORDER CONCERNING CLAIM CONSTRUCTION**

Pursuant to Local Rule 105.10, Plaintiff Burst.com, Inc. ("Burst") moves the Court to clarify and reconsider, as appropriate, its March 12, 2004 Order Concerning Claim Construction as it pertains to certain claim terms in U.S. patent numbers 4,963,995, 5,164,839 and 5,995,705 (the "Asserted Patents").

I.      PROCEDURAL BACKGROUND

On February 26 and 27, 2004 Plaintiff Burst and Defendant Microsoft Corporation ("Microsoft") (collectively, the "Parties") participated in a *Markman* Hearing wherein they presented a technical tutorial and arguments to the Court

-1-

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

concerning the construction of certain claim terms in the Asserted Patents. This

Hearing followed the submission of opening and reply claim construction briefs by the

Parties. On March 12, 2004 the Court issued an Order construing nine claim terms

and/or claim elements in the Asserted Patents (the "Order"). A statement of reasoning

accompanied each construction.

In this Motion, Burst respectfully requests the Court to clarify the scope of

certain of these constructions on the grounds that ambiguities or misperceptions may

exist thereby complicating the application of these constructions to the accused device

during an infringement analysis. Burst further requests the Court to reconsider certain

constructions on the grounds that the Court's reasoning for those constructions is

factually incorrect and/or presents an issue of reversible error with regard to the

application of the law of claim construction. Burst would also welcome the opportunity

to present additional oral argument to the Court on these issues if the Court would

deem it helpful or necessary.

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

## II.    ARGUMENT

### A.    A Time Compressed Representation . . . Having an Associated Time Period that is Shorter than a Time Period Associated with a Real Time Representation of Said Audio/Video Source Information

The Court construed this claim element as:

"A time compressed representation having a single associated burst time period of definite duration known at the time of compression that is shorter than the real time viewing time of the received audio/video information."

Order, 2.

#### 1.    "A Single Associated Burst Time Period"

Burst respectfully requests the Court to clarify its construction of this claim element with regard to the limitation 'a single associated burst time period.' Specifically, Burst inquires as to whether the Court meant to add a literal limitation where 'a single associated burst time period' means one—and only one—burst time period.

Burst requests this clarification as it would appear the Court has imposed a singular transmission time period limitation. The applicable claims, however, utilize the *indefinite* article 'an' thereby allowing for one or more associated time periods. To adopt a singular limitation would counter "patent claim parlance [which] recognizes that an article can carry the meaning of 'one or more,' for example in a claim using the transitional phrase 'comprising.'" *Abtox, Inc. v. Exitron Corporation,* 122 F.3d 1019, 1023 Fed.Cir. 1997); *see also North American Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction

1571, 1575-76 (Fed.Cir. 1993) (acknowledging an indefinite article to connote 'one or more,' unless the specification would indicate to the contrary) and Robert C. Faber, *Landis on Mechanics of Patent Claim Drafting* 531 (3d ed. 1990)) ("[i]n a claim, the indefinite article A or AN connotes 'one or more'").  As the Asserted Patents utilize the indefinite article 'an' in the context of a claim utilizing the transitional phrase 'comprising,' Burst believes that the Court instead meant the time compressed representation to have '*one or more*' or '*at least one*' associated burst time period as to remain consistent with the Federal Circuit's holding in *Abtox*.

Burst's requested clarification would eliminate any ambiguity that exists in the Court's present construction and would, additionally, reconcile the Court's construction with the literal claim language of the Asserted Patents.  Claim 1, for example, recites "a time compressed representation thereof having *an* associated burst time period." '995:10:63-64 (emphasis added).  Subject to Burst's requested clarification, the claim would be read as:

> A time compressed representation having **at least one** associated burst time period of definite duration known at the time of compression that is shorter than the real time viewing time of the received audio/video information

> To imply otherwise would be to run afoul of a fundamental precept of claim

interpretation as well as the specification of the Asserted Patents, which clearly indicate there is no requirement, intent or suggestion that there be a *single* transmission time.

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

For example, the specification discloses various transmission channels that a person of ordinary skill in the art would readily recognize as offering differing transmission bandwidths which, in turn, would result in different transmission times. See, e.g., '995:2:49-51 (disclosing telephone and satellite); '995:3:35, '995:8:13 (disclosing radio frequency modulation); '995:7:54 (disclosing a fiber optic line); '995:8:51-57 (disclosing telephone lines that may offer poor bandwidth); see also Dr. Stevenson's Rebuttal Expert Report (Exhibit C) at ¶ 67 ("[t]he Asserted Patents clearly teach an apparatus with multiple output ports which operate at different speeds and thus have different transmission times for the same time compressed representation").

The specification's various communication links of differing bandwidths correspond to the '995 Patent's prosecution history example of a two-hour video being "transmitted over a burst time period of only 5-30 seconds." See '995 Patent, Amendment A, 20 (Exhibit D). One cause for that variation in transmission time, as one skilled in the art could attest, is due to variation in bandwidth and configuration of the output means as it pertains to utilizing a particular transmission medium.

The Parties *and* the Court explicitly recognized and agreed, during the *Markman* Hearing, as to the role the transmission channel and bandwidth play in transmission

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

time.[1]  For example, Burst specifically noted the compression of audio/video source

information with an expectation of using a transmission channel of a given bandwidth—or

better—during the second day of the *Markman* Hearing:

> If I know that I'm going to potentially use a channel that can send a hundred
> bits per second and I compress to something less than a hundred bits per
> second, I'm going to be sending it faster than if I left the original data at a
> hundred bits per second.
>
> Now the channel you ultimately use may be a hundred bits per second.  It may
> be an even faster channel, 500 bits per second.  And the speed-up is even
> greater, *which is why it's not an absolute amount of time for the transmission
> that you're figuring out*.
>
> Markman Day 2, 144:7-16 (emphasis added).

These statements were made in response to the Court's query of whether "you

have to know at the time the time compressed representation is made the *duration*, the

*length*, the *temporal length* [or] the *duration* of the time compressed period."  Markman

Day 2, 143:21-24 (emphasis added).  Burst's answer, proffered by Mr. Gard, emphasized

the fact that a transmission time is *not* absolute thereby supporting Burst's contention

that the transmission time period need not be a *single* transmission time nor need it be

of a *definite duration* as is presently imposed by the Court's construction.

---

[1] See Markman Day 1, 75:24-76:2 (Court: "the compression has to have been sufficient that you can be
assured that whatever the *media of transmission* that would have been known in the art, it would have been
faster than real-time"); Markman Day 1, 77:4-19 (Dr. Stevenson for Burst discussing a wide range of
transmission channels having differing bit rates thereby affecting transmission in faster than real-time);
Markman 1, 78:1-5 (Mr. Cederoth for Microsoft: "So that when I've got the file, a video file that we've
compressed, in order to know whether it's a time compressed representation that has a burst transmission
period faster than real-time, I need to know the *transmission media*?"); Markman Day 2, 67:3-5 (Mr.
Cederoth: "you need to know the bandwidth because the bandwidth determines the degree of compression
which is necessary").

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

What you have to know, however, is "an *expected bit rate* for the transmission," that is, "how fast is a given channel able to transmit?" *Id.* at 144:1-4 (emphasis added). So long as "you compress to a degree that's better than that, you know you're going to achieve it. *That's why it's not a predetermined set time.*" *Id.* at 144:4-6 (emphasis added).

Burst provided further evidence that the transmission time need not be a single or a predetermined transmission time in its reference to "a channel that is very slow" such as the telephone line referenced in the '995 Patent at column 9, line 66. *Id.* at 144:17-18, 145:9-11. In this instance, Burst noted:

> a telephone line *may not* achieve the desired transfer rate. [The patent] doesn't say that it could not or that it will not. It's that it may not. And that's the whole concept of you prepare [audio/video source information] with an expectation that you're going to be able to use a channel that has a requisite bit rate. You may use one that's a higher bit rate and achieve even better results.

> *Id.* at 145:11-17.

This statement proves that the specification of the Asserted Patents recognized the various transmission channels available and the role bandwidth plays in creating myriad transmission times. This evidence and recognition, in turn, supports Burst's contention that the transmission time need not be a single transmission time or of a predetermined duration.

During the second day of the *Markman* Hearing, Burst also provided several examples of how those various transmission channels will have an inherent affect on

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

transmission time due to differing bandwidths thus evidencing the existence of *more than one* transmission time for a single program:

> If you then want to transmit that original program, that uncompressed program, if you use a communication channel, a pipe that can['t] [*sic*] handle that many bits per second, it's not going to transmit, even in real-time. If, however, you use a channel that at least is equal to real-time, then you're going to be transmitting at real-time, the real-time bit rate, the original program's playback bit rate.

> If, instead, you follow this process and you compress the data and you use that same transmission channel, you're going to transmit faster, so it's going to transmit in a shorter time period that that associated with the original program, the real-time representation, and its standard play rate.

> If, instead, you moved over to an even faster pipe, then you're going to get an even faster transmission. *And that's why there's no set time for the transmission that's required.*

> *Id.* at 148:4-19 (emphasis added).

And, as explained, while the compression occurs with a certain *expectation* of transmission time, the reality is that, in some instances, due to the fact that "the [transmission] technology's not very fast or the conditions at a given point time, you may not achieve [faster-than-real-time transmission]." *Id.* at 144:18-20. Such instances must be further considered in light of the fact that there is "no requirement under the patent law the invention achieve the objective in *every instance*." *Id.* at 145:4-5 (emphasis added). As such, the Court should not impose limitations in its construction—a single, predetermined transmission time—that would limit the invention to its faster-than-real time delivery objective in *every instance.*

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

The Court, during the *Markman* Hearing, evidenced its understanding and agreement with these arguments as to multiple transmission times and having only an expectation of using a transmission channel of a given bandwidth. The Court stated:

> you have to compress [the audio/video source information]. And that's what this is all about. You have to compress it. I mean, that's the idea, you're compressing. That's what makes it good.
>
> It's not like you know it's going to be, you don't care whether it's 20 minutes, you don't care whether it's 22 minutes. . . . *For this you don't have to care whether it's 19 minutes or 21 minutes.*
>
> . . .
>
> It is just that in order to fulfill the patent, *you have to know, by virtue of whatever you're using.* If you're using a telephone, it may not work. That's what the patent says. But if you're using fiberoptic cable or you're using something else, *then you know when you make the representation that it's going to be shorter than 30 minutes.*
>
> *Id.* at 154:11-24 (emphasis added).

This statement reflects the *proper* understanding of the burst transmission time period in that it need not be a single period—"you don't have to care whether it's 19 minutes or 21 minutes"—nor that it be predetermined as all you need to know is the expected bandwidth and that, because of compression, transmission is "going to be shorter than 30 minutes [the viewing time]." *Id.* at 154:16-17, 24.

Mr. Cederoth, for Microsoft, agreed without reservation:

> [i]f you know the bandwidth, then you'll know when you make the representation. And knowing the bandwidth and knowing the degree of the compression, you can, you'll know. You'll have the associated burst time or the

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

associated time period. And you'll know whether it's shorter than the viewing period. *I agree, you will know if you know the bandwidth.*"

. . .

But as a practical matter, Your Honor, the person setting up the system, if you know the bandwidth, you can do the math. And then you have your associated time because you've compressed it to fit into the bandwidth.

*Id.* at 154:25-155:17 (emphasis added).

The Court's construction, however, does not reflect this collective understanding between the Court and the Parties that all that is required is to compress the **audio/video source information** so that it *fits into* the bandwidth of a channel to be used, *not* that it be a single transmission time period.

It is for the claims, the specification and the prosecution history of the Asserted Patents not lending support to the Court's imposition of this 'single transmission time' limitation that Burst asks the Court to clarify that 'a single' transmission time means '*one or more*' or '*at least one*' associated burst time period as compression need only occur with an *expectation* of transmission bandwidth thereby allowing for multiple transmission times.

### 2.    "Of Definite Duration"

Burst contends the Court's imposition of the limitation of a burst time period "of definite duration" in this claim element is improper and respectfully requests the Court reconsider the same and strike this limitation from its construction. Order, 2. Burst

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

makes this request on the grounds that *nowhere* in the claims, the specification or the prosecution history of the Asserted Patents is there *any* indication that the transmission time must be of a *definite duration* thus calling into question the basis of the Court's imposition of such a limitation. Cf. *CCS Fitness, Inc. v. Brunswick Corp*, 288 F.3d 1359, 1366 (Fed.Cir. 2002) (discussing claim interpretation to concern the claims, the written description and the prosecution history).

As claim language "generally carries the ordinary meaning of the words in their normal usage," Burst questions where in the claim language a 'definite duration' limitation could be extrapolated in accordance with ordinary, normal use. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed.Cir. 2003). Even in recognition of the fact that "claims are to be construed in light of the specification[ ]," Burst is at a loss to identify a single exemplary teaching—much less an *intended* limitation—that would cause the Court to impose this 'definite duration' language in its construction. *United States v. Adams*, 383 U.S. 39, 49 (1966); see *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed.Cir. 2001) (noting the purpose of examining the claims in light of the specification is "to determine if the patentee has limited the scope of the claims").

Since Burst makes no such indication in the claims or the specification, nor does Burst limit the scope of the claims through a disclaimer in the prosecution history, Burst reiterates the impropriety of imposing such an arbitrary limitation. See *Biodex Corp. v.*

-11-

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

*Loredan Biomed., Inc.*, 946 F.2d 850, 862 (Fed.Cir. 1991) (noting limitations of the claims can arise during prosecution).  As such, and also based on the arguments set forth above regarding 'a single associated burst time period,' Burst respectfully requests the Court *reconsider* this construction and *strike* this limitation thereby resulting in a new claim construction that reads:

> A time compressed representation have *at least one* associated burst time period known at the time of compression that is shorter than the real time viewing of the received audio/video information.

**B.    Audio/Video Source Information**

**1.    Continuous Processing and Transmission of Data**

In its construction and delineation of certain limitations pertaining to **audio/video source information**, the Court found "the claims do not cover continuous processing and transmission of data."  Order, 3.  Burst respectfully requests the Court to clarify this statement.

Burst understands the Court's statement to mean only that the claims of the invention *do not* cover the processing and transmission of a *live feed* of audio and or video content.  Burst asks the Court to affirm this understanding of the Court's statement of the claims not covering 'continuous processing and transmission of data.'

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

2.    **Entirety of the Data**

The Court further construed **audio/video source information** to constitute "the entirety of the data . . . intended to be transmitted." Order, 3. The Court's stated reasoning for this construction, however, is not directed toward an 'entirety of the data' but, instead, the completion of sequence steps in the Asserted Patents before undertaking subsequent steps. Burst respectfully submits that the Court did not provide an adequate basis for this construction and that no such adequate basis exists. As evidenced below, Burst requests the Court to reconsider its construction of **audio/video source information** and construe the claim term as:

> the data (whether an entire program or a portion of a program) to be transmitted, not the individual frames or segments of that data.

For example, as support for its limitation of an 'entirety of the data,' the Court stated that "the claims in each of the patents plainly describe the processing of 'audio/video source information' in four distinct sequences" each of which "must be accomplished before the other begins." Order, 3. The completion of each sequence step before beginning the next, however, works in the context of an 'entirety of the data' as well as with *less than* an 'entirety of the data.' As such, this statement cannot serve as the basis for concluding that **audio/video source information** must be an 'entirety of the data.'

Additionally, the Court states that "Burst distinguishes the patent from prior art" on the ground "that this step-by-step sequence is material to what is being

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

claimed." Order, 3. While certain patent references were *generally* discussed in the

prosecution history of the '995 Patent, those discussions had *no relevance* as to whether

the data was an 'entirety' or as to any requirement of the completion of one step before

the beginning of the next.[2] For the Court to cite these statements as support for a 'step-

completion-step sequence' or, as is at issue in this construction, an 'entirety of the data,'

misreads the prosecution history of the '995 Patent.

Furthermore, the Court states that "Burst makes it unequivocally clear that each

step cannot be accomplished until all of the earlier steps have been completed by

inserting the word 'then' before each change in sequence." Order, 4. The claims of the

Asserted Patents contain no such language nor would such language support the

imposition that **audio/video source information** must be an 'entirety of the data.' For

example, in Claim 1 of the '995 Patent, 'then' does *not* appear before *any* element

(sequence step)—input, compression, storage, output—nor does it appear in the claim

language *at all*. 'Then' appears *only* in general summary statements in the prosecution

---

[2] In the prosecution history of the '995 Patent, Burst discussed two patent references—*Baldwin* and *Nichols et al.* Burst characterized *Baldwin* as "a multiple head helical scanning device for television tape recording in which the multiple heads are disposed on a rotatable wheel" and *Nichols et al.* as "a multiple-screen editing system that permits quicker editing of recorded information." Exhibit D at 20. Neither reference, nor Burst's comments, have *any* relevance to the Court's limitation that **audio/video source information** be an 'entirety of the data' or as to the completion of one sequence-step before undertaking the next.

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

history of the '995 Patent, for example:

> an audio/video transceiver having the ability to receive audio/video source information from a variety of signal sources, compress the audio/video source information into a time compressed representation thereof, store the time compressed representation of the audio/video source information in random access storage, *and then* transmit the time compressed representation of the audio video source information that is stored in the random access storage.

> Exhibit D at 18 (emphasis added).

This statement in the prosecution history does *not* support the Court's limitation that *each* sequence step be completed before initiating the next and, as such, would be reversible error to read this limitation onto the claims.[3]

---

[3] The prosecution history of the '995 Patent is replete with other examples of these generalized statements as they pertain to general capabilities of the invention—not specific limitations. For example:

> an audio/video transceiver having the ability to receive time compressed audio/video source information over a burst time period that is shorter than the real time period associated with that audio/video source information, store the time compressed audio/video source information in a random access storage, *and then* transmit the time compressed audio/video source information stored in the random access network.

> Exhibit D at 18 (emphasis added).

Like the example cited in the text, this discussion is a generalized summary of steps as they pertain to a 'group' of similar claims. A grammatically consistent use of 'then' is also present with regard to the discussion of a network comprising two or more transceivers:

> each transceiver being capable of receiving audio/video source information into a time compressed representation thereof, storing the time compressed representation of the audio/video source information in a random access storage, *and then* transmitting the time compressed representation of the audio/video information stored in the random access storage.

> *Id.* (emphasis added).

Again, this is not meant to be the recitation of instructions on how to operate the invention or to distinguish certain claims as to overcome a particular piece of prior art. It is a mere summary of the invention's capabilities.

Similar generalized summaries exist with regard to ancillary aspects of the invention, such as the receipt of digital information: "it may *then* be directly compressed into the time compressed digital format and stored in random access storage"; editing: "[t]he time compressed digital format program stored in the random access storage may *then* be edited and restored in the random access storage"; and storage to removable media: "[i]t may *then* be decompressed and downloaded onto a removable storage medium in either analog or digital format." *Id.* at 20 (emphasis added).

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

Burst also directs the Court's attention to the fact that these general discussions in the prosecution history were not made for the purpose of distinguishing a *particular claim* from the prior art. Burst, instead, made these statements in the context of providing a generalized *basic summary of steps* as they pertain to the invention *as a whole*. These statements are *not*—nor should they be interpreted as—a *specific* requirement that any sequence step must be completed before the next sequence-step commences.

During the *Markman* Hearing, the Court recognized that to impose this step-completion-step interpretation would require the addition of language not present in the prosecution history; it would require "the 'then' [to] then appear before each act. It would be, do this, then store, then transmit." Markman Day 1, 71:17-19. But neither the prosecution history *nor* the claims provide this recitation for the simple fact that the Asserted Patents are not meant to require the completion of one step before initiation of the next. The Court's construction, however, fails to reflect its own previous understanding on this point.

As a final example of the construction being improperly supported, the Court refers to the '995 Patent describing storage "in a way that assumes the entire program is compressed and stored as a whole." Order, 4. The Court points to the specification of the '995 Patent describing memory taking "approximately 51.03 gigabytes to store a 2 hour movie" but whereby compression of that movie will require "only 250

---

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

megabytes." *Id.* (quoting '995:5:20-24). The Court then "assumes" that this language imposes a requirement that the **audio/video source information** be "compressed and stored as a whole." Order, 4.

This assumption is incorrect because it improperly imposes, as a *specific limitation* on how processing is achieved in the Asserted Patents, commentary clearly intended to be a mere *general discussion* of the benefits of compression. See *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir. 1998) (finding the reading of a limitation from the specification into the claims to be improper); cf. '995:18-20 (discussing, only two lines prior to the Court's proffered support, how particular compression algorithms can reduce memory requirements by 95%).

Furthermore, the specification of the Asserted Patents refutes this incorrect assumption that data must be compressed and stored as a whole with explicit teachings evidencing the contrary. The '995 Patent describes memory having "sufficient capacity to store at least two full uncompressed frames (e.g., about 472 KB)" during the digitization process after audio and or video content has been input to the invention. '995:5:43-45. As nearly all video content exceeds two frames, a person of ordinary skill in the art would understand the specification not to limit a user to inputting the 'entire' file when performing the input digitization process and before beginning compression.

Significantly, the experts in this matter—persons of *at least* ordinary skill in the art—are in total agreement on this point. Dr. Stevenson opined during the *Markman*

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

Hearing as to "pipelining" of data wherein "differing processing steps [take place] on different portions of the data" all while "continually doing more compression and doing more inputting." Markman Day 1, 72:20-25.

Dr. Von Herzen recognized the same in his various reports and declaration. For example, in his Rebuttal Expert Report, Dr. Von Herzen noted that while "it is feasible to do the required operations in sequential order" that feasibility is contingent on "being given enough memory." Dr. Von Herzen's Opposition Expert Report (Exhibit G) at 13. But as noted by Dr. Von Herzen:

> [t]he patents at issue also describe using a small RAM 29 to hold at least two full uncompressed frames of data at a time for processing. Col. 5, Lines 46-50. The disclosed system lacks the required space in RAM 29 to store the uncompressed video frames for a program if it cannot process 30 frames/second while receiving video at that rate.

> Von Herzen Declaration, ¶ 25 (Exhibit H).

Since the Asserted Patents teach usage of a relatively small memory—RAM 29—for intermediate storage of the uncompressed video after digitization, the Asserted Patents may not be construed as to *require* the completion of each sequence-step before undertaking the next step. To impose this non-existent step-completion-step requirement and an 'entirety of the data' limitation upon **audio/video source information**, notwithstanding teachings of processing *both* an 'entirety' and *less than* an 'entirety of the data,' would represent reversible error by the Court. See *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433034 (Fed. Cir. 1988).

-18-

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction

C.    **Compression Means**

With regard to **compression means**, the Court failed to find any compression structure in the '705 Patent.  In finding a lack of structure, the Court stated that while the '705 Patent (as well as the '995 Patent) refers to "compression algorithms," "an algorithm standing alone is a mere abstraction that itself requires means for execution." Order, 6.  As such, "unless an algorithm is combined with such an execution means, it does not constitute a structure within the meaning of section 112, ¶ 6."  Order, 6.  Burst respectfully disagrees with the Court's conclusion and requests reconsideration of the same.

The requirement that there be "corresponding structure" that is "clearly link[ed] or associate[d]" with the recited function of a claim has been discussed at length by the Parties and does not appear to presently be at issue.  *B. Braun Med., Inc. v. Abbot Labs.,* 124 F.3d 1419, 1424 (Fed.Cir. 1997).  Rather, the issue is one of whether an algorithm is a sufficient structure for compression as the Court's construction clearly states an algorithm is not.  In requesting reconsideration, the critical inquiry is "whether one of skill in the art would understand the specification itself to disclose the structure." *Medical Instrumentation & Diagnostics Corp. v. Elektra AB,* 344 F.3d 1205, 1212 (Fed.Cir. 2003).  Since generic reference is all that is required in the disclosure and the specification of the Asserted Patents discloses "[v]arious algorithms" for use "in the compression process," there clearly does exist means for the compression function in

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

the '705 Patent. '705:5:11-12; see *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366

(Fed.Cir. 2003) and *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1367 (evidencing that general

references or standard components are sufficient disclosure).

The Federal Circuit's decision in *In re Dossel* further counters the Court's

conclusion that an algorithm is a mere abstraction and not the equal of compression

software. 115 F.3d 942 (Fed.Cir. 1997). The Federal Circuit, in *Dossel,* found that in the

context of determining whether the written description for the patent at issue disclosed

a computer, that while "[n]either the written description nor the claims use[d] the

magic word 'computer' . . . when the written description is combined with [the] claims"

the patent clearly intended to disclose a general or special purpose computer. *Id.* at 946-

47. The applicability of *Dossel* to the present case could not be more apt for while the

specification of the Asserted Patents never uses the 'magic word' software, the

implication of compression algorithms as compression software is evident when

reading the claims in light of the specification as "various algorithms may be employed

in the compression process." '705:5:11-12.

The patent in *Dossel* also disclosed that "known algorithms" were "known in the

art" to achieve desired computational results in the claimed computer. *Dossel,* 115 F.3d

at 946. In fact, while the written description of the patent in *Dossel* did not "disclose

*exactly* what mathematical algorithm" was being used, the *generic reference* to 'known

algorithms' was found to be an *acceptable disclosure* of "computer code that may be used

-20-

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

in the invention." *Id.* (emphasis added). But in the present Order, the Court's stated reasoning fails to reconcile why the specific algorithms of the Asserted Patents—like CCITT Group IV ('705:5:14-15), frame differencing ('705:5:17-19) and sample rate dropping ('705:5:38)—are *insufficient* as structure while statements about the existence of known algorithms were acceptable software structure in the context of *Dossel*. A minimal disclosure in *Dossel* was found to be satisfactory to the Federal Circuit Court of Appeals; Burst's far more explicit disclosure deserves equal recognition by the District Court.

The Court's Order also ignores the fact that running software on hardware was well known in the art before the filing of the '995 Patent. To require the patentee to spell out common sense knowledge to one skilled in the art would be to ignore the fact that "a patent need not teach, and preferably omits, what is well known in the art." *Hybritech v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed.Cir. 1986). Such common sense knowledge in tandem with the clear existence of structure—the compression algorithms—having been linked to the compression function and, further, discussed in the context of the apparatus of the invention clearly satisfies the disclosure, linking and specificity requirements laid out by the Federal Circuit in *Braun, S3, nVIDIA* and *Dossel*.

This disclosure and linking counters any possibility that an insufficient structure argument, like that raised in *Medical Instrumentation*, could be at issue. See, generally,

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

*Medical Instrumentation*, 344 F.3d at 1217. In *Medical Instrumentation*, the specification of the patents was found not to clearly link known software to a converting function. While the specification did refer to software programs that were "commercially available" or "within the skill of practitioners in the programming arts," those statements failed to *link* that software to the *recited function*. *Id.* Furthermore, in *Medical Instrumentation*, there was nothing in the patents to suggest the alleged *structures* actually *performed the function* of the claimed invention. *Id.* at 1217-18. Such absence of 'linking' is not at issue in the Asserted Patents.

The Asserted Patents overcome the failings cited in *Medical Instrumentation* as the Asserted Patents have done more than simply list certain structures in the specification; those structures—specific compression algorithms—have been "clearly linked to a claimed function [as] to be a corresponding structure for that function—compression." *Id.* at 1218. The disclosure of the Asserted Patents have indicated to the public that the patentee intends for a *particular structure*—software compression algorithms—to correspond to a claimed function—compression. See *id.* (reciting the need for a clear relationship between structure and function). Thus, the disclosure of the compression algorithms, linked to the compression function and apparatus, are sufficient structure for compression in the '705 Patent as set forth by the Federal Circuit.

Additionally, the specification's disclosure of the Fibonacci delta compression algorithm ('995:5:35) refutes the Court's statement that "the unavailability of software

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

in 1988 to execute the algorithms referred to in the patents supports the view that algorithms must be combined with the means to implement them." Order, 6. The Fibonacci algorithm was *clearly* embodied in software as early as *February 1985* as evidenced in the attached Electronic Arts memorandum. Exhibit J (originally submitted as Exhibit 16 to Burst's Reply Claim Construction Brief).

As the Court's exclusion of software algorithms as a compression means is, in part, based on this factual inaccuracy regarding the clear knowledge in the art as of 1988, Burst respectfully requests the Court reconsider its construction to recognize the availability of software compression algorithms at the time of filing the '995 Patent. Further, Burst requests the Court recognize the Asserted Patents' teaching of software compression algorithms as a structure linked to the corresponding compression function as to establish software compression structure in the '995 and '705 Patents.

## III.    CONCLUSION

In light of the aforementioned arguments, Burst respectfully requests the Court *clarify* its construction with regard to 'a single' transmission time period as the claims, the specification, the prosecution history and the understanding and agreement amongst the Parties and the Court all evidenced that the transmission channel and varying bandwidth allow there to be 'at least one' or 'one or more' transmission time periods.

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

Further, Burst requests the Court *reconsider* its construction with regard to the transmission time being of a 'definite duration' and that the Court strike the same.

Burst additionally requests the Court *clarify* its construction with regard to **audio/visual source information** and whether the 'continuous processing' limitation is meant to exclude the processing of a 'live feed' by the Asserted Patents. Additionally, Burst requests the court *reconsider* its construction of **audio/video source information** requiring each 'step' be completed before the beginning of the subsequent step in addition to limiting **audio/video source information** to be an 'entirety of the data' as neither the specification nor the claims, in either case, nor the Court's reasoning support the introduction of such limitations. Burst requests the Court construe **audio/video source information** to be 'the data (whether an entire program or a portion of a program) to be transmitted, not the individual frames or segments of that data.'

Finally, Burst respectfully requests the Court *reconsider* its factually inaccurate conclusion that software algorithms were not embodied in software in the 1988 time-frame in addition to its finding that compression algorithms—software—are insufficient structure for compression in the '705 Patent as the Federal Circuit Court of Appeals has clearly found to the contrary.

-24-

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction

Respectfully submitted,

SPENCER HOSIE (Ca Bar # 101777)
BRUCE J. WECKER (Ca Bar # 78530)
GEORGE BISHOP (Ca Bar # 89205)
**HOSIE, FROST, LARGE & McARTHUR**
One Market, Spear Street Tower, 22nd Floor
San Francisco, CA 94105
Telephone: 415-247-6000

ROBERT J. YORIO (Ca Bar # 93178)
V. RANDALL GARD (Ca Bar #151677)
COLBY B. SPRINGER (Ca Bar # 214868)
**CARR & FERRELL** *LLP*
2200 Geng Road
Palo Alto, CA 94303
Telephone: 650-812-3400

**March 26, 2004**                    By:    Colby B. Springer

Colby B. Springer
Attorneys for Plaintiff Burst.com, Inc.

Civil Action No JFM-02-cv-2952 (MDL Docket No. 1332)

Plaintiff Burst.com, Inc.'s Motion for Clarification and Reconsideration of
the Court's March 12, 2004 Order Concerning Claim Construction

## CERTIFICATE OF SERVICE

The undersigned attorney for Burst.com hereby certifies that on March 26, 2004,

he caused a true and correct copy of the foregoing document, *Plaintiff Burst.com., Inc.'s*

*Motion for Clarification and/or Reconsideration of the Court's March 12, 2004 Order*

*Concerning Claim Construction,* to be served by U.S. Mail upon counsel of record as

follows:

        Richard Cederoth
        John Treece
        Douglas I. Lewis
        Sidley Austin Brown & Wood LLP
        Bank One Plaza
        10 South Dearborn Street
        Chicago, Illinois  60603

        Michael F. Brockmeyer
        Piper Rudnick LLP
        6225 Smith Avenue
        Baltimore, Maryland  21209

        Spencer Hosie
        Bruce J. Wecker
        George Bishop
        Hosie, Frost, Large & McArthur
        One Market, Spear Street Tower, 22nd Floor
        San Francisco, CA 94105

COLBY B. SPRINGER