## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| IN RE MICROSOFT CORPORATION | ) | |
| ANTITRUST LITIGATION | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | MDL Docket No. 1332 |
| *Burst.com, Inc. v. Microsoft Corp.* | ) | |
| | ) | |
| | ) | |
| Civil Action No. C-02-2952 | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## MICROSOFT'S OPPOSITION TO "PLAINTIFF BURST.COM'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF THE COURT'S MARCH 12, 2004 ORDER CONCERNING CLAIM CONSTRUCTION"

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table Of Authorities ........................................................................................... ii

I.    Burst's Motion Fails to Demonstrate Any Error In The Court's Reasoned Opinion
      And Fails To Show Any Compelling Reason to Reconsider Any Aspect of the
      Court's Ruling................................................................................................ 1

      A.    Burst Wrongly Maligns the Court's Ruling That <u>An</u> Associated Time Is a
            Single, Definite Time, Known at the Moment of Time Compressing the
            Audio/Video Data. ............................................................................... 1

            1.    The Patent Law Rules Governing Claim Construction Do Not
                  Support Burst's Position. ........................................................... 2
            2.    Burst's Motion Reflects Its Continuing Attempt To Reclaim Patent
                  Scope It Surrendered In the Patent Office. ................................. 7
            3.    The Court Did Not Make Statements, And Microsoft's Counsel
                  Did Not Make Concessions, That Are Inconsistent With The
                  Court's Ruling............................................................................ 9

      B.    Burst Wrongly Asks The Court to Remove "Of Definite Duration" From
            Its Construction of "Having an Associated Burst Time Period." ........................ 11

      C.    The Court Properly Construed "Audio/Video Source Information" To
            Mean The Entirety Of The Data Being Processed................................ 14

            1.    Burst's Claims Require The "Audio/Video Source Information" To
                  Refer to the Entirety of Data Being Processed. ......................... 14
            2.    Neither the Court's Construction Nor The Claims Exclude
                  Continuous Processing of Only "Live" Data. ........................... 16

      D.    Burst Identifies No New Reasons To Find That The '705 Patent Discloses
            Any Structure Corresponding to the "Compression Means."............................... 17

II.   Burst Fails to Satisfy The Legal Standard For A Motion to Reconsider ......................... 22

Conclusion ...................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

AbTox Inc. v. Exitron Corp., 122 F.3d 1019 (Fed. Cir. 1997) ....................................2, 3, 11

Abbott Laboratories v. Baxter Pharmaceutical, 334 F.3d 1274 (Fed. Cir. 2003) ...........................................................................................................................5

B. Braun Medical, Inc. v. Abbott Laboratories, 124 F.3d 1419 (Fed. Cir. 1997) .........................................................................................................................18

Budde v. Harley-Davidson, Inc., 250 F.3d 1369 (Fed. Cir. 2001) ................................18

CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002) .......................11

In re Dossel, 115 F.3d 942 (Fed. Cir. 1997) ..........................................................18, 19, 20, 23

Hybritech v. Monoclonal Antibodies, 802 F.2d 1367 (Fed. Cir. 1986).........................21

Insituform Techs. v. Cat Contr., 99 F.3d 1098 (Fed. Cir. 1996) ....................................3

Intel Corp. v. VIA Technologies, Inc., 319 F.3d 1357 (Fed. Cir. 2003) ........................18

Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364 (Fed. Cir. 2003) .....................13

Johnson & Johnston Assocs. v. R.E. Serv. Co., 285 F.3d 1046 (Fed. Cir. 2002) ..........................................................................................................................6

McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891)..........................6

Medical Instrumentation and Diagnostics Corp. v. Elekta AB, 344 F.3d 1205 (Fed. Cir. 2003)......................................................................................18, 20, 21

Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143 (1942) ......................................7

Oak Tech., Inc. v. Int'l Trade Comm'n, 248 F.3d 1316 (Fed. Cir. 2001)........................7

S3 Inc. v. nVIDIA Corp., 259 F.3d 1364 (Fed. Cir. 2001)............................................18

Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356 (Fed. Cir. 2004) ............................12

United States v. Duke Energy Corporation, 218 F.R.D. 468 (M.D. N.C. 2003),

*quoting*, <u>Fidelity State Bank, Garden City, Kan.</u> v. <u>Oles</u>, 130 B.R. 578 (D. Kan.1991)......................................................................................................................23

<u>WMS Gaming, Inc.</u> v. <u>Int'l Game Tech.</u>, 184 F.3d 1339 (Fed. Cir. 1999) ...........................18, 19, 22

## STATUTES

Section 112, ¶ 6.........................................................................................................18, 19, 20, 21

Burst's motion seeks reconsideration largely under the banner of "clarification" for nearly every issue on which the Court failed to adopt Burst's construction of the disputed claim terms. Not surprisingly, the "clarification" sought in each instance would drastically change the meaning of the Court's construction, effectively modifying the Court's decision to provide meanings similar to those that Burst sought originally. But, as shown for each instance below, the Court properly considered the evidence and the law and produced both an accurate and workable expression of the meaning of the disputed terms and phrases. No clarification or reconsideration of these terms is necessary.

Certainly, Burst has demonstrated no compelling reason for the Court to reconsider its decision. Although ostensibly seeking reconsideration, Burst makes no effort to demonstrate that reconsideration is appropriate here. Burst never cites the standard for reconsideration or demonstrates that it meets that standard. Even though Burst asks the Court to look again at the same issues and at largely same arguments it considered before, Burst never acknowledges that reconsideration is appropriate only in limited circumstances and is not simply an opportunity to rehash the same arguments. The Court should decline Burst's request that it reconsider its March 12 claim construction order.

I.      **Burst's Motion Fails to Demonstrate Any Error In The Court's Reasoned Opinion And Fails To Show Any Compelling Reason to Reconsider Any Aspect of the Court's Ruling.**

      A.      **Burst Wrongly Maligns the Court's Ruling That <u>An</u> Associated Time Is a Single, Definite Time, Known at the Moment of Time Compressing the Audio/Video Data.**

Burst first asks the Court to "clarify" its construction of "an associated time burst time period" as a "single associated burst time period." B Mot at 3. Burst suggests that the Court committed an error of patent law in construing *an* associated time period to be a *single* time period. Burst's proposed solution would replace "a single" in the Court's construction with

"one or more" or "at least one." Burst's "clarification," however, would effect a broad

difference in meaning, achievable only if the Court effectively reverses itself. Burst presents no

reason for the Court to do so, and there is none.

1.    **The Patent Law Rules Governing Claim Construction Do Not Support Burst's Position.**

The Court did not unwittingly fall into any patent law snare in construing "an

associated" time period to mean a "single" time period. In the context of Burst's claims, and

consistent with the ordinary English meaning, "<u>an</u> associated burst time period" is a single time

period, not multiple "associated burst time period<u>s</u>."

Even the very case that Burst relies upon, *AbTox Inc. v. Exitron Corp.*, 122 F.3d

1019 (Fed. Cir. 1997), simply notes that "the article 'a'" "<u>can</u> carry the meaning of one or more"

in certain circumstances. *Abtox*, 122 F.3d at 1023 (emphasis added). But the *Abtox* court, in

construing claim language similar to that in Burst's claims, held that construing "a" to mean "one

or more" would be error and declined to do so. Instead, the court applied the normal singular

meaning to "a." *Id.* at 1024.

Rather than supporting Burst's reconsideration effort, the *Abtox* decision

demonstrates that the Court reached the proper result in its original decision. In *Abtox*, the

Federal Circuit analyzed the claim as a whole, refusing to consider the term "a" and the word it

modified, "chamber," in isolation. Looking at the claim as a whole, the court found that the

claim required a *single* "chamber" because "[r]epeatedly the claim refers to 'said chamber' as it

describes various portions of the apparatus. This term itself, 'said chamber,' reinforces the

singular nature of the chamber. ... This language clarifies that only one chamber is in question."

*Abtox*, 122 F.3d at 1024.

Similarly, the claim language at issue here shows that the Court was correct in construing "compressing … into a time compressed representation thereof having an associated burst time period" to require a single associated time period. *See e.g.*, MSBr Ex. B, '839 patent, claim 1. As in *Abtox*, the rest of the claim relies upon a known, single associated burst time period as a result of the compressing step. After assigning the "associated burst time period" to the "time compressed" data at the time of compression, the claims at issue require transmitting the "time compressed" data in "said burst time period." *See id.* This reference back to "said burst time period" indicates that a single time period is associated with the "time compressed representation." See *Abtox*, 122 F.3d at 1024; *see also Insituform Techs. v. Cat Contr.*, 99 F.3d 1098, 1105 (Fed. Cir. 1996) ("nothing in the text of claim 1 suggests the use of more than one cup. Specifically, claim 1 refers to 'a cup' and 'the cup' repeatedly, suggesting that only one cup is involved. Indeed, rather than describing the process in terms of more than one cup, claim 1 specifically describes using the same cup repeatedly."). Like the claims in *Abtox* and *Insituform*, Burst's claims use "said burst time period" to refer back to the single "associated burst time period" recited earlier in the claim, demonstrating that the claims at issue contemplate that the "associated burst time period" is a single period of time that is definite and known as soon as the compressing step is completed.

Burst also argues that the article "an" must be construed to mean "one or more" "in a claim using the transitional phrase 'comprising.'" B Mot at 3, *quoting*, *Abtox*, 122 F.3d at 1023. But there is no patent law rule that applies to the claim language in dispute. As discussed above, even in the *Abtox* case on which Burst relies, the very element at issue was one of the elements introduced with the word "comprising" – and yet the Court found that the article "a" retained its everyday singular meaning. *Abtox*, 122 F.3at 1024. More importantly, the phrase

"having an associated burst time period" is not one of the elements listed as "comprising" the claim.

Burst's argument misapplies the claim construction principles relating to the term "comprising." It has long been held that one cannot avoid infringing a claim that introduces a list of elements with the word "comprising" by adding elements to the accused product, so long as all the recited elements are present. That is, "comprising" claims that list elements A, B, and C are not avoided by a combination of elements A, B, C and D, because A, B, and C are logically present in the set of A, B, C and D. Similarly, A, B, and C are present in the set of A, B, C, and B – the second B does not change the fact that A, B, and C are present. Thus, if the named elements are arranged and interconnected as the entire claim language requires, infringement is not avoided by adding or duplicating elements.

The issue here, however, is a definitional dispute. Or, in the context of the foregoing example, what does element A mean? Specifically, what does the recited "compression means" or the recited "compressing" step mean?

This is so because Burst's claims do not include the term "associated burst time period" as part of an open ended list. The "associated burst time period" is not one of the elements "comprising" the claimed methods and apparatuses. Instead, the "associated burst time period" is a required characteristic of one of those elements – the "compressing" step/"compression means."[1] The claims describe the "associated burst time period" as a feature that the "time compressed representation" "ha[s]" after the "audio/video source information" is compressed into that "representation." Thus, the compressing step can only be satisfied when this "having an associated burst time period" characteristic is present.

4

It is inappropriate for a limiting characteristic of a particular claim element to receive the open-ended treatment given to elements listed as "comprising" the claimed method or apparatus. In *Abbott Laboratories v. Baxter Pharmaceutical*, 334 F.3d 1274, 1281 (Fed. Cir. 2003), for example, the Federal Circuit refused to read as open-ended an element within a "consisting of" grouping even though that grouping was one element in a claim using the term "comprising."[2] Instead, the Court analyzed the claim language to hold that only a single member of the claimed group could be present. *Id.* at 1280-81.[3] Thus, the term "comprising" anywhere in a claim does not automatically make every element of the claim an open-ended list, as Burst asserts.

Just as the claims in *Abbott* used the term "consisting of" to describe the characteristics of a claim element introduced with the term "comprising," Burst's claims use the term "having," not "comprising," to describe the relationship between the "time compressed representation" and the "associated burst time period." Burst's claims also describe the "associated burst time period" as resulting from "compressing the received audio/video source information <u>into</u> a time compressed representation thereof." Such a relationship is not open-

---

[1] Rather, "comprising" refers to the listed "receiving," "compressing," "storing," and "transmitting" steps, for example, in claim 1 of the '839 patent.

[2] The *Abbott* case involved the two claims, claim 1: "An anesthetic composition <u>comprising</u>: a quantity of sevoflurane; and a Lewis acid inhibitor in an amount effective to prevent degradation by a Lewis acid of said quantity of sevoflurane, said Lewis acid inhibitor selected from the group <u>consisting of</u> water, butylated hydroxytoluene, methylparaben, propylparaben, propofol, and thymol," and claim 6: "A method of preventing degradation by a Lewis acid of a quantity of sevoflurane, the method <u>comprising</u> the steps of: providing a quantity of sevoflurane; providing a Lewis acid inhibitor in an amount sufficient to prevent degradation by a Lewis acid of said quantity of sevoflurane, said Lewis acid inhibitor selected from the group <u>consisting of</u> water, butylated hydroxytoluene, methylparaben, propylparaben, propofol, and thymol; combining said quantity of sevoflurane and the Lewis acid inhibitor in an amount sufficient to prevent the degradation by a Lewis acid of said quantity of sevoflurane." *Abbott*, 334 F.3d at 1276.

[3] The claims at issue in Abbott involved a *Markush* grouping introduced with the "consisting of" phrase. *Abbott*, 334 F.3d at 1280-81.

ended – it is a description of the required characteristic of the "compressing" element – and there is no grammatical or technical reason to include "one or more" "associated burst time period[s]." And this relationship by its very language requires a single burst time period – "an associated burst time period," not "time periods."

Moreover, in the face of this express claim language, Burst's proposed construction of the term "having an associated burst time period" to mean "one or more" or "at least one" "associated burst time period" vitiates the difference between the phrase "having an associated burst time period" and the phrase "capable of being transmitted in a burst transmission time period," which appears in claims 1 and 6 of the '705 patent.[4]  Burst's proposed construction seeks to read "having an associated burst time period" to require little more than eventually transmitting content in one or more – *i.e.*, any number of – times that are less than its viewing time, making the phrase mean little more than "capable of being transmitting in a burst transmission time period."

In an apparent effort to avoid analyzing the claim language it ostensibly seeks to construe, Burst instead seeks refuge in its own specification. B Mot at 5.  But, claim construction construes the patent claims, not the specification.  As discussed in a different context in Microsoft's Reply Brief (at 8), the claims, not the specification, define Burst's property right.  *See McClain v. Ortmayer*, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800 (1891) ("The claim is the measure of his right to relief, and, while the specification may be referred to limit the claim, it can never be made available to expand it."); *see also Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*citing McClain*).  "[I]t is these claims, not the specifications, that afford the measure of the grant to the patentee.  'Out of all the

possible permutations of elements which can be made from the specifications, he reserves for himself only those contained in the claims.'" *Milcor Steel Co. v. George A. Fuller Co.*, 316 U.S. 143, 145-46 (1942); *see also Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1329 (Fed. Cir. 2001) ("More importantly, even if such a disclosure existed, these embodiments would not be covered by the language selected by the claim drafter. In Oak's own words: 'Specifications teach. Claims claim.'").  Simply put, the Patent Office does not analyze whether the specification describes what others have already invented; specifications almost invariably do.  Instead, the Patent Office analyzes whether the <u>claims</u> describe a new invention.  For that reason, even if Burst could show that its specification is broader than the Court's claim construction, the point is irrelevant.[5]

### 2.  Burst's Motion Reflects Its Continuing Attempt To Reclaim Patent Scope It Surrendered In the Patent Office.

Burst's motion again asks the Court to construe the phrase "having an associated burst time period" so broadly as to effectively remove it from the claim.  This proposed construction, however, has been previously rejected not only by the Court in its original decision, but by the Patent Office when Burst sought claims that did not require that the time compressed representation "hav[e] an associated burst time period."

As the Court may recall from the claim construction hearing, Burst first sought apparatus claims that required little more than compressing and transmitting faster than the play rate of the video data.  *See* MSBr. Ex. H; February 27, 2004 Hearing Trans. at 38-39.  The Patent

---

[4] Claim 12 of the '705 patent also requires "an associated burst transmission time period," although the other independent claims in that patent do not require such an "associated" time.

[5] As discussed above, some of Burst's claims require only that the "time compressed representation" be "capable of" transmission in a "burst time period" – *i.e.*, faster than its view time.  For at least this reason, even if the specification supported Burst's view of the technology, it does not mandate that all of the patent claims are as broad as Burst asserts.

Office rejected those claims over the prior art, and Burst was forced to amend its claims, by

adding, *inter alia*, the limitation that the time compressed representation "hav[e] an associated

burst time period." Burst's '995 and '839 patents both issued with the "having an associated

burst time period" limitation present in all their claims.

Thereafter, in later prosecution ultimately leading to the '705 patent, Burst again

sought very broad claims without the "associated burst time period" limitation. For example, in

September, 1993, Burst proposed the following claim, shown for comparison next to claim 1 of

the '839 patent:

| Burst Proposed Claim | '839 patent, Claim 1 |
|---|---|
| 114.  A method for handling audio/video source information, the method comprising: | 1. A method for handling audio/video source information, the method comprising: |
| receiving audio/video source information; | receiving audio/video source information; |
| compressing the received audio/video source information into a time compressed representation thereof; | compressing the received audio/video source information into a time compressed representation thereof <u>having an associated burst time period that is shorter than a time period associated with a real time representation of the received audio/video source information;</u> |
| storing the time compressed representation of said audio/video source information; and | storing said time compressed representation of the received audio/video source information; and |
| serially transmitting said stored time compressed representation of said audio/video in a burst time period that is shorter than a time period associated with real time viewing of said audio/video source information. | transmitting, in said burst time period, the stored time compressed representation of the received audio/video source information to a selected destination. |

Ex. CC, Amendment A (September 1993) at 2-3; MSBr Ex. B,'839 patent, claim 1 (emphasis

added). In this proposed claim, the compressing step lacks the relationship between the "time

compressed representation" and the "burst time period," with no "having an associated burst time period" present in the proposed claim 114. Other than this missing element, Burst's proposed claim 114 is nearly identical to claim 1 of the '839 patent, which is one of the claims being construed here. The Patent Office rejected this proposed claim 114 over the prior art. Burst then gave up seeking such broad coverage. Thus, although Burst now impermissibly seeks effectively to remove the "having an associated burst time period" limitation through its proposed construction, the Patent Office expressly refused to grant Burst such a broad claim. Accordingly, the Court should not reconsider its prior decision not to retroactively grant Burst such broad claim scope.[6]

### 3. The Court Did Not Make Statements, And Microsoft's Counsel Did Not Make Concessions, That Are Inconsistent With The Court's Ruling.

In large part quoting its own statements to the Court (B Mot 5-8), Burst argues that "[t]he Parties and the Court explicitly recognized and agreed, during the Markman hearing, as to the role the transmission channel and bandwidth play in transmission time." B Mot. at 5-6. There is no question that the transmission channel's bandwidth is directly proportional to the transmission time, making a particularly-sized content's transmission time mathematically calculable when the bandwidth is known. But neither the Court nor Microsoft's counsel ever agreed with Burst's premise that the claimed "associated burst time period" could be "one or more" time periods.

Burst cites the Court and Microsoft's counsel, asserting that each agreed with its construction at the Markman hearing. B Mot. at 9-10. In reproducing the Court's words, Burst has removed, and replaced with ellipses, the portions that show the Court was discussing the

---

[6] Although claims 1 and 6 of the '705 patent lack the "associated burst time period," they contain numerous other limitations.

Haskell patent and whether a predetermined time period was necessary for a time compressed representation. The full text, with the portions removed by Burst underlined, reads as follows:

> You have to compress it. And that's what this is all about. You have to compress it. I mean, that's the idea, that you're compressing. That's what makes it good.
>
> It's not like you know it's going to be, you don't care whether it's 20 minutes, you don't care whether it's 22 minutes. <u>For Haskell you got to care about that.</u> For this you don't have to care whether it's 19 minutes or 21 minutes.
>
> <u>So it's not a predetermined time slot like was necessary in Haskell.</u> It is just that in order to fulfill the patent, you have to know, by virtue of whatever you're using. If you're using a telephone, it may not work. That's what the patent says. But if you're using fiberoptic cable or you're using something else, then you know when you make the representation that it's going to be shorter than 30 minutes.

February 27, 2004 Hearing Trans. at 154:11-24 (emphasis added). The Court's statement portends its ultimate rejection of Microsoft's arguments about the Haskell patent and "time compressed representation." Burst stretches credulity to suggest that this statement is inconsistent with the Court's ruling on "having an associating burst time period."

Similarly, Microsoft's counsel's statement, cited by Burst, is not inconsistent with the Court's ruling or Microsoft's arguments that "an associated burst time period" requires a single time period. B Mot. at 9-10. To the contrary, the statement Burst quotes explains that knowing the bandwidth and the amount of compression allows calculating the transmission time ("you can do the math"). A known bandwidth and known amount of compression yields exactly <u>one</u> transmission time – *e.g.*, at 100 kilobits per second of bandwidth, a 100 kilobit compressed file takes exactly 1 second to transmit. Burst also edited out Mr. Cederoth's statement that "[b]ut if the bandwidth is undetermnate [sic], then you haven't completed this step" – *i.e.*, if the bandwidth actually used to transmit the file is unknown, one cannot know the single associated

burst time period and the claim element cannot be met. February 27, 2004 Hearing Trans. at 155:6-7. Moreover, Microsoft argued consistently both in its briefs (MSBr at 31; MSResp at 5) and at the hearing that an "associated burst time period" is a single time period. As required by the "associated burst time period," Burst's claims require knowing the transmission bandwidth and the size of the content to be transmitting and therefore require knowing, when that content is compressed, the <u>single</u> transmission time.

* * *

In sum, Burst has presented no reason for the Court to reconsider its ruling. Certainly, it has raised no new arguments. Burst even cited in its Opening Brief the very case that it now claims the Court should use to change its ruling – *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997). *See* B Opening Br. at 2, 21. And Microsoft discussed this very issue in both its claim construction briefs. *See* MSBr at 31; MSResp at 5. This issue has been argued and decided, and Burst offers no compelling reason to re-open the process – whether under the label of clarification or reconsideration.

**B.    Burst Wrongly Asks The Court to Remove "Of Definite Duration" From Its Construction of "Having an Associated Burst Time Period."**

Bursts asks the Court to strike from its construction of "having an associated burst time period" the requirement that the "associated burst time period" be "of definite duration" because such a construction is allegedly "improper." B Mot at 10. Burst, however, never explains why "of definite duration" is wrong – instead it just generally complains that such a construction is "nowhere in the claims, the specification or the prosecution history of the Asserted Patents." B Mot at 11.[7]

---

[7] Burst cites *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) in support. B Mot at 11. This case identifies circumstances in which a court may "narrow a claim term's ordinary meaning." *CCS Fitness*, 288 F.3d at 1366. Unlike *CCS Fitness*, the dispute here

Although Burst complains at length that the Court has "added" the "definite duration" language, Burst can hardly be surprised that the Court did not simply repeat the precise claim language in its construction. Claim construction is not a word-counting exercise. To be at all useful, a claim construction must explain the scope of the claim in terms the jury can understand and in a way that resolves the parties' disputes over claim scope. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("the district court normally will need to provide the jury in a patent case with instructions adequate to ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims."). As a result, a court's claim construction nearly always requires using different words than those used in the claims.

The Court's construction follows directly from the ordinary meaning of the claim language. Burst's claims require "<u>compressing</u> the received audio/video source information <u>into</u> a time compressed representation thereof <u>having</u> an associated burst time period." The express claim language thus requires the "associated burst time period" be known and assigned as part of the compression, as the Court's construction reflects. Further, as a matter of logic, the "associated burst time period" must be "of definite duration," as the Court's construction also reflects. That is, the "burst time period" exists when the compression is complete, and it has a finite quality to it at that time. The Court correctly rejected Burst's argument that the "associated

---

is over the ordinary meaning of Burst's claims – *i.e.*, the claim language requires "an associated burst time period" of definite duration because it requires that time period to be known upon compression. As such, no exceptions to the ordinary meaning rule apply here nor, other than this citation, does Burst appears to be arguing for such an exception.

burst time period" could be undefined and unknown at the time of compression. There is no reason to revisit that conclusion.[8]

By tracking the claim language, the Court accurately captured the clear import of that language: the burst time period is a definite measure of the transmission time, which exists as of the compressing step. First, by using the term "of definite duration," the Court captured for the jury the concept, required by the claims, that the "associated burst time period" must be a finite measurement of the transmission time, known at the time the "time compressed representation" is created. Second, the Court's construction resolved the dispute between the parties on a well-defined and fully briefed issue. In effect, Burst is simply re-arguing its failed position that the "associated burst time period" does not have to be assigned when the "audio/video source information" is compressed. Although Burst argued in its briefs and at the hearing that the "associated burst time period" could be whatever time it eventually took to transmit the "time compressed data," the Court's construction properly excludes that possibility by stating clearly that the "associated burst time period" need be "of definite duration" known, as claimed, upon compression when the "time compressed representation" is created. There is no need to reconsider the construction.

---

[8] Burst cites *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364 (Fed. Cir. 2003) to "question[] where in the claim language a 'definite duration' limitation could be extrapolated in accordance with ordinary, normal usage." B Mot at 11. Per *Invitrogen*, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of invention." *Invitrogen* at 1367. As explained above, the "normal usage" of "compressing the received audio/video source information into a time compressed representation thereof having an associated burst time period" requires that the "associated burst time period" be known upon compression and therefore be of "definite duration."

C.   **The Court Properly Construed "Audio/Video Source Information" To Mean The Entirety Of The Data Being Processed.**

1.   **Burst's Claims Require The "Audio/Video Source Information" To Refer to the Entirety of Data Being Processed.**

Burst asks the Court to reconsider its construction of "audio/video source information" to require "the entirety of the data (whether an entire program or a portion of a program) intended to be transmitted, not the individual frames or segments of that data."  Order at 3.  Burst asserts that this construction lacks "an adequate basis … and that no such adequate basis exits."  B Mot at 13.

Instead, Burst asks the Court to construe "audio/video source information" as:

the data (whether an entire program or a portion of a program) to be transmitted, not the individual frames or segments of that data.

B Mot at 13.  In addition to the substantive reasons to reject this proposed construction discussed below, Burst's proposed construction should be rejected because it is internally inconsistent and provides the jury unworkable guidelines under which to decide the infringement issue.  Under this proposed construction, Burst would not limit the "data" to the "entirety of the data," and yet Burst simultaneously admits that processing "segments of that data" falls outside of its claims.  It is not clear how one can process less than the "entirety of the data" yet still not process only "segments of that data," and why one should be within Burst's claims and the other outside.  Certainly, Burst's proposed construction would leave the jury rudderless.

Substantively, Burst's proffered construction, like the construction it sought in its briefs and at the hearing, is inconsistent with the claim language.  As discussed in Microsoft's briefs, each claim element describes performing further processing on the result of the prior step.  MSBr at 51-52; MSResp at 30-33.  Thus, the steps must be performed in sequential order and the claims, by their very language, must process the "audio/video source information" in its entirety.

14

For example, claim 1 of the '839 patent requires "receiving audio/video source information," "compressing the received audio/video source information" into a "time compressed representation, "storing said time compressed representation of the received audio/video source information," and "transmitting, in said burst time period, the stored time compressed representation of the received audio/video source information." Thus, each step explicitly refers to the result of the previous step, and it makes no sense to suggest performing any step until the complete result of the previous step is available. Moreover, each step refers back to the product of all previous steps, by, for example, referring back to the "received audio/video source information."

Directly in tension with this language, Burst's proposed construction covers processing less than the "received" audio/video source information because it would extend its claims to reach processing less than the "entirety of the data" received by the claimed apparatus/method. Similarly, Burst's proposed interpretation contradicts the claim language in that it covers "storing" less than the entire (or "said") "time compressed representation" and "transmitting" less than the entire "stored time compressed representation." As the Court noted, its construction is mandated by the claim language itself. Order at 3.

Although the Court correctly noted that Burst agreed with the Court's construction when seeking its patents (Order at 3-4), Burst now improperly repudiates its earlier position. In so doing, Burst makes the demonstratively false statement that its arguments to the Patent Office "were not made for the purpose of distinguishing a particular claim from the prior art. Burst, instead, made these statements in the context of providing a general basic summary of steps as they pertain to the invention as a whole." B Mot at 16. The record shows Burst is wrong. In Amendment A of its '995 patent file history, Burst discussed each group of pending

15

claims and in doing so described the steps in the order they are to be performed and used the term "then" to describe the transition from step to step in performing the claimed process. MSBr Ex. S, Amendment A at 18-19. Next, Burst referred back to the prior explanation, identifying "these important features of applicant's claimed invention" (emphasis added), and used the same terminology to describe its claims again. *Id.* at 19-20. Finally, after making these statements, Burst argued that "[i]n view of the foregoing remarks, it is respectfully submitted that applicant's new claims 33-112 [which issued as the claims of the '995 patent] are patentable over all of the cited references, taken alone or in combination." *Id.* at 20 (emphasis added). Contrary to Burst's statement, this amendment discusses the claims throughout, and with the stated intention of securing allowance over the prior art.

Finally, Burst argues that the specification would support a broader construction. B Mot at 16-18. Even if this argument was true, it is irrelevant. As discussed above, the claims, not the specification, define Burst's patent rights. *See supra* at 6. The Court properly construed the claims based on their language and Burst's description of them in the Patent Office. There is no reason to revisit that construction.

>    2.    **Neither the Court's Construction Nor The Claims Exclude Continuous Processing of Only "Live" Data.**

Burst asks the Court to "confirm" a reading of the Court's construction of the "audio/video source information" at odds with the Court's language and the claim language. The Court found that "the claims do not cover continuous processing and transmission of data." Order at 3. Burst tries to rewrite this construction to exclude only "live" content from its claims and thus include "continuous processing and transmission of [non-live] data." B Mot at 12. However, neither the Court's construction nor the claims support any such distinction. Further, Burst never mentioned this supposed distinction in its briefs or at the hearing.

As the Court recognized, the claims require "receiving, compressing, storing, and transmitting. Each step must be accomplished before the other begins." Order at 3. It does not matter whether the content – *i.e.*, the "audio/video source information" – is live or non-live (*i.e.*, recorded).[9] The claims, by their very language, exclude continuous processing of <u>any</u> data. Nowhere do the claims (or elsewhere) limit the claimed "receiving" feature, for example, to either "non-live" or "live" data. Rather, data can be "received" from any source – videotape, CD, etc. Similarly, the other claimed steps process "received" source data whether from a "live feed" or a recorded source.

For all the reasons the Court has previously analyzed and as explained above, there is no reason for the Court to modify its current construction of "audio/video source information." There is certainly no reason to limit its finding that "the claims do not cover continuous processing and transmission of data" to a "live feed."

D.   **Burst Identifies No New Reasons To Find That The '705 Patent Discloses Any Structure Corresponding to the "Compression Means."**

In its motion, Burst offers nothing new with regard to the Court's finding that the '705 patent lacks any structure corresponding to the "compression means." Instead, Burst asks the Court to look again at the same arguments that the Court previously considered and rightly rejected – (1) that an algorithm can be corresponding structure and (2) that a means plus function element can correspond not just to structure the specification clearly links to the function but also to other structures known to one of skill in the art. The Court's review of Burst's arguments should yield the same result as last time: the '705 patent lacks any structure corresponding to the "compression means."

---

[9] Even this distinction is meaningless. How would Burst classify the now-famous five second delay in live television? Does a delay render the content no longer "live"?

Burst again asks the Court to find an algorithm to be corresponding structure. B Mot at 19. Burst argues that "[s]ince generic reference is all that is required in the disclosure and the specification of the Asserted Patents discloses '[v]arious algorithms' for use 'in the compression process,' there clearly does exist means for the compression function in the '705 patent," citing *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003), and *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001). B Mot at 19-20. These cases, however, do not stand for this proposition because neither involved the bare disclosure of an algorithm, instead involving disputes over whether the structure disclosed was sufficiently specific. *Intel*, 319 F.3d at 1366 (finding "core logic" – *i.e.*, hardware – to be corresponding structure); *S3 Inc.*, 259 F.3d at 1367 (finding a "selector" to be corresponding structure in view of "uncontradicted evidence" that "a selector is of well known electronic structure and performs a common electronic function, and is readily implemented from the description in the specification"). The '705 patent, on the other hand, discloses an algorithm standing alone without disclosing any structure to perform it. As the Court correctly found, an algorithm alone cannot be the structure corresponding to a means element. Order at 6; *see WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999).

Burst now relies heavily on *In re Dossel*, 115 F.3d 942 (Fed. Cir. 1997), a case cited in many of the cases both parties discussed previously.[10] Burst argues that *Dossel* makes a bare disclosure of an algorithm sufficient to satisfy Section 112, ¶ 6, thereby relieving Burst of

---

[10] Although Burst now relies heavily on *Dossel*, it must have been aware of that case during the briefing and hearing because it is cited in several of the cases discussed therein, including *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1217 (Fed. Cir. 2003), *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003), *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001), *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1425 (Fed. Cir. 1997). At that time, however, Burst did not deem *Dossel* important enough to cite or discuss.

its responsibility to disclose structure corresponding to the "compression means" as part of the bargain struck by Section 112, ¶ 6.  B Mot at 20-21; *see* MSResp at 16-18.

Burst simply gets *Dossel* wrong.  In the *Dossel* decision, the Federal Circuit held that the "reconstruction means" in Dossel's claims had corresponding structure in Dossel's specification.  *Dossel*, 115 F.3d at 946-47.  Looking at the specification at issue, which published in U.S. Patent 5,794,620 (attached as Exhibit DD hereto),[11] shows that although the specification may not have used the term "computer," it did describe the function of this means element as being performed by a "reconstruction computing unit 11."  Ex. DD, col. 4, line 12.[12]  Moreover, although the Federal Circuit noted that "[w]hile the written description does not disclose exactly what mathematical algorithm will be used to compute the end result, it does state that 'known algorithms' can be used to solve standard equations which are known in the art," *Dossel*, 115 F.3d at 946, Dossel did disclose, in general terms, a specific algorithm (*see* col. 4, lines 18-54), albeit not the algorithm to compute the underlying mathematics.  With the inputs, the outputs, and processing so defined, one of skill in the art could write the necessary software for the "reconstruction computing unit."

Thus, neither the language of the decision, nor the underlying facts of *Dossel*, support Burst's position that a generic reference to an algorithm is sufficient structure under Section 112, ¶ 6.  Rather, the effect of *Dossel* is that the term "computing unit" refers to a computer and that a computer, running the appropriate algorithm, was the corresponding structure.  Burst's proposition to the Court may thus be clearly answered.  According to Burst,

---

[11] The '620 patent does not have means plus function claims but indicates that it is a continuation of the application at issue in *Dossel*, Serial No. 543,600, which was abandoned.  *See Dossel*, 115 F.3d at 942.  By definition, a continuation has an substantively identical specification as its parent.

"the Court's stated reasoning fails to reconcile why the specific algorithms of the Asserted Patents ... are insufficient as structure while the statements about the existence of known algorithms were acceptable software structure in the context of Dossel." B Mot at 21. The answer, simply put, is that Dossel disclosed a "computing unit" to perform the algorithm. Dossel's application therefore had sufficient corresponding structure.

Burst's '705 patent specification, on the other hand, lacks any such disclosure of a "computing unit." Rather, the '705 patent mentions certain compression algorithms but never identifies <u>any</u> structure to perform those algorithms. As explained in Microsoft's briefs and above, algorithms alone are not sufficient to be corresponding structure under Section 112, ¶ 6. MSResp at 23; Order at 6. *Dossel* holds no differently.

In addition to again asking the Court to find that an algorithm alone is corresponding structure, Burst again asks the Court to find that structure that is not "clearly linked" to the function in the specification can be corresponding structure. *See Med. Instrumentation*, 344 F.3d at 1211 ("The duty of a patentee to clearly link or associate structure with the claimed function is the quid pro quo for allowing the patentee to express the claim in terms of function under section 112, paragraph 6."). Burst argues that "[t]he Court's Order also ignores the fact that running software on hardware was well known in the art before the filing of the '995 patent." B Mot at 21. Burst thus asks the Court to find that, even though its '705 patent specification never identifies performing the identified algorithms in software and even though it was impossible at the time for software to do so,[13] its claims nevertheless reach software.

---

[12] Note that *In re Dossel* predates *WMS Gaming* and did not focus on what the corresponding structure would be or whether the disclosed algorithm would be part of that structure.

[13] *See* Order at 6 n. 6.

In making this argument, Burst ignores the fundamental principle that a means plus function element does not include all structure one of skill in the art would know <u>could</u> perform the function. *Med. Instrumentation*, 344 F.3d at 1212. A patent applicant who invokes Section 112, ¶ 6 must disclose the structures then known in the art that are to perform the claimed function. The only structure corresponding to a means plus function element is that structure disclosed as performing the claimed function in the specification. *Id.* Such elements do not include other structure known to one of skill in the art that are not disclosed in the specification as performing that function. *Id.*[14]

Burst also ignores the evidence that the system described in the patent would not work using software compression. The Court found, consistent with the evidence, that in 1988 software compression would have not been able to compress at the rate required by the disclosed system. Order at 6 n. 6. Logically, a structure that could not have performed the claimed function in the disclosure cannot be corresponding structure.

Finally, Burst alleges that the "Fibonacci algorithm" could have been performed in software in 1988. B Mot at 22-23. This argument ignores that, like the AMD 7971, Burst <u>removed</u> the reference to the Fibonacci algorithm when it filed the application that became the '705 patent. *Compare* MSBr Ex. A, '995 patent, col. 5, lines 33-35; MSBr Ex. B, '705 patent, col. 5, line 40. The '705 patent therefore does <u>not</u> disclose this algorithm. Moreover, Burst ignores that even in the '995 patent (1) the specification never describes this algorithm being

---

[14] Indeed, Burst ignores law relating to Section 112, ¶ 6 with its citation to *Hybritech v. Monoclonal Antibodies*, 802 F.2d 1367 (Fed. Cir. 1986). B Mot at 21. As an initial matter, Burst quotes a portion of this case discussing a rule relating to enablement, not determining corresponding structure under Section 112, ¶ 6. *Id.* at 1384. Moreover, *Hybritech* did not involve a means plus function claim element and is inapposite to determining corresponding structure. The evidence here is that the '705 patent simply lacks any structure for performing the

performed in software, and (2) the '705 patent expressly claims compressing <u>video</u> data and the '995 patent specification describes the Fibonacci algorithm as applying to audio only (MSBr Ex. A, '995 patent, col. 5, lines 28-35), a fact Burst reaffirmed at the hearing (February 26, 2004 Hearing Trans. at 34:21-22, Ex. EE, Dr. Stevenson presentation at 26). The disclosure of the Fibonacci algorithm does not make software corresponding structure. Moreover, even if the '705 patent had disclosed using software to perform the Fibonacci algorithm, the holding of *WMS Gaming* would make the corresponding structure software performing the Fibonacci algorithm, not software or a computer generally. *See WMS Gaming*, 184 F.3d at 1349.

In sum, Burst has not shown any mistake, error, or misunderstanding. Burst just wants the Court to reevaluate the same information and come to a different decision. Burst's motion should be denied.

## II. Burst Fails to Satisfy The Legal Standard For A Motion to Reconsider

Burst's motion asks the Court to reconsider its March 12, 2004 claim construction but fails to show that it meets the standard for such a motion. As the Court can appreciate, motions for reconsideration – whether styled as motions for clarification or otherwise – traditionally require the movant to meet a higher standard of proof for the simple reason that otherwise any party could endlessly prolong proceedings by merely rehashing the same arguments or offering arguments that it chose not to make in the initial proceeding. As Burst's entire motion is simply a rehash of the same arguments it made previously, it is not surprising that Burst fails to identify the standard or to acknowledge that a motion to reconsider is decided under a stricter standard than the original ruling.

---

disclosed compression algorithms. *See* MSBr Ex. E, Stevenson Dep. at 236; MSBr Ex. D, Von Herzen Decl., ¶ 39; MSBr Ex. F, Lang Dep. 130-31.

Although granting a motion to reconsider is subject to the Court's discretion, "[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *United States v. Duke Energy Corporation*, 218 F.R.D. 468, 474 (M.D. N.C. 2003), *quoting*, *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578 (D. Kan.1991). That is not the case here.

Burst's motion totally ignores this standard. Burst never shows that the Court "has obviously misapprehended a party's position or the facts or applicable law." To the contrary, Burst seems to acknowledge that the Court understood its positions. The Court also clearly understood the law, and Burst never argues otherwise.[15] "Nor is mere disagreement over the Court's legal analysis sufficient for reconsideration." *Duke Energy Corporation*, 218 F.R.D. at 474. Similarly, Burst offers no new evidence, nor does it identity any "mistake, inadvertence, surprise, or excusable neglect."

Burst just wants another chance to argue its positions with hopes for a different decision, merely asking the Court to rethink its prior ruling. In fact, Burst literally repeats the same arguments it made at the claim construction hearing – often by quoting its own lawyers. *See e.g.*, B Mot at 6-8. Such efforts are seldom productive, though they do consume time and resources. *Duke Energy Corporation*, 218 F.R.D. at 474 ("[a]n improper use of the motion to reconsider 'can waste judicial resources and obstruct the efficient administration of justice.'").

Burst has failed to satisfy, or even to acknowledge, the high standard for a motion to reconsider. The Court should deny Burst's motion for this reason as well.

---

[15] Burst does offer one additional case, *In re Dossel*, but Burst's failure to cite this case earlier is not sufficient to support its motion to reconsider. And even this case was cited in the cases Burst

## CONCLUSION

Despite additional pages of arguments, Burst has not shown that the Court's March 12 claim construction ruling was flawed in any manner. Its motion to reconsider should be denied.

Dated: April 14, 2004

Respectfully submitted,

Michael F. Brockmeyer
(Fed. Bar No. 02307)
Jeffrey D. Herschman
(Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-4115

Philip L. Graham, Jr.
David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
C. Andrew Culbert
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Karen A. Popp (D.Md. No. 26145)
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, DC 20005

Charles W. Douglas
Richard A. Cederoth
John W. Treece
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Microsoft Corporation*

---

and Microsoft cited in their respective briefs. Moreover, as also discussed below, this case does not help Burst. *See supra* at 74.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

*Burst.com, Inc. v. Microsoft Corp.*
Civil Action No. JFM 02-2952

:
:
:
:
:
:
:
:
:
:

MDL Docket No. 1332
Hon. J. Frederick Motz

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2004 a true and correct copy of:

(1)    Microsoft's Opposition to "Plaintiff Burst.com's Motion for Clarification and/or Reconsideration of the Court's March 12, 2004 Order Concerning Claim Construction" was sent by overnight delivery to the following:

Spencer Hosie
Bruce J. Wecker
George Bishop
Hosie, Frost, Large & McArthur
One Market, Spear Street Tower, 22nd Floor
San Francisco, CA 94105

Robert J. Yorio
Colby B. Springer
Carr & Ferrell LLP
2200 Geng Road
Palo Alto, CA 94303

Michael F. Brockmeyer

Date:  April 14, 2004

Of Counsel:
Philip L. Graham, Jr.
David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
C. Andrew Culbert
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington  98052
Telephone:  (425) 936-8080

Michael F. Brockmeyer
(Federal Bar No. 02307)
Jeffrey D. Herschman
(Federal Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209
Telephone:     (410) 580-3000

Karen A. Popp (D.Md. No. 26145)
SIDLEY AUSTIN BROWN & WOOD
1501 K Street, N.W.
Washington, DC  20005

Charles W. Douglas
Richard A. Cederoth
John W. Treece
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois  60603

*Attorneys for Microsoft Corporation*