# EXHIBIT 2

5/22

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Class Action

-------------------------------------------------

DANIEL GORDON, MICHAEL STOLEE, )
VOCAL SIGNS, INC., DAVID )
ELLINGSON, KARI A. WALLACE, )
RECLAIM CENTER, INC., Individually )
and On Behalf of All Others Similarly )
Situated, )
)
                  Plaintiffs, )
      v. )
)
MICROSOFT CORPORATION, )
)
                  Defendant. )
)

-------------------------------------------------

Case No. MC 00-005994
The Honorable Bruce A. Peterson

**MICROSOFT'S MEMORANDUM
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
APPLICATION OF COLLATERAL
ESTOPPEL AGAINST
MICROSOFT**

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................3

      A.    The Government Case.................................................................3

      B.    The MDL Litigation in Baltimore.............................................5

ARGUMENT .....................................................................................................7

I.     Minnesota Antitrust Law Does Not Permit the Application of
Collateral Estoppel to the Government Case Judgment. .........................10

II.    Plaintiffs Have Not Demonstrated That All 377 Findings at Issue
in Their Motion Were "Necessary and Essential" to the
Government Case Judgment. ...................................................................11

      A.    Plaintiffs' Attempt To Show That Specific Findings Satisfy
the "Necessary and Essential" Requirement Fails. ...................12

      B.    At Least 111 of the Findings for Which Plaintiffs Seek
Preclusion Were Not Necessary and Essential to the
Government Case Judgment. ...................................................16

III.   Plaintiffs Cannot Accord Preclusive Effect to Snippets of Text
from the D.C. Circuit's Opinion. ...........................................................23

IV.   The Application of Collateral Estoppel Would Be Unfair to
Microsoft.................................................................................................28

      A.    Plaintiffs Should Not Be Permitted to "Cherry Pick"
Favorable Findings from the Government Case. ......................28

      B.    The Application of Collateral Estoppel Would Cause Juror
Confusion and Distort the Resolution of Closely Related
Issues.......................................................................................29

      C.    The Application of Collateral Estoppel Would Not Promote
Judicial Economy or Efficiency...............................................32

      D.    The Appearance of Partiality Created by the Trial Judge's
Misconduct in the Government Case Creates Too Great a
Risk of Unfairness to Permit Collateral Estoppel. ..................32

CONCLUSION..................................................................................................35

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bogenholm* v. *House,*
    388 N.W.2d 402 (Minn. Ct. App. 1986).................................................29

*Democratic Cent. Comm.* v. *Washington Metro. Area Transit Comm'n,*
    842 F.2d 402 (D.C. Cir. 1988),
    *cert. denied,* 488 U.S. 1043, *and* 489 U.S. 1019 (1989).................................9

*Dracos* v. *Hellenic Lines Ltd.,*
    705 F.2d 1392 (4th Cir. 1983), *cert. denied,* 474 U.S. 945 (1985).............................30

*Ellis* v. *Minneapolis Comm'n on Civil Rights,*
    319 N.W.2d 702 (Minn. 1982)............................................... 1, 8-9, 11

*Emich Motors Corp.* v. *Gen. Motors Corp.,*
    340 U.S. 558 (1951)......................................................26

*General Dynamics Corp.* v. *AT&T,*
    650 F. Supp. 1274 (N.D. Ill. 1986) ..............................................34

*Glictronix Corp.* v. *AT&T,*
    603 F. Supp. 552 (D.N.J. 1984) ...............................................34

*Harkins Amusement Enters., Inc.* v. *Harry Nace Co.,*
    890 F.2d 181 (9th Cir. 1989) ................................................30

*Held* v. *Mitsubishi Aircraft Int'l, Inc.,*
    672 F. Supp. 369 (D. Minn. 1987).............................................13

*Hicks* v. *Quaker Oats Co.,*
    662 F.2d 1158 (5th Cir. 1981) ...............................................13

*Jack Faucett Assocs.* v. *AT&T,*
    744 F.2d 118 (D.C. Cir. 1984), *cert. denied,* 469 U.S. 1196 (1985) .............8, 9, 33, 34

*Johnson* v. *Consolidated Freightways, Inc.,*
    420 N.W.2d 608 (Minn. 1988) ...............................................2,9

*In re Microsoft Corp. Antitrust Litig.,*
    232 F. Supp. 2d 534 (D. Md. 2002).............................................5, 28

*Montana* v. *United States*,
    440 U.S. 147 (1979)........................................................................................2, 32, 33

*Murdock* v. *Ute Indian Tribe of Uintah & Ouray Reservation*,
    975 F.2d 683 (10th Cir. 1992), *cert. denied*, 507 U.S. 1042 (1993)............................12

*Niagara Mohawk Power Corp.* v. *Tonawanda Band of Seneca Indians*,
    94 F.3d 747 (2d Cir. 1996)........................................................................................13

*Nelson* v. *American Family Ins. Group*,
    651 N.W.2d 499 (Minn. 2002)..................................................................................28

*New York* v. *Microsoft Corp.*,
    224 F. Supp. 2d 76 (D.D.C. 2002) .......................................... 5, 15-16, 17, 18, 19

*Parklane Hosiery Co.* v. *Shore*,
    439 U.S. 322 (1979)..........................................................................................9, 29, 32

*Pool Water Products* v. *Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) ...................................................................................13

*Popp Telecom* v. *American Sharecom, Inc.*,
    210 F.3d 928 (8th Cir. 2000) ....................................................................................30

*State of Michigan* v. *Morton Salt Co.*,
    259 F. Supp. 35 (D. Minn. 1966), *aff'd,* 377 F.2d 768 (8th Cir. 1967),
    *cert. denied*, 389 U.S. 912 (1967).............................................................................11

*Sam Fox Publ'g Co.* v. *United States*,
    366 U.S. 683 (1961)..................................................................................................11

*Setter* v. *A.H. Robins Co.*,
    748 F.2d 1328 (8th Cir. 1984) ..................................................................................32

*Southern Pac. Communications Co.* v. *AT&T*,
    567 F. Supp. 326 (D.D.C. 1983), *aff'd,* 740 F.2d 1011 (D.C. Cir. 1984).....................8

*Stebbins* v. *Keystone Ins. Co.*,
    481 F.2d 501 (D.C. Cir. 1973)..................................................................................13

*United States* v. *Microsoft Corp.*,
    1998-2 Trade Cas. (CCH) ¶ 72,261 (D.D.C. Sept. 14, 1998) .........................................3

*United States* v. *Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................... *passim*

*United States* v. *Microsoft Corp.*,
   84 F. Supp. 2d 9 (D.D.C. 1999) ........................................................................... *passim*

*United States* v. *Microsoft Corp.*,
   87 F. Supp. 2d 30 (D.D.C. 2000) ......................................................4, 17, 18, 19, 23, 24

*Whelan* v. *Abell*,
   953 F.2d 663 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 906 (1992) .........................8, 31

**Statutes**

Minn. Stat. § 325D.62 (2002) ..........................................................................................10

**Other Authority**

11 Joseph P. Bauer, *Kintner* Federal Antitrust Law (1998)....................................29

18 James Wm. Moore et al., Moore's Federal Practice (3d ed. 2002) ......................8

Restatement (Second) of Judgments § 27 (1982)..................................................12, 13

Restatement (Second) of Judgments § 29 (1982)..................................................9, 34

18A Charles Alan Wright et al., Federal Practice and Procedure
   (2d ed. 2002) ...............................................................................................................12

Relying on the doctrine of offensive collateral estoppel, plaintiffs request that this Court grant preclusive effect to 377 of the 412 findings of fact made by the trial court in *United States* v. *Microsoft Corp.* (the "Government Case"),[1] as well as 34 snippets of text from the appellate court's opinion in that case. Plaintiffs' broad request for preclusion ignores entirely the fact that, as the appellate court stated in the Government Case, the trial court's liability determinations were "drastically altered" on appeal, rendering most of the lower court's factual findings irrelevant to the judgment the appellate court ultimately sustained. *United States* v. *Microsoft Corp.*, 253 F.3d 34, 107 (D.C. Cir. 2001). Moreover, the Minnesota Antitrust Law does not allow the application of collateral estoppel to the Government Case judgment that Microsoft violated Minnesota law.

To prevail on their motion, plaintiffs must clearly establish that each and every factual finding as to which they seek estoppel was "necessary and essential" to the final judgment in the Government Case. *Ellis* v. *Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982). Plaintiffs have not satisfied that burden, providing only cursory explanations of how each of the hundreds of findings at issue in their motion were necessary and essential to the appellate court's substantially narrowed liability determination.

---

[1] 84 F. Supp. 2d 9 (D.D.C. 1999) (findings of fact), 87 F. Supp. 2d 30 (D.D.C. 2000) (conclusions of law), *aff'd in part, rev'd in part, and remanded in part*, 253 F.3d 34 (D.C. Cir.), *cert. denied*, 534 U.S. 952 (2001), *on remand and final judgment sub nom. New York* v. *Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C. 2002) (appeal pending).

Plaintiffs' motion also should be denied because applying offensive collateral estoppel here would be fundamentally unfair to Microsoft. The Minnesota Supreme Court has emphasized that "the focus" in such a motion "is on whether [the] application [of collateral estoppel] would work an injustice on the party against whom estoppel is urged." *Johnson* v. *Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613-14 (Minn. 1988). Plaintiffs seek to take advantage of the favorable findings and conclusions from the Government Case while ignoring others that undermine or contradict their claims. Such "cherry-picking" ought not to be permitted. Beyond that, application of offensive collateral estoppel would inevitably distort the jury's consideration of the closely related claims alleged in plaintiffs' Second Amended Complaint and little judicial efficiency would be achieved.

Finally, when sued by a different plaintiff, a defendant should not be bound by an earlier decision "if there is *reason to doubt* the quality, extensiveness, or fairness" of the prior litigation. *Montana* v. *United States*, 440 U.S. 147, 164 n.11 (1979) (emphasis added). There is substantial reason to doubt the quality and fairness of the prior litigation here: the findings of fact were made by a district judge whose behavior not only was "improper, but also would lead a reasonable, informed observer to question [his] impartiality," resulting in his disqualification from the case. *Microsoft*, 253 F.3d at 115. In view of the "[t]he severity of the District Judge's misconduct and the appearance of partiality it created," *id.* at 117, the D.C. Circuit stated that "there is fair room for argument that the District Court's factfindings should be vacated *in toto*." *Id.* at 118. The misconduct and apparent partiality of the trial judge in the Government Case are thus independent grounds to deny plaintiffs' motion.

2

# BACKGROUND

Plaintiffs' discussion of the Government Case gives the impression that Microsoft lost at every turn. That is not correct. Plaintiffs' broad request for collateral estoppel is premised on a mischaracterization of what actually happened in the Government Case.

## A.    The Government Case

On May 18, 1998, the United States Department of Justice, 20 States and the District of Columbia filed civil actions against Microsoft in the United States District Court for the District of Columbia. Their complaints alleged five separate violations of the Sherman Act: (i) unlawful exclusive dealing in violation of Section 1, (ii) unlawful tying of Internet Explorer to Windows in violation of Section 1, (iii) unlawful attempted monopolization of Web browsers in violation of Section 2, (iv) unlawful maintenance of an alleged operating system monopoly in violation of Section 2, and (v) unlawful leveraging of the alleged operating system monopoly to foreclose competition in Web browsers in violation of Section 2. (This last claim for "monopoly leveraging" was asserted only by the States.)

The federal courts ultimately rejected four of the five claims asserted by plaintiffs in the Government Case, and substantially narrowed plaintiffs' only surviving claim—monopoly maintenance. Before the trial even began, the district court granted Microsoft's motion for summary judgment on the States' monopoly leveraging claim. *United States* v. *Microsoft Corp.*, 1998-2 Trade Cas. (CCH) ¶ 72,261, at 82,685-86 (D.D.C. Sept. 14, 1998). In its conclusions of law following trial, the district court also

3

rejected plaintiffs' exclusive dealing claim. *United States* v. *Microsoft Corp.*, 87 F. Supp. 2d 30, 53 (D.D.C. 2000).

Microsoft appealed the district court's liability determinations in their entirety to the United States Court of Appeals for the D.C. Circuit. On appeal, the Court of Appeals reversed outright the district court's judgment on plaintiffs' attempted monopolization claim. 253 F.3d at 81-84. The Court of Appeals also rejected the district court's conclusion that Microsoft's alleged tying of Internet Explorer to Windows was *per se* unlawful and remanded that claim for a new trial under the rule of reason. *Id.* at 84-97. (Plaintiffs later abandoned their tying claim.)

Although the D.C. Circuit affirmed the conclusion that Microsoft had engaged in monopoly maintenance in violation of Section 2, it did so on narrower grounds than those district court had employed. In fact, the Court of Appeals relied on only about twelve of twenty acts found to be anticompetitive by the district court, expressly rejecting any liability for the rest. *Id.* at 46-47, 63, 67-68, 71, 74-75, 78, 105. The Court of Appeals also reversed the district court's "conclusion that Microsoft's course of conduct separately violate[d] § 2 of the Sherman Act." *Id.* at 78. Finally, the D.C. Circuit disqualified the district judge based on his "deliberate, repeated, egregious, and flagrant" ethical violations, and remanded the case to a new judge for a trial on the issue of remedies. *Id.* at 107.

In sum, few of the district court's liability determinations survived appeal. As the D.C. Circuit remarked, "[o]nly liability for the § 2 monopoly-maintenance viola-tion has been affirmed—and even that we have revised." *Id.* at 104. Indeed, the D.C. Circuit expressly stated that it had "*drastically altered* the District Court's conclusions on

4

liability" and that "*most* . . . of the findings of remediable violations [did] not withstand appellate scrutiny." *Id.* at 105 (emphases added). On remand, the new trial judge emphasized that, based on this substantial narrowing of the case, "the vast majority of factual findings entered by the district court" are "unconnected to specific liability findings" affirmed on appeal. *New York* v. *Microsoft Corp.*, 224 F. Supp. 2d, 138 (D.D.C. 2002).

### B.    The MDL Litigation in Baltimore

Last year, plaintiffs in *In re Microsoft Corp. Antitrust Litigation*, MDL No. 1332 (D. Md.) (the "MDL Litigation"), filed various motions based on the doctrine of collateral estoppel. First, plaintiffs moved for partial summary judgment on the issue of Microsoft's liability under Section 2 of the Sherman Act based on the ruling in the Government Case. Second, plaintiffs filed separate motions under Federal Rule of Civil Procedure 16(c) to preclude Microsoft from relitigating specific findings of fact entered in the Government Case. Although several plaintiffs initially asked the MDL court to accord preclusive effect to all 412 findings entered by the district court, plaintiffs ultimately limited their request to 356 specific findings.

On November 4, the MDL court issued an opinion denying plaintiffs' motions for partial summary judgment on the ground that plaintiffs in the Government Case did not prove "all of the elements that the private plaintiffs must prove in their actions for damages." *In re Microsoft Corp. Antitrust Litig.,* 232 F. Supp. 2d 534, 538 (D. Md. 2002). Specifically, the MDL court held that "[n]othing in the government case against Microsoft demonstrates" that any of the private plaintiffs "suffered injury-in-fact caused by the asserted antitrust violation." *Id.* The court thus concluded that issues such

as causation, injury-in-fact and antitrust injury "remain to be litigated" in private cases against Microsoft. *Id.* at 539. The MDL court also held that specific findings from the Government Case satisfy the "necessary to the prior judgment" requirement if they are "supportive of the prior judgment," rejecting Microsoft's contention that "necessary" instead means "essential" or "indispensable." *Id.* at 537. The court invited Microsoft, however, to file a memorandum "challeng[ing] specific findings as not meeting the 'necessary' requirement" as interpreted by the MDL court. *Id.* at 538 Microsoft ultimately challenged 93 of the 356 findings of fact at issue under the test set forth by the court.[2]

By letter dated April 4, 2003, the MDL court held that 350 of the 356 findings of fact encompassed by plaintiffs' motion are supportive of the D.C. Circuit's judgment, rejecting estoppel only with respect to Findings of Fact 380-385. In so ruling, the court provided no explanation for its conclusion that these 350 findings were necessary to the final judgment in the Government Case. (*See* April 4, 2003 Order (attached as Exhibit C to the Affidavit of David Crosby (the "Crosby Aff.")).) The court

---

[2] Plaintiffs claim that Microsoft has previously "conceded the applicability of collateral estoppel to approximately 265 of the 377 factual findings at issue in this motion." (Pls. Mem. at 24.) That is untrue. Microsoft has continued, without exception, to object to the application of collateral estoppel to any finding or conclusion from the Government Case. After the MDL and California courts ruled against Microsoft on a number of its objections and required it to identify which findings were entitled to preclusion under the courts' rulings, Microsoft limited its challenge to specific findings, while reserving all of its objections to collateral estoppel for purposes of appeal. (*See* Microsoft's Memorandum Challenging Specific Findings as Not Necessary to the Court of Appeals' 2001 Decision, at 5 & n.2 (filed in the MDL Litigation (attached hereto as Exhibit A to the Crosby Aff.); Microsoft's Memorandum Contesting 117 Out of 282 Findings of Fact for Which Plaintiffs Seek Offensive Collateral Estoppel (filed in *Microsoft Cases I-V*, J.C.C.P. (Sup. Ct. Cal.), at 1-2 & n.3, 15 (attached hereto as Exhibit B to the Crosby Aff.).)

also "deferred until another day" the issue of "ascertain[ing] which of the statements made by the Court of Appeals should be incorporated into the jury instructions relating to preclusive findings." *Id.*

Microsoft immediately sought certification of the MDL court's collateral estoppel ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On May 9, 2003, the MDL court certified its ruling, recognizing that "there is a substantial basis for a difference of opinion on the meaning of the phrase 'necessary to the judgment,' as it is used in determining collateral estoppel effect." (May 9 Mem. (attached as Exhibit D to the Crosby Aff.) at 2.) The court further stated that this "is particularly true" because— after the appeal in the Government Case—the district court on remand determined "that 'the vast majority of factual findings entered by [the original district judge] as a basis for § 2 liability' were 'unconnected to specific liability findings' affirmed by the D.C. Circuit on appeal." (May 9 Mem. at 2-3 (quoting *New York*, 224 F. Supp. 2d at 138).)

### ARGUMENT

In light of the D.C. Circuit's drastic alteration of the scope of Microsoft's liability in the Government Case, plaintiffs' request for collateral estoppel as to 377 of the 412 findings of fact entered by the district court prior to Microsoft's appeal is unfounded. Collateral estoppel can only be applied to findings that were necessary to the liability affirmed by the Court of Appeals. At the time the district court issued its findings, plaintiffs in that case were still asserting four separate claims under the Sherman Act. Yet only one of those claims survived appellate review, and even that claim— monopoly maintenance—was reversed in substantial part by the appellate court. Under these circumstances, collateral estoppel cannot possibly be accorded, as plaintiffs request

here, to over 90% of the district court's original factual findings, which predated the substantial narrowing of liability by the appellate court.[3]

The doctrine of offensive collateral estoppel—which plaintiffs ask the Court to invoke here—is "detailed, difficult, and potentially dangerous." *Jack Faucett Assocs.* v. *AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984), *cert. denied*, 469 U.S. 1196 (1985). The danger posed by offensive collateral estoppel stems from the fact that if preclusion is not invoked with care and caution, a litigant will be unfairly denied its right to trial—a concern of particular importance where, as here, the prior action was a bench trial and the subsequent action is to be tried before a jury. *See Whelan* v. *Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992) *cert. denied*, 506 U.S. 906 (1997).

As the party seeking to invoke collateral estoppel, plaintiffs bear the burden of demonstrating with clarity and certainty their entitlement to preclusion. *See* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.05[1], at 132-177 (3d ed. 2000). This "heavy burden" becomes "even more substantial where, as here, plaintiff seeks to invoke the doctrine offensively." *Southern Pac. Communications Co.* v. *AT&T*, 567 F. Supp. 326, 328 n.1 (D.D.C. 1983), *aff'd*, 740 F.2d 1011 (D.C. Cir. 1984). Plaintiffs must show, among other things, that each of the findings on which they seek preclusion was "necessary and essential" to the Court of Appeals' decision. *Ellis*, 319

---

[3] Plaintiffs assert that "Microsoft should not be afforded an opportunity to relitigate any adverse conclusions of law by the District Court which Microsoft did not appeal to the Court of Appeals." (Pls. Mem. at 3.) This assertion is puzzling and inaccurate. Microsoft appealed both the legal conclusions and the final judgment in the Government Case in their entirety, as the Court of Appeals recognized. *See* 253 F.3d at 46 ("Microsoft's appeal contests both the legal conclusions and the resulting remedial order.").

N.W.2d at 704. As explained below, at least 111 findings encompassed by plaintiffs'

motion were not "necessary and essential" to the appellate court's judgment in the

Government Case, and thus are inappropriate for collateral estoppel here.

Even if plaintiffs were able to make such a showing, collateral estoppel

would remain inappropriate if it "would be unfair" to Microsoft. *Parklane Hosiery Co.* v.

*Shore*, 439 U.S. 322, 331 (1979). "Where offensive estoppel is involved, the element of

'fairness' gains special importance." *Jack Faucett*, 744 F.2d at 125; *accord Johnson*, 420

N.W.2d at 613; *Parklane Hosiery*, 439 U.S. at 331. "The doctrine of offensive collateral

estoppel is too fraught with drumhead potential to allow its application without the

specific limitations that the Supreme Court, other courts, and legal scholars have

enunciated." *Jack Faucett*, 744 F.2d at 133. Even where the substantive requirements of

the doctrine are met, offensive collateral estoppel may nevertheless be inappropriate for

equitable reasons. RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982) (courts should

consider whether "[o]ther compelling circumstances make it appropriate that the party be

permitted to relitigate the issue"). As with all conditions necessary for estoppel, the

burden is on the party invoking estoppel to establish that the fairness requirement has

been satisfied. *See Democratic Cent. Comm.* v. *Washington Metro. Area Transit*

*Comm'n*, 842 F.2d 402, 409 (D.C. Cir. 1988), *cert. denied*, 488 U.S. 1043, *and* 489 U.S.

1019 (1989).

The granting of plaintiffs' motion would create a significant threat of

substantial unfairness to Microsoft. First, plaintiffs should not be permitted to invoke

collateral estoppel selectively, barring Microsoft from litigating certain issues while at the

same time attempting themselves to relitigate other issues on which Microsoft prevailed

in the Government Case.  Second, application of collateral estoppel here would distort the

jury's consideration of closely related claims alleged in plaintiffs' Second Amended

Complaint.  Third, the trial judge's "deliberate, repeated, egregious, and flagrant"

misconduct in the Government Case gives rise to substantial doubts about the quality and

fairness of that prior litigation.  253 F.3d at 107.

I.      **Minnesota Antitrust Law Does Not Permit the Application of Collateral
        Estoppel to the Government Case Judgment.**

        Plaintiffs assert that the district court held—and the D.C. Circuit

affirmed—that Microsoft violated the "Minnesota Antitrust Law," and repeatedly attempt

to justify collateral estoppel based on this determination of state-law liability.  (*See* Pls.

Mem. at 1-2, 9-10, 28; *see especially id.* at 1-2 ("Plaintiffs ask that the Court prevent

Microsoft from contesting several legal conclusions from the government action,

including the ultimate holding that Microsoft violated the Minnesota Antitrust Law.").)

Minnesota antitrust law, however, does not allow collateral estoppel with respect to a

prior judgment under the Minnesota antitrust statute.  It instead provides that such prior

judgment and the supporting findings are to be given only "*prima facie*" effect.  Minn.

Stat. Section § 325D.62 (2002) ("A final judgment or decree rendered in any civil . . .

proceeding under sections 325D.49 to 325D.66 brought by or on behalf of the state of

Minnesota, any of its departments or agencies . . . to the effect that a defendant has

violated sections 325D.49 to 325D.66, shall be *prima facie* evidence against such

defendant in any action or proceeding brought by any other party against such defendant

under said sections as to all matters respecting which said judgment or decree would be

an estoppel as between the parties thereto.").

Section 325D.62 of the Minnesota Antitrust Law, enacted in 1971, was based on the original 1914 version of Section 5(a) of the Clayton Act. Both the original Clayton Act and the 1971 Minnesota statute state that a prior antitrust judgment is *prima facie* evidence; they are silent on collateral estoppel. At the time Minnesota adopted this language, the identical language in the Clayton Act had been construed by the Supreme Court and other courts as *prohibiting* collateral estoppel. The United States Supreme Court had concluded that this language about *prima facie* evidence "would seem to be a definitive legislative pronouncement that a [prior] government [antitrust] suit cannot be preclusive of private litigation, even though relating to the same subject matter." *Sam Fox Publ'g Co.* v. *United States,* 366 U.S. 683, 690 (1961). In so ruling, the Court cited, *inter alia,* a Minnesota district court's detailed analysis of Section 5(a) of the Clayton Act in *State of Michigan* v. *Morton Salt Co.,* 259 F. Supp. 35, 58-62, 64-65 (D. Minn. 1966), *aff'd,* 377 F.2d 768 (8th Cir. 1967), *cert. denied,* 389 U.S. 912 (1967). Congress subsequently amended the Clayton Act in the 1980 Antitrust Improvements Act to expressly allow collateral estoppel, but the Minnesota Legislature has never followed suit. As such, the Minnesota Antitrust statute should not be construed to permit the Government Case judgment conclusive collateral estoppel effect.

## II.    Plaintiffs Have Not Demonstrated That All 377 Findings at Issue in Their Motion Were "Necessary and Essential" to the Government Case Judgment.

In *Ellis*, the Minnesota Supreme Court held that collateral estoppel prevents "the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and *necessary and essential* to the resulting judgment." 319 N.W.2d at 704 (emphasis added). While paying lip service to this

11

standard (Pls. Mem. at 19), plaintiffs ask the Court to equate "supportive" with

"necessary and essential," relying on the MDL court's decision (*id.* at 4, 20). The

standard articulated by the MDL court is contrary to law. As the court held in *Murdock*

v. *Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683 (10th Cir. 1992), *cert.*

*denied*, 507 U.S. 1042 (1993)—a case on which plaintiffs themselves rely (Pls. Mem. at

23)—"'[i]t is axiomatic that a party will be precluded by collateral estoppel from relying

on an argument only where the determination as to the argument relied on was *essential*

to the judgment in a prior action.'" 975 F.2d at 687 (emphasis added and citations

omitted). "If issues are determined but the judgment is not *dependent upon the*

*determinations*, relitigation of those issues in a subsequent action . . . is not precluded."

RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. h (1982) (emphasis added).

> **A.    Plaintiffs' Attempt To Show That Specific Findings Satisfy the "Necessary and Essential" Requirement Fails.**

Plaintiffs assert that the Court of Appeals in the Government Case

independently endorsed each of the district court's findings of fact, suggesting that this

somehow imbues *all* of them with preclusive effect regardless of whether they were

necessary and essential to the appellate court's judgment. (Pls. Mem at 11.) No

preclusive effect can be given to findings of fact relating only to portions of the district

court's judgment that were vacated or reversed on appeal. 18A CHARLES ALAN WRIGHT

ET AL., FEDERAL PRACTICE AND PROCEDURE § 4432, at 64-66 (2d ed. 2002). Nor, for the

same reason, can preclusive effect be given to findings of fact bearing upon issues the

Court of Appeals ignored. "[T]he general rule is that if a judgment is appealed, collateral

estoppel only works as to those issues specifically passed upon by the appellate court."
*Hicks* v. *Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981).[4]

That the appellate court did not vacate the trial court's findings does not mean that any given finding was *necessary and essential* to the portion of the district court's judgment sustained on appeal— the relevant test here. Plaintiffs have the burden of demonstrating that the portion of the judgment sustained on appeal was "dependent upon" each of the findings as to which they seek preclusion. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. h (1982).

In *Pool Water Products* v. *Olin Corp.*, 258 F.3d 1024, 1032-33 (9th Cir. 2001), an antitrust case in which plaintiffs similarly attempted to rely on hundreds of findings of fact from another proceeding, the Ninth Circuit emphasized that plaintiffs must identify with specificity which findings were "necessary" to the judgment and must demonstrate "for each issue" that they have satisfied that requirement. In so ruling, the Ninth Circuit properly placed the burden of proof squarely on plaintiffs: "Neither the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings." *Id.* at 1033. The same holds true with regard to plaintiffs' motion.

---

[4] *See also Pool Water Prods.* v. *Olin Corp.*, 258 F.3d 1024, 1032-33 (9th Cir. 2001) (trial-level findings that were not relied upon at the appellate level are not entitled to preclusive effect); *Niagara Mohawk Power Corp.* v. *Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996) ("[O]nly the basis that is actually considered [on appeal] can have any preclusive effect in subsequent litigation."); *Stebbins* v. *Keystone Ins. Co.*, 481 F.2d 501, 507 n.13 (D.C. Cir. 1973) ("[O]nly those issues expressly considered by the appellate court can be used, as the basis for a plea of collateral estoppel.").

Plaintiffs take the position that most of the findings of fact from the Government Case "provide[d] necessary support for each of the elements the government needed to demonstrate in its successful monopoly maintenance claim under the Sherman Act and Minn. Stat. § 325D.49 *et seq*." (Pls. Mem. at 22-23.) For many of the findings, plaintiffs simply repeat, with minimal analysis, that the findings were "necessary" and "essential." Contrary to plaintiffs' assertion, many of those findings have no connection with the Court of Appeals' decision that Microsoft violated the Sherman Act by engaging in twelve specific anticompetitive acts.

On appeal, the D.C. Circuit found that of the twenty acts relied upon by the district court, the following twelve acts constituted "anticompetitive conduct" in violation of Section 2:

(1)    "preventing OEMs from removing visible means of user access to IE" (*i.e.*, desktop icons, folders and Start menu entries), 253 F.3d at 61;

(2)    "prohibit[ing] OEMs from modifying the initial boot sequence" of Windows, 253 F.3d at 61;

(3)    "prohibit[ing] OEMs . . . from adding [to the Windows desktop] icons or folders different in size or shape from those supplied by Microsoft," 253 F.3d at 62;

(4)    "prohibit[ing] OEMs . . . from using the 'Active Desktop' feature [of Windows] to promote third-party brands," 253 F.3d at 62;

(5)    "excluding IE from the 'Add/Remove Programs' utility" in Windows, 253 F.3d at 64;

(6)    "commingling code related to browsing and other code in the same files" in Windows, 253 F.3d at 64-65;

(7)    "agree[ing] to provide easy access to IAPs' [Internet access providers'] services from the Windows desktop in return for the IAPs' agreement to promote IE exclusively and to keep shipments of

14

internet access software using Navigator under a specific percentage," 253 F.3d at 68;

(8)     agreeing to give certain ISVs "'preferential support'" in return for their agreement to "'use Internet Explorer as the default browsing software for any software they develop with a hypertext-based user interface,'" 253 F.3d at 71-72;

(9)     agreeing to release new versions of Office for the Apple Macintosh in return for Apple's agreement to preinstall Internet Explorer and make it the default Web browser on Apple's Macintosh operating system, 253 F.3d at 72-74;

(10)    agreeing to give certain ISVs access to Windows technical information in return for their agreement to use Microsoft's Java Virtual Machine ("JVM") as the default JVM for their software, 253 F.3d at 75-76;

(11)    "deceiving Java developers about the Windows-specific nature of" Microsoft's Java developer tools, 253 F.3d at 74; *see also id.* at 76-77;

(12)    "coercing Intel to stop aiding Sun in improving the Java technologies," 253 F.3d at 74; *see also id.* at 77-78.

These twelve acts are not merely examples illustrative of some broader conclusion; they are the *sole* basis for the D.C. Circuit's conclusion that Microsoft engaged in anticompetitive conduct. Thus, as the district court determined in fashioning the final judgment in the Government Case, Microsoft's liability is defined *solely* in terms of these twelve specific acts. *New York*, 224 F. Supp. 2d at 138-39.

Indeed, the district court on remand in the Government Case stressed that "the vast majority" of the factual findings entered by the district court prior to appeal were "unconnected" to the D.C. Circuit's liability determinations and thus could not serve as a basis for remedial provisions:

Plaintiffs have recited for the Court's benefit countless findings of fact entered by Judge Jackson during the liability phase regarding actions taken by Microsoft. . . . Significantly however, many of

15

these findings were ultimately not relied upon by the district court
in conjunction with the imposition of liability [on the only
violation affirmed on the appeal]. Concordantly, in its review of
the district court's liability findings, the appellate court did not
have occasion to rely upon the vast majority of factual findings
entered by the district court, but not cited by the district court as a
basis for § 2 liability. . . . As a result, these factual findings,
standing alone and unconnected to specific liability findings,
cannot be used to justify specific remedial provisions.

*New York*, 224 F. Supp. 2d at 138.

Unless a finding of fact was necessary and essential to either the district

court's conclusion of law that Microsoft possessed monopoly power in a specified market

or to one of the twelve acts set forth above, the doctrine of collateral estoppel is

inapplicable here.

**B.    At Least 111 of the Findings for Which Plaintiffs Seek Preclusion
Were Not Necessary and Essential to the Government Case Judgment.**

Microsoft does not dispute that the "background" (FF ¶¶ 1-17), "market

definition" (FF ¶¶ 18-32) and "market power" (FF ¶¶ 33-67) findings listed in plaintiffs'

appendix were necessary to the D.C. Circuit's decision. Many of the findings described

by plaintiffs as providing necessary support for the government's monopoly maintenance

claim, however, were not necessary to that decision. Microsoft identifies below 111

findings of fact that clearly do not meet the high standard of "necessary and essential" to

the Court of Appeals' judgment in the Government Case.

**Finding of Fact 78**: This finding discusses four technologies (Lotus

Notes, Intel's Native Signal Processing ("NSP") software and RealNetworks' and

Apple's multimedia playback technologies) that the district court described as "other

middleware threats" supposedly "feared" by Microsoft. *Microsoft*, 84 F. Supp. 2d at 30.

16

These four technologies have no relevance to any of the twelve acts found to be anticompetitive by the Court of Appeals. Indeed, the appellate court did not even mention those technologies in its opinion.

**Findings of Fact 79-89**: These findings describe a proposal that Microsoft supposedly made to Netscape in June 1995—and that Netscape rejected. 84 F. Supp. 2d at 30-33. The district court relied upon Findings of Fact 79-89 only as evidence of an unlawful *attempt* to monopolize the putative market for Web browsing software. *Microsoft*, 87 F. Supp. 2d at 45-46. The D.C. Circuit "reverse[d] the District Court's determination of § 2 liability for attempted monopolization." 253 F.3d at 84. Not only was Microsoft's June 1995 proposal to Netscape not among the twelve acts found to be anticompetitive; the Court of Appeals did not even mention the proposal in its opinion.

**Findings of Fact 90-92**: The district court found that Microsoft withheld certain technical information from Netscape in the summer of 1995. 84 F. Supp. 2d at 33-34. These findings are unrelated to any of the twelve acts held to be anticompetitive by the Court of Appeals, which never mentioned Microsoft's supposed withholding of technical information anywhere in its opinion. In fact, the court that issued Findings of Fact 90-92 has now expressly cited them as examples of findings "unconnected to" the liability rulings of both the district court and the Court of Appeals:

> For example, Plaintiffs direct the Court to *Findings of Fact* ¶¶ 90-91, wherein Judge Jackson found that Microsoft knowingly withheld "critical technical information" from Netscape, hindering Navigator's ability to interoperate with Windows 95. *Id.* ¶ 90. Judge Jackson also found that Microsoft withheld "a scripting tool that Netscape needed to make its browser compatible with certain dial-up ISPs." *Findings of Fact* ¶ 92. . . . Judge Jackson did not ascribe any liability for the above-described acts.

17

*New York*, 224 F. Supp. 2d at 143.

**Findings of Fact 93-132**:  These paragraphs contain the district court's findings relating to Microsoft's interactions with (i) Intel regarding NSP software (FF ¶¶ 94-103), (ii) Apple regarding QuickTime (FF ¶¶ 104-110), (iii) RealNetworks' regarding streaming media software (FF ¶¶ 111-114), and (iv) IBM regarding SmartSuite (FF ¶¶ 115-132).  84 F. Supp. 2d at 34-43.  These findings were not necessary to the determination that Microsoft possessed monopoly power.  Although the district court found that Microsoft's actions toward other firms were evidence of monopoly power, 84 F. Supp. 2d at 28 (FF ¶ 67), the court carefully identified which facts supported that determination.  87 F. Supp. 2d at 37 (citing FF ¶¶ 67, 99, 136, 141, 215-16, 241, 261-62, 286, 291, 330, 355, 393, 407).  With the exception of Finding of Fact 99, Findings of Fact 93-132 were not even among the many findings cited by the district court as "support" for its conclusion that Microsoft possessed monopoly power.  Nor were these findings necessary to the D.C. Circuit's determination that Microsoft engaged in the twelve specific anticompetitive acts in violation of the Sherman Act.  Indeed, there is no reference to NSP, QuickTime, RealNetworks or SmartSuite anywhere in the Court of Appeals' opinion.

**Findings of Fact 136-142**:  These findings relate to Microsoft's giving Internet Explorer away for free and paying other firms to promote and distribute the software.  84 F. Supp. 2d at 44-46.  The Court of Appeals reversed the district court's imposition of liability for these actions, holding that "we . . . have no warrant to condemn Microsoft for offering [Internet Explorer] free of charge or even at a negative price."  253 F.3d at 68; *see also New York*, 224 F. Supp. 2d at 244.

18

**Findings of Fact 149-155:**  These findings generally discuss the status of Web browsers as "separate products."  84 F. Supp. 2d at 48-49.  They supported only the Section 1 tying violation, 87 F. Supp. 2d at 49, which the Court of Appeals vacated.  *See* 253 F.3d at 84.  In fact, the district court on remand expressly rejected a proposed remedy that was based on Finding of Fact 155 on the ground that that finding was unconnected to any liability determination upheld by the Court of Appeals:

> Paragraph 155 in Judge Jackson's *Findings of Fact* was identified by the appellate court as one of the "key District Court findings" in connection with its imposition of liability upon Microsoft for illegal tying in violation of § 1 of the Sherman Act.  The appellate court was unable to affirm Judge Jackson's finding of liability for tying. Because the claim was not pursued on remand, there exists no finding that Microsoft illegally "tied" any product to Windows.

*New York*, 224 F. Supp. at 258 (citations omitted) (quoting 253 F.3d at 84).

**Findings of Fact 199-201:**  These findings relate to the so-called "market for Web browsing functionality."  84 F. Supp. 2d at 58.  The Court of Appeals rejected Web browsers as a relevant market, and thus reversed the conclusion that Microsoft was liable for attempted monopolization.  253 F.3d at 80-84.  The appellate court also "vacate[d] the District Court's finding of a per se tying violation" under Section 1 of the Sherman Act, 253 F.3d at 84, the only other liability determination arguably related to these findings.

**Findings of Fact 224-227:**  These findings relate to OEMs' development of alternative user interfaces that ran automatically at the conclusion of a new PC's initial boot sequence and replaced the Windows desktop.  84 F. Supp. 2d at 61, 65-66.  The D.C. Circuit "agree[d]" with Microsoft "that a shell that automatically prevents the

Windows desktop from ever being seen by the user is a drastic alteration of Microsoft's copyrighted work." 253 F.3d at 63. The appellate court thus reversed the district court's assignment of liability for Microsoft's prohibition of alternative user interfaces that replace the Windows desktop, "hold[ing] that this particular restriction is not an exclusionary practice that violates § 2 of the Sherman Act." *Id.* Obviously, findings about conduct for which no liability attached may not be the basis for collateral estoppel.

**Findings of Fact 230-238**: The district court found that Microsoft pressured certain OEMs to promote Internet Explorer and not to pre-install Navigator. 84 F. Supp. 2d at 66-68. Because Findings of Fact 230-238 are unconnected to the twelve specific acts held to be anticompetitive by the appellate court, they are not "necessary and essential" to the portion of the district court's decision affirmed on appeal. In fact, it would be inconsistent with the Court of Appeals' decision to suggest that Microsoft violated Section 2 by rewarding OEMs to distribute and promote Internet Explorer, given the appellate court's conclusion that Microsoft did not violate the Sherman Act by rewarding Internet access providers ("IAPs") to do the same things. *Compare, e.g.*, 84 F. Supp. 2d at 67 (FF ¶ 231) *with* 253 F.3d at 68.

**Finding of Fact 241**: This finding simply summarizes prior findings, both those as to which liability was ultimately affirmed and those as to which liability was ultimately reversed. 84 F. Supp. 2d at 69. It is therefore inappropriate for collateral estoppel.

**Findings of Fact 246-252 and 259-260**: These findings relate to Microsoft's agreements with IAPs. 84 F. Supp. 2d at 70-74. The Court of Appeals reversed the district court's imposition of liability for the various contractual provisions

addressed in these findings. 253 F.3d at 67-68. For example, Findings of Fact 248-252

discussed Microsoft's development of the Internet Explorer Access Kit or "IEAK." 84 F.

Supp. 2d at 71-72. The appellate court expressly held that "Microsoft's development of

the IEAK does not violate the Sherman Act." 253 F.3d at 68.

      **Finding of Fact 295:** This finding discusses Microsoft's agreement to

pay America Online a fee or "bounty" for each subscriber who used Internet Explorer.

84 F. Supp. 2d at 82-83. The D.C. Circuit concluded that Microsoft was not liable for

offering America Online and other IAPs "a bounty for each customer the IAP signs up

for service using the IE browser." 253 F.3d at 67; *see also id.* at 78 ("Microsoft's

expenditures in promoting its browser . . . are not in themselves unlawful.").

      **Finding of Fact 379:** The district court found that various acts by

Microsoft "inflicted considerable harm on Netscape's business." 84 F. Supp. 2d at 103.

The district court stated that "Netscape was forced to follow suit" after "Microsoft started

licensing Internet Explorer at no charge, not only to OEMs and consumers, but also to

IAPs, ISVs, ICPs, and even Apple." 84 F. Supp. 2d at 103. Finding of Fact 379 is not

necessary and essential to the monopoly maintenance determination affirmed on appeal.

In fact, the Court of Appeals held that the focus of that finding—licensing Internet

Explorer at no charge—did not violate Section 2 of the Sherman Act. As the court noted,

"plaintiffs argued that by pricing below cost on IE (indeed, even paying people to take it),

Microsoft was able simultaneously to preserve its stream of monopoly profits on

Windows, thereby more than recouping its investment in below-cost pricing on IE." 253

F.3d at 68. The D.C. Circuit concluded, however, that Microsoft did not violate the

Sherman Act by offering Internet Explorer "free of charge or even at a negative price,"

explaining that "the antitrust laws do not condemn even a monopolist for offering its product at an attractive price." 253 F.3d at 68.

   **Findings of Fact 389-393**:  These paragraphs contain the district court's findings relating to Microsoft's development of its own Java Virtual Machine ("JVM") that was incompatible with Sun's JVM.  84 F. Supp. 2d 105-06.  The Court of Appeals expressly "reverse[d] the District Court's imposition of liability for Microsoft's development and promotion of its JVM." 253 F.3d at 75.

   **Findings of Fact 397-398**:  The district court found that Microsoft bundled a version of its JVM with every copy of Internet Explorer, guaranteeing the presence of Microsoft's JVM on every PC.  84 F. Supp. 2d at 107-08.  The district court also found that Microsoft adversely affected Netscape's ability to distribute a Sun-compliant JVM with every copy of Navigator.  84 F. Supp. 2d at 107-08.  Neither finding was necessary and essential to the portion of the district court's decision affirmed on appeal.  The Court of Appeals did not assign liability for Microsoft's inclusion of its JVM with every copy of Internet Explorer.  In addition, the Microsoft conduct that affected Netscape's ability to "afford to do the engineering work necessary to continue bundling up-to-date JVMs with Navigator," 84 F. Supp. 2d at 108 (FF ¶ 397), was primarily the licensing of Internet Explorer at no charge, which the appellate court held did not violate the Sherman Act. 253 F.3d at 68.

   **Findings of Fact 402-403**:  Finding of Fact 402 refers to an agreement with an unidentified ISV, and Finding of Fact 403 refers to a July 18, 1997 agreement with RealNetworks.  84 F. Supp. 2d at 109.  These findings are not necessary and essential to the portion of the district court's decision affirmed on appeal.  The district

court expressly stated that the agreements discussed in Findings of Fact 402 and 403 were "[i]n addition to the First Wave agreements." 84 F. Supp. 2d at 109. The First Wave agreements, however, were the only Java-related agreements found to be anticompetitive by the Court of Appeals. 253 F.3d at 75-76 (citing FF ¶ 401).

Findings of Fact 408-412: According to the district court, these findings describe the effect on consumers of Microsoft's efforts to protect the applications barrier to entry. 84 F. Supp. 2d at 110. Neither the district court nor the Court of Appeals ascribed liability based on these findings. In its conclusions of law, the district court cited only two of these findings, Findings of Fact 411 and 412, and did so *only* in the section of its conclusions devoted to the so-called "course of conduct" violation. 87 F. Supp. 2d at 44. The Court of Appeals *reversed* the district court's "conclusion that Microsoft's course of conduct separately violate[d] § 2 of the Sherman Act." 253 F.3d at 78. Although the appellate court twice cited Finding of Fact 411, 253 F.3d at 78, 107, it did so not in imposing liability, but in pointing out that "the District Court expressly did *not* adopt the position that Microsoft would have lost its position in the OS [operating system] market but for its anticompetitive behavior." 253 F.3d at 107 (emphasis added). Accordingly, Findings of Fact 408-412 are not necessary and essential to the portion of the judgment sustained on appeal.

III.    **Plaintiffs Cannot Accord Preclusive Effect to Snippets of Text from the D.C. Circuit's Opinion.**

Plaintiffs also seek to accord preclusive effect to six purported "Conclusions of Law" from the Court of Appeals' opinion. (*See* Pls. Mem., App. A at

23

144-149.)  Although labeled as six "Conclusions of Law," plaintiffs have actually lifted

34 separate snippets of text from the D.C. Circuit's 85-page opinion.[5]

   An appellate opinion is a reasoned explanation of the court's conclusions.

Its words, sentences, paragraphs and sections are interrelated and written to be read as a

whole.  Individual sentences or sentence fragments should not be taken from the whole

and presented to the jury without the benefit of the entire opinion and its reasoning.

There is great risk that the subtleties and interplay among the court's ideas will be lost if

the opinion is dissected and recycled for unintended purposes.

   The various excerpts that plaintiffs select illustrate the pitfalls inherent in

attempting to accord estoppel effect to isolated sentences from an appellate court opinion.

Several of the quotations, in fact, are edited with ellipses signifying omitted text and

brackets signifying inserted text or are complete paraphrasings of the D.C. Circuit's text.

These edits can alter the meaning of the quoted sentence in potentially misleading ways.

   For example, plaintiffs seek to give collateral estoppel effect to the

following heavily edited sentence from the Court of Appeals' opinion:  "'[Microsoft's]

license restriction [which prevents OEMs from pre-installing rival browsers] is

anticompetitive.'"  (Pls. Mem., App. A at 145.)  The license restriction discussed in that

sentence, however, prohibited OEMs from removing visible means of user access to

---

   [5] Conclusion of Law No. 6 contains no quotations from the D.C. Circuit's opinion; it only
paraphrases the district court's conclusions of law (87 F. Supp. 2d at 43) and refers to these
snippets as conclusions that were "unappealed liability determinations."  (Pls. Mem., App. A at
149."  This is incorrect.  Microsoft appealed both the legal conclusions and the final judgment in
the Government Case in their entirety, as the Court of Appeals recognized.  *See* 253 F.3d at 46
("Microsoft's appeal contests both the legal conclusions and the resulting remedial order.").

Internet Explorer (desktop icons, folders or "Start" menu entries), not from pre-installing non-Microsoft browsers. Indeed, the district court expressly found exactly the opposite of what plaintiffs' heavily edited sentence would establish: "Microsoft's license agreements have *never* prohibited OEMs from pre-installing programs, including Navigator, on their PCs." 84 F. Supp. 2d at 63 (FF ¶ 217) (emphasis added).

In other instances, plaintiffs' quotations are confusing because they are devoid of context. For example, plaintiffs seek to accord preclusive effect to the following sentence: "'That claim is insufficient to shield Microsoft from liability for those restrictions because, although Microsoft did not bar its rivals from all means of distribution, it did bar them from the cost-efficient ones.'" (Pls. Mem., App. A at 146 (quoting 253 F.3d at 64).) Without any context, there is no way to know for certain what "claim," what "restrictions" and what "means of distribution" are referred to in that sentence.

Even apart from such considerations, the excerpts included in plaintiffs' appendix are inappropriate for collateral estoppel. Those excerpts generally fall into the following categories.

- Many of the excerpts should be rejected because they simply repeat or are duplicative of the district court's findings of fact. For example, plaintiffs seek to accord preclusive effect to the following sentence: "'The District Court found that the restrictions Microsoft imposed on licensing Windows to OEMs prevented many OEMs from distributing browsers other than IE [Internet Explorer].'" (Pls. Mem., App. A at 145 (quoting 253 F.3d at 39-40).) If necessary and essential to the judgment, the district court's

findings of fact themselves, not the appellate court's restatement of them, should be the focus of collateral estoppel.

- Other excerpts should be rejected because they contain statements about isolated or conflicting evidence in the record. For example, plaintiffs seek to accord preclusive effect to the following sentence: "'Other testimony, however, supports the District Court's finding that fear of such confusion deters many OEMs from pre-installing multiple browsers.'" (Pls. Mem., App. A at 145 (quoting 253 F.3d at 61).) Such commentary about the underlying evidence is not appropriate for estoppel.

- Other excerpts should be rejected because they merely purport to characterize the positions taken by Microsoft on appeal. For example, plaintiffs seek to accord preclusive effect to the following sentence: "'Microsoft did not challenge the District Court's findings concerning market share, nor did it argue that such a share [exceeding 95 percent] is not predominant.'" (Pls. Mem., App. A at 144 (quoting 253 F.3d at 54).) Once again, such commentary is not appropriate for estoppel.

- And still other excerpts should be rejected because they include embedded citations to the underlying record. Such excerpts not only are inappropriate for estoppel; they also are likely to confuse the jury.

Several of the excerpts selected by plaintiffs are also so closely related to other excerpts that plaintiffs have ignored that, if *any* estoppel is appropriate, both excerpts should be submitted to the jury in the interests of fairness and completeness. The rules of preclusion require that a jury receive a fair and balanced description of the "scope and effect of the former judgment," including an explanation of what was not decided in that litigation. *Emich Motors Corp.* v. *Gen. Motors Corp.*, 340 U.S. 558, 572 (1951). For instance, plaintiffs have selected the following passage from the "causation"

26

section of the Court of Appeals' opinion, replete with citations, and a parenthetical

quoting Microsoft's counsel during oral argument in the D.C. Circuit:

> "[T]he District Court made ample findings that both
> Navigator and Java showed potential as middleware plat-
> form threats. Findings of Fact ¶¶ 68-77. Counsel for
> Microsoft admitted as much at oral argument. 02/26/01 Ct.
> Appeals Tr. at 27 ('There are no constraints on output.
> Marginal costs are essentially zero. And there are to some
> extent network effects. So a company like Netscape
> founded in 1994 can be by the middle of 1995 clearly a
> potentially lethal competitor to Windows because it can
> supplant its position in the market because of the character-
> istics of these markets.')."

(Pls. Mem., App. A at 149 (quoting 253 F.3d at 79).) If that excerpt regarding alleged

"potential" were to be given preclusive effect, then the jury also should be told that "the

District Court expressly did not adopt the position that Microsoft would have lost its

position in the OS market but for its anticompetitive behavior." 253 F.3d at 107 (citing

84 F. Supp. 2d at 112 (FF ¶ 411)). Without that sentence, the jury will be given a highly

imbalanced view of the district court's conclusions.

Lastly, plaintiffs attempt to obtain preclusion for what they call

Conclusion of Law No. 4, which asserts that "Microsoft never claims that it did not

charge the long-term monopoly price [for its Windows operating system]." (Pls. Mem.,

App. A at 145.) There was no finding or conclusion in the Government Case that

Microsoft charged a monopoly price for Windows or that consumers were overcharged

by Microsoft. Indeed, the district court in the Government Case expressly found that it

was "not possible with the available data" to determine that Microsoft was charging a

monopoly price for Windows 98. 84 F. Supp. 2d at 27 (FF ¶ 65). The D.C. Circuit

similarly concluded that "Microsoft's pricing behavior is . . . equivocal." 253 F.3d at 57.

27

In ruling on the various collateral estoppel motions before it, including one filed by a class of consumers, the MDL court thus held that plaintiffs in a private antitrust action must "prove that [they] suffered injury-in-fact caused by the asserted antitrust violation and that this injury constituted 'antitrust injury.'" 232 F. Supp. 2d 538.  As the MDL court recognized, "[n]othing in the government case against Microsoft demonstrates that the consumer plaintiffs . . . suffered any such injury." *Id.*

IV.     **The Application of Collateral Estoppel Would Be Unfair to Microsoft.**

The Minnesota Supreme Court has held that "[c]ourts do not apply collateral estoppel rigidly and focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged." *Nelson* v. *American Family Ins. Group*, 651 N.W.2d 499, 511 (Minn. 2002).  Applying offensive collateral estoppel in this private action would be fundamentally unfair to Microsoft.

A.     **Plaintiffs Should Not Be Permitted to "Cherry Pick" Favorable Findings from the Government Case.**

Collateral estoppel is a tool of equity.  If plaintiffs are allowed to invoke collateral estoppel, the Court should prohibit them from presenting any claims relating to issues on which plaintiffs did not prevail in the Government Case.  Conversely, if plaintiffs wish to relitigate certain issues decided adversely to plaintiffs in the Government Case, then Microsoft should be given a comparable opportunity to relitigate issues decided adversely to it in that case.  This result is compelled by basic considerations of fairness because the jury otherwise will be presented with a one-sided and misleading account of the Government Case.  At the very least, the jury should be

told that Microsoft prevailed on four of the five claims asserted in the Government Case, and even prevailed on a large portion of the government's monopoly maintenance claim.

This Court has broad discretion to determine whether and under what circumstances offensive collateral estoppel should be applied. *See Parklane Hosiery*, 439 U.S. at 331. "A subsequent plaintiff should not be allowed to select those earlier findings which aid it, while asking a court to disregard the rest." 11 JOSEPH P. BAUER, KINTNER FEDERAL ANTITRUST LAW § 82.3, at 193-94 (1998). As one Minnesota court noted, "[i]t would be improper . . . to permit the [plaintiffs] to bind the defendants to those . . . determinations which are considered favorable and litigate only the determinations considered unfavorable." *Bogenholm* v. *House*, 388 N.W. 2d 402, 408 (Minn. Ct. App. 1986). For this very reason, Judge Michael J. O'Melia in a related class action pending in Arizona held that "if Microsoft was not liable in respect to a certain claim or act in the Federal proceedings, [plaintiffs] will not be allowed to assert those claims in this action." (June 25, 2002 Order (attached as Exhibit E to the Crosby Aff.).)

**B.    The Application of Collateral Estoppel Would Cause Juror Confusion and Distort the Resolution of Closely Related Issues.**

Collateral estoppel is inappropriate when there are closely related issues remaining for resolution because of the risks of having "precluded" issues distort the jury's resolution of the "open" ones. There are many important differences between the issues in the Government Case and this action. For example, there was no determination in the Government Case that consumers were overcharged, and the issues of market impact and causation were resolved under a relaxed standard applicable only to government enforcement actions. In addition, the Government Case focused on acts and

conditions between 1995 and 1998, and the findings that plaintiffs now selectively invoke

were based "[u]pon the record before the [district court] as of July 28, 1999." 84 F.

Supp. 2d at 12.  Plaintiffs here, on the other hand, seek to litigate significant issues on

both sides of the 1995 to 1998 time period.  They apparently intend to argue that at some

point before May 18, 1994 (the inception of the class period), Microsoft "willfully

acquired and/or maintained its monopoly power" in violation of Minnesota antitrust law

(Second Am. Compl. ¶ 162), something the government never claimed, let alone proved,

in the earlier litigation.  Moreover, plaintiffs here will seek to prove issues of market

definition and market power and to challenge Microsoft conduct for a period well after

the record in the Government Case closed.

      Issue preclusion does not extend to conduct or conditions on either side of

the evidentiary period covered by the previous findings.  As one court stated, "[u]nless it

is shown that the condition found at a first trial is so permanent as to be unlikely to be

disturbed, then we think offensive collateral estoppel may not be used with respect to that

condition unless it be shown that the facts upon which the condition was based continue

to exist."  *Dracos* v. *Hellenic Lines Ltd.*, 705 F.2d 1392, 1397 (4th Cir. 1983), *cert.*

*denied*, 474 U.S. 945 (1985).[6]

---

[6] *See generally Popp Telecom* v. *American Sharecom, Inc.*, 210 F.3d 928, 940 (8th Cir. 2000) (presence of "common issue" between two cases is not sufficient to justify issue preclusion where "the inquiries encompass different time periods and are thus, not identical."); *Harkins Amusement Enters., Inc.* v. *Harry Nace Co.*, 890 F.2d 181, 184 (9th Cir. 1989), cert. denied, 488 U.S. 1019 (1989) (issue preclusion not available to the extent "the plaintiff alleges conduct that occurred in a different time period.").

Courts have rejected giving preclusive effect to findings of fact because of concerns about the risk of plaintiffs "unduly swaying or confusing the jury" through skillful use of prior findings. *Whelan* v. *Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 906 (1992). The D.C. Circuit, acknowledging the heightened risks of unfairness when bench trial findings are offered in a subsequent jury trial, stated:

> A ruling for the Whelans on issue preclusion might have given them a head start larger than warranted in the jury's deliberations. The [district] judge, in other words, indicated concern not simply about the differences in factfinders; rather his practical judgment turned on the prospect of skewing or distorting the jury's judgment in the particular setting before him. We cannot say that it was unsound for the district judge . . . to exercise his discretion in favor of allowing both sides to submit their full case to the jury's judgment.

*Id.*

Many findings requested by plaintiffs were written in such a way as to suggest that the conduct or the conditions they describe continue to this day, when in fact the findings pertained only to the period of 1995 to 1998. Likewise, plaintiffs wish to rely upon certain findings that contain speculation about Microsoft's ability to impose a monopoly overcharge, even though the district court and the D.C. Circuit elsewhere concluded that it was "not possible" to determine whether this had ever happened. In short, preclusion would allow plaintiffs to use strategically selected findings from the Government Case to influence the outcome of all the other disputed issues in this action, including issues not present in the earlier case.

31

**C.    The Application of Collateral Estoppel Would Not Promote Judicial Economy or Efficiency.**

Offensive collateral estoppel is available only where it will result in real, demonstrable savings and efficiencies that can be achieved in a fair manner. *See Parklane Hosiery*, 439 U.S. at 329-30.

Plaintiffs must still prove causation, antitrust injury and injury in fact under the Minnesota Antitrust Law because these issues were not decided with respect to private antitrust plaintiffs in the Government Case. *See* 232 F. Supp. 2d at 538. Thus, few savings or efficiencies will occur if collateral estoppel is applied. *See, e.g., Setter* v. *A.H. Robins Co.*, 748 F.2d 1328, 1331 (8th Cir. 1984) ("Even if collateral estoppel were invoked here, little court time would be saved, because most plaintiffs . . . claim punitive damages in Dalkon Shield cases, and the same facts, or most of them, that would have been relevant on the issue of liability would still have to come in and be considered by the court or jury on the issue of exemplary damages."); *Held* v. *Mitsubishi Aircraft Int'l, Inc.*, 672 F. Supp. 369, 389-90 (D. Minn. 1987) (denying collateral estoppel in products liability case on issue of defect because issue of causation would still need to be tried).

**D.    The Appearance of Partiality Created by the Trial Judge's Misconduct in the Government Case Creates Too Great a Risk of Unfairness to Permit Collateral Estoppel.**

When sued by a different plaintiff, a defendant should not be bound by an earlier decision "if there is reason to doubt the quality, extensiveness, or fairness" of the prior litigation. *Montana*, 440 U.S. at 164 n.11. It is highly relevant to the fairness inquiry that the D.C. Circuit found that the district judge in the Government Case had engaged in "deliberate, repeated, egregious, and flagrant" violations of the Code of

Conduct for United Sates Judges and the federal judicial disqualification statute, 28

U.S.C. § 455(a), while in the process of preparing and rendering the findings of fact at

issue here. 253 F.3d at 107. The D.C. Circuit emphasized that "the actions of the trial

judge seriously tainted the proceedings before the District Court and called into question

the integrity of the judicial process." *Id.* at 46. The D.C. Circuit removed the district

judge from the case but disqualified him "retroactive only to the date he entered the order

breaking up Microsoft." *Id.* at 116. Although the appeals court found "fair room for

argument that the District Court's factfindings should be vacated *in toto*," it stopped short

of such "full retroactive disqualification" given the enormous resources that already had

been expended and Microsoft's inability to prove that the findings and conclusions were

the product of "actual bias." *Id.* at 116-18.

The "actual bias" standard that governed the D.C. Circuit's *direct* review

is not the standard that governs *collateral* use. On collateral review, the issue is whether

there is "reason to doubt" the fairness of the earlier proceedings, not whether there was

actual harmful error. *Montana*, 440 U.S. at 164 n.11.

*Jack Faucett* illustrates this distinction and is closely on point. At issue

there was the offensive preclusive effect to be given in antitrust litigation to a prior jury

verdict in a related antitrust case. Errors had occurred in the earlier trial, but the Second

Circuit had concluded on appeal that they were harmless and had not resulted in actual

prejudice. The D.C. Circuit explained that its collateral estoppel decision was not

governed by the Second Circuit's harmless error determination because that court "was

reviewing a jury trial that already had transpired and that had produced a lengthy and

complex record." 744 F.2d at 128. The D.C. Circuit continued:

33

> In contrast, our inquiry into the fairness of collateral estoppel is not limited narrowly to a review of a specific record and a specific jury. We must consider whether it is possible that [correction of the errors] could lead a jury in a new trial to reach a different result. Because that possibility cannot be ruled out, offensive estoppel was improvidently granted.

*Id.*; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 29 cmt. j (1982).[7]

This Court should not embrace findings born in the midst of "deliberate, repeated, egregious, and flagrant" misconduct and adopt them as its own; it should not extend and amplify the "effects of imperfections in the adjudicative process beyond the limits of the first adjudication, within which they are accepted only because of the practical necessity of achieving finality." RESTATEMENT (SECOND) OF JUDGMENTS § 29 cmt. g (1982).

In sum, the D.C. Circuit in the Government Case expressly declared that "the actions of the trial judge seriously tainted the proceedings before the District Court and called into question the integrity of the judicial process." 253 F.3d at 46. It would be unfair to Microsoft to permit plaintiffs to accord preclusive effect to findings entered by a judge whose impartiality has been seriously questioned.

---

[7] The D.C. Circuit's decision in *Jack Faucett* has been widely cited and followed. *See, e.g.*, *General Dynamics Corp.* v. *AT&T*, 650 F. Supp. 1274, 1289 (N.D. Ill. 1986) (expressly adopting the "reasoning and holding in *Faucett*" on this point); *Glictronix Corp.* v. *AT&T*, 603 F. Supp. 552, 572, 583 (D.N.J. 1984) (also declining to give offensive preclusive effect to the same Second Circuit judgment, and further concluding that "the possibility" that certain FCC rulings may have resulted from an official's bias and therefore may have suffered from "possible unreliability" "strongly suggests that [the earlier decision] should not be given preclusive effect in this case").

## CONCLUSION

Plaintiffs' motion for the application of collateral estoppel against

Microsoft should be denied in its entirety.

Dated: May 22, 2003                                Respectfully submitted,

*Of Counsel:*                                      By: _____
                                                       Robert L. DeMay (#22081)
Charles B. Casper                                      David R. Crosby (#237693)
MONTGOMERY, McCRACKEN,                             LEONARD, STREET AND DEINARD
  WALKER & RHOADS, LLP                    Professional Association
123 South Broad Street                             150 South Fifth Street, Suite 2300
Philadelphia, Pennsylvania  19109                  Minneapolis, Minnesota  55402
(215) 772-1500                                     (612) 335-1500

Thomas W. Burt                                     David B. Tulchin
Richard J. Wallis                                  SULLIVAN & CROMWELL LLP
Steven J. Aeschbacher                              125 Broad Street
MICROSOFT CORPORATION                              New York, New York  10004
One Microsoft Way                                  (212) 558-4000
Redmond, Washington  98052
(425) 936-8080                                     *Attorneys for Microsoft Corporation*

35

## ACKNOWLEDGMENT

Defendant Microsoft Corporation, by its undersigned attorneys, hereby

acknowledges that costs, disbursements and reasonable attorneys' and witness fees may

be awarded in this action pursuant to Section 549.211 of the Minnesota Statutes.

Dated:  May 22, 2003

David R. Crosby (#237693)