# EXHIBIT 3

1   ROBERT A. ROSENFELD (NO. 86970)
    JESSICA S. PERS (NO. 77740)
2   HELLER EHRMAN WHITE & McAULIFFE LLP
    333 Bush Street
3   San Francisco, California  94104-2878
    Telephone:     (415) 772-6000
4   Facsimile:     (415) 772-6268

5   MICHAEL LACOVARA (No. 209279)
    SULLIVAN & CROMWELL
6   1870 Embarcadero Road
    Palo Alto, California  94303
7   Telephone:     (650) 461-5600
    Facsimile:     (650) 461-5700

8
    Attorneys for DEFENDANT
9   MICROSOFT CORPORATION

10  *Additional Counsel Listed on Signature Page*

11              SUPERIOR COURT OF CALIFORNIA
12                COUNTY OF SAN FRANCISCO
                     DEPARTMENT 305
13

| COORDINATION PROCEEDING SPECIAL TITLE [RULE 1550(b)] | J.C.C.P. No.:  4106 |
|---|---|
| | **MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL** |
| MICROSOFT CASES | |
| | Date:   None Set |
| | Time:   None Set |
| | Dept.:  305 |
| | The Honorable Paul H. Alvarado |
| | Trial Date:      February 3, 2003 |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1

**TABLE OF CONTENTS**

Page

I.    SUMMARY OF ARGUMENT AND BACKGROUND ................................................... 1

II.   ARGUMENT ............................................................................................................. 2

      A.    Standard of Decision ................................................................................. 2

      B.    Plaintiffs Impermissibly Seek Collateral Estoppel for Findings of Fact That Were
            Not Necessary to the D.C. Circuit's Legal Conclusions Adopted By This Court ... 5

III.  CONCLUSION ....................................................................................................... 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

**TABLE OF AUTHORITIES**

Page

**Cases**

*Connors v. Tanoma Mining Co.*,
    953 F.2d 682 (D.C. Cir. 1992) ...................................................................................3

*County of Santa Clara v. Deputy Sheriffs' Ass'n*,
    3 Cal. 4th 873 (1992) ...................................................................................3

*New York v. Microsoft Corp.*,
    224 F. Supp. 2d 76 (D.D.C. 2002) ........................................................... *passim*

*Office of Consumers' Counsel v. FERC*,
    808 F.2d 125 (D.C. Cir. 1987) ...................................................................................3

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*,
    114 F.3d 848 (9th Cir. 1997) ...................................................................................2

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir.),
    *cert. denied*, 120 S. Ct. 350 (2001) ........................................................... *passim*

*United States v. Microsoft Corp.*,
    84 F. Supp. 2d 9 (D.D.C. 1999) ........................................................... *passim*

*United States v. Microsoft Corp.*,
    87 F. Supp. 2d 30 (D.D.C. 2000) ........................................................... *passim*

**Statutes**

Sherman Act, 15 U.S.C. § 1 & 2
    § 1 ...................................................................................8, 14
    § 2 ........................................................................................... *passim*

**Other Authorities**

III PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 651b (2d ed. 2002) ............. 3

18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2002)
    § 132.03[2][g] ...................................................................................2-3
    § 132.03[4][a] ...................................................................................3

RESTATEMENT (SECOND) OF JUDGMENTS (1982)
    § 27 ...................................................................................3
    § 27 cmt. h ...................................................................................3

18A Charles A. Wright et al., Federal Practice and Procedure
    § 4432 (2d ed. 2002) ...................................................................................4, 8

ii

Heller
Ehrman
White &
McAuliffe LLP

1

## I.    SUMMARY OF ARGUMENT AND BACKGROUND

2    On October 10 and 16, 2002, this Court held a hearing on collateral estoppel and ruled that

3    nine legal conclusions reached in *United States v. Microsoft* are entitled to preclusive effect in this

4    litigation.  *See* 10/10/02 Tr. at 8:15 to 10:19.  These conclusions track the market power

5    determinations and the specific, limited instances of anticompetitive conduct that were affirmed by

6    the U.S. Court of Appeals for the D.C. Circuit in the Government Case.  *See United States v.*

7    *Microsoft Corp.*, 253 F.3d 34, 53-56, 61-65, 68, 71-78 (D.C. Cir.), *cert. denied,* 120 S. Ct. 350

8    (2001).  This Court directed the parties to meet and confer for the purpose of attempting to reach

9    agreement on which of the district court's findings of fact in *U.S. v. Microsoft* were "necessary" to

10   each of the nine legal conclusions to be given preclusive effect, *see, e.g.*, 10/10/02 Tr. at 8:12-14,[1]

11   and repeatedly emphasized that Microsoft would not waive any of its objections to collateral

12   estoppel by participating in this process, *see, e.g.*, 10/16/02 Tr. at 55:5-6.

13   The meet and confer process has been a one-way street.  Before the hearing in October,

14   plaintiffs' position was that 383 findings should be accorded preclusive effect.  At the hearing, the

15   Court noted the specific areas where it would find estoppel while rejecting plaintiffs' more

16   sweeping arguments.  Based on that ruling, Microsoft has agreed (subject to all of its ongoing

17   objections) that 266 findings were necessary to the legal conclusions specified by this Court.  *See*

18   App. A (listing conclusions and the necessary findings).

19   Plaintiffs, on the other hand, have not budged from their initial position that 383 findings

20   must be given preclusive effect.  They continue  to seek collateral estoppel for findings that were

21   not necessary to any of the liability determinations affirmed by the D.C. Circuit — a much

22   narrower subset of the liability findings originally made by the district court in the Government

23   _____

24   [1] This Court indicated at one point in its discussion that collateral estoppel would apply to
those findings of fact that "support" the nine legal conclusions.  10/10/02 Tr. at 5:5.  Microsoft
understands the term "support" as synonymous with the "necessary to the judgment" standard used

25   in collateral estoppel analysis, and uses the terms interchangeably in this memorandum.  There
would be no basis under either federal or California law for deviating from the Restatement

26   (Second) of Judgments' definition of "necessity" discussed in Part II-A of this memorandum. *See*
*also* the authorities cited in Microsoft's Mem. In Opp. To Plaintiffs' Proposed Jury Instructions 21-

27   22 & n.22 (Aug. 26, 2002).

28

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

Heller
Ehrman
White &
McAuliffe LLP

1   Case.  As the D.C. Circuit emphasized, it "drastically altered the scope of Microsoft's liability," and

2   "most . . . of the [district court] findings of remediable violations [did] not withstand appellate

3   scrutiny."  253 F.3d at 105, 107.  The district court itself, in its November 1, 2002 decision on

4   remand by Judge Kollar-Kotelly, stated that the "vast majority of factual findings entered by the

5   district court, but not cited by the district court as a basis for § 2 liability," were "unconnected to

6   specific liability findings" drawn by the Court of Appeals - the very same legal conclusions adopted

7   by this Court.  *New York v. Microsoft Corp.,* 224 F. Supp. 2d 76, 138 (D.D.C. 2002).

8          Thus, plaintiffs' continuing demand for collateral estoppel on almost all of the original

9   findings ignores the D.C. Circuit's decision, the district court's November 1 decision, and this

10  Court's decision to limit collateral estoppel to nine specific legal conclusions that were affirmed on

11  appeal.  By definition, findings of fact that were "unconnected to specific liability findings" could

12  not have been "necessary" to the Court of Appeals' decision and thus cannot support the legal

13  conclusions adopted by this Court.[2]  Given plaintiffs' position, there is a dispute over 117 remaining

14  findings.  We explain below why none of these findings was "necessary" to the nine legal

15  conclusions adopted by this Court through the operation of offensive nonmutual collateral

16  estoppel.[3]

17  **II.     ARGUMENT**

18         **A.     Standard of Decision**

19         As the proponents of collateral estoppel, plaintiffs bear the burden of showing, with "clarity

20  and certainty," which findings were necessary to the Court of Appeals' decision.  *Offshore*

21  *Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997); *see also* 18 JAMES WM.

22         [2]  As shown in Microsoft's prior collateral estoppel briefing, under both California and
23  federal law, the relevant issue is not which findings were necessary to the district court's original
    judgment, but rather which findings were necessary to the Court of Appeals' significantly narrower
24  decision.  *See* Microsoft's Mem. In Opp. To Plaintiffs' Proposed Jury Instructions 22 & n.23 (Aug.
    26, 2002).

25         [3]  In addition to reserving all of its objections to collateral estoppel, Microsoft understands
26  that issues about the formatting and presentation of findings to the jury are not being briefed or
    decided at this juncture, but will be addressed after this Court has decided which findings are
27  necessary to the legal conclusions it has adopted.  *See* 10/16/02 Tr. at 53:23 to 54:18.

28

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1  MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.03[2][g], at 132-83 (3d ed. 2002) ("The burden

2  of persuasion to establish the prerequisites of issue preclusion is on the party seeking preclusion.").

3  If there is any ambiguity about whether a particular issue was necessary to the prior judgment,

4  collateral estoppel cannot be applied. *Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C.

5  Cir. 1992).

6  To be eligible for preclusion, findings must be necessary or "essential to the judgment."

7  RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).  In elaborating on this standard, the

8  Restatement explains that "[i]f issues are determined but the judgment is not *dependent upon the*

9  *determinations*, relitigation of those issues in a subsequent action . . . is not precluded."  *Id.* § 27

10  cmt. h (emphasis added); *see also County of Santa Clara v. Deputy Sheriffs' Ass'n*, 3 Cal. 4th 873,

11  879 n.7 (1992) (citing § 27 cmt. h in holding that "broad comments" of the trial court "were

12  unnecessary to the judgment and cannot support a claim of collateral estoppel").[4]  On its face, then,

13  the "necessity" requirement demands much more than simple relevance.

14  Whether a finding was necessary depends on the perspective of the court that rendered the

15  judgment - the D.C. Circuit.  Thus, findings that plaintiffs contend established Microsoft's "intent"

16  were *not* necessary to the judgment because the Court of Appeals expressly limited the utility of

17  such evidence.  "[I]n considering whether the monopolist's conduct on balance harms competition

18  and is therefore condemned as exclusionary for purposes of § 2, our focus is upon the effect of that

19  conduct, not upon the intent behind it." 253 F.3d at 59; *see also* III PHILLIP E. AREEDA & HERBERT

20  HOVENKAMP, ANTITRUST LAW ¶ 651b, at 74 (2d ed. 2002) ("[T]he nature and consequences of a

21  particular practice, not the purpose or intent, are the vital considerations.").  Accordingly, using

22  intent as a justification for preclusion would ignore the D.C. Circuit's treatment of such findings

23

24  _____

[4]  *See generally Office of Consumers' Counsel v. FERC*, 808 F.2d 125, 129 (D.C. Cir. 1987)

25  (citing Restatement § 27 cmt. h in holding that "[i]ssue preclusion applies only if the first
    determination was necessary to the judgment"); 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

26  PRACTICE, *supra*, § 132.03[4][a], at 132-106 (3d ed. 2002) ("When . . . the court makes findings of
    fact, but the judgment is not *dependent* on those findings, they are not conclusive between the

27  parties in a subsequent action based on a different cause of action.") (emphasis added).

28

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1   and would thereby swallow up the "necessity" requirement as a limitation on estoppel. [5]

2       In addition, many of the district court's findings were not necessary to the Court of Appeals'

3   liability determinations.  The D.C. Circuit reviewed each of the twenty acts found to be

4   anticompetitive by the district court, balancing the anticompetitive harm and the procompetitive

5   effect of the specific conduct at issue.  253 F.3d at 58-78.  The Court of Appeals reversed with

6   respect to eight of those acts, and also reversed the district court's "conclusion that Microsoft's

7   course of conduct separately violate[d] § 2 of the Sherman Act."  253 F.3d at 78.  The acts

8   encompassed by this Court's legal conclusions are thus the sole basis for the D.C. Circuit's

9   determination that Microsoft engaged in anticompetitive conduct in violation of § 2 of the Sherman

10  Act.  *See* 253 F.3d at 104 ("Only liability for the § 2 monopoly maintenance violation has been

11  affirmed—and even that we have revised.").

12      The November 1, 2002 district court decision on remand in the Government Case confirmed

13  that "the appellate court did not have occasion to rely upon the vast majority of factual findings

14  entered by the district court, but not cited by the district court as a basis for § 2 liability."  224 F.

15  Supp. 2d at 138.  Accordingly, the district court on remand held that such factual findings,

16  "unconnected to specific liability findings," should not be given weight in fashioning relief.  *Id.*

17  This is so "because no court has yet found that the acts identified in the *Findings of Fact*, but not

18  relied upon for the imposition of liability, visited *any* harm upon competition, let alone a harm

19  which was not outweighed by the simultaneous procompetitive effect."  *Id.* at 139; *see also* 18A

20  CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4432, at 63 (2d ed. 2002) ("If

21  the appellate court terminates the case by final rulings as to some matters only, preclusion is limited

22  to the matters actually resolved by the appellate court, [regardless of] whether it terminated the case

23  on terms that left it unnecessary to resolve other matters . . . .").  If the court in the Government

---

[5]  Although plaintiffs contend that many of the findings "were necessary to establish Microsoft's anticompetitive intent," the Court of Appeals held that evidence of intent "is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct."  253 F.3d at 59.  Plaintiffs never explain how evidence of Microsoft's intent toward, for example, Lotus Notes, helped the appellate court understand the likely effect of the acts found to be anticompetitive.

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

Heller
Ehrman
White &
McAuliffe LLP

Case found that the findings were not relied upon for the imposition of liability, plainly they cannot be "necessary" to the judgment and therefore cannot be preclusive here.

### B. Plaintiffs Impermissibly Seek Collateral Estoppel for Findings of Fact That Were Not Necessary to the D.C. Circuit's Legal Conclusions Adopted By This Court

The following findings of fact included in plaintiffs' request for estoppel were not necessary to the legal conclusions adopted by this Court because they are unconnected to any of the acts found by the D.C. Circuit to be anticompetitive.

**Finding of Fact 78**:  This finding discusses four technologies (Lotus Notes, Intel's Native Signal Processing ("NSP") software, and RealNetworks' and Apple's multimedia playback technologies) that the district court described as "other middleware threats" supposedly "feared" by Microsoft.  *United States v. Microsoft Corp.*, 84 F. Supp. 2d 9, 30 (D.D.C. 1999).  The four technologies discussed in Finding of Fact 78 have no bearing on any of the acts found to be anticompetitive by the Court of Appeals.  Indeed, the appellate court did not even mention those technologies in its opinion, much less rely upon Finding of Fact 78 as a basis for liability.  That finding thus does not support—indeed, it is irrelevant to—any of the legal conclusions adopted by this Court.

**Findings of Fact 79-89**:  These findings describe a proposal that Microsoft supposedly made to Netscape in June 1995 and that Netscape rejected.  *Id.* at 30-33.  The district court relied upon Findings of Fact 79-89 only as evidence of an unlawful *attempt* to monopolize the putative market for Web browsing software.  *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 45-46 (D.D.C. 2000).  The D.C. Circuit "reverse[d] the District Court's determination of § 2 liability for attempted monopolization."  253 F.3d at 84.[6]  Because the June 1995 discussions were unconnected

_____

[6] Given that Netscape rejected whatever proposal Microsoft made in June 1995, it is not surprising that the district court relied upon these findings *only* in connection with the *attempt* claim that was reversed.  84 F. Supp. 2d at 32-33 (FF 87-89).  The district court did not rely upon any of these findings as a basis for its monopoly maintenance ruling, stating only that the findings provided "context" for Microsoft's subsequent acts.  87 F. Supp. 2d at 39.  Findings that simply provide "context" do not support, and are not necessary to, the Court of Appeals' decision.  Not only was Microsoft's June 1995 proposal to Netscape not among the acts found to be anticompetitive, the Court of Appeals did not even mention the proposal in its opinion or rely upon Findings of Fact 79-89 either as "context" or as an aid to help understand the likely effect of the

*(Footnote continued)*

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

to the Court of Appeals' specific liability findings, Findings of Fact 79-89 do not support any of the legal conclusions adopted by this Court.

**Findings of Fact 90-92**:  The district court found that Microsoft withheld certain technical information (the so-called Remote Network Access API and a scripting tool) from Netscape in the summer of 1995.  84 F. Supp. 2d at 33-34.  These findings are unrelated to any of acts held to be anticompetitive by the Court of Appeals, which never mentioned Microsoft's supposed withholding of technical information anywhere in its opinion.  In fact, the district court that rendered Findings of Fact 90-92 has now expressly cited them as examples of factual findings that were "unconnected to" any of the liability rulings at either the trial or appellate levels:

> For example, Plaintiffs direct the Court to *Findings of Fact* ¶¶ 90-91, wherein Judge Jackson found that Microsoft knowingly withheld "critical technical information" from Netscape, hindering Navigator's ability to interoperate with Windows 95. *Id.* ¶ 90.  Judge Jackson also found that Microsoft withheld "a scripting tool that Netscape needed to make its browser compatible with certain dial-up ISPs." *Findings of Fact* ¶ 92. . . .  Judge Jackson did not ascribe any liability for the above-described acts.

224 F. Supp. 2d at 143.  Because the court that rendered these findings did not "ascribe any liability" for them and they were unrelated to the D.C. Circuit's liability determinations, Findings of Fact 90-92 do not support any of the legal conclusions adopted by this Court.  To tell the jury that they are bound by these facts would be plain, reversible error, as it would suggest that the courts have already determined that the described conduct was unlawful when, in fact, this has never occurred.

**Findings of Fact 93-132**:  These paragraphs contain the district court's findings relating to Microsoft's interactions with (i) Intel regarding NSP software, (ii) Apple regarding QuickTime, (iii) RealNetworks regarding streaming media software, and (iv) IBM regarding SmartSuite.  84 F. Supp. 2d at 34-43.  These findings cannot have been necessary to any of the market power or entry barrier conclusions, as there is no reference to NSP, QuickTime, RealNetworks or SmartSuite anywhere in the Court of Appeals' opinion.  Nor were these findings necessary to or supportive of

_____

acts found to be anticompetitive.

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1  either the district court's or the Court of Appeals' determination that Microsoft engaged in

2  anticompetitive conduct in violation of Section 2. In its conclusions of law, the district court stated

3  only that Microsoft's interactions with Intel, Apple, RealNetworks and IBM were analogous to

4  Microsoft's June 1995 interactions with Netscape, which, in turn, provided no more than "context"

5  for Microsoft's subsequent acts. 87 F. Supp. 2d at 39.[7] Verifying the ancillary role of these

6  findings, the Court of Appeals did not hold Microsoft liable for any of the conduct described in

7  them. 253 F.3d at 58-78. Applying collateral estoppel to these findings would thus be highly

8  unfair and wrong as a matter of law.[8]

9  **Findings of Fact 136-142**: These findings discuss various efforts by Microsoft to increase

10 the usage share of Internet Explorer. Judge Jackson grouped these findings under the heading

11 "Giving Internet Explorer Away and Rewarding Firms that Helped Build Its Usage Share." 84 F.

12 Supp. 2d at 44-46. The consumer and competitor plaintiffs did not seek preclusion for these

13 findings in the MDL proceedings in Baltimore. These findings cannot be given preclusive effect

14 here because they describe conduct that was found to be *lawful* by the Court of Appeals in the

15 Government Case. The district court relied on Findings of Fact 136-142 as support for its "course

16 of conduct" liability determination, 87 F. Supp. 2d at 44, which the Court of Appeals reversed, 253

17 F.3d at 78. In fact, the Court of Appeals expressly held that providing Internet Explorer "free of

18 charge" and bestowing "blandishments" on firms that distribute and promote it were *not*

19 anticompetitive. 253 F.3d at 68, 75. No estoppel against Microsoft can be applied for acts found

20

21  [7]  In her November 1, 2002 decision, Judge Kollar-Kotelly specifically cited one of those
findings—Finding of Fact 129—as an example of a factual finding for which Judge Jackson
22  ascribed no liability, 224 F. Supp. 2d at 143, and further stated that Findings of Fact 115-132 "did
not provide a clear basis of liability," *id.* at 163 n.68.

23  [8]  Like other findings discussed above, Findings of Fact 93-132 describe specific conduct by
24  Microsoft that has not "been weighed for competitive and anticompetitive effect." 224 F. Supp. 2d
at 138. These findings are unrelated to the acts found to be anticompetitive and do not support the
25  D.C. Circuit's market definition and monopoly power determinations. Nor did the appellate court
rely on those findings as evidence of intent to help understand the likely effects of Microsoft's
26  conduct. Rather, Findings of Fact 93-132 describe in highly pejorative terms conduct that has not
been held to be anticompetitive. The attraction to plaintiffs of having preclusion on these findings
27  is obvious, but so, too, is the prejudice to Microsoft.

28

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1    lawful.

2        **Findings of Fact 149-155**:  These findings generally discuss the status of Web browsers as

3    "separate products."  84 F. Supp. 2d at 48-49.  These findings supported only the Section 1 tying

4    violation.  *See* 87 F. Supp. 2d at 49.  The government at trial argued that whether operating systems

5    and Web browsers are separate products was not relevant to the Section 2 monopoly maintenance

6    claim; accordingly, the district court relied upon Findings of Fact 149-155 *solely* in connection with

7    the Section 1 tying claim.  *See id.* at 48-50.  The Court of Appeals vacated the tying violation, 253

8    F.3d at 84, and the government subsequently abandoned the tying claim by not pursuing it on

9    remand.  "If the matter is dropped after remand without proceeding to a new final judgment, there is

10   no preclusion at all."  WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4432, at 67.[9]

11       The D.C. Circuit similarly mentioned Findings of Fact 149-155 *only* in the context of the

12   government's unsuccessful tying claim and in reversing the district court's attempted

13   monopolization ruling for failure to define a relevant market limited to Web browsers.  *See* 253

14   F.3d at 81-82, 88 (citing FF ¶¶ 150-151, 153).  In fact, the district court on remand expressly

15   rejected a proposed remedy that was based on Finding of Fact 155 because that finding was

16   unconnected to any liability determination upheld by the Court of Appeals.  *See* 224 F. Supp. 2d at

17   258-59.  These findings thus support only the district court's vacated and reversed liability

18   determinations, and they have no bearing on the only claim on which the government prevailed on

19   appeal.

20       **Findings of Fact 199-201**:  These findings describe the "market" for Web browsing

21   functionality.  84 F. Supp. 2d at 58.  The consumer and competitor plaintiffs did not seek preclusion

22   for these findings in the MDL proceedings.  No court has relied on these findings for any purpose.

23   They have no connection to any of the legal conclusions adopted by this Court, and thus they

24

25       [9]  At the October 10, 2002, hearing, the Court suggested that preclusive effect may apply to
     the findings related to the tying claim.  *See* 10/10/02 Tr. at 7:11-18.  This would be error and should
26   be reconsidered.  It is blackletter law that vacated liability determinations cannot give rise to
     preclusion.  *See* 224 F. Supp. 2d at 258 ("Because the claim was not pursued on remand, there
27   exists no finding that Microsoft illegally 'tied' any product to Windows.").

28

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

1  cannot have preclusive effect.

2  **Findings of Fact 224-227**:  These findings describe a provision in Microsoft's licensing

3  agreements with OEMs that prevented OEMs from installing an alternate user interface or "shell"

4  that obscures the Windows desktop.  84 F. Supp. 2d at 65-66.  The consumer and competitor

5  plaintiffs did not seek preclusion for these findings in the MDL proceedings.  These findings cannot

6  be given preclusive effect here because they describe conduct that the D.C. Circuit determined was

7  *lawful*.  Microsoft asserted that "the prohibition on OEMs automatically launching a substitute user

8  interface upon completion of the boot process" was necessary to protect its copyright.  253 F.3d at

9  63.  The Court of Appeals agreed, holding that "a shell that automatically prevents the Windows

10  desktop from ever being seen by the user is a drastic alteration of Microsoft's copyrighted work."

11  *Id.*  This specific licensing provision is therefore unrelated to any conduct identified by the D.C.

12  Circuit as being unlawful, and the findings describing this provision cannot be subject to estoppel.

13  **Findings of Fact 230-238**:  The district court found that Microsoft pressured certain OEMs

14  to promote Internet Explorer and not to pre-install Navigator.  84 F. Supp. 2d at 66-68.  Although

15  the district court held these findings established anticompetitive conduct in violation of Section 2,

16  87 F. Supp. 2d at 39 (citing FF ¶¶ 230-38), the Court of Appeals did not. [10]  Because Findings of

17  Fact 230-238 are unconnected to any of acts held to be anticompetitive by the appellate court, they

18  do not support the D.C. Circuit's decision.  In fact, it would be inconsistent with that decision to

19  suggest that Microsoft violated Section 2 by rewarding OEMs to distribute and promote Internet

20  Explorer, given the appellate court's conclusion that Microsoft did not violate the Sherman Act by

21  rewarding IAPs to do the same things.  *Compare*, *e.g.*, 84 F. Supp. 2d at 67 (FF 231) *with* 253 F.3d

22  at 68.  It would also be inconsistent with the Court of Appeals' insistence that an anticompetitive

23  effect be shown for this Court to now instruct that unsuccessful attempts to pressure OEMs to stop

24  pre-installing Navigator violated Section 2.  *See* 224 F. Supp. 2d at 138.

25  _____

26      [10]  Although Judge Kollar-Kotelly on remand rejected Microsoft's contention that the Court
of Appeals implicitly reversed this conclusion in reversing the district court's "course of conduct"
liability determination, 224 F Supp. 2d at 99, she did not hold that Findings of Fact 230-238
supported the Court of Appeals' decision.

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

**Findings of Fact 241:**  This finding summarizes the district court's previous findings regarding Microsoft's conduct toward OEMs.  *See* 84 F. Supp. 2d at 69.  The consumer and competitor plaintiffs did not seek preclusion for this finding in the MDL proceedings.  It is redundant of previous, more specific findings describing Microsoft's conduct, and is therefore not necessary to any of the D.C. Circuit's legal conclusions adopted by this Court.  In addition, reading this finding to the jury would be unduly prejudicial as it refers to conduct, such as exchanging valuable consideration for promotion of Microsoft's browser and unrealized threats, that was never found to be anticompetitive.  *See* 253 F.3d at 78 (holding lawful "expenditures in promoting [Microsoft's] browser").

**Findings of Fact 246-247:**  These findings describe Microsoft efforts to encourage IAPs to use Internet Explorer by offering "reductions in the referral fees" and "cash bounties."  84 F. Supp. 2d at 70-71.  The consumer and competitor plaintiffs did not seek preclusion for these findings in the MDL proceedings.  These findings do not refer to contracts with IAPs to offer Internet Explorer exclusively, making them extraneous to the liability determinations affirmed by the Court of Appeals.  In addition, both findings refer to conduct amounting to "expenditures in promoting [Microsoft's] browser," which the D.C. Circuit held was lawful.  253 F.3d at 78; *see also* 224 F. Supp. 2d at 145-46 ("There are no liability findings in this case which condemn Microsoft solely for the use of valuable technical information as consideration in contracting with third parties;  only where such agreements required the use of Microsoft technology to the exclusion of third-party technology did the appellate court find antitrust violations.").  No court relied on either of these findings to support a liability determination, and thus they are not necessary to any of the legal conclusions adopted by this Court.

**Findings of Fact 248-252:**  These findings discuss Microsoft's development and free distribution of the Internet Explorer Access Kits ("IEAK").  84 F. Supp. 2d at 71-72.  The consumer and competitor plaintiffs did not seek preclusion for these findings in the MDL proceedings.  The Court of Appeals expressly determined that there was nothing anticompetitive about Microsoft's free distribution of the IEAK.  *See* 253 F.3d at 68 ("[W]e therefore have no warrant to condemn

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

Microsoft for offering either IE or the IEAK free of charge or even at a negative price.").  These findings are also unrelated to Microsoft's contracts with IAPs to offer Internet Explorer exclusively.  The legal conclusions identified by this Court made no mention of the IEAK, and the Court of Appeals ascribed no liability to Microsoft's free distribution of the IEAK.  It is inexplicable why plaintiffs continue to seek preclusion regarding findings that describe lawful conduct.

**Findings of Fact 259-260**:  These findings involve Microsoft's expenditures to promote Internet Explorer through the Referral Server agreements.  *See* 84 F. Supp. 2d at 73-74.  The consumer and competitor plaintiffs did not seek preclusion for these findings in the MDL proceedings.  These findings have nothing to do with IAPs' obligation to offer Internet Explorer exclusively under the contracts condemned by the Court of Appeals.  Rather, they describe Microsoft's expenditures to encourage IAPs to promote Internet Explorer, conduct that the D.C. Circuit found to be *lawful*.  253 F.3d at 78; *see also* 224 F. Supp. 2d at 145 ("Importantly, however, the appellate court expressly noted that the mere fact that Microsoft exchanged 'costly technical support and other blandishments' in conjunction with the [First Wave] agreements was not a basis for the imposition of liability.").  These findings were therefore unnecessary to the liability determination affirmed by the Court of Appeals.

**Finding of Fact 295**:  This finding describes a Promotional Services Agreement in which Microsoft made incentive payments to AOL in exchange for promotion of software that included Internet Explorer.  *See* 84 F. Supp. 2d at 82-83.  The consumer and competitor plaintiffs did not seek preclusion for this finding in the MDL proceedings.  As with Findings of Fact 259-60, these findings are unrelated to IAPs' agreements to offer Internet Explorer exclusively - the provision found to be unlawful.  *See* 224 F. Supp. 2d at 164 n.70 (explaining that it is only "the conditioning of the receipt of consideration upon some degree of exclusivity which raises antitrust concerns").  Also like those findings, Finding of Fact 295 refers to Microsoft expenditures in promoting its browser, which were determined to be *lawful*.  253 F.3d at 78.  This finding is thus unnecessary to support any of the legal conclusions adopted by this Court.

**Finding of Fact 379**:  The district court found that various acts by Microsoft "inflicted

11

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

considerable harm on Netscape's business." 84 F. Supp. 2d at 103. That court stated that "Netscape was forced to follow suit" after "Microsoft started licensing Internet Explorer at no charge, not only to OEMs and consumers, but also to IAPs, ISVs, ICPs, and even Apple." *Id*. Finding of Fact 379 does not support any part of the Court of Appeals' decision. In fact, the D.C. Circuit held that the focus of this finding—licensing Internet Explorer at no charge—did not violate Section 2. As that court noted, "plaintiffs argued that by pricing below cost on IE (indeed, even paying people to take it), Microsoft was able simultaneously to preserve its stream of monopoly profits on Windows, thereby more than recouping its investment in below-cost pricing on IE." 253 F.3d at 68. The D.C. Circuit concluded, however, that Microsoft did not violate the Sherman Act by offering Internet Explorer "free of charge or even at a negative price," explaining that "the antitrust laws do not condemn even a monopolist for offering its product at an attractive price." *Id*. The appellate court also pointed out that "[t]he District Court did not assign liability for predatory pricing." *Id*.

**Findings of Fact 380-385**: Based on a record that closed on June 24, 1999, Findings of Fact 380-385 attempted to predict the future prospects of Netscape Navigator—in particular, whether AOL in future years would take steps to increase Navigator's usage share and develop Navigator as a platform for applications. 84 F. Supp. 2d at 104-05. Because the Court of Appeals did not rely in any way upon the predictions set forth in these findings, they do not support its decision. Plaintiffs here should be required to establish Navigator's usage share and prospects as a platform based on evidence of what actually has happened over the last three and one-half years and what is likely to happen hereafter, not on dated predictions from 1999 that have been overtaken by events.

**Findings of Fact 389-393**: These findings relate to Microsoft's development of its own Java Virtual Machine ("JVM") that was incompatible with Sun's JVM. 84 F. Supp. 2d at 105-06. The Court of Appeals expressly "reverse[d] the District Court's imposition of liability for Microsoft's development and promotion of its JVM." 253 F.3d at 75. In addition, these findings cannot be said to be "necessary" to the D.C. Circuit's judgment on the ground that they provide

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

necessary background to other Java-related acts found to be anticompetitive (the First Wave

Agreements, deception of Java developers, or the threat to Intel).  *See id.* at 75-78.  The relevant

background to those other acts is set forth in Findings of Fact 386-388, 84 F. Supp. 2d at 105,

which Microsoft does not challenge under this Court's standard (subject to Microsoft's ongoing

objections to collateral estoppel in general).  There is thus no justification for according preclusive

effect to Findings of Fact 389-393, which criticize Microsoft for engaging in conduct found to be

lawful by the D.C. Circuit.

**Findings of Fact 397-398**:  The district court found that Microsoft bundled a version of its

JVM with every copy of Internet Explorer, guaranteeing the presence of Microsoft's JVM on every

PC.  *See* 84 F. Supp. 2d at 107-08.  The district court also found that Microsoft adversely affected

Netscape's ability to distribute a Sun-compliant JVM with every copy of Navigator.  *Id.*  Neither

finding supported the Court of Appeals' liability decision.  The D.C. Circuit did not assign liability

for Microsoft's inclusion of its JVM with every copy of Internet Explorer.  In addition, the

Microsoft conduct that affected Netscape's ability to "afford to do the engineering work necessary

to continue bundling up-to-date JVMs with Navigator," *id.* at 108 (FF 397), was primarily the

licensing of Internet Explorer at no charge, which the appellate court held did not violate the

Sherman Act.  253 F.3d at 68. [11]

**Findings of Fact 402-403**:  Finding of Fact 402 refers to an agreement with an unidentified

ISV, and Finding of Fact 403 refers to a July 18, 1997 agreement with RealNetworks.  *See* 84 F.

Supp. 2d at 109.  These findings do not support the Court of Appeals' decision.  The district court

expressly stated that the agreements discussed in these findings were "[i]n addition to the First

---

[11]  The D.C. Circuit cited Finding of Fact 397 only in connection with its *reversal* of the
imposition of liability for Microsoft's development and promotion of an incompatible JVM.  253
F.3d at 75.  Although Finding of Fact 398 refers to Microsoft's Java developer tools, the Court of
Appeals held that the development of incompatible developer tools did not violate the antitrust
laws.  *See* 253 F.3d at 76; *see also* 224 F. Supp. 2d at 144-45 ("[T]he imposition of liability for
Microsoft's Java tools concerned not the tools' incompatibility with cross-platform Java, but
Microsoft's deceptive conduct.").  The appellate court went on to hold that Microsoft's "deception"
of Java developers regarding those tools did violate the Sherman Act, 253 F.3d at 76, but that ruling
was supported by Finding of Fact 394, *see* 84 F. Supp. 2d at 106-07, not by Finding of Fact 398.

Heller
Ehrman
White &
McAuliffe LLP

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH
PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

Wave agreements." 84 F. Supp. 2d at 109. The First Wave agreements, however, were the only Java-related agreements found to be anticompetitive by the D.C. Circuit. *See* 253 F.3d at 75-76 (citing FF ¶ 401). These other agreements were never even discussed, let alone found unlawful, by the Court of Appeals.

**Findings of Fact 408-412**: These findings purport to summarize the effect on consumers of all of Microsoft's various efforts to protect the applications barrier to entry. *See* 84 F. Supp. 2d at 110-12. However, many of Microsoft's actions that led to these supposed consumer effects were *found lawful* by the D.C. Circuit. The Court of Appeals reversed on the § 1 tying claim, the § 2 attempted monopolization claim, the § 2 "course of conduct" allegations, and a number of the district court's specific monopoly maintenance determinations - all of which contributed significantly to the effects discussed in these Findings of Fact. Because the findings do not distinguish between conduct found unlawful and conduct ultimately found to be lawful, it would be plain error and highly prejudicial to give preclusive effect to any part of these unsorted findings.

Moreover, none of these findings was necessary to any part of the Court of Appeals' judgment. In its conclusions of law, the district court cited only two of these findings, Findings of Fact 411 and 412, and did so *only* in the section of its conclusions devoted to the so-called "course of conduct" violation that was subsequently reversed by the D.C. Circuit. *Compare* 87 F. Supp. 2d at 44 *with* 253 F.3d at 78. The only one of these findings cited by the Court of Appeals was Finding of Fact 411, which the appellate court cited not in imposing liability, but in pointing out that "the District Court expressly did *not* adopt the position that Microsoft would have lost its position in the OS [operating system] market but for its anticompetitive behavior." 253 F.3d at 107 (emphasis added); *see also id.* at 78.[12]

This Court already has determined that "there still remains in this case to be proved the

---

[12] These consumer harm findings were also unnecessary to the Court of Appeals' liability determination given the relaxed causal standard applied by the D.C. Circuit, and collateral estoppel on these issues would be inappropriate given the sharp differences in the legal standards and proof burdens for establishing injury and causation in the two cases. *See* Microsoft's Mem. in Opp. To Plaintiffs' Proposed Jury Instructions 18-20 (Aug. 26, 2002).

MICROSOFT'S MEMORANDUM CONTESTING 117 OUT OF 383 FINDINGS OF FACT FOR WHICH PLAINTIFFS SEEK OFFENSIVE NONMUTUAL COLLATERAL ESTOPPEL
J.C.C.P. NO. 4106

Heller
Ehrman
White &
McAuliffe LLP

1  actual injury [and] causation which are necessary elements in the private damages action."

2  10/10/02 Tr. at 5:18-20.  These were precisely the concerns raised a year ago by Judge Pollak in

3  rejecting collateral estoppel for these very same findings.  *See, e.g.,* 12/17/01 Tr. at 7:22-8:2, 21:3-

4  28, 23:16-23, 24:17-20, 25:8-18, *attached as* Appendix B to this memorandum.  Plaintiffs have

5  offered no reason for seeking to reverse this prior rejection of collateral estoppel for Findings of

6  Fact 408-412.

7  **III.    CONCLUSION**

8      For these reasons, Microsoft respectfully requests (subject to its ongoing objections to

9  collateral estoppel, and without waiving any of its arguments on appeal) that the Court conclude

10  that the Findings of Fact identified in attached Appendix A were necessary to the nine specific legal

11  conclusions this Court has ruled are entitled to preclusive effect under the doctrine of offensive

12  nonmutual collateral estoppel.  The Court should reject plaintiffs' arguments with respect to all

13  other Findings of Fact.

14  DATED:  December 16, 2002                    Respectfully submitted,

15                                                            HELLER EHRMAN WHITE & McAULIFFE LLP

16

17

18                                        By  /s/ Robert A. Rosenfeld
                                                   ROBERT A. ROSENFELD
19                                                 Attorneys for Defendant
                                                   MICROSOFT CORPORATION
20

21

22

23

24

25

26

27

28

15

# APPENDIX A

## Appendix A

Below is an overview of the Findings of Fact from the Government Case that appear to be necessary to each of the nine specific conclusions of law adopted by this Court during the October 10, 2002 collateral estoppel hearing.  *See* 10/10/02 Tr. at 8:15-10:19.  The Findings of Fact that do not appear in this summary were not necessary to any of these legal conclusions, and are not entitled to collateral estoppel under any standard.[1]

**A.    "Microsoft had monopoly power in the relevant market."**

The following findings of fact are necessary to this conclusion: 1-67.

**B.    "The relevant market was Intel-compatible PC operating systems . . . ."**

The following findings of fact are necessary to this conclusion: 1-67.

**C.    "Microsoft had a predominant share of the relevant market, and the applications entry barrier prevented competitors from seriously threatening Microsoft's market position."**

The following findings of fact are necessary to this conclusion: 1-67.

---

[1]  As discussed in the accompanying memorandum, Microsoft's position concerning the necessity of these findings  to the Court's legal conclusions is subject to all of Microsoft's on-going objections and appellate rights to collateral estoppel identified in its prior written submissions and oral arguments.  The Court has emphasized that Microsoft's participation in this process will not waive or otherwise prejudice any of its objections.  *See, e.g.*, 10/16/02 Tr. at 55:5-6.

**D.**    **"The following license restrictions imposed by Microsoft on OEMs . . . constituted unlawful combinations in restraint of trade:**

      **1.**    **The prohibition on removing the icon for Internet Explorer from the desktop and Start menu;**

      **2.**    **The prohibition on modification of the initial boot sequence;**

      **3.**    **The prohibition on adding icons or folders differing in size or shape from those supplied by Microsoft; and**

      **4.**    **The prohibition on using the Active Desktop feature to promote third party brands."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, 144-146, 148, 156-159, 165, 202-210, 212-223, 228-229, 239-240, and 357-378.

**E.**    **"Two aspects of Microsoft's technological integration of Internet Explorer with Windows, specifically, its decision to exclude Internet Explorer from the Windows Add/Remove programs utility and its commingling of browser Internet Explorer and operating systems Windows code, constituted exclusionary conduct in furtherance of Microsoft's unlawful combinations in restraint of trade as set forth herein."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, 160-170, 173-198, and 357-378.

**F.**    **"Microsoft's exclusive contracts with internet access providers requiring them to offer Internet Explorer either as the default or as the only browser . . . were unlawful combinations in restraint of trade."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, 143-148, 242-245, 253-258, 261-294, 296-310, and 357-378.

**G.**    **"Microsoft's agreements to give preferential support to independent software vendors in exchange for their agreement to use Internet Explorer as the default browser for any hypertext-based user interface, and to implement their help systems through Microsoft's HTML, . . . constituted unlawful combinations in restraint of trade."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, 337-340, and 357-378.

**H.**   **"Microsoft's exclusive agreement with Apple Computer, which required Apple to bundle, IE, with the Mac OS and make IE the default browser on computers running the Mac OS, . . . constituted an unlawful combination in restraint of trade."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, and 341-375.

**I.**   **"The provisions in Microsoft's [First Wave] agreements with ISV's that required them to promote Microsoft's JVM exclusively in order to obtain technical support from Microsoft were anti-competitive, and constituted unlawful combinations in restraint of trade.  Microsoft's deception of ISV's, who were led to believe that Microsoft's Java developer tools would produce cross-platform applications, when in fact, they would produce applications that would only run on the Windows OS, as well as Microsoft's threats of retaliation against Intel if Intel persisted in its efforts to develop a fast, cross-platform JVM, were undertaken by Microsoft in furtherance of this unlawful conduct."**

The following findings of fact are necessary to this conclusion: 68-77, 133-135, 337-340, 386-388, 394-396, 399-401, and 404-407.

SF 812509 v1
12/16/02 1:00 PM (36548.0002)

3

# APPENDIX B

1

| | |
|---|---|
| 1 | SUPERIOR COURT OF CALIFORNIA |
| 2 | COUNTY OF SAN FRANCISCO |
| 3 | BEFORE THE HONORABLE STUART R. POLLAK, JUDGE PRESIDING |
| 4 | DEPARTMENT NUMBER 304 |
| 5 | ---oOo--- |

COPY

6  COORDINATION PROCEEDING )
   SPECIAL TITLE [RULE 1550(B)]          )
7                                         )      CASE NO. JCC 4106
                                          )      **SUMMARY ADJUDICATION**
8  MICROSOFT CASES           )            )
9  _____           )

10                    **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

11                      MONDAY, DECEMBER 17, 2001

12  **APPEARANCES OF COUNSEL:**

13  FOR PLAINTIFFS:

14       TOWNSEND AND TOWNSEND AND CREW
         TWO EMBARCADERO CENTER
15       SAN FRANCISCO, CA  94111-3834
         BY:  **EUGENE L. CREW, ESQ.**
16            **RICHARD L. GROSSMAN, ESQ.**

17  FOR PLAINTIFFS:

18       LIEFF, CABRASER, HEIMANN & BERNSTEIN
         275 BATTERY STREET, 30TH FL.
19       SAN FRANCISCO, CA  94111
         BY:  **MICHELE C. JACKSON, ESQ.**
20

    FOR DEFENDANTS:
21
         HELLER, EHRMAN, WHITE & MCAULIFFE
22       333 BUSH STREET
         SAN FRANCISCO, CA  94104-2878
23       BY:  **ROBERT ROSENFELD, ESQ.**
              **JESSICA PERS, ESQ.**
24

25

26

27

28  REPORTED BY:  RHONDA L.  AQUILINA, CSR #9956, RMR, CRR

1   **APPEARANCES CONT'D.**

2   FOR DEFENDANTS:

3       SENIOR CORPORATE ATTORNEY
        MICROSOFT CORPORATION
4       ONE MICROSOFT WAY
        REDMOND, WA 98052-6399
5       BY:  **STEVEN J. AESCHBACHER, ESQ.**

6

7   FOR DEFENDANTS:

8       COOPER & KIRKHAM
        655 MONTGOMERY STREET, #1700
        SAN FRANCISCO, CA  94111
9       BY:  **JOSEF COOPER, ESQ.**

10

11  FOR DEFENDANTS:

12      LAW OFFICES OF FRANCIS O. SCARPULLA
        275 BATTERY STREET, 28TH FLOOR
        SAN FRANCISCO, CA 94111
13      BY:  **FRANCIS SCARPULLA, ESQ.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   MOTION HAS BEEN TENDERED IT WOULD NOT SERVE ANY PRACTICAL

2   PURPOSE AND REALLY DO NOTHING BUT CREATE CONFUSION IF THE COURT

3   WERE TO GRANT THE PLAINTIFFS' MOTION IN ITS PRESENT FORM.

4       SOME PARTS OF THE FINDINGS THAT WERE MADE BY THE DISTRICT

5   COURT IN THE GOVERNMENT PROCEEDINGS WERE OF COURSE AFFIRMED, AND

6   THAT RELATES TO SOME OF ITS CONCLUSIONS, AND OTHERS WERE

7   REJECTED BY THE COURT OF APPEAL, AND THE PRESENT MOTION REALLY

8   DOES NOT ATTEMPT TO IDENTIFY WHICH IS WHICH.

9       BEYOND THAT, EVEN IF WE WERE TO IDENTIFY SPECIFIC FINDINGS,

10  IT IS OF COURSE TRUE, AS MICROSOFT ARGUES, THAT FINDINGS AND THE

11  CONCLUSIONS IN THE GOVERNMENT ACTION DO NOT ENCOMPASS ALL OF THE

12  ISSUES THAT HAVE TO BE ADJUDICATED OR THAT ARE RAISED BY THE

13  CLAIMS OF THIS CASE.  TO MENTION JUST TWO, FIRST OF ALL, THE

14  FINDINGS AND CONCLUSIONS IN THE GOVERNMENT CASE ENCOMPASS ONLY

15  CERTAIN YEARS.  I BELIEVE THE PERIOD WAS FROM MID-1995 THROUGH

16  1998; WHEREAS, THE PLAINTIFFS IN THIS CASE ARE ALLEGING A

17  BROADER TIME PERIOD, AND I THINK THAT REQUIRES CARE AS TO HOW

18  THAT'S HANDLED.  WE CAN'T IGNORE THE DIFFERENCES IN TIME

19  PERIODS.

20      SECONDLY, WHILE JUDGE JACKSON FOUND THAT THE UNLAWFUL

21  PRACTICES THAT HE CONCLUDED MICROSOFT HAD ENGAGED IN HAD CAUSED

22  HARM TO CONSUMERS, IT IS CERTAINLY TRUE THAT HE DID NOT FIND OR

23  ATTEMPT TO FIND THAT ANY PARTICULAR HARM THAT HAS BEEN ALLEGED

24  IN THIS CASE WAS CAUSED BY THE DEFENDANT'S VIOLATIONS.  AND EVEN

25  ASSUMING THAT THE DEFENDANT IS ESTOPPED TO DENY THE ILLEGALITY

26  OF CERTAIN PRACTICES, THERE OBVIOUSLY REMAINS FOR DETERMINATION

27  SIGNIFICANT ISSUES OF CAUSATION AS WELL AS DAMAGES THAT HAVE TO

28  BE LITIGATED HERE.  I DON'T THINK THAT IN VIEW OF THOSE ISSUES

1    WE CAN GET VERY FAR BY BROAD, SWEEPING STATEMENTS OF THE SORT

2    THAT THE PLAINTIFFS' MOTION ASKS TO HAVE ADJUDICATED.

3        IT SEEMS TO ME THAT THE PROPER APPROACH, AND THERE MAY BE

4    MORE THAN ONE, BUT THE ONE THAT SEEMS TO ME THE MOST PRACTICABLE

5    AS WELL AS PROPER WOULD BE TO INCLUDE IN THE INSTRUCTIONS, WHICH

6    THE COURT IN THIS CASE WILL GIVE TO THE JURY, SPECIFIC FINDINGS

7    OR CONCLUSIONS THAT THE JURY SHOULD BE INSTRUCTED THAT THEY MUST

8    ACCEPT AS TRUE, SO THAT WE WILL STILL BE LEFT WITH THE TASK OF

9    FRAMING A COMPREHENSIVE SET OF JURY INSTRUCTIONS THAT ARE GOING

10    TO ARTICULATE THE ISSUES THAT THE JURY IS GOING TO HAVE TO

11    DECIDE AND PROVIDE THE JURY WITH THE NECESSARY STANDARDS AND

12    GUIDANCE.

13        AS PART OF THOSE INSTRUCTIONS, IT SEEMS TO ME THE COURT

14    SHOULD BE TELLING THE JURY WHICH FACTS THEY HAVE TO ACCEPT AS

15    BEING TRUE, AND THIS APPROACH IS GOING TO REQUIRE A PRECISE

16    ARTICULATION OF EXACTLY WHAT IT IS THAT THE JURY HAS TO TAKE AS

17    BEING TRUE.  I THINK IN THE FIRST INSTANCE THE BURDEN PRESUMABLY

18    IS GOING TO BE ON THE PLAINTIFFS TO ARTICULATE PRECISELY WHAT

19    THOSE MATTERS ARE, AND THEN THIS WILL GIVE THE DEFENDANT AN

20    OPPORTUNITY TO ADDRESS THOSE PRECISE ISSUES, AND THE COURT WILL

21    HAVE TO MAKE SOME DECISIONS, ASSUMING THAT THERE'S NOT COMPLETE

22    AGREEMENT, AS I WOULD NOT EXPECT THERE TO BE.

23        IN ANY EVENT, IT WILL GET ALL OF US FOCUSED ON THE SPECIFICS

24    AS TO WHETHER OR NOT THIS WAS A FACT THAT WAS FOUND AND

25    ULTIMATELY ADJUDICATED FAVORABLY TO THE GOVERNMENT IN THE

26    GOVERNMENT PROCEEDINGS OR NOT.  I WOULD THINK THAT THE TASK OF

27    PINNING DOWN THOSE PRECISE MATTERS IS SOMETHING THAT WE'RE GOING

28    TO HAVE TO TAKE UP IN THE COURSE OF PRETRIAL PROCEEDINGS.

1    CONSEQUENCES OF ITS OWN UNDESIRABLE CONDUCT."

2    THIS IS ON THE QUESTION OF CAUSATION, YOUR HONOR.

3    **THE COURT:**  BUT MR. CREW, I KNOW WHAT THEY SAID THERE, BUT

4    THOSE WERE VERY BROAD AND SWEEPING STATEMENTS, AND IT WASN'T

5    NECESSARY FOR PURPOSES OF THOSE PROCEEDINGS TO MAKE SPECIFIC

6    DETERMINATIONS AS TO AMOUNTS OF HARM FOR ONE THING, AND THE

7    CHAIN OF CAUSATION THAT WILL APPLY TO PARTICULAR UNLAWFUL

8    PRACTICES THAT HAVE TO BE ADJUDICATED IN THESE PROCEEDINGS

9    BEFORE ANY AWARDS CAN BE MADE.

10    I MUST SAY, I DO HAVE A GENERAL CONCERN ABOUT THE

11    APPROPRIATENESS OF JUST THROWING THAT BROAD FINDING INTO THE

12    MIX, BECAUSE IT DOESN'T REALLY ASSIST IN MAKING THE MUCH MORE

13    SPECIFIC DETERMINATION THAT THE JURY IS GOING TO HAVE TO MAKE AS

14    PART OF THESE PROCEEDINGS.  IT DOES SEEM TO ME THAT IT DOES

15    ASSIST AND WILL AVOID ALL KINDS OF RE-LITIGATION TO ACCEPT FACTS

16    WHICH GO TO THE LIABILITY ISSUES, TO THE UNLAWFULNESS OF

17    PARTICULAR CONDUCT, AND TO THE EXTENT THAT WE CAN AVOID GOING

18    THROUGH THAT AGAIN AS PART OF THESE PROCEEDINGS, THAT SEEMS TO

19    ME THAT THAT IS VERY MUCH CONSISTENT WITH THE OBJECTIVES OF

20    COLLATERAL ESTOPPEL AND WILL IN FACT EXPEDITE THESE PROCEEDINGS.

21    NOW, WHEN WE GET TO THE QUESTION OF CAUSATION AND DAMAGES,

22    THESE BROAD, SWEEPING STATEMENTS REALLY AREN'T GOING TO HELP A

23    JURY VERY MUCH, AND THAT IS WHERE THE PLAINTIFF'S EVIDENCE IS

24    GOING TO HAVE TO FOCUS, AND THAT'S WHAT THE PLAINTIFFS I'M SURE

25    ANTICIPATE THEY'RE GOING TO HAVE TO PROVE.  I'M NOT REALLY SURE

26    WHAT THROWING IN THOSE STATEMENTS FROM THE FEDERAL OPINIONS IS

27    GOING TO ADD OR IN WHAT RESPECT IT'S GOING TO SIMPLIFY THE

28    JURY'S TASK.

1    **MR. CREW:** WELL, MAY I RESPOND TO THAT ONE? IT WILL ADD A

2    LOT, AND IT IS VERY IMPORTANT, AND I'LL TELL YOU WHY.

3    FIRST OF ALL, I'M NOT TALKING ABOUT THE AMOUNT OF DAMAGES.

4    WE OBVIOUSLY HAVE TO CALCULATE DAMAGES, AND WE ARE DOING THAT

5    NOW. WE ARE VIRTUALLY COMPLETE ON THAT. I'M NOT TALKING ABOUT

6    THE DAMAGES.

7    **THE COURT:** BUT CAUSATION IS A PART OF THIS -- CAUSATION AND

8    DAMAGES. YOU CAN'T JUST TAKE ONE WITHOUT THE OTHER.

9    **MR. CREW:** WELL, THERE'S THREE: THERE'S A VIOLATION,

10   THERE'S CAUSATION, THERE'S DAMAGES, A, B, C, THOSE ARE THE THREE

11   THINGS. I'M NOT TALKING ABOUT DAMAGES, THE CALCULATION OF HOW

12   MUCH HARM THEY CAUSED TO THE CLASS OF CONSUMERS I'M TALKING

13   ABOUT, AND I'M NOT TALKING ABOUT LIABILITY NOW, BUT I AM TALKING

14   ABOUT CAUSATION, WHICH IS IN PART A PART OF LIABILITY IN TERMS

15   OF HARM TO COMPETITION. YOU DON'T HAVE A VIOLATION UNLESS YOU

16   SHOW HARM TO COMPETITION AND CONSUMERS.

17   **THE COURT:** YOU HAVE TO SHOW THAT THERE WAS SOME HARM THAT

18   WAS CAUSED, THAT'S RIGHT. YOU HAVE TO SHOW THE FACT OF DAMAGE,

19   AND THAT OBVIOUSLY EMBRACES THE ISSUE OF CAUSATION.

20   **MR. CREW:** RIGHT.

21   **THE COURT:** BUT BY THE SAME TOKEN, WHEN YOU GET AROUND TO

22   DETERMINING DAMAGES, IT'S NOT DAMAGES IN THE ABSTRACT, IT IS

23   DAMAGES THAT WERE CAUSED BY THE PARTICULAR PRACTICES FOUND TO BE

24   UNLAWFUL.

25   **MR. CREW:** RIGHT.

26   **THE COURT:** AND I DON'T THINK THERE'S ANY WAY THAT YOU CAN

27   REMOVE THE ISSUE OF CAUSATION FROM WHAT THE JURY WILL HAVE TO

28   CONSIDER IN ORDER TO DETERMINE RECOVERABLE DAMAGES.

1    **MR. CREW:** WELL, YOUR HONOR, I WOULD ARGUE THAT PART OF THE

2    EVIDENCE OF CAUSATION AND HARM TO COMPETITION AND CONSUMERS, NOT

3    ALL, BECAUSE WE HAVE MORE TO DO IN TERMS OF QUANTIFYING IT, IS

4    ESTABLISH BY THE TWO COURTS' DECISIONS BACK EAST ON THIS.  IT'S

5    VERY CLEAR, AND LET ME JUST SAY IT'S CLEAR THAT THEY DID BECAUSE

6    THE COURT OF APPEALS SAID IT WAS A REQUIREMENT IN ORDER FOR THE

7    GOVERNMENT TO PROVE A VIOLATION.  THE COURT SAID, QUOTE, TO BE

8    CONDEMNED AS EXCLUSIONARY A MONOPOLIST ACT MUST HAVE AN

9    ANTI-COMPETITIVE EFFECT.  THAT IS, IT MUST HARM THE COMPETITIVE

10   PROCESS AND THEREBY HARM CONSUMERS, UNQUOTE.

11   THE COURT SAID THAT OVER AND OVER, SO IT WAS A REQUIREMENT,

12   AND THE COURT HELD THAT THAT REQUIREMENT WAS MET.  SO HARM TO

13   COMPETITION AND CONSUMERS WAS FOUND, AND OF COURSE COUNSEL FOR

14   MICROSOFT WANTS THE FINDING NOT TO GET IN, BECAUSE THEY KNOW

15   THAT IT DOES SUPPORT WHAT WE HAVE TO SHOW.

16   **THE COURT:** BUT YOU SEE, THAT IS A POTENTIALLY PREJUDICIAL

17   STATEMENT, IT SEEMS TO ME, AND I DON'T SEE WHAT IT'S GOING TO

18   ACCOMPLISH, BECAUSE YOU DO HAVE TO PROVE THAT PARTICULAR DAMAGES

19   WERE CAUSED BY UNLAWFUL PRACTICES.

20   NOW, THE FACT THAT THE PRACTICES THAT THE COURT IN

21   WASHINGTON HAS ALREADY ADJUDICATED TO HAVE BEEN UNLAWFUL CAUSED

22   SOME DAMAGE DOESN'T TAKE ANYBODY VERY FAR, IT SEEMS TO ME, IN

23   DETERMINING WHAT DAMAGES WERE CAUSED TO WHOM.

24   **MR. CREW:** YOUR HONOR, AT TRIAL MICROSOFT WILL CONTEND THAT

25   THERE WAS NO VIOLATION, BECAUSE MICROSOFT DID NOT HARM

26   COMPETITION AND DID NOT HARM CONSUMERS.  IN FACT --

27   **THE COURT:** BUT THE COURT IS NOT GOING TO LET MICROSOFT MAKE

28   THAT ARGUMENT.  THE JURY IS GOING TO BE TOLD THAT IT HAS BEEN

1  DETERMINED THAT CERTAIN PRACTICES WERE UNLAWFUL.  THE JURY WILL

2  BE TOLD THAT, AND THE JURY WILL ALSO BE TOLD THAT THE QUESTION

3  WHICH THEY ARE GOING TO HAVE TO DECIDE IS WHAT DAMAGES WERE

4  CAUSED BY THE UNLAWFUL PRACTICES.  IN BROAD OUTLINE ISN'T THAT

5  THE WAY THIS CASE IS GOING TO BE PRESENTED?

6      **MR. CREW:**  YES, EXCEPT, YOUR HONOR, THAT IT'S AN ESSENTIAL

7  ELEMENT OF ILLEGALITY UNDER THE ANTITRUST LAWS THAT MICROSOFT'S

8  CONDUCT CAUSED HARM TO COMPETITION AND CONSUMERS.

9      **THE COURT:**  WELL, TO COMPETITION.

10     **MR. CREW:**  PARDON?

11     **THE COURT:**  TO COMPETITION.  IT NEEDN'T NECESSARILY HAVE

12 BEEN CONSUMERS.  IF THERE WERE NO PASS-THROUGH, AND ALL OF THE

13 HARM WERE INCURRED BY INTERMEDIARIES, THAT WOULD BE SUFFICIENT

14 TO HAVE SUPPORTED THE SHERMAN ACT FINDINGS IN THE GOVERNMENT'S

15 CASE.

16     **MR. CREW:**  YOUR HONOR --

17     **THE COURT:**  IT DIDN'T REALLY MATTER FOR PURPOSES OF THAT

18 CASE PRECISELY WHO WAS DAMAGED, AS LONG AS THERE WAS SOME

19 DAMAGE.  THE FACT OF DAMAGE HAD TO BE ESTABLISHED, AND THAT HAS

20 BEEN ESTABLISHED.  THERE WAS SOME HARM TO SOMEBODY.

21     **MR. CREW:**  YOUR HONOR, IF THE COURT MEANT BY THE WORD

22 CONSUMERS, OEM'S AND INTERMEDIARIES AND NOT THE PUBLIC, THAT'S

23 FINE, I'LL ACCEPT THAT, BUT WHATEVER THEY MEANT BY CONSUMERS,

24 THE COURT FOUND THAT HARM WAS HARMED BY BOTH COMPETITION AND

25 CONSUMER, AND THEY ARE LINKED INEXTRICABLY, YOUR HONOR, BECAUSE

26 THE ONLY WAY YOU SHOW HARM TO COMPETITION IS THROUGH HARM TO

27 CONSUMERS.

28     HERE IS THE WAY YOU SHOW HARM TO COMPETITION IS REDUCED

1  OUTPUT, HIGHER PRICES, LESS INNOVATION, LESS CHOICE.  THAT'S THE

2  WAY YOU SHOW HARM TO COMPETITION.  THAT'S THE WAY YOU SHOW HARM

3  TO CONSUMERS.

4     **THE COURT:**  WELL, LOOK, THE COURT IN THOSE PROCEEDINGS SAID

5  WHAT IT SAID, BUT THE POINT IS IT SEEMS TO ME THAT THERE IS IN

6  FACT A VERY PRACTICAL BENEFIT FROM BEING ABLE TO TELL THE JURY

7  THAT THE ISSUE OF LIABILITY HAS BEEN DETERMINED.  THAT'S NOT A

8  QUESTION WHICH THE JURY NEEDS TO CONSIDER.  THE JURY IS

9  NECESSARILY GOING TO HAVE TO DETERMINE WHAT DAMAGES ARE CAUSED

10  TO CALIFORNIA CONSUMERS AS A RESULT OF THOSE VIOLATIONS, AND I'M

11  NOT SURE REALLY WHAT THE BENEFIT IS OF TELLING THE JURY IT'S

12  ALREADY BEEN DETERMINED THAT THERE WAS SOME HARM CAUSED TO

13  SOMEBODY.  THERE WAS SOME HARM CAUSED TO CONSUMERS, EVEN PUTTING

14  IT IN THE LANGUAGE YOU'D LIKE TO PUT IT, THAT CONSUMERS WERE

15  HARMED, BECAUSE THE JURY IS STILL GOING TO HAVE TO HEAR THE SAME

16  EVIDENCE AND GO THROUGH THE SAME ANALYSIS TO DETERMINE WHAT THE

17  HARM HAS BEEN, AND THE FACT THAT THERE WAS SOME HARM DOESN'T

18  REALLY GET ANYBODY ANYWHERE, IT SEEMS TO ME.

19     **MR. CREW:**  WELL, YOUR HONOR, LET ME SAY IT THIS WAY.  IF

20  MICROSOFT WOULD RECANT -- I WOULDN'T SAY RECANT, IF THEY WOULD

21  CONFIRM, RATHER, THEIR STATEMENT THAT I READ, WHICH WAS THAT

22  PLAINTIFF -- AND I'M QUOTING THEM -- WAS NOT REQUIRED TO PROVE

23  ACTUAL HARM TO COMPETITION OR CONSUMERS, UNQUOTE, IN ORDER TO

24  SHOW A VIOLATION.

25     IF THEY WILL STAND BY THAT AND NOT RECANT ON THAT STATEMENT

26  AT TRIAL, THEN WE'RE OKAY, BUT THEY WON'T, AND THEREFORE WE MUST

27  COMPLY WITH THE LAW AND PROVE HARM TO COMPETITION AND CONSUMERS,

28  AND THESE FINDINGS SUPPORT THAT AND AID US IN THAT EFFORT.

STATE OF CALIFORNIA                    )
                                       )
CITY AND COUNTY OF SAN FRANCISCO       )


    I, RHONDA L. AQUILINA, OFFICIAL COURT REPORTER FOR THE
SUPERIOR COURT OF THE STATE OF CALIFORNIA, CITY AND COUNTY OF
SAN FRANCISCO, DO HEREBY CERTIFY:

    THAT I WAS PRESENT AT THE TIME OF THE ABOVE PROCEEDINGS;

    THAT I TOOK DOWN IN MACHINE SHORTHAND NOTES ALL PROCEEDINGS
HAD AND TESTIMONY GIVEN;

    THAT I THEREAFTER TRANSCRIBED SAID SHORTHAND NOTES WITH THE
AID OF A COMPUTER;

    THAT THE ABOVE AND FOREGOING IS A FULL, TRUE, AND CORRECT
TRANSCRIPTION OF SAID SHORTHAND NOTES, AND A FULL, TRUE AND
CORRECT TRANSCRIPT OF ALL PROCEEDINGS HAD AND TESTIMONY TAKEN;

    THAT I AM NOT A PARTY TO THE ACTION OR RELATED TO A PARTY
OR COUNSEL;

    THAT I HAVE NO FINANCIAL OR OTHER INTEREST IN THE OUTCOME
OF THE ACTION.


DATED:  DECEMBER 21, 2001


_____
RHONDA L. AQUILINA, CSR NO. 9956