IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION.<br><br>This Document relates to:<br><br>*Burst.com, Inc. v.*<br>*Microsoft Corp.,*<br><br>Civil Action No JFM-02-cv-2952 | MDL Docket No. 1332<br><br>Hon. J. Frederick Motz<br>**BURST.COM, INC.'S REPLY TO MICROSOFT'S MEMORANDUM IN OPPOSITION TO BURST.COM'S THIRD MOTION TO COMPEL MICROSOFT TO PROVIDE BASIC DISCOVERY CONCERNING ITS E-MAIL DESTRUCTION** |

*"Get rid of it – don't store it in PSTs, don't keep it around – just get rid of it!"*

Valentine to Allchin, January 22, 2000.

I.  **INTRODUCTION AND SUMMARY**.

Microsoft's opposition rests on three points, each wrong. Microsoft first says that, since employees could save e-mails in numerous places, excluding e-mails from server back-up meant one e-mail fewer *copy*, not one fewer *e-mail*. But this entirely overlooks that Microsoft explicitly told its employees *not* to save e-mails to those other locations. This was no gentle suggestion, but rather a "hard core" matter of "company policy" set by one of Microsoft's most senior executives and specifically approved by Microsoft counsel. The e-mail back-up exclusion went hand-in-hand with the "do not archive your e-mail. Do not be foolish" directive. Because e-mails were *not* being saved elsewhere, excluding e-mails from server back-up meant that e-mails would indeed disappear completely.

Microsoft then argues that it was entitled to purge Burst documents because Burst did not

sue earlier. This is an old refrain. In August of last year, Microsoft told the Court that no prior CID's nor subpoenas nor cases dealt with "streaming media" (video delivery) issues. Microsoft repeats that point now. But beginning in 1997, Microsoft received discovery targeting "streaming media" issues exactly, including a CID from the Department of Justice. As the Findings of Facts themselves prove, streaming media issues were actively litigated in the Government case, and Microsoft and Burst even today are disputing which streaming media findings be given collateral estoppel effect. And, contrary to its brief today, important members of Microsoft's Digital Media Division who dealt with Burst *were* custodians in past matters,[1] including Will Poole, Mike Beckerman, and Anthony Bay, all names prominent in the Microsoft-Burst discussions. See § III, below.

When it finally turns to the substance, the company argues that it did a reasonably thorough job, and should not be faulted for failing "to testify to all details with certitude...." Opp. at 5. But this is not a fight about a few imprecise details: this is a case where Microsoft has not given straight answers to basic questions. After two motions and two 30(b)(6) depositions, Microsoft as an institution still pretends not to know:

- **Who** decided that e-mails alone should be excluded from back-up.
- **Why** e-mails were so singled out.
- **What** the "legal issues" were, identified in Microsoft documents as the justification for the exclusion.
- **When** the automatic back-up exclusion was first implemented. Was it in April 2000 (as Microsoft said last August), in 1996 (as Microsoft said last September),

---

[1] In any event, Microsoft cannot reserve to itself the power of whom to designate as a custodian. Microsoft has a legal obligation to preserve documents reasonably relevant to existing or potential litigation. Microsoft's decision to anoint some but not others as custodians does not trump this obligation.

or in April 2003 (as Microsoft said several weeks ago)?

These were important decisions with important legal consequences, particularly to a company so enmeshed in high-stakes litigation. There is no way that an I.T. technician acting alone decided to exclude an entire class of documents from back-up. There is no way that this mysterious person then lied about it in policy documents and hundreds of server share documents. And there is no way that this all happened to save a few dollars on back-up tapes. Microsoft's explanations are preposterous. But it will not provide the real facts, because it is determined never to admit to a company policy to destroy e-mails.

Microsoft likes to point to Burst as a small and unimportant company. But Burst's motion raises an important question. This dispute goes to the very integrity of the discovery process itself. Microsoft should not be permitted to hide behind exculpatory speculations while refusing to produce the real facts. Somebody at Microsoft knows the answer to these questions; they just don't want to tell us.

## II. MICROSOFT DESTROYED E-MAILS AS A MATTER OF COMPANY POLICY.

Microsoft understandably denies that it destroyed e-mail as a matter of company policy. But it did just that. Consider Jim Allchin's January 2000 e-mail. This is a blunt e-mail from a very powerful, very senior Microsoft executive. Mr. Allchin sent the e-mail to the entire "Windows Division." He did more than just suggest that these executives "clean out their files," but directed them "**do not archive your mail. Do not be foolish. 30 days.**" Mr. Allchin made plain that this was not a decision left to the individual discretion of Microsoft employees: "This is <u>not</u> something you get to decide." He underscored the institutional force behind his e-mail: "This is company policy." And he subsequently testified that his e-mail was "approved by in-house counsel at Microsoft before it was transmitted to other employees." See below, § IV.

Although Microsoft repeatedly denies that there was a company policy against archiving e-mails, it never reconciles this litigation position with the unambiguous and counsel-sanctioned Allchin e-mail. Instead, Microsoft dismisses the e-mail as "totally unrelated to the issues at hand," and somewhat comically says that "Mr. Allchin's message was in direct response to the technical issues raised by archiving enormous amounts of e-mail on a personal computer." Opp. at 23.

Hardly. There is no fair way to read the Allchin e-mail as reflecting this senior executive's concern about "technical issues" in archiving e-mail. To the contrary, Mr. Allchin, still smoking from his e-mail driven cross-examination in the Government case, was enforcing a "do not archive" e-mail policy across the entire Windows Division. That Microsoft still denies this policy, even while hazarding an innocent explanation, illustrates precisely how Microsoft is gaming the discovery process.

Along these lines, Microsoft's approach to document retention makes sense only given a desire to eliminate e-mail. Why else would it exclude e-mails alone from back-up? And if not a reference to litigation, what else could the words "due to legal issues" mean in the no e-mail archive instruction? For that matter, why the manifestly inefficient decision not to map custodians to servers, even though knowing which custodian used which server was the irreducible starting point for document restoration processes? These actions would be irrational absent an overarching desire to root out archived e-mails.

Given these policies, it is no answer to suggest – as Microsoft does – that excluding e-mails from server back-up meant nothing because multiple copies existed elsewhere. All of these policies had, as their object, to ensure that no copies of the e-mails would exist anywhere.

An employee could wholesale delete e-mails saved on a server or personal computer.[2] But this wouldn't wipe the slate clean if e-mails were captured on weekly server back-up tapes. The twin "do not archive, exclude from back-up" policies worked together. Quite literally, Microsoft is arguing that it is okay to purge e-mails *here*, because other copies exist *there*, when in fact there is no there there.

### III.   MICROSOFT HAD A DUTY TO PRESERVE DOCUMENTS REASONABLY RELEVANT TO EXISTING OR ANTICIPATED LITIGATION.

Microsoft concedes that it destroyed the files of two Microsoft employees key to its negotiations with Burst, William Friedman and David del Val. Microsoft concedes that it purged these files long after this Court entered its Preservation of Documents Order in the spring of 2000. And Microsoft also concedes that Bill Schiefelbein, another key witness, systematically purged his e-mail in the summer of 2001. Opp. at 21.

Microsoft defends these deletions by saying it had no obligation to preserve the documents. It says that none of the litigation existing as of 2000 and 2001 involved streaming media issues. It adds that "[n]one of the individuals involved in the Burst discussions were custodians in the overcharge cases, nor did those plaintiffs ask for any documents from them or relating to the media services issues." Opp. at 9.

This is simply not true. In August 1997, the United States Department of Justice served on Microsoft Civil Investigative Demand No. 16943. The CID focused explicitly on "monopolization of audio and video streaming software." It included interrogatories and document production requests going squarely to "competition in the development or sale of audio or video streaming technology or software, including, but not limited to, market studies… the relative strength or weakness of companies producing or selling audio or video streaming

---

[2]    And did. See, e.g., the discussion below of witness Bill Schiefelbein systematically purging his e-mails.

technology or software... supply and demand conditions... attempts to win customers from other companies and losses of customers to other companies..." and the like. See Exhibit 1, at 5.

These streaming media issues were squarely litigated in the Government case. In fact, Microsoft and Burst are even now fighting about which specific streaming media Findings of Fact should be given collateral estoppel effect and which not.

Nor is it true that "none of the individuals involved in the Burst discussions were custodians" in prior cases. Microsoft executive Will Poole met personally with Burst, and decided what Microsoft should do with Burst, when, and how. See Exhibit 2. *Poole was first listed as a custodian in the overcharge cases in 2000.* Similarly, Microsoft executive Mike Beckerman met numerous times with Burst, and was directly involved in developing Microsoft's look alike "Corona" product. Microsoft first listed Mr. Beckerman as a custodian in *1997*, just as it did Paul Maritz, Bob Muglia, and Jim Durkin, all key witnesses here. See Exhibit 3 at 194064.

Without question, Microsoft was under a duty to retain documents. For that matter, this Court's Preservation Order obligated Microsoft to inform plaintiff's counsel of ongoing document and data erasures. Microsoft did not do so. Its document destruction practice and policy matter very much to this litigation.

## IV. **MICROSOFT HAS NOT RESPONDED TO BURST'S DISCOVERY FAIRLY.**

Microsoft argues that it has responded fully, and its failure to "testify to all details with certitude" should not be held against it. Opp. at 5. But this is not a fight about a few missing details. Instead, Microsoft says that it, as an institution, cannot answer even the most basic questions about who decided to exclude e-mails, when, and why. It says it does not know who

added the "due to legal issues" justification, or what those legal issues were. It says it cannot even discover when it enforced the no archive policy with the automatic back-up exclusion, although it previously twice relied on that exclusion in arguing to this Court that Burst's motion should be denied because Burst sought documents that, by definition, could not exist.[3]

Burst can prove that Microsoft has been evading discovery on these significant questions. Consider the following two examples:

First, on the Allchin e-mail. In this case, Microsoft now says that "Mr. Allchin was already questioned about this e-mail," and that "Mr. Allchin's message was in direct response to the technical issues raised by 'archiving' enormous amounts of e-mail on a personal computer." Opp. at 23.

Microsoft attaches as Exhibit 8 a February 13, 2002 Allchin deposition transcript in the remedy phase of the DOJ case as support for its assertions. But that deposition transcript proves that: (1) Microsoft had not produced the Allchin e-mail to the governmental plaintiffs; and (2) Mr. Allchin profoundly misrepresented the nature and substance of his e-mail while under oath, which he could do with impunity because counsel examining him did not have the actual e-mail itself. Here was Mr. Allchin's sworn testimony two short years ago:

> Q: Were these instructions [his e-mail] that you issued in writing?
>
> A: Following the document retention?
>
> Q: Yes.
>
> A: Yes, I believe so.

---

[3] See Microsoft's Amended Memorandum in Opposition to Burst.com's Amended Motion to Compel Microsoft to Search for and Produce Key E-mails at 10-11. ("[N]o later than April 2000, the company enforced that policy by automatically excluding documents with ".pst" extensions – signifying e-mail messages – from being backed up. *Id.* Thus, for most of the time at issue, there is a very low likelihood that any e-mail would be found on the file server back-up tapes at all.").

Q: And did you issue those approximately a year and a half ago?

A: Oh, I don't know. Don't know.

**MR. HOUCK:** **I would like to make a request on the record for those instructions, please.**

MR. HOLLEY: We'll take it under advisement. **Discovery is closed.**

\*\*\*

Q: Rob Short was deposed in this case on February 8, just a few days ago. Is he somebody who works in your organization?

A: Yes, he is.

Q: I have a rough transcript, which means it's not – it's the first transcript produced by the court reporter who – she hasn't had an opportunity yet to go through and clean up the errors. So I want to acknowledge that, but I want to read you some testimony that Mr. Short gave on February 8th and ask you some questions about that. The question was: Do you know how long your E-mail is saved or how it's otherwise stored? And he answered: It's saved on my machine – well, I keep it on a server and I had a rule on the server, until the legal department told me to change it, that deleted my E-mail after a month – after a month's, and I have one folder, I think, that I moved some things into that lasted a little longer than that, but **Jim Allchin has a policy that says we don't keep E-mails, that saves him trouble.**

**Do you know what he's talking about?**

MR. HOLLEY: Object to the form of the question.

A: **I am sure that I have – I've told people that unless you have business reasons to keep it, there's no reason to keep the E-mail. In Microsoft we have a policy of generally for people have 100 megabytes of storage for E-mail. They obviously run out of that pretty quickly. I get nothing but complaints about running out of the storage. And so I encourage people to discard stuff. It's also confusing stuff when you have old specs that aren't the current specs. I want the things to be current.**

\*\*\*

Q: Do you know whether you saved the E-mail that reflected your instructions in that regard?

A: No, I don't know that. It wouldn't have been applicable to this case.

\*\*\*

Q: This E-mail that contained your instructions about document retention, did you clear that with the legal department before you sent it out?

A: I think I did, yes.

Q: Do you recall who in the legal department you ran it by?

A: Well, there were several. I don't remember who. **I know that there were discussions specifically about this. I had asked for help on that.**

**Q: Is it your understanding that your E-mail was approved by in-house counsel at Microsoft before it was transmitted to other employees?**

**A: Yes.**

Exhibit 8 at pp. 5-6.

Mr. Allchin's sworn description of his e-mail is pleasantly benign. But it bears little resemblance to what the e-mail actually said. Here is his actual e-mail and the Valentine mail to which he is responding:

> From: Jim Allchin
> Sent: Sunday, January 23, 2000 9:46 AM
> To: Brian Valentine; Windows Division
> Subject: RE: Email Archives
>
> Being even more hardcore....
>
> This is not something that you get to decide. This is company policy. Do not think this is something that only applies to a few people. Do not think it will be ok if I do this; it hasn't caused any problems so far. Do not archive your mail. Do not be foolish. 30

> days.
>
> Jim
>
> From:        Brian Valentine
> Sent:        Saturday, January 22, 2000 11:43 AM
> To:          Windows Division
> Subject:     Email Archives
> Importance:  Low
>
> I'm not really picking on the person below… but we should really be using wise email retention practices of keeping nothing older than 30 days of old email. I mean this – purge every 30 days… I personally only keep 15 days… to prove it here is the property page (right click on the folder) on my Sent Items folder (but it's the same on all my folders)… **get rid of it – don't store it in PSTs, don't keep it around – just get rid of it!** Auto-Archive is setup in the Tools->Options->Other tab as to how often it runs.

See MS-CC-BU 364288.

It was false for Mr. Allchin to say that his e-mail reflected a concern about storage space. It was false for Mr. Allchin to testify that his e-mail was prompted by a concern about "confusing stuff when you have old specs that aren't the current specs. I want the things to be current." There is no way to reconcile this testimony with the text – with its clear do "not be foolish" and "get rid of it" direction.

Mr. Allchin confirmed that in-house counsel approved the e-mail before he sent it to the "Windows Division." Microsoft lawyers were clearly involved in e-mail retention and destruction policies. Id. ("I know that there were discussions specifically about this"). Microsoft should inquire of these counsel and properly educate its 30(b)(6) witness. This testimony is also significant, for Microsoft counsel now come before this Court, saying that there was no "company policy" about e-mail destruction. How do they reconcile this representation with Mr. Allchin's sworn testimony? See, e.g., Opp. at 5 ("While we are unaware of the standards Burst counsel employs, Microsoft's counsel do not file pleadings while secretly

withholding information inconsistent with the statements made").[4]

Another example: in 1999, Sun moved for an order to compel Microsoft to search server back-up tapes for Jim Allchin and Bill Gates' (amongst others) archived e-mails. As noted in past briefing, Microsoft did not respond that this was an impossibility, as the system automatically excluded e-mails from back-up.[5] Instead, the company fought and lost the motion on the merits, searched the e-mail tapes, and discovered archived e-mails. In this process, Microsoft IT employees testified that prior to their search, Bill Gates' personal technical assistant had recalled the Gates tapes from archive, located the archived e-mail files, and then purged those files. For this reason, when the tapes were re-pulled for production, the e-mail files were empty. See Mark Johnson Depo. at 42, Exhibit 5.

These examples typify the approach that Microsoft has taken in responding to Burst discovery on these e-mail issues. Microsoft is hiding the ball.

## V. THE SPECIFIC RELIEF SOUGHT.

Microsoft does not dispute that the Law Department server ("Litigate One") is immune from periodic purging. Microsoft should be ordered to review the information on the server, and back-up tapes for the server, for all documents reflecting or relating to Microsoft's e-mail destruction and retention policies. It appears highly likely that there will be candid discussions of the "legal issues" justifying the do not archive e-mail policy, the automatic back-up exclusion, and the like. Microsoft should discover which Microsoft lawyers "specifically" discussed these issues (evidently more than once) with Mr. Allchin. Mr. Allchin testified that he "asked for

---

[4] The copy of Exhibit 8 Microsoft provided with its opposition brief was largely illegible. After several requests, Microsoft counsel provided a legible copy the afternoon of the day Burst filed this Reply. In the event the Court's copy of Microsoft's Exhibit 8 is likewise illegible, we attach a clean copy here as Exhibit 4.

[5] Ms. Dawson provided a Declaration opposing Sun's motion but said nothing about an automatic exclusion or that e-mails could not exist on the back-up tapes. This is a peculiar omission if the system automatically excluded e-mails from back-up, as Microsoft claims now.

help" on this subject from his lawyers; how can it be that no one remembers anything now? In short, Microsoft should be told to dig out the facts; only then will it do so. Microsoft should interview Messrs. Gates and Allchin, and other senior executives and Microsoft lawyers, involved in e-mail destruction litigation decisions. It should then properly educate its witness.[6]

DATED: May 17, 2004

        SPENCER HOSIE (Ca Bar # 101777)
        BRUCE J. WECKER (Ca Bar # 078530)
        JOHN BURRITT McARTHUR (Ca Bar # 159793;
          Texas Bar #13325650)
        GEORGE F. BISHOP (Ca Bar # 89205)
        JAMES T. McCARTT (Ca Bar # 121983;
          Texas Bar # 13376350)
        HOSIE, FROST, LARGE & McARTHUR
        One Market, Spear Street Tower, 22nd Floor
        San Francisco, CA 94105
        Telephone: 415-247-6000

        ROBERT YORIO (Ca Bar # 93178)
        COLBY B. SPRINGER (Ca Bar # 214868)
        CARR & FERRELL, LLP
        2225 East Bayshore Road, Suite 200
        Palo Alto, CA 94303
        Telephone: 650-812-3400

By: _____
      Spencer Hosie
      Attorneys for Plaintiff Burst.com, Inc.

---

[6] It is no answer to say that Burst will have the opportunity to question Mr. Allchin and Mr. Gates. These depositions are sharply limited in time, with the Gates deposition being set for only three hours, and there is much ground to cover. Apart from this, Burst is entitled to have its substantive discovery answered substantively, especially after such a protracted effort.

## PROOF OF SERVICE

I am employed in the State of California, County of San Francisco. I am over 18 years of age and am not party to the within action. My business address is One Market, Spear Tower, Suite 2200, San Francisco, California 94105.

On May 17, 2004, I served upon counsel named below as indicated:

**BURST.COM, INC.'S REPLY TO MICROSOFT'S MEMORANDUM IN OPPOSITION TO BURST.COM'S THIRD MOTION TO COMPEL MICROSOFT TO PROVIDE BASIC DISCOVERY CONCERNING ITS E-MAIL DESTRUCTION**

John W. Treece *(via Facsimile and Federal Express)*
Susan Harris
**SIDLEY AUSTIN BROWN & WOOD LLP**
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Fax: 312.853.7036

Executed this May 17, 2004.

_____
Jerry Shaw