# BOIES, SCHILLER & FLEXNER LLP

570 LEXINGTON AVENUE • 16TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

September 24, 2004

**By Federal Express**

Honorable J. Frederick Motz
United States District Judge
United States District Court
  for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

> Re: *In Re Microsoft Corp. Antitrust Litigation* (Competitor Cases)
> MDL 1332 (D. Md.)

Dear Judge Motz:

> Enclosed is a courtesy copy of Nonparty SBC Communications Inc.'s Objections to Access by Designated In-House Counsel for RealNetworks, Inc. and Microsoft Corp. to SBC Communications Inc.'s Confidential Materials, with attached exhibits, filed in the above-referenced action.

> Respectfully yours,

> Steven I. Froot

Enclosure

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

|  |  |  |
|---|---|---|
| IN RE MICROSOFT CORP ANTITRUST LITIGATION | : : : | MDL Docket No. 1332 |
| This Document Relates To: | : : | Hon J. Frederick Motz |
| All Competitor Cases | : : | |

**NONPARTY SBC COMMUNICATIONS INC.'S OBJECTIONS
TO ACCESS BY DESIGNATED IN-HOUSE COUNSEL FOR
REALNETWORKS, INC. AND MICROSOFT CORP. TO
SBC COMMUNICATIONS INC.'S CONFIDENTIAL MATERIALS**

At the Court's request, nonparty SBC Communications Inc. ("SBC") respectfully

submits its objections to in-house counsel for RealNetworks, Inc. ("RealNetworks") and

Microsoft Corp. ("Microsoft") having access to competitively sensitive SBC documents that

were originally produced and designated "Highly Confidential" in the remedy phase of State of

New York v. Microsoft, No. 98-1233 (D.D.C.) (CKK) ("Remedies Proceeding").

**I.    Nonparty SBC Produced Confidential Documents In the Remedies Proceeding
and in This MDL Proceeding In Reliance Upon The Fact That The Parties'
In-House Counsel Would Not Have Access To Confidential SBC Materials**

The documents at issue here, which contain SBC trade secrets and other

proprietary business information, were originally produced in December 2001 and January 2002

in the Remedies Proceeding under a protective order that permitted review by outside counsel

only.  See Stipulation and Protective Order § D.2 at p. 9 (filed May 27, 1998) (governing access

to information designated Highly Confidential) (Exh. A hereto).  Microsoft was a party to that

protective order.

Subsequently, in late 2002, when the consumer plaintiffs in this MDL proceeding sought access to these documents by moving to intervene in the Remedies Proceeding before Judge Kollar-Kotelly in order to modify the protective order to permit them access to confidential materials produced by SBC and other nonparties, they reached agreement with SBC on limited access to SBC's document production that did not compromise the outside counsel's-eyes-only protections upon which SBC had relied. (SBC and the MDL consumer plaintiffs agreed that, as to SBC, only trial and deposition testimony on certain subjects and only actual and proffered trial exhibits in the redacted form agreed upon for use at trial would be provided to plaintiffs.) The MDL consumer plaintiffs' motion to intervene resulted in a Final Order issued by Judge Kollar-Kotelly that resolved some disputed issues but principally recited the agreements reached by these plaintiffs with various non-parties regarding access to discovery and testimony. See Order, dated Nov. 18, 2002 in *State of New York v. Microsoft Corporation*, Civil Action No. 98-1233 (D.D.C.) (CKK) at p. 8 (providing in ¶ 7 for limited access to SBC documents) (Exh. B hereto) ("Nov. 18, 2002 Order").

In that proceeding, however, Microsoft took the position that as a condition of the MDL consumer plaintiffs' gaining access to nonparties' documents, its inside counsel should be granted access to documents designated as Highly Confidential, in derogation of the existing protective order in the Remedies Proceeding. Judge Kollar-Kotelly rejected Microsoft's position, holding that such a modification of the protective order would be unfair to those third parties, like SBC, who had produced information in reliance upon the fact that Microsoft's in-house counsel would not have access:

> The order pursuant to which the relevant third-parties produced materials to Microsoft provided that for information designated as "Highly Confidential," Microsoft's in-house counsel would not be permitted access. Microsoft proposes to modify the status quo based upon its notion of "fundamental fairness. . . .

While undoubtedly Microsoft's in-house counsel are significant members of its litigation team, the Court disagrees that the notion of "fundamental fairness" demands this substantial alteration of the terms of the Protective Order. The relevant third parties produced sensitive documents pursuant to the belief that Microsoft's in-house counsel would not have access to such documents. The vast majority of these third parties have consented to some modification of the Protective Order, as proposed by the MDL Plaintiffs. The Court would regard the belated provision of access to information to Microsoft's in-house counsel as fundamentally unfair to those parties who produced information in reliance upon the fact that Microsoft's in-house counsel would not have access. The Court further rejects as wholly unsupported Microsoft's bold contention that the denial of access to in-house counsel, while other counsel of record had access to the very same limited group of documents designated as "Highly Confidential," would "prejudice Microsoft's ability to defend itself" against the MDL Plaintiffs. . . . Accordingly, the Court shall deny Microsoft's request to provide in-house counsel with access to any "Highly Confidential" information provided to the MDL Plaintiffs.

November 18, 2002 Order at 3 (emphasis in original).

More recently, in mid-2003, when the MDL competitor plaintiffs came to this Court also seeking access to SBC's and other nonparties' production of documents in the Remedies Proceeding, SBC filed written objections and participated in a hearing before this Court which addressed several issues regarding access to its documents, including access by the parties' inside counsel to documents designated Highly Confidential. One of the results of those proceedings was an Order of this Court specifically providing that SBC's documents originally produced in the Remedies Proceeding could not be disclosed to inside counsel for the competitor plaintiffs or for Microsoft. See Supplement To Order Regarding Amended Stipulated Protective Order Re: Competitor Cases at ¶ 5 (June 2, 2003) (Exh. C hereto). The June 2, 2003 Order thus provided an exception to the terms of the October 31, 2002 protective order governing the MDL Competitor Cases, which permitted disclosure to inside counsel of documents produced in those cases. At the time, the MDL competitor plaintiffs supported such a provision protecting the Remedies Proceeding documents produced by objecting nonparties such as SBC. See

-3-

Competitor Plaintiffs' Second Memorandum Concerning Access To Third Party Documents
Produced to Microsoft at 7-8 (filed April 30, 2003).

Such a provision proscribing access by in-house counsel was also in accord with
this Court's ruling at an earlier stage of the Competitor Cases regarding inside counsel's access
to RealNetworks' own documents. At a hearing held in the Competitor Cases in January 2003,
RealNetworks' counsel argued that RealNetworks' documents, which presumably had been
produced subject to the same protective order in the Remedies Proceeding "under the explicit
understanding and protection in the protective order that they would not go to the in-house
counsel of [its] competitors and other parties," should not be disclosed to in-house counsel for
Microsoft and the competitor plaintiffs. RealNetworks' counsel cited Judge Kollar-Kotelly's
ruling (quoted above) and a ruling by the judge overseeing the California consumer class action
as both honoring this protection. See Transcript of Proceedings at 3-5 (Jan. 24, 2003) (Exh. D
hereto). Having received briefs and heard argument on the issue, this Court held as follows:

> Well, I'm going to rule that as to Real documents only, RealNetworks, they do
> not get produced to in-house counsel. I don't think the rules of the game should
> be changed . . . .
>
> That is subject to two things. The fact that Microsoft's in-house counsel
> haven't seen them, which I think is the case. Secondly, if at some point a specific
> issue arises where a party feels that they really can't do their job without seeing
> these documents, the counsel outside will then have seen them, then we can
> revisit the issue.
>
> But I think that, essentially, I should follow what the two other courts have
> done and essentially not change the rules of the game at this stage.

Id. at 6-7.

Earlier this summer, when SBC was contacted by RealNetworks about obtaining
access to confidential SBC Remedies Proceeding documents that had been produced to Sun
Microsystems, Inc. ("Sun") in this MDL proceeding, SBC reached agreement with

RealNetworks with respect to the transfer of Sun's materials. SBC indicated its objection, however, to that portion of a new protective order in the MDL Competitor Cases entered May 11, 2004, that would result in the disclosure of SBC's confidential documents, for the first time, to inside counsel for competitor plaintiffs, including RealNetworks, and Microsoft. See Letter from Steven I. Froot, Esq. to Lynn M. Engel, Esq., dated July 13, 2004 (Exh. E hereto). This was SBC's first notice of the new protective order.

Having produced its sensitive documents twice in two separate litigations in reliance upon protective order provisions prohibiting disclosure of Highly Confidential materials to inside counsel for Microsoft and inside counsel for other communications and computer technology companies, SBC, a nonparty here, is at a loss to understand why this protection should now be removed. Neither Microsoft nor RealNetworks has yet articulated to SBC a reason to "change the rules of the game at this stage."

## II. Disclosure of Highly Confidential SBC Materials To In-House Counsel For Microsoft and the Competitor Plaintiffs Poses An Unjustifiably Increased Risk of Competitive Harm to SBC's Business Operations

It is difficult to describe in a public filing such as this the sensitivity of the SBC documents involved. The very basis for the commercial sensitivity of the material precludes revealing with any precision the nature of the harm that would be caused to SBC by any disclosure of the documents' contents.

Many of the SBC documents at issue are long-range planning documents from the 2001-2002 period that discuss business strategies that are currently being implemented. These documents not only contain critical analyses of the strengths and weaknesses of potential SBC business partners, suppliers and competitors, including parties to the MDL Competitor Cases, but also incorporate projections of cost structures and forecasts of revenues relating to various

Internet-related communications and entertainment products and services that are either now in place or still in development. Disclosure of such highly sensitive proprietary information to a competitor, supplier or strategic partner would make it difficult if not impossible for SBC to interact on an equal footing with other industry firms who are potential partners or suppliers – some of which are now in negotiations with SBC.

Examples of some of these documents include:

- An internal SBC email analyzing the business practices and technological weaknesses of a prospective business partner.

- An internal SBC document describing competitive concerns over potential joint ventures.

- An internal SBC slide presentation containing SBC's long range strategy for a given product, including an assessment of cost structure and revenue potential.

- Internal SBC email correspondence discussing revenue issues relating to a potential branded product from another industry firm.

- SBC five-year planning document regarding network evolution, including competitive assessments.

- Internal SBC email correspondence containing detailed appraisals of meetings with potential joint venture partner.

- Internal SBC memorandum evaluating strategic business opportunities, including technical assessments.

- Draft term sheets for proposed SBC supply relationship in the area of Internet services.

- Internal SBC powerpoint presentation regarding consumer product offering, including considerations bearing upon a competitor in the same market.

- SBC slide presentation concerning consumer product offering, including options for acquisitions of other industry firms.

Even with the best controls, there is no way to ensure that the extremely sensitive information contained in these kinds of documents (even if not the documents themselves) will not become known to other employees of Microsoft, RealNetworks and other competitor

plaintiffs – firms that are current and potential partners, suppliers and competitors in several markets with SBC – to the serious detriment of SBC in its business dealings. Because of the extreme sensitivity of this information, these risks should not be incurred by SBC, a nonparty to these proceedings, which originally produced the documents under a protective order that proscribed such access by inside counsel. No employees of a party, whether or not they are attorneys, should have access to these SBC documents.

## CONCLUSION

For all of the foregoing reasons, SBC's objection to access by designated in-house counsel for Microsoft and the competitor plaintiffs to SBC's highly confidential documents should be sustained, and this Court should order that the SBC documents originally produced in the Remedies Proceeding and later produced to Sun in this proceeding not be disclosed to in-house counsel for either Microsoft or the competitor plaintiffs.

September 24, 2004

Respectfully submitted,

Steven I. Froot
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for SBC Communications Inc.*



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>          Defendant. | Civil Action No. 98-1232 (TPJ)<br><br>**FILED**<br><br>MAY 27 1998<br><br>NANCY MAYER-WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |
| STATE OF NEW YORK *ex rel.*<br>Attorney General DENNIS C. VACCO, *et al.,*<br><br>          Plaintiffs,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>          Defendant. | Civil Action No. 98-1233 (TPJ) |

## STIPULATION AND PROTECTIVE ORDER

The parties, by their undersigned counsel, hereby stipulate and agree, subject to the approval of the Court, as follows:

### PREAMBLE

1. · Because plaintiffs wish to ensure that matters raised by these actions are open to the public to the greatest extent practicable;

2. Having determined that certain information produced or to be produced by defendant and third parties voluntarily or in response to various Civil Investigative Demands and Subpoenas *Duces Tecum* (collectively, the "CIDs") served upon defendant and third parties pursuant to the Antitrust Civil Process Act ("ACPA"), 15 U.S.C. §§ 1311-1314, or any

of the Relevant State Statutes (as defined in paragraph A. 12. below); or other forms of compulsory process; or produced in response to discovery requests issued by the United States Department of Justice (the "Department") pursuant to the Final Judgment entered August 21, 1995 (the "Consent Decree"), or produced by defendant and third parties in response to Requests for Additional Information and Documents ("Second Requests") issued by the Department under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), 15 U.S.C. § 18a, or produced by the parties or by third parties pursuant to the Federal Rules of Civil Procedure during discovery in these actions, contains Confidential Information (as defined in paragraph A.9., below) the unauthorized disclosure of which would be detrimental to the legitimate commercial interests of the party or third party that produced this information; and

   3.  Having shown good cause pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure;

   4.  It is hereby stipulated and agreed by the parties and ordered by the Court that the following procedures shall govern the production and use of all documents, testimony, interrogatory answers and other information in these actions, including information produced by parties currently named or later joined in these actions and all third parties subject to discovery herein:

## A.  DEFINITIONS

For the purposes of this Order:

   1.  "Document" includes all tangible written, recorded, or graphic material, and intangible data files, such as magnetic computer files, whether produced or created by a party or another person, and whether produced pursuant to the

federal discovery rules, by agreement or otherwise, and includes, without limitation, interrogatory answers, responses to requests for admissions, deposition transcripts and exhibits, pleadings, motions, briefs, affidavits, declarations or other filings in connection with these actions.

2. "Department" means the United States Department of Justice and all subdivisions thereof, as well as all officers, employees, agents, representatives, contractors, consultants, attorneys, or any of them.

3. "States" means each and every of the following States in their sovereign capacities and as *parens patriae* on behalf of the residents of their respective States: California, Connecticut, Florida, Illinois, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, New Mexico, New York, North Carolina, Ohio, South Carolina, Utah, West Virginia and Wisconsin and the District of Columbia.

4. "These actions" means the cases captioned *United States* v. *Microsoft Corp.*, Civil Action No. 98-1232 (TPJ), and *New York ex rel. Vacco* v. *Microsoft Corp.*, Civil Action No. 98-1233 (TPJ), pending in the United States District Court for the District of Columbia. Those actions were consolidated by Order dated May 22, 1998.

5. "Disclosed" means shown, divulged, revealed, produced, described or transmitted, in whole or in part.

6. "Outside counsel" means the counsel of record specifically listed as appearing in these actions, as well as other persons employed by their law firms who are

working on these actions. Any person identified as "Outside counsel" shall not be an employee of the defendant.

7. "In-house counsel" means all lawyers employed by a party who are working on these actions, as well as paralegal assistants, secretaries, and clerical and administrative personnel employed by the party who are involved in preparation for the trial and/or appeal of these actions.

8. "Producing party" means the party or third party that produced Confidential Information to any of the parties.

9. "Confidential Information" means any trade secret or other confidential research, development or commercial information contained in any document as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(7).

10. "Highly Confidential Information" means trade secret or other confidential research, development or commercial information contained in any document as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(7) that is entitled to a higher level of protection than Confidential Information due to its commercial sensitivity. All protections applicable under this Order to Confidential Information apply as well to Highly Confidential Information.

11. "Third party" means any natural person, partnership, corporation, association, or other legal entity not named as a party to these actions:

12. "Relevant State Statutes" means each and every one of the following: CAL. GOV'T CODE § 11180; CONN. GEN. STAT. § 35-42; D.C. CODE ANN. § 28-

4505; FLA. STAT. ANN. § 542.28; 740 ILL. COMP. STAT. 10/7.2; IOWA CODE §

553.9; KAN. STAT. ANN. § 50-631; KY. REV. STAT. ANN. § 367.240; LA. REV.

STAT. ANN. § 51:143; MD. CODE ANN., COM. LAW § 11-205; MASS. GEN.

LAWS ch. 93, § 8, ch. 93A; MICH. COMP. LAWS § 445.776; MINN. STAT. §

8.31; N.M. STAT. ANN. § 57-1-5; N.Y. GEN. BUS. LAW § 343; N.C. GEN.

STAT. § 75-9, 75-10; OHIO REV. CODE ANN. § 1331.16; S.C. CODE ANN. § 39-

5-70; UTAH CODE ANN. § 76-10-916; 76-10-917; W. VA. CODE § 47-18-7;

WIS. STAT. § 165.065.; CAL. BUS. & PROF CODE § 16700 *et seq.*; CONN. GEN.

STAT. § 35-24 *et seq.*; D.C. CODE ANN. § 28-4501 *et seq.*; FLA. STAT. ANN. §

542.15 *et seq.*; 740 ILL. COMP. STAT. 10/1 *et seq.*; IOWA CODE § 553.1 *et seq.*;

KAN. STAT. ANN. § 50-623 *et seq.*; KY. REV. STAT. ANN. § 367.170 *et seq.*;

LA. REV. STAT. ANN. § 51:122 *et seq.*; MD. CODE ANN., COM. LAW § 11-201

*et seq.*; MASS. GEN. LAWS ch. 93, § 1 *et seq.*; MICH. COMP. LAWS § 445.771 *et*

*seq.*; MINN. STAT. § 325D.49 *et seq.*; N.M. STAT. ANN. § 57-1-1 *et seq.*; N.Y.

GEN. BUS. LAW § 340 *et seq.*; N.C. GEN. STAT. §§ 75-1 *et seq.*; OHIO REV.

CODE ANN. § 1331.01 *et seq.*; S.C. CODE ANN. § 39-3-10 *et seq.*; S.C. CODE

ANN. § 39-5-10 *et seq.*; UTAH CODE ANN. §§ 76-10-911 *et seq.*; W. VA. CODE

§ 47-18-1 *et seq.*; WIS. STAT. § 133.01 *et seq.*

**B.    PERMISSIBLE USE OF CONFIDENTIAL INFORMATION**

1.    All persons obtaining access to Confidential Information in connection with

these actions shall use that information only for preparation and trial of these actions, includ-

ing any appeal and retrial, and shall not use such Confidential Information for any other

purpose, including the furtherance of that person's business interests, or in any administrative

- 5 -

or other judicial proceeding. Any person found to have made an impermissible use of Confidential Information will be subject, without limitation, to civil and criminal penalties for contempt of court. Nothing in this provision, however, shall restrict the rights of plaintiffs to make use of Confidential Information outside the context of these actions to the extent otherwise permitted under 15 U.S.C. § 1 *et seq.*; 15 U.S.C. § 1311-1314 *et seq.*; 15 U.S.C. § 12 *et seq.*; any of the Relevant State Statutes, or any other applicable law.

2.      Confidential information shall not be copied or reproduced for use in these actions except to the extent such copying or reproduction is reasonably necessary to the conduct of these actions, and all such copies or reproductions shall be subject to the terms of this Order. If the duplicating process by which copies or reproductions of Confidential Information are made does not preserve the confidentiality designations that appear on the original documents, all such copies or reproductions shall be stamped "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as appropriate. All copies or reproductions of Confidential Information shall be kept under the control of the persons described in Section D, *infra*.

### C.      DESIGNATION OF CONFIDENTIAL DOCUMENTS

1.      A party or third party that has previously submitted documents to the parties voluntarily, or in complying with informal discovery requests or discovery requests served upon them pursuant to the ACPA, the Relevant State Statutes, the Consent Decree, the HSR Act or the Federal Rules of Civil Procedure, may designate any documents submitted in response to such discovery requests "CONFIDENTIAL" to the extent such documents contain Confidential Information or "HIGHLY CONFIDENTIAL" to the extent such documents contain Highly Confidential Information.

- 6 -

2.     A party or third party may designate information provided following the entry of this Order as confidential or highly confidential by placing on or affixing to a document containing such information (in such manner as will not interfere with the legibility thereof) the phrase "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page of the document entitled to such designation.

3.     A designation of confidentiality shall constitute a representation to the Court, made in good faith, that the Confidential Information or Highly Confidential Information is not reasonably believed to be already in the public domain, and that counsel believes that the information so designated constitutes Confidential Information or Highly Confidential Information as defined in this Order.

4.     Transcripts of depositions shall be given the protections afforded Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in that transcript as Confidential Information.  Any party or third party that wishes to designate all or any portion of the transcript of a deposition as Highly Confidential Information shall so state on the record during the deposition.  The transcript of the deposition shall then be given the protections afforded Highly Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in that transcript as Highly Confidential Information.

5.     A deponent or counsel for that deponent shall designate the portions of the deponent's deposition that qualify as Confidential Information or Highly Confidential Infor-

mation by page and line number.  Such designation shall be made no more than five (5) days after receipt of the complete transcript and shall be communicated to all parties.

6. The burden of proving that any information is confidential or highly confidential shall remain with the producing party making such designation(s).

## D. DISCLOSURE OF CONFIDENTIAL INFORMATION

1. Subject to Section B, *supra*, except with prior consent of the producing party or upon prior order of a court of competent jurisdiction, and except as otherwise permitted by Section D(3), *infra*, Confidential Information may be disclosed only to:

 a. The parties and their employees engaged in the preparation of these actions for trial or appeal;

 b. Defendant's in-house counsel, including attorneys, paralegal assistants, secretaries and clerical and administrative personnel employed by defendant who are involved in the preparation of these actions for trial or appeal;

 c. Defendant's outside counsel of record including partners, associates, paralegal assistants, secretaries and clerical and administrative personnel employed by such counsel who are involved in the preparation of these actions for trial or appeal;

 d. Persons who are known with certainty to have prior knowledge of the specific Confidential Information to be disclosed;

 e. The Court and all of its support personnel directly involved in the preparation of these actions for trial;

 f. Stenographers or other persons involved in taking or transcribing testimony in these actions;

 g. Litigation support services, including outside copying services; and

h.    Independent consultants or experts retained by plaintiffs or counsel for defendant for purposes of assisting them in these actions, provided, however, that such persons are not presently, and have no current plans to become, employees of defendant.

2.    Subject to Section B, *supra*, except with prior consent of the producing party or upon prior order of a court of competent jurisdiction, and except as otherwise permitted by Section D(3), *infra*, Highly Confidential Information may be disclosed only to:

a.    Employees of the plaintiffs who are directly engaged in the preparation of these actions for trial or appeal;

b.    Defendant's outside counsel of record including partners, associates, paralegal assistants, secretaries and clerical and administrative personnel employed by such counsel who are engaged in the preparation of these actions for trial or appeal;

c.    Persons who are known with certainty to have prior knowledge of the Highly Confidential Information to be disclosed;

d.    The Court and all of its support personnel directly involved in the preparation of these actions for trial;

e.    Stenographers or other persons involved in taking or transcribing testimony in these actions;

f.    Litigation support services, including outside copying services; and

g.    Independent consultants or experts retained by plaintiffs or counsel for defendant for purposes of assisting them in these actions, provided, however, that such persons are not presently, and have no current plans to become, employees of defendant.

- 9 -

3.     The Department and the States shall treat all Confidential Information in accordance with the policy regarding disclosure of designated commercially or financially sensitive information set forth at 28 C.F.R. § 16.7. The Department and the States shall treat all information obtained in discovery in these actions that has been designated as Confidential Information or Highly Confidential Information by defendant or third parties as "confidential business information" pursuant to the Freedom of Information Act, 5 U.S.C. § 522(b)(4), or the most closely analogous term provided in the Relevant State Statutes and shall honor all statutory obligations to protect the confidentiality of all such information obtained voluntarily or by means of compulsory process. If any request is made to the Department or the States for Confidential Information covered by this Order, the Department or the States, as the case may be, shall promptly give notice of that request to the producing party.

## E.     INTERIM DISCLOSURE OF CONFIDENTIAL INFORMATION

1.     All documents produced by parties and third parties voluntarily, in response to CIDs or to other requests for information shall be treated as if designated as Confidential Information until such time as the party or third party producing such information identifies the documents, if any, it wishes to have treated as Confidential Information.

2.     Third parties shall have three (3) business days following notification by plaintiffs that documents they previously produced to them may be subject to discovery in these actions to affix appropriate confidentiality designations to such documents or to make such designations by sending a letter to plaintiffs specifying by Bates range the documents that the third party designates as confidential or highly confidential before such documents are produced to defendant. On an ongoing basis, plaintiffs shall, when they determine that they may need to produce to defendant documents previously produced to plaintiffs by any third

- 10 -

party, immediately notify that third party of the planned production and the requirement that the third party designate information as confidential in a timely fashion.

3.      All documents produced by defendant voluntarily or in response to CIDs or other requests for information shall be treated as if designated as "Confidential Information" until such time as plaintiffs specify which of those documents they intend to offer as exhibits in any public proceeding in these actions. Within 72 hours after receiving such notice from plaintiffs, defendant will indicate which of those exhibits should be given confidential treatment under this Order. Plaintiffs remain free to challenge defendant's continued confidentiality designations of such exhibits under Section I, *infra*.

### F.      CONFIDENTIALITY UNDERTAKING

1.      Before any person described in Subsections D(1)(h) and D(2)(g), *supra*, is given access to Confidential Information to the extent permitted under this Order, such person shall first read this Order and execute an agreement substantially in the form attached hereto as Exhibit A. Execution of that agreement confirms the signatory's willingness to be bound by the provisions of this Order and to waive any objection, jurisdictional or otherwise, to the exercise by the Court of its power to enforce the terms of this Order by such means as the Court deems appropriate. Copies of such agreements shall be retained by the parties. Within 72 hours after the entry of this Order, the parties will cause all persons described in Subsection D(1)(h) and D(2)(g)) who have previously been given access to confidential information to execute such an agreement.

2.      Counsel for the parties to whom Confidential Information has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Order.

- 11 -

## G.    UNRESTRICTED INFORMATION AND DOCUMENTS

1.    This Order shall not restrict the use or disclosure of information that was not obtained through discovery in these actions or by plaintiffs in their prior investigations of defendant pursuant to the ACPA, the Relevant State Statutes, the Consent Decree, the HSR Act, the Federal Rules of Civil Procedure or other applicable law, *provided,* however, that inadvertent production of any information not designated as Confidential Information or Highly Confidential Information shall not itself be deemed a waiver of the producing party's or third party's claim of confidentiality as to such information, and the producing party or third party may thereafter designate such information as Confidential Information or Highly Confidential Information, as appropriate.

2.    Nothing shall prevent disclosure beyond the terms of this Order if the party or other person designating the documents as confidential expressly consents to such disclosure, either in writing or in the record of any proceeding in these actions.

## H.    FILING UNDER SEAL

1.    Documents containing Confidential Information shall not be filed with the Clerk of the Court except when required by Court rules or in connection with motions or other matters pending before the Court. Any Confidential Information (including, without limita-tion, deposition transcripts, exhibits, briefs, affidavits and declarations), if filed, shall be filed under seal as long as the information retains its status as confidential. Where possible, only confidential portions of filings with the Court shall be filed under seal. Documents filed under seal shall be placed in an envelope bearing the following legend:

- 12 -

This envelope contains documents filed under seal in *United States of America* v. *Microsoft Corporation*, Civil Action No. 98-1232 (TPJ) (D.D.C.), and *New York ex rel. Vacco, et al.* v. *Microsoft Corporation*, Civil Action No. 98-1233 (TPJ) (D.D.C.), pursuant to a Protective Order, dated May __, 1998. The documents contain Confidential Information [or Highly Confidential Information] within the meaning of the Order. This envelope shall not be opened and its contents shall not be displayed, revealed or made public except pursuant to order of the Court.

2. Where documents filed under seal are transmitted between the parties or to the Court by facsimile, the above message shall be placed on the facsimile cover sheet or on a sheet directly following the facsimile cover sheet.

## I.    CHALLENGES TO DESIGNATIONS OF CONFIDENTIALITY

1. Any party may, at any time after attempting to resolve the matter by agreement, apply by motion to the Court for a ruling that certain information designated as confidential is not entitled to confidential treatment under this Order. The confidential status of the information at issue shall be maintained pending the Court's ruling on the motion.

2. The parties shall not be obligated to challenge the propriety of any designation of information as confidential and the failure to do so promptly shall not preclude any subsequent objection to such designation or motion seeking permission to disclose such material to persons not referred to in Section D, *supra*.

## J.    USE OF CONFIDENTIAL INFORMATION AT TRIAL

1. Subject to the Federal Rules of Evidence, Confidential Information may be disclosed at trial or at a hearing in open court. Either party intending to use Confidential Information shall notify the producing party or third party of the listing as a trial exhibit of documents containing its Confidential Information within one day after so listing such documents. Where the disclosure would be made to a witness from a different party or third party or

where the Confidential Information to be disclosed was not listed on the trial exhibit list, the party disclosing the Confidential Information must provide 24 hours' advance notice (or, if that is not possible, as much advance notice as is practicable in the circumstances) to the producing party or third party.

2.    Any producing person may move the Court for an order that the evidence be received under conditions to prevent its disclosure to persons not entitled under this Order to have access to it. The Court shall then determine whether the proffered evidence should continue to be treated as confidential and, if so, what protection, if any, should be afforded to such evidence at the trial or hearing. Nothing in this Order shall operate as an admission by any party that any particular discovery material is, or is not, admissible in evidence at the trial of these actions.

## K.    DEPOSITION PROCEDURES

1.    At any deposition session, when counsel for a party or witness deems that the answer to a question will result in the disclosure of Confidential Information or Highly Confidential Information, counsel shall have the option, in lieu of taking other steps available under the Federal Rules of Civil Procedure, to request that all persons other than the reporter, counsel and individuals specified in subparagraphs D(1) and D(2) hereof who have access to the appropriate category of information leave the deposition room during the confidential portion of the deposition. When Highly Confidential Information is the subject of examination, defendant's in-house counsel may also be excluded by plaintiffs or the deponent. The failure of such other persons to comply with such requests shall constitute substantial justification for counsel to advise the witness that he or she need not answer the question pending.

2.    At any deposition session, Confidential Information or Highly Confidential Information produced by a producing party may be shown to a director, officer, employee, or consultant or expert of that producing party.

## L.    EFFORTS BY THIRD PARTIES TO OBTAIN CONFIDENTIAL INFORMATION

1.    If defendant has obtained Confidential Information under the terms of this Order and receives a subpoena or other compulsory process commanding the production of such Confidential information, defendant shall promptly notify the producing party. Defendant shall not produce any Confidential Information in response to the subpoena without the prior written consent of the producing party unless in response to an order of a court of competent jurisdiction.

2.    Defendant will not object to the producing party having a reasonable opportunity to appear in the litigation or process commanding disclosure of the producing party's Confidential Information for the sole purpose of seeking to prevent or restrict disclosure thereof.

## M.    NONWAIVER OF OBJECTIONS TO DISCOVERY

Nothing herein shall affect any person's right to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information. Nor shall anything herein affect any person's right to seek the production of documents, testimony or any other information from any other source.

## N.    PROCEDURE UPON UNAUTHORIZED DISCLOSURE

1.    If Confidential Information under the terms of this Order is disclosed to any person other than one entitled to disclosure in the manner authorized under the Order, the party responsible for the unauthorized disclosure shall immediately upon learning of such dis-

- 15 -

closure inform the party or third party that made the designation of confidentiality in writing of all pertinent facts relating to such disclosure and shall make every effort to prevent further unauthorized disclosure of the information.

2.    Notwithstanding the foregoing, counsel are responsible for employing reasonable measures to control, consistent with the terms of this Order, duplication of, access to and distribution of confidential information under the terms of this Order.

### O.    PROCEDURE UPON TERMINATION OF LITIGATION

1.    The protection of Confidential Information under the terms of this Order shall not terminate at the conclusion of these actions. Within 30 days after the final conclusion of all aspects of these actions by judgment not subject to appeal or by settlement (including any subsequent judicial approval process and all appeals), defendant at its costs shall return or destroy all documents produced by plaintiffs that contain or refer to Confidential Information, other than trial transcripts and trial exhibits admitted into evidence; provided, however, that privileged documents or attorney work product need not be returned or destroyed. Defendant shall certify its compliance with this paragraph and shall deliver such a certification to counsel for the producing person not more than 60 days after the final conclusion of these actions.

2.    Copies of all documents designated as "Confidential Information" or "Highly Confidential Information" under the terms of this Order that remain in plaintiffs' custody after the final conclusion of all aspects of these actions by judgment not subject to appeal or by settlement (including any subsequent judicial process and all appeals) shall continue to be afforded all confidentiality protections provided by law or under this Order to the extent not inconsistent with the savings clause in subparagraph B(1), *supra*.

- 16 -

## P.     RIGHT TO SEEK MODIFICATION

Nothing in this Order shall be construed to limit, restrict or otherwise affect the ability

of the parties to seek by motion to modify this Order for good cause shown.


Dated: Washington, D.C.
       May 27, 1998


Phillip R. Malone   (CTM by permission)
Phillip R. Malone
Antitrust Division
U.S. DEPARTMENT OF JUSTICE
450 Golden Gate Avenue
San Francisco, California 94102
(415) 436-6675

*Counsel for Plaintiff*
   *United States of America*

- 17 -

_Stephen D. Houck (GTM on Permission)_

Stephen D. Houck
Chief, Antitrust Bureau
New York State Department of Law
120 Broadway, Suite 2601
New York, New York 10271
(212) 416-8275

*Counsel for Plaintiff*
  *States*


_Steven L. Holley (GTM on Permission)_

Steven L. Holley
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendant*
  *Microsoft Corporation*

SO ORDERED:

Thomas Penfield Jackson
United States District Judge

5/27/98

- 18 -

# B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF NEW YORK, *et al.*,

    Plaintiffs

      v.

MICROSOFT CORPORATION,

    Defendant.

Civil Action No. 98-1233 (CKK)

## ORDER
(November 18, 2002)

Presently pending before the Court is the MDL Plaintiffs' Motion for Leave to Intervene

and Motion to Clarify or Modify the Protective Order and Defendant Microsoft's partial

opposition thereto.  In its partial opposition, Microsoft "does not object in principle to a

modification of the Protective Order," but raises the concern that various third-parties who

produced documents in conjunction with the remedy phase of this proceeding would not have an

opportunity to be heard on the issue.  Microsoft Partial Opp'n. at 1.  In response to the concerns

raised in Microsoft's partial opposition and pursuant to Court order, the MDL Plaintiffs sought

and obtained some form of consent to their proposed intervention and modification of the

Protective Order in this case from nearly all of the various third-parties affected by the proposed

modification.[1]

---

[1] The MDL Plaintiffs in their August 30, 2002 Reply Memorandum informed the Court
that they had reached agreement with all but five third-parties.  This Court on September 13,
2002 ordered that if the five parties remained "unable to reach an agreement with the MDL
Plaintiffs regarding Plaintiffs regarding modification of the Protective Order in this case, . . . they

Having resolved Microsoft's primary objection, the Court addresses Microsoft's two remaining objections to the modification proposed by the MDL Plaintiffs. Microsoft first objects that only "relevant" information should be provided to the MDL Plaintiffs. Microsoft's objection places this Court in the difficult position of determining whether documents produced during discovery in this action are relevant to the MDL proceeding presently pending in United States District Court for the District of Maryland. While the MDL Plaintiffs are not incorrect that their request for modification is properly directed at the issuing Court, MDL Reply at 10 (citing *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 n.8 (7th Cir. 1980), this Court need not make the determination of relevance the MDL Plaintiffs seek. This Court may modify the protective order, with the consent of the affected third parties, so as to remove the first obstacle presently preventing access to certain documents. If, however, Microsoft desires to seek further protection from access to those documents on relevance grounds, that is an obstacle which must be removed by another court. Said otherwise, Microsoft's relevance arguments are properly addressed to the court presiding over the litigation for which the documents are sought. Therefore, the Court determines to modify the Protective Order in this case so as to authorize access to documents produced by third-parties during these proceedings, but declines to determine if, once access is no longer hindered by the Protective Order in this case, such access may be barred on grounds of relevancy. That relevancy determination rests with another court.

---

shall file . . . brief memoranda specifying the basis for their objections." *State of New York v. Microsoft Corp.*, No. 98-1233 (D.D.C. Sept. 13, 2002). Only Dell Computer Corporation and Gateway, Incorporated ("Gateway") filed such objections. The Court takes notice of these objections and does not include these two non-parties in this order. The Court interprets the silence of the other non-parties as a concession to the MDL Plaintiffs' request for access. The Court continues to urge these third-parties to reach an amicable resolution regarding the provision of access to documents by the MDL Plaintiffs.

Microsoft also objects to modification of the Protective Order unless Microsoft's in-house counsel is provided access to the documents produced to the MDL Plaintiffs. The order pursuant to which the relevant third-parties produced materials to Microsoft provided that for information designated as "Highly Confidential," Microsoft's in-house counsel would not be permitted access. Microsoft proposes to modify the status quo based upon its notion of "fundamental fairness." Microsoft Partial Opp'n. at 12.

While undoubtedly Microsoft's in-house counsel are significant members of its litigation team, the Court disagrees that the notion of "fundamental fairness" demands this substantial alteration of the terms of the Protective Order. The relevant third parties produced sensitive documents pursuant to the belief that Microsoft's in-house counsel would not have access to such documents. The vast majority of these third parties have consented to some modification of the Protective Order, as proposed by the MDL Plaintiffs. The Court would regard the belated provision of access to information to Microsoft's in-house counsel as fundamentally unfair to those parties who produced information *in reliance* upon the fact that Microsoft's in-house counsel would not have access. The Court further rejects as wholly unsupported Microsoft's bold contention that the denial of access to in-house counsel, while other counsel of record had access to the very limited group of documents designated as "Highly Confidential," would "prejudice Microsoft's ability to defend itself" against the MDL Plaintiffs. *Id.* Accordingly, the Court shall deny Microsoft's request to provide in-house counsel with access to any "Highly Confidential" information provided to the MDL Plaintiffs.

Based on the foregoing, it is this 18th day of November, 2002, hereby

**ORDERED** that the Motion of the MDL Plaintiffs in the action *In re: Microsoft Corp.*

3

*Antitrust Litigation,* MDL No. 1332, pending in the United States District Court for the District of Maryland, to Intervene is GRANTED for the limited purpose of this Order; and it is further

ORDERED that effective upon entry of this Order, the Stipulation and Protective Order ("Protective Order") filed May 27, 1998 by this Court, and re-entered on September 28, 2001, is modified to permit access by outside counsel for the MDL Plaintiffs to certain documents and other materials listed below that had been designated as either "Confidential" or "Highly Confidential" in this action pursuant to the terms of the Protective Order, solely for use in the proceedings in which access to "Confidential" or "Highly Confidential" documents is permitted by the Stipulated Revised Protective Order entered in the MDL Proceeding on September 5, 2000. Access to and use of the materials otherwise shall be governed by the terms of the Protective Order, including but not limited to all restrictions set forth in the Protective Order regarding access to the materials by counsel for the MDL Plaintiffs and Microsoft and by other individuals, with the exception that certain additional modifications, as set forth below, shall apply as to particular third parties. Except where otherwise indicated, or curtailed by order of the court presiding in the MDL case, the materials shall be produced by Microsoft and not the third parties.

It is further ORDERED that

1.    Pursuant to the terms and conditions described herein, and subject to limitation on the grounds of relevance by the court presiding in the MDL proceeding, the MDL Plaintiffs shall have use of, and have access to, certain documents and other materials produced in the remedies phase of this proceeding by certain third parties as described below.

4

2.    As to Acer America Corporation; Andrew Appel; Apple Computer, Inc.; Applied

Systems, Inc.; Counsel for Association for Competitive Technology; August

Capital; Autodesk, Inc.; Jim Barksdale and The Barksdale Group; Best Buy;

Charter Communications; Compaq Computer Corp.; Counsel for Computer

Industry Association; Citizens Against Government Waste; Eastman Kodak

Company; eMachines, Inc.; Fujitsu America, Inc.; IBM Corp.; Intel Corp.;

Liberate Technologies; MusicMatch, Inc.; Onyx Software Corporation; Opus-i,

Inc.; Oracle Corporation; Qwest Communications; RealNetworks, Inc.; Red Hat,

Inc.; Samsung Electronics America, Inc.; Silicon Graphics, Inc.; Steven D.

McGeady; Sun Microsystems, Inc.; Progress and Freedom Foundation; Counsel

for The Project to Promote Competition and Innovation in the Digital Age; The

Software and Information Association; Toshiba America, Inc.; Unisys

Corporation; VideoBanner.com; Waggener Edstrom; Weber Shandwick; and

Yahoo! Inc., those documents and other materials include: (1) all deposition

transcripts and trial testimony and all deposition and trial exhibits offered or

proffered (whether or not admitted) by all parties in this action, whether or not

designated "Confidential" or "Highly Confidential"; and (2) to the extent not

covered by (1) above, all documents produced by any party or third party in this

action, and all reports, summaries or notes of witness interviews and witness

statements produced to Microsoft in connection with this action, which relate to

the efforts of Intel Corporation to work with the Linux operating system, and

Microsoft's response thereto.

3.     The materials described above that had been produced in this action by Novell,

Inc. ("Novell") include certain pages of documents that had been introduced

and/or placed under seal and which Novell contends are not relevant to the MDL

Proceeding. Novell will produce to counsel for the MDL Plaintiffs those pages of

the documents in redacted form. To the extent that the MDL Plaintiffs desire all or

a portion of those pages in unredacted form, they will so notify Novell. Novell

will then have 10 days from the date of receipt of such notice to object before this

Court to such additional access to those pages by counsel for the MDL Plaintiffs.

4.     Advanced Micro Devices, Inc. ("AMD"), and not Microsoft, shall have the

responsibility and authority to both designate the responsive AMD documents

and to produce those materials to counsel for the MDL Plaintiffs.

5.     As to Hewlett-Packard Company ("HP"), the documents and other materials to

which counsel for the MDL Plaintiffs shall have access include: (1) HP

documents designated by the plaintiff States in this action as potential trial

exhibits (State trial exhibits Nos. 310, 1151 and 1127); (2) HP documents

designated by Microsoft as potential trial exhibits (DX399-413); (3) HP

documents marked as deposition exhibits in the Remedies phase of the

Government case; and (4) HP documents admitted in evidence in the Remedy

phase of the Government case. All terms of this Order shall apply to access

and use of those documents with the exception that access to the documents

by Microsoft's designated in-house counsel, and HP's right to object to such

access, shall be governed by paragraphs 6 and 7 of the Order Modifying the

6

Protective Order filed on May 18, 2001 in the consolidated action consisting of this action and *United States of America v. Microsoft Corporation,* Civil Action No. 98-1232.

6.      As to America Online, Inc. ("AOL"), the documents and other materials to which counsel for the MDL Plaintiffs shall have access pursuant to the terms of this Order include all documents (MDL bates number AOL0004223-AOL0005657) that AOL previously produced to Microsoft (a) in response to Microsoft's June 15, 2001 subpoena to AOL in the MDL Proceeding and (b) in the remedies phase of this action. In addition, AOL will produce to counsel for the MDL Plaintiffs, also subject to the terms of the Protective Order, (1) other documents produced by AOL in the remedies phase of this action that fall within the negotiated scope of Microsoft's June 15, 2001 subpoena to AOL in the MDL Proceeding, irrespective of date; (2) documents produced by AOL in the remedies phase of this action that relate to meetings with Microsoft regarding productivity suites, individual productivity applications, or Microsoft operating systems; (3) documents produced by AOL in the remedies phase of this action that either relate to the ability to compete with Microsoft in the distribution of browser software or discuss browser competition from Microsoft or any other company; and (4) documents produced by AOL in the remedies phase of this action that relate to meetings with other software or hardware companies in which competition with Microsoft was discussed. In addition, the three in-house lawyers and two legal

7

assistants identified in Microsoft's Partial Opposition to the MDL Plaintiffs'
motion for modification of the Protective Order shall also have access to all of
the AOL documents identified above, subject to the other terms of the
Protective Order.

7.    As to Avanade, Inc.; NEC USA, Inc. and NEC Solutions (collectively
"NEC"); and SBC Communications, Inc. ("SBC"), the documents and other
materials to which the MDL Plaintiffs shall have access pursuant to the terms
of this Order, and which SBC shall produce with respect to its respective
materials, include: (1) all proposed and actual trial exhibits, and (2) all sealed
deposition or trial testimony related to: (a) operating systems for a PC, (b)
word processing software, (c) spreadsheet software, or (d) middleware,
excluding testimony on set top television boxes, voice recognition software,
digital imaging software or internet access provider agreements.  Also as to
SBC, with regard to the actual and preferred trial exhibits referred to above,
SBC will produce for possible use in the MDL Proceeding redacted versions
of those exhibits which certain counsel for the MDL Plaintiffs previously
reviewed in unredacted form.

8.    As to Sony Corporation of America ("Sony"), Microsoft will produce Sony's
proposed and actual trial exhibits.  The MDL Plaintiffs will provide counsel
for Sony with the production numbers of Sony's proposed and actual trial
exhibits produced by Microsoft.

9.    As to Palm, Inc. ("Palm"), the documents and other materials to which the

8

MDL Plaintiffs shall have access, and which Palm will produce to the MDL

Plaintiffs, subject to the terms of this Order, include those that fit within the

following categories used in connection with a prior production by Palm to the

MDL Plaintiffs:

a          **Business And Marketing Plans For Palm Products**. Palm will produce its 2000 Annual Strategy Plan and other prior business plans, or documents sufficient to reflect Palm's operating business plans if no formal plans exist. Palm need not conduct any search of its electronic files, including email, unless particular documents necessary to respond to this request do not exist in hard-copy format but do exist in electronic format.

b.        **Pricing Documents**. Palm will produce pricing list documents, as well as product roadmap documents that "slot" various products for certain price points and show launch and end-of-life dates. Palm need not conduct any search of its electronic files, including email, unless particular documents necessary to respond to this request do not exist in hard-copy format but do exist in electronic format.

c.        **Licensing Agreements And Similar Ventures With Palm OS Licensees**. Palm will produce its standard licensing agreement, as well as its list of licensees. In addition, Palm will produce basic information concerning the existence of agreements with other licensees with whom it has entered into non-standard and publicly known licensing agreements.

d.        **Basic Information About Palm Handhelds And Operating Systems**. Palm will produce basic information about its current and prior handheld and OS products, including launch dates, feature sets, etc.

e.        **Palm's Support Efforts For Independent Software Vendors**. Palm will produce its Alliance Program Guide ("APG"), which includes information concerning technical support, funding, technical sharing of APIs, and similar efforts by Palm to encourage independent software vendors ("ISVs") to develop products for the Palm platform. Palm also will produce its Developers Support Program, the forerunner to the APG. In addition, Palm will provide publicly available information about the growth of third-party applications for the Palm OS platform since the beginning of 2000, as well as documents that describe the growth of third-party applications for the Palm OS platform prior to 2000. Finally, Palm will produce other information

9

about developer support that it distributes to the public (*e.g.*, information distributed at trade shows and on Palm's web sites).

f.  **Palm Organizational Charts.** Palm will produce its current organizational charts with the names of its personnel redacted.

g.  **Palm OS v. Windows Desktop OS's, Linux Desktop OS, Apple Macintosh OS Comparison Documents.** Palm will perform a good-faith, reasonable search for and, if in existence, produce documents responsive to this request. Palm need not conduct any search of its electronic files, including email, unless particular documents necessary to respond to this request do not exist in hard-copy format but do exist in electronic format.

h.  **Microsoft Refusals To Provide Technical Assistance To Palm Concerning Interoperability Of Palm Products With Microsoft's Desktop OS.** Palm will conduct a good-faith inquiry among personnel it believes would have relevant documents or information responsive to this request if they were to exist at all. Palm need not conduct any search of its electronic files, including email, unless particular documents necessary to respond to this request do not exist in hard-copy format but do exist in electronic format. Palm will provide a general description of which personnel were surveyed during this inquiry, as well as produce documents and information, if any exist.

i.  **Palm OS Profit Margin Information.** Palm will produce profit margin data for its OS Division in the form it exists for Palm's 2001 fiscal year.

10. Notwithstanding the foregoing, to the extent that Microsoft objects on relevance grounds to its own production of documents described herein as discovery in the MDL proceeding, nothing in this Order shall prevent Microsoft from seeking relief from the Court presiding over the MDL proceedings from the requested production of documents addressed by this Order. This Order serves only to make clear that the Protective Order entered in the above-captioned case has been modified by this Order such that it shall not further serve to prevent Microsoft from providing the MDL Plaintiffs

with access to and use of the documents described above and pursuant to the

terms described above.

**SO ORDERED.**

————————————————————

COLLEEN KOLLAR-KOTELLY

United States District Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document relates to:

All Competitor Cases

(*Netscape Communications Corp. v.
Microsoft Corp.*, Civil Action No. JFM-
022090; *Be, Inc. v. Microsoft Corp.*, Civil
Action No. JFM-02-2738; *Sun
Microsystems, Inc. v. Microsoft Corp.*,
Civil Action No. JFM-02-2739;
*Burst.com, Inc. v. Microsoft Corp.*, Civil
Action No. JFM-02-2952)

MDL Docket No. 1332

Hon. J. Frederick Motz

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

[PROPOSED] SUPPLEMENT TO ORDER REGARDING AMENDED
STIPULATED
PROTECTIVE ORDER RE: COMPETITOR CASES

On May 7, 2003, the Court heard the objections of various third-parties concerning

Competitor Plaintiff's request that Defendant Microsoft produce documents it had obtained

from the third parties in various antitrust litigation. The Court made certain rulings

regarding those objections and adopted a schedule for further proceedings regarding

certain of the objections. This order reflects those rulings of the Court.

IT IS HEREBY ORDERED:

1.      With respect to documents produced during the remedies phase of the
governments' case, objections that the Competitor Plaintiffs must seek modification of the
protective order entered in *United States v. Microsoft*, No.98-1232 (D.D.C.) and *State of
New York v. Microsoft*, No. 98-1232 (D.D.C.) in the District Court for the District of
Columbia are overruled. Pursuant to paragraph L.1. of that protective order, any court of
competent jurisdiction can compel Microsoft to produce documents for that case subject to
giving notice to the third party.

#339848

2.    Except for documents identified as provided in paragraph 3 below, and to the extent that Microsoft has not already produced those documents to Sun Microsystems, Microsoft shall produce to the Competitors all third party documents previously produced in *United States v. Microsoft*, No. 98-1232 (D.D.C.); *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) (including liability and remedy phases); *In Re Microsoft Corp. Windows Operating Systems Antitrust Litig.*, MDL Docket No. 1332 (D. Md.); *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco Cty); *Caldera v. Microsoft*, No. 2:96-CV-645B (D. Utah), and shall complete production no later than June 10, 2003.

3.    Microsoft shall cooperate with Dell, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, Packard Bell/NEC, Nortel, Sony, and SBC, to provide access to the documents each of those parties produced in the "remedy phase" of *State of New York v. Microsoft*, No. 98-1232 (D.D.C.) to the extent those parties require copies of their remedy productions.  By June 30, 2003, those parties may identify those particular documents that they believe are entitled to more protection than that provided by the Amended Stipulated Protective Order Re Competitor Plaintiffs entered October 31, 2002 ("Protective Order") as modified herein.  The parties shall bring to the Court's attention any disputes that remain.

4.    Documents previously produced by Dell, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, Packard Bell/NEC, NCR, Nortel, Caldera, SBC, Sony and RealNetworks shall be deemed "Highly Confidential Information" as that term is defined in section 2(e) of the Protective Order.

5.    Highly Confidential Information produced by RealNetworks may not be disclosed to persons described in section 11 (c) of the Protective Order. Documents produced by Dell, Eastman Kodak, Gateway, Hewlett-Packard, NEC, Sony and SBC in the "remedy phase" of *United States v. Microsoft*, No.98-1232 (D.D.C.) and *State of New York v. Microsoft*, No. 98-1232 (D.D.C.) shall not be disclosed to persons described in section 11 (c) of the Protective Order.

6.    Except as set forth paragraph 4 and as provided for in the Protective Order, counsel for competitor plaintiffs and in-house counsel designated pursuant to 11(c) of the Protective Order and their experts shall be granted access to all documents previously produced by third parties in *United States v. Microsoft*, No. 98-1232 (D.D.C.); *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) (including liability and remedy phases); *In Re Microsoft Corp. Windows Operating Systems Antitrust Litig.*, MDL Docket No. 1332 (D. Md.); *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco Cty); *Caldera v. Microsoft*, No. 2:96-CV-645B (D. Utah).

7.    Section 21 of the Protective Order is amended, with respect to documents previously produced by Dell, Packard Bell/NEC, Caldera, Sony, RealNetworks, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, NCR, SBC and Nortel, as follows:

### Use of Highly Confidential Information at Trial.

21.  Subject to the Federal Rules of Evidence, Confidential and Highly Confidential Information may be disclosed at trial or at a hearing in open court after providing the producing party or third party notice of disclosure as provided below.  Any party that lists Confidential or Highly Confidential Information as a trial or hearing exhibit shall notify the producing party or third party of its intent to do so within one day of listing such documents.  Unless a document is to be used for the purposes of impeachment, when the Confidential or Highly Confidential Information to be disclosed was not listed on the trial exhibit list, the party intending to disclose the Confidential or Highly Confidential Information must provide at least 24 hours' advance notice before its use (or, if that is not possible, as much advance notice as is practicable in the circumstances) to the producing or third party.

If the producing party and the party intending to use the document cannot agree on appropriate procedures to govern the use and protection of such information, the producing party may move the Court for an order that the evidence be received under conditions to prevent its disclosure (or to permit its disclosure in redacted form).  The Court shall then determine whether the proffered evidence should continue to be treated as "Confidential" or "Highly Confidential Information" under the terms of this Order, and if so, what protection, if any, should be afforded such evidence at the trial or hearing.  Nothing in this Order shall operate as an admission by any party that any particular discovery material is, or is not, admissible in evidence at the trial in these conditions.

Signed this  2  day of June, 2003.


                                    _____
                                    J. Frederick Motz
                                    United States District Judge



1

1

2                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
3                           NORTHERN DIVISION

4
     IN RE: MICROSOFT LITIGATION
5    _____/

6                         MDL No. 1332
                     Friday, January 24, 2003
7                     Baltimore, Maryland

8
     Before:  Honorable J. Frederick Motz, Judge
9

10   Appearances:
            On Behalf of Sun Microsystems:
11              Lloyd R. Day, Jr., Esquire
                John B. Isbister, Esquire
12          On Behalf of RealNetworks:
                David Stewart, Esquire
13          On Behalf of Netscape:
                James P. Ulwick, Esquire
14              Jeffrey A. Rosen, Esquire
            On Behalf of Caldera:
15              Gregory M. Hess, Esquire
            On Behalf of Dell:
16              Susan Podolsky, Esquire
            On Behalf of Defendant Microsoft:
17              David B. Tulchin, Esquire
                David Graham, Esquire
18           On Behalf of Burst:
                Bruce Wecker, Esquire
19          On Behalf of BE:
                James Southwick, Esquire
20          On Behalf of Consumer Plaintiffs:
                Michael Hausfeld, Esquire
21
     (Please Note: Only those who verbally participated have
22     been listed.)

23   Reported by:
     Mary M. Zajac, RPR
24   Room 3515, U.S. Courthouse
     101 West Lombard Street
25   Baltimore, Maryland 21201

2

```
 1              (Conference call at 3:35 p.m.)
 2         THE COURT:  I have a court reporter here.  And
welcome
 3    to those of you who are not usual participants in these
calls.
 4    It's hard to remember, but if I could ask you to identify
 5    yourselves each time that you speak since Mary can't see
who you
 6    are, so we need to know who you are for the purposes of
the
 7    record.
 8              Who wants to lead off?  What we're talking about
are
 9    access to third party confidential documents.
10         MR. ULWICK:  Judge, this is Jim Ulwick.  I just
11    thought since we weren't able to get it together enough to
send
12    you an agenda, the issue that's going first will be that
issue.
13    There's a couple of other things left after that, that are
of a
14    housekeeping nature.  But the only substantive one on the
agenda
15    is the first issue.
16         MR. ISBISTER:  Your Honor, this is John Isbister
for
17    Sun.  I'll be taking the lead for the competitor
plaintiffs.
18         THE COURT:  Okay.  One other thing on the
agenda, I
19    just want to make sure.  I know they did call in and I too
am
20    anxious to discuss scheduling issue.  Are the consumer
21    plaintiffs on the line?
22         MR. HAUSFELD:  Yes, Your Honor.  This is Mr.
```

Hausfeld

23      and Mr. Heuck is on as well.

24              THE COURT:  Good.  All right.  Mr. Isbister?

25              MR. ISBISTER:  Thank you, Your Honor.  This all

3

1       started when we first met with you in August and the Court

2       ordered that the competitor plaintiffs were to have access
to

3       the documents that had been produced in MDL 1332.  It was

4       suggested by Microsoft that before revealing, producing
the

5       documents that had been produced in that litigation by
third

6       parties, that we give third parties notice of that
production

7       and an opportunity to comment on that.

8               We went through a process of sending the
letters.

9       Some third parties sent in written objections.  And on
November

10      19th, in an earlier telephone conference like that, like
this, a

11      number participated and voiced objections.

12              The Court asked us to work with those parties to
see

13      if we could work through their concerns.  We've been doing
that.

14      And at the conclusion of the conference on November 19th,
you

15      said if there was anything we couldn't reach agreement on
to

16      bring it to you.  And I think that's where we are now.

17              There appear to be two points of disagreement

with

18    respect to a small group of third parties.  Two third
party

19    defendants, Real and P.B. electronics, continued to
object, as I

20    understand it, to the production of documents to in-house

21    counsel.  And it's not just any in-house counsel, selected

22    in-house counsel in this litigation.  As you're aware --

23          THE COURT:  I probably can help save some time
on

24    that.  I've read your memorandum on that point.  I think I

25    probably, probably we ought to put the ball over to
Caldera and

4

1    anybody else who disagrees.

2          MR. ISBISTER:  This dispute, I think, is Real.

3    Counsel for Real is on the line.

4          THE COURT:  Oh, it's Real.  Let me hear from
counsel

5    from Real on that.

6          MS. STEWART:  Your Honor, this is Dave Stewart
from

7    RealNetworks.  RealNetworks's position is unique among the

8    remaining objectors, as we had discussed in November.
We're the

9    only objectors, I understand it, whose documents have from
the

10    start been subject to a protective order prohibiting
disclosure

11    to in-house counsel of the parties.

12          Sun devotes much of their effort in their brief
to the

13    unfairness of have its in-house counsel being denied
access to

14    documents that Microsoft's in-house counsel have seen.
That

15    concern does not apply to the RealNetworks documents.
Rather,

16    the fairness cuts clearly in RealNetworks's favor in that
these

17    documents were produced under the explicit understanding
and

18    protection in the protective order that they would not go
to the

19    in-house counsel of our competitors and other parties.

20         Since that protective order was put in place,
two

21    other courts have, twice have held that prohibition over

22    Microsoft's objections.  In the California consumer class

23    action, Judge Renfrew had rejected Microsoft's arguments
and

24    ruled that those documents cannot be provided to in-house

25    counsel.


5

1         And just this past November, in the government,

2    government antitrust enforcement action against Microsoft,
Judge

3    Kollar-Kotelly also reaffirmed that it would be
fundamentally

4    unfair to change the at this point and give in-house
counsel

5    access to those documents.

6         We are asking that you reaffirm that, those

7    protections of the protective order as well, Your Honor.

8         Finally, I mean, Sun, in their, Sun in this

litigation

9    is represented by Day Casebeer, by Brobeck, by Clifford Chance.

10    We have great respect for Lee Patch and his colleagues at Sun

11    but we believe that requiring Sun to just make due with those

12    three law firms falls considerably short of implicating its

13    right to competent counsel of its choosing.

14         So we ask you, Your Honor, to just reaffirm the rule

15    so that the RealNetworks's documents that have not been made

16    available to in-house counsel will not be made available to

17    in-house counsel.

18         THE COURT:  Mr. Isbister?

19         MR. ISBISTER:  Your Honor, I think our memorandum

20    details the protections that had been put in place with respect

21    to Sun's designated in-house counsel to protect whatever

22    interest Real has about these documents, and I guess their

23    potential business use.  Sun has described in its papers how Mr.

24    Patch and Mr. Krean are important to the litigation and how they

25    have been walled off from the business, the business aspects of

6

1    Sun, which is where any concern would be.

2         And we think it is important for Sun that Mr. Patch

         3      and Mr. Krean be able to have access to these documents.
They

         4      are constrained by the provisions.  They understand the

         5      provisions of the protective order and they will take
those

         6      steps that they're required to take to keep those
documents

         7      confidential.  And we think it is appropriate that they be

         8      allowed access to them.  And those --

         9                 THE COURT:  Let me, I haven't heard from
Microsoft if

        10      they want to be heard.  Factually, Microsoft's in-house
counsel

        11      haven't gotten those documents, either, correct?

        12                 MR. TULCHIN:  Your Honor, this is David Tulchin.
I

        13      can't say that I know the answer for sure.

        14                 THE COURT:  But I assume from what I was just
told by

        15      counsel from Real that you haven't.

        16                 MR. TULCHIN:  I think that's correct, Your
Honor.  And

        17      I just want to be clear that I don't personally have any

        18      recollection of this.  But I think that, and I was told
that we

        19      were not permitted to give them to our in-house counsel as
well.

        20      So I think that that was correct.

        21                 THE COURT:  Okay.  Well, I'm going to rule that
as to

        22      Real documents only, RealNetworks, they do not get
produced to

        23      in-house counsel.  I don't think the rules of the game
should be

        24      changed since their exposure now, in the other case is
now.

        25                 That is subject to two things.  The fact that

7

1      Microsoft's in-house counsel haven't seen them, which I
think is

2      the case.

3              Secondly, if at some point a specific issue
arises

4      where a party feels that they really can't do their job
without

5      seeing these documents, the counsel outside will then have
seen,

6      seen them, then we can revisit the issue.

7              But I think that, essentially, I should follow
what

8      the two other courts have done and essentially not change
the

9      rules of the game at this stage.  If there's something
that

10     comes up, Mr. Isbister, Mr. Tulchin, that you think we
need a

11     modification of that, come on back to me then.

12              MR. ISBISTER:  Very well, Your Honor.  The next
issue

13     involved Caldera.  Counsel for Caldera is on the line.
Caldera

14     filed their own papers.  And I have to apologize to
counsel for

15     Caldera.  He says that he was not aware of this call so he
just

16     jumped on.

17              THE COURT:  I'm sorry.  Okay.  Well, refresh my

18     recollection.  As soon as you start, I will remember it,
Mr.

19     Isbister.

20              MR. ISBISTER:  The Caldera issue involves a



# BOIES,    SCHILLER    &    FLEXNER    LLP

570 LEXINGTON AVENUE • 16TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

July 13, 2004

**By Facsimile (206) 676-7023 and Mail**

Lynn M. Engel, Esq.
Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104-2682

Re:  *In Re Microsoft Corp. Antitrust Litigation*, MDL 1332 (D. Md.) (Competitor Cases)

Dear Ms. Engel:

I am an attorney with Boies, Schiller & Flexner LLP, counsel to nonparty SBC Communications Inc. ("SBC") in the above-referenced litigation.

In response to your letter to my office dated June 23, 2004, on behalf of your client, RealNetworks, Inc., you and I spoke by telephone on June 29 and July 7, 2004, about RealNetworks' access in the MDL proceeding to the documents originally produced by SBC under a protective order in the Microsoft "Remedies" proceeding, *United States v. Microsoft Corp.*, Civ. Action No. 98-1232, and *State of New York v. Microsoft Corp.*, Civ. Action No. 98-1233 (D.D.C.) (the "SBC Remedies production"), and about related matters.

The purpose of this letter is to confirm our telephone conversation of July 7, 2004, in which we agreed (1) that SBC would not object to RealNetworks having access to the subset of the SBC Remedies production (comprising some three boxes of documents) that was designated for copying by Sun Microsystems, Inc. ("Sun") in 2003 following its review of the full SBC Remedies production, and (2) that RealNetworks would access only that document subset designated by Sun.[1]  The review by Sun was conducted under an arrangement reached

---

[1]  The attorney for Sun who was the principal point of contact in this review process was Peter R. Soares, Esq. of Sonnenschein Nath & Rosenthal LLP in San Francisco.

B O I E S,    S C H I L L E R   &   F L E X N E R    L L P

Lynn M. Engel, Esq.
July 13, 2004
Page 2


with the MDL competitor plaintiffs after SBC submitted written objections to the MDL Court and participated in a hearing before Judge Motz concerning the competitor plaintiffs' access to the SBC Remedies production and other nonparties' documents on May 7, 2003.

The production of documents by SBC to Sun as described above was made subject to the protections of the Amended Stipulated Protective Order Re Competitor Cases, dated October 31, 2002, in the MDL proceeding, as modified by Supplement to Order Regarding Amended Stipulated Protective Order Re: Competitor Cases, dated June 2, 2003 (attached hereto as Exhibit A), and Order Re: Microsoft's Production of Third-Party Documents, dated July 28, 2003 (attached hereto as Exhibit B). The June 2 and July 28, 2003 orders issued by Judge Motz specifically referenced the May 7, 2003 hearing. Under the July 28 order, Microsoft was not authorized to produce the entire SBC Remedies production to Sun and the other competitor plaintiffs, but instead the competitor plaintiffs were to negotiate an acceptable level of access directly with SBC, which led to the arrangement under which Sun ultimately designated a subset of the SBC Remedies production for copying. *See* Exhibit B at ¶ 1. Under the June 2 order, all of the SBC Remedies production documents were accorded Highly Confidential status, and were not permitted to be disclosed to inside counsel for Microsoft and the competitor plaintiffs. *See* Exhibit A at ¶ 5.

In view of this background of limitations and protections governing the disclosure of the SBC Remedies production in the MDL proceeding, this is to advise you, consistent with our telephone conversations and in accordance with your June 23, 2004 letter, that SBC does object and would object in the appropriate forum (1) to the production to RealNetworks of the entire set of SBC Remedies production documents, and (2) to the treatment of any portion of the SBC Remedies Production, including the subset described earlier in this letter (to which RealNetworks has access), on terms that reduce the confidentiality protections that had previously been accorded these documents in this MDL proceeding, including but not limited to granting access to inside counsel for Microsoft and RealNetworks.

If you have any questions regarding the above, please contact me at telephone (212) 446-2380. Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Steven I. Froot


Attachments

BOIES, SCHILLER & FLEXNER LLP

Lynn M. Engel, Esq.
July 13, 2004
Page 3


cc:    Ted Dane, Esq.
       Munger, Tolles & Olson LLP
       355 South Grand Avenue, 35th Floor
       Los Angeles, CA  90071-1560
       *Facsimile*:  (213) 687-3702

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document relates to:

All Competitor Cases

(*Netscape Communications Corp. v.
Microsoft Corp.*, Civil Action No. JFM-
022090; *Be, Inc. v. Microsoft Corp.*, Civil
Action No. JFM-02-2738; *Sun
Microsystems, Inc. v. Microsoft Corp.*,
Civil Action No. JFM-02-2739;
*Burst.com, Inc. v. Microsoft Corp.*, Civil
Action No. JFM-02-2952)

MDL Docket No. 1332

Hon. J. Frederick Motz

\*     \*     \*     \*     :\*     \*     \*     \*     \*     \*

## [PROPOSED] SUPPLEMENT TO ORDER REGARDING AMENDED STIPULATED
## PROTECTIVE ORDER RE: COMPETITOR CASES

On May 7, 2003, the Court heard the objections of various third-parties concerning

Competitor Plaintiff's request that Defendant Microsoft produce documents it had obtained

from the third parties in various antitrust litigation. The Court made certain rulings

regarding those objections and adopted a schedule for further proceedings regarding

certain of the objections. This order reflects those rulings of the Court.

IT IS HEREBY ORDERED:

1.     With respect to documents produced during the remedies phase of the
governments' case, objections that the Competitor Plaintiffs must seek modification of the
protective order entered in *United States v. Microsoft*, No.98-1232 (D.D.C.) and *State of
New York v. Microsoft*, No. 98-1232 (D.D.C.) in the District Court for the District of
Columbia are overruled. Pursuant to paragraph L.1. of that protective order, any court of
competent jurisdiction can compel Microsoft to produce documents for that case subject to
giving notice to the third party.

#339888

2.    Except for documents identified as provided in paragraph 3 below, and to the extent that Microsoft has not already produced those documents to Sun Microsystems, Microsoft shall produce to the Competitors all third party documents previously produced in *United States v. Microsoft*, No. 98-1232 (D.D.C.); *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) (including liability and remedy phases); *In Re Microsoft Corp. Windows Operating Systems Antitrust Litig.*, MDL Docket No. 1332 (D. Md.); *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco Cty); *Caldera v. Microsoft*, No. 2:96-CV-645B (D. Utah), and shall complete production no later than June 10, 2003.

3.    Microsoft shall cooperate with Dell, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, Packard Bell/NEC, Nortel, Sony, and SBC, to provide access to the documents each of those parties produced in the "remedy phase" of *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) to the extent those parties require copies of their remedy productions. By June 30, 2003, those parties may identify those particular documents that they believe are entitled to more protection than that provided by the Amended Stipulated Protective Order Re Competitor Plaintiffs entered October 31, 2002 ("Protective Order") as modified herein. The parties shall bring to the Court's attention any disputes that remain.

4.    Documents previously produced by Dell, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, Packard Bell/NEC, NCR, Nortel, Caldera, SBC, Sony and RealNetworks shall be deemed "Highly Confidential Information" as that term is defined in section 2(e) of the Protective Order.

5.    Highly Confidential Information produced by RealNetworks may not be disclosed to persons described in section 11 (c) of the Protective Order. Documents produced by Dell, Eastman Kodak, Gateway, Hewlett-Packard, NEC, Sony and SBC in the "remedy phase" of *United States v. Microsoft*, No.98-1232 (D.D.C.) and *State of New York v. Microsoft*, No. 98-1232 (D.D.C.) shall not be disclosed to persons described in section 11 (c) of the Protective Order.

6.    Except as set forth paragraph 4 and as provided for in the Protective Order, counsel for competitor plaintiffs and in-house counsel designated pursuant to 11(c) of the Protective Order and their experts shall be granted access to all documents previously produced by third parties in *United States v. Microsoft*, No. 98-1232 (D.D.C.); *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) (including liability and remedy phases); *In Re Microsoft Corp. Windows Operating Systems Antitrust Litig.*, MDL Docket No. 1332 (D. Md.); *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco Cty); *Caldera v. Microsoft*, No. 2:96-CV-645B (D. Utah).

7.    Section 21 of the Protective Order is amended, with respect to documents previously produced by Dell, Packard Bell/NEC, Caldera, Sony, RealNetworks, Eastman Kodak, Gateway, Hewlett-Packard/Compaq, NCR, SBC and Nortel, as follows:

### Use of Highly Confidential Information at Trial.

21.  Subject to the Federal Rules of Evidence, Confidential and Highly Confidential Information may be disclosed at trial or at a hearing in open court after providing the producing party or third party notice of disclosure as provided below.  Any party that lists Confidential or Highly Confidential Information as a trial or hearing exhibit shall notify the producing party or third party of its intent to do so within one day of listing such documents.  Unless a document is to be used for the purposes of impeachment, when the Confidential or Highly Confidential Information to be disclosed was not listed on the trial exhibit list, the party intending to disclose the Confidential or Highly Confidential Information must provide at least 24 hours' advance notice before its use (or, if that is not possible, as much advance notice as is practicable in the circumstances) to the producing or third party.

If the producing party and the party intending to use the document cannot agree on appropriate procedures to govern the use and protection of such information, the producing party may move the Court for an order that the evidence be received under conditions to prevent its disclosure (or to permit its disclosure in redacted form).  The Court shall then determine whether the proffered evidence should continue to be treated as "Confidential" or "Highly Confidential Information" under the terms of this Order, and if so, what protection, if any, should be afforded such evidence at the trial or hearing.  Nothing in this Order shall operate as an admission by any party that any particular discovery material is, or is not, admissible in evidence at the trial in these conditions.

Signed this _2nd_ day of June, 2003.



J. Frederick Motz
United States District Judge

#339888                                    3

B

FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT OF MARYLAND

FOR THE DISTRICT OF MARYLAND 2003 JUL 28 P 2: 52

| | | |
|---|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION | * | CLERK'S OFFICE AT BALTIMORE |
| This Document relates to: | * | BY_____DEPUTY |
| | * | MDL Docket No. 1332 |
| All Competitor Cases | * | Hon. J. Frederick Motz |
| (*Be, Inc. v. Microsoft Corp.*, Civil Action No. JFM-02-2738; *Sun Microsystems, Inc. v. Microsoft Corp.*, Civil Action No. JFM-02-2739; *Burst.com, Inc. v. Microsoft Corp.*, Civil Action No. JFM-02-2952) | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

[PROPOSED] ORDER RE: MICROSOFT'S PRODUCTION OF THIRD-PARTY DOCUMENTS

On May 7, 2003, the Court heard the objections of various third-parties concerning

Competitor Plaintiffs' request that Defendant Microsoft produce to Competitor Plaintiffs

documents that Microsoft obtained from the third parties in *United States v. Microsoft*, No.

98-1232 (D.D.C.) and *State of New York v. Microsoft*, No. 98-1233 (D.D.C.) (including

liability and remedy phases), *In Re Microsoft Corp. Windows Operating Systems Antitrust*

*Litig.*, MDL Docket No. 1332 (D. Md.), *Coordination Proceedings Special Title (Rule*

*1550(b)) Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco Cty), and

*Caldera v. Microsoft*, No. 2:96-CV-645B (D. Utah). On June 2, 2003, the Court adopted a

schedule for further proceedings regarding objections raised by certain third parties with

regard to their productions in *United States v. Microsoft*, No. 98-1232 (D.D.C.) and *State*

*of New York v. Microsoft*, No. 98-1233 (D.D.C.). The objecting third parties included Dell

#339888

Computer Corp., Eastman Kodak Co., Gateway, Inc., Hewlett Packard Co./Compaq

Computer Corp., Packard Bell/NEC, Nortel Networks, Sony Corporation and SBC

Communications Corp. ("SBC"). With the exception of Nortel, those objections related to

productions made the remedies phase only. The objecting third-parties were given until

June 30, 2003 to assert further objections. Only Gateway and SBC asserted such

objections. The Competitor Plaintiffs are continuing to negotiate with Gateway and SBC

regarding their objections

IT IS HEREBY ORDERED

      1.    Microsoft shall within twenty days of this order, to the extent it has not
already done so and subject to all protective orders entered in this action, produce to Sun
(and Be and Burst should they request copies prior to entry of this order) the third-party
documents from the objecting third parties identified above except those subject to the
continuing objections of Gateway and SBC.

Signed this _28th_ day of July, 2003

                            J. Frederick Motz
                            United States District Judge

#339888

## CERTIFICATE OF SERVICE

I, Angela Lawrence, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

I am employed in the State of New York, County of New York. I am over 18 years of age and I am not a party to the within action. My business address is 570 Lexington Avenue, 16th Floor, New York, New York 10022.

On September 24, 2004, I served a copy of **Non Party SBC Communications Inc.'s Objections to Access by Designated In-House Counsel for Realnetworks, Inc. and Microsoft Corp. to SBC Communications Inc.'s Confidential Materials** upon counsel named below via Federal Express Overnight Delivery in envelopes addressed as follows:

Microsoft Corporation

Ted Dane, Esq.
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560

RealNetworks

Lynn M. Engel, Esq.
SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of September 2004.

_____
Angela S. Lawrence