IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION.<br><br>This Document relates to:<br><br>*Burst.com, Inc. v. Microsoft Corp.,*<br>Civil Action No. C-02-02952 | MDL Docket No. 1332<br><br>Hon. J. Frederick Motz |

**MICROSOFT'S RESPONSE TO BURST'S MOTION FOR LEAVE TO FILE A FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Dated September 28, 2004

MICROSOFT CORPORATION

Charles W. Douglas
Richard A. Cederoth
David M. Schiffman
John W. Treece
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Of Counsel:
David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

Michael F. Brockmeyer
  (Fed. Bar No. 02307)
Jeffrey D. Herschman
  (Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-3000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Karen A. Popp (D. Md. No. 26145)
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005

*Attorneys for Defendant Microsoft Corporation*

Microsoft hereby responds to Burst's Motion for Leave to File a First Amended and Supplemental Complaint ("FASC").

### Introduction and Summary

I.     Microsoft does not object to Burst's proposed antitrust-related and trade secret-related amendments to the complaint.[1]  Indeed, the FASC drops two antitrust claims that Burst now implicitly admits never had any basis.

- The FASC drops entirely Burst's allegation that a 1997 agreement between Microsoft and RealNetworks was a "broad express horizontal agreement not to compete," designed to "limit innovation in video delivery software." Cmplt. ¶¶ 7, 39.  That bad faith allegation was always based on an interpretation – inconsistent with the express terms of the agreement, as well as with RealNetworks' sworn testimony about its intent – of a contract that, by its terms, expired before it could have had any impact on Burst.

- The FASC also drops Burst's allegation that Microsoft made a "calculated change" by "disabl[ing] the published API that Burst relied on" when it introduced Windows Media Player 7.0 so as to "disadvantage and delay" Burst's "first and critically important demonstration of its technology over the Internet," a broadcast of a U2 concert. Cmplt. ¶ 69.  Burst's own documents show that Burst was well aware that the introduction of WMP 7.0 had no effect whatsoever on the dismal failure of Burst's U2 concert event.

II.    Microsoft objects to Burst's proposed patent-related amendments. Those amendments are nothing less than an attempt to add an entirely new set of infringement allegations to this case just a few weeks before the close of fact discovery, on September 30, a date to which Burst agreed in early August.  Indeed, apparently recognizing the serious implications – indeed fatal implications, in Microsoft's view – of this Court's claim construction rulings for Burst's patent infringement claims, the FASC drops references to "FastStart" and "FastCache," the two features that the Court heard so much about in connection with the claim

---

[1] Microsoft understands Burst's motion to represent that the supposed "trade secrets" at issue in FASC are the same claimed "trade secrets" – such as Burst's published patents and publicly-

1

construction hearing, and shifts direction, focusing on new features, products, and technologies, Windows Media 10, MSN Music Service, and the Portable Media Center. (See FASC at ¶¶11-19, 92-99, 106). This is a very fundamental shift; up to now, Burst's patent infringement allegations have focused solely on <u>server</u> side products, but the proposed amendments now focus on <u>client</u> side products, as well. Moreover, most of the newly accused features are refinements of capabilities that have been in Windows Media 9 but that Burst chose not to accuse until now. In short, having agreed in early August that fact discovery would close on September 30, Burst now seeks to file essentially a new patent infringement case at the eleventh hour.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). That general rule, however, is subject to the caveat that "belated claims which change the character of litigation are not favored." <u>Smith v. Angelone</u>, 111 F.3d 1126, 1134 (4th Cir. 1997) (quoting <u>Deasy v. Hill</u>, 833 F.2d 38, 42 (4th Cir. 1987)). Furthermore, a motion to amend a complaint may appropriately be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant. <u>Id</u>. (citing <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 941 (4th Cir. 1995)). Prejudice may be found if an amendment is "'proposed late enough' and requires the opponent 'to engage in significant new preparation.'" <u>Id</u>. (quoting 4 Charles A. Wright et al., Federal Practice and Procedure, § 1487, at 623-26 (2d ed. 1990)).

These principles dictate that Burst's motion be denied with respect to its patent-related amendments. These amendments clearly "change the character of the litigation"

---

available information on its website and in its marketing materials – asserted in the original Complaint.

2

inasmuch as they accuse previously-unaccused features. They are clearly belated, as they have been brought only weeks before the discovery deadline to which Burst agreed. And they would clearly prejudice Microsoft because their allowance would require substantial new preparation and would delay resolution of this case.

## Argument

### A. Burst's Motion Should Be Denied As Untimely.

At the July 7, 2004 status call, counsel for the parties reported that they were attempting to negotiate a schedule for the remainder of the case – and most important, the end of fact discovery – but had been unable to do so, in part because Burst had informed Microsoft that it intended to file an amended complaint but had not provided it to Microsoft. (See Ex. A) By the time of the August status call, Burst had provided a draft amended complaint to Microsoft **which lacked the patent infringement claims its FASC now asserts.** (See Ex. B). Shortly after Burst provided Microsoft with its draft amended complaint, the parties agreed to a schedule that called for fact discovery to end on September 30, which Burst sent to the Court on August 11, 2004. (See Ex. C). Based on that agreement, the Court ordered that date as the close of fact discovery.[2]

After holding these new infringement allegations in reserve, Burst filed the instant motion on September 10 – less than three weeks before the agreed-upon close of fact discovery. The only possible explanation for this conduct is that Burst perceives some tactical advantage by

---

[2] The parties have separately agreed that discovery directly relating to Burst.com Inc.'s Motion To Compel Microsoft To Produce Documents Relating To Its Document Preservation Policy and Practice (August 19, 2004), may extend to October 11, 2004. This Court indicated that if it grants Burst's motion, Burst would have three weeks from the date of the Court's ruling to complete discovery regarding matters directly related to the motion. These issues do not, however, bear on the general date for close of discovery, which is September 30, 2004.

3

changing course. On its face, the FASC alleges that Microsoft released the beta version of Windows Media 10 in early June 2004. See FASC at ¶97. Moreover, the features of Windows Media 10 that Burst targets in the FASC are refinements of features contained in Windows Media 9 (which formed the basis of Burst's original Complaint) that **Burst chose not to accuse** (until now). Thus, Burst was indisputably aware of these features long before now, but elected not to allege that they infringe any Burst patents until now.[3] Under similar circumstances, courts have denied motions to amend. See, e.g., Lone Star Steakhouse, 43 F.3d at 940 (where movant had evidence that formed the basis for amendment at least as early as March 1993, but waited until June 25, 1993, the closing days of discovery, to file a motion to amend, and where the amendment would have significantly altered the nature of the litigation, the Court held that motion to amend was properly denied).

### B. Burst's Motion Should Be Denied Because The Proposed Amendments Would Substantially Alter The Nature Of The Litigation.

Second, Burst's amendments would substantially alter the nature of the litigation by injecting entirely new infringement claims into the litigation. Burst asserts that the amendments merely "make[] clear that Microsoft's new Windows Media 10 Series and related products are included in the accused products." Burst Mot. at 2.

Burst's attempt to downplay the significance of the amendments is misleading. As stated above, the amendments represent a fundamental shift away from server products, toward client-side features contained in the Windows Media Player. For example, the FASC

---

[3] In fact, Burst issued its Seventh set of Requests for Production, which related to Windows Media 10, in early July 2004. (See Ex. D). Microsoft did not honor these requests because they related to products that were not accused. Burst did not attempt to amend its Complaint at the time it served these requests, and has waited until now to do so.

shifts emphasis away from "Fast Start" and "Fast Cache" and focuses instead on MSN Music Service, the new Portable Media Center, and four features of Windows Media 10 ("a simplified interface, enhanced device support, an all-in-one jukebox and a 'Digital Media Mall'," (see FASC at ¶97), – none of which were previously "accused."

That Burst attempts to expand its infringement allegations substantially is made clear from Burst's response to Microsoft's Fifth Set of Interrogatories.[4] (See Ex. E). After the Court's claim construction rulings, Microsoft did not understand how Burst could continue to assert patent infringement. After repeatedly attempting to get Burst to identify its infringement theory, Microsoft served its Fifth Set of Interrogatories to Burst on July 16, 2004, in which it sought to discern which patent claims Burst would continue to assert in light of this Court's claim construction rulings. (See Ex. F).

While such post-Markman hearing infringement contention interrogatories are common, Burst's response was anything but. Rather than meaningfully applying the Court's constructions or narrowing the issues, Burst submitted 270 pages worth of interrogatory responses which contained a blizzard of new infringement allegations, not previously pled or identified, that purport to accuse features in WMP 9 (and related features in Windows Media 10) that it had previously never mentioned. (See Ex. E). For example, Burst identifies "Ripping" and "Burning" CDs and uploading multimedia to portable devices for the first time, even though Windows Media Player 9 had these features throughout this suit. Burst never mentioned these features in its original infringement contentions, served in 2003, which focused on server

---

[4] To the extent Burst argues that this response somehow put Microsoft on notice of Burst's amendments before its filing of the instant motion, it is worth emphasizing that Burst served these responses on September 2, 2004.

5

software and streaming. (See Ex. G.)[5] Indeed, Burst admits that these features have been in Microsoft's products all along because it accuses both Windows Media Player 10, which was released recently, and Windows Media Player 9, which was released early in discovery in Spring 2003. (See Ex. E). Crucially, none of these features appear in Burst's original complaint or in its lengthy infringement contentions from 2003. In sum, Burst apparently realized that, under the Court's claim construction, it could not prove infringement and is trying to start over.

Burst attempts to avoid the reality that it should not be permitted to add new infringement allegations at this late date by cavalierly stating that it isn't. (Burst Mot. at 2 ("None of these changes alter the fundamental nature of this case.")) By reference to functions that Burst identified at exceedingly high levels of generality in its previous contentions, it claims that it somehow had accused these new features before. (See Ex. H at 2). Fairly read, however,

---

[5] In addition to being irrelevant to the current motion, Burst's September Interrogatory response, that for the first time alleges an infringement theory encompassing Windows Media client software, is objectionable its own right. Any new infringement theory, that surfaces for the first time nearly three months after the Court's last round of claim construction and less than thirty days before the close of discovery, is patently untimely. See e.g., Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co., Ltd., 308 F.Supp.2d 1106, 1107 (N.D. Cal. 2004); Arquest, Inc. v. Tracy, 2002 WL 1803746 (N.D.Ill.). The claim construction process pursuant to Markman requires the parties to put their cards on the table before the court undertakes the effort. Integrated Circuit Systems, 308 F. Supp.2d at 1107. Burst's Interrogatory response, however, represents precisely the "shifting sands", "vexatious shuffling of positions" and "legal musical chairs" approach to patent infringement allegations that caused the Northern District of California, from which this case originated and to which it will some day return, to enact strict rules prohibiting such wasteful litigation tactics. Id.; Atmel Corp. v. Information Storage Devices, Inc., 1998 WL 775115 (N.D.Cal.) at *2-3. Moreover, to the extent that any infringement allegations carry over from Burst's pre-claim construction contentions, Burst's September response largely ignores the Court's construction rulings in its efforts to maintain its infringement claims. But, the parties are not free to ignore the Court's rulings. If Burst's infringement claims cannot survive those rulings, they should be dismissed. Microsoft is entitled to a meaningful response that applies the Court's rulings to the features that were accused so Microsoft can finalize its defense and prepare summary judgment motions, as necessary. If unable to persuade Burst to provide a such proper response, Microsoft intends to seek an order from the Court addressing Burst's non-responsive answer.

those broad statements did not include the particular features that Burst now injects into the litigation. Indeed, Burst's earlier contention focused solely on <u>server</u> side software and streaming, and it now accuses the client software, Windows Media Player. Notwithstanding Burst's gamesmanship, the reality is that Burst's allegations <u>are</u> new and would significantly expand the litigation.

### C. Burst's Proposed Amendments Would Unjustly Prejudice Microsoft.

Microsoft would be unfairly prejudiced if Burst were allowed to reinvent its patent litigation strategy by amending its Complaint, in effect starting a new case at this late date. The parties would have to conduct a full-blown round of discovery to address these new allegations. This would include – but would almost certainly not be limited to – an extensive document production, and apparently, based on Burst's representations to Microsoft, an extensive round of depositions. Moreover, another <u>Markman</u> hearing might be required to construe Burst's newly-asserted claims. Under analogous circumstances, courts have denied motions to amend.[6]  <u>See, e.g.</u>, <u>Smith v. Angelone</u>, 111 F.3d 1126, 1134 (4th Cir. 1997) (denying motion to amend and noting that it would have been unfair to require the non-movant to choose between having to go to trial without a fair opportunity to prepare its case on the one hand, and having to conduct "'discovery a second time in order to meet [the] newly asserted [claim]'" on the other.) (<u>quoting</u> <u>Nat'l Bank of Washington v. Pearson</u>, 863 F.2d 322, 328 (4th Cir. 1988)).

---

[6] Microsoft wants to make clear that the new patent infringement claims are entirely baseless. Oversimplifying, they assert that simple file transfers, when the file contains audio/video content, infringe Burst's patents. But just as Burst's earlier grandiose claim that it invented "faster than real time" transmission of audio/video files over the Internet was proven false – since nothing in their patents suggest delivery over the Internet and since the prior art clearly showed "faster-than-real-time" transmission – its new claim to have invented file transfer – something that actually is as old as computers – is similarly false.

Burst tries to downplay the prejudice that its proposed amendments would create by stating that "the new patent allegations will require only a brief extension of approximately 60 days to complete patent discovery..."[7] (Burst Mot. at 2). Burst's estimate of "approximately 60 days" to complete discovery on new patent infringement claims is either complete folly or completely disingenuous. In fact, Burst already has served Microsoft with some discovery on its new infringement claims, even before getting leave from the Court to assert them. For example, Burst served its Seventh Set of Requests for Production, which relate to the Windows Media 10 series, in early July 2004. (See Ex. D). Moreover, on September 10, Burst served Microsoft with a Rule 30(b)(6) deposition notice that purports to seek a staggering <u>35 days</u> worth of 30(b)(6) testimony on Burst's new infringement allegations. (See Ex I).[8] Burst fails to tell the Court about that notice, and while it advises the Court of "Burst's Seventh Request for the Production of Documents," Burst Mot. at 2, it fails to tell the Court that it has also served subpoenas relating to its new infringement allegations on at least two (and Microsoft believes, three) third-parties (without telling them the subpoenas relate to allegations that the Court has not granted leave to assert). (See Ex. K, L). Thus, Burst's claim to the Court that "the new patent

---

[7] Burst's counsel has informed Microsoft's that by asking for a 60-day extension of discovery, it seeks to extend *all* discovery deadlines by approximately 60 days. As it turns out, that would prejudice Microsoft because the current schedule is structured to accommodate the holidays, an accommodation that would be sacrificed by the proposed 60-day extension. More importantly, however, Microsoft agrees that if any part of the schedule is extended, the entire schedule must be extended. That is because the parties have, after protracted negotiations and discussions, reached the conclusion that the patent schedule should be integrated with the antitrust and trade secret schedule. Bifurcating the schedules between patent issues (on the on hand) and antitrust and trade secret issues (on the other) does not work in this case because of the interrelatedness of the issues. On that point, the parties apparently agree.

[8] After Burst sent its Rule 30(b)(6) notice, Microsoft's counsel responded in a letter in which counsel noted that the notice on its face sought 35 days of testimony. (See Ex J). When Burst's counsel replied to Microsoft's letter, it did not deny that it was seeking 35 days' worth of new testimony. (See Ex. H).

8

allegations will require only a brief extension of approximately 60 days to complete patent discovery" is a false inducement for the Court to grant its untimely motion for leave to file new infringement claims. The truth is that Burst is attempting to add completely new patent infringement allegation against previously-unaccused features that will require substantial discovery.

Burst says that the FASC is required to "update[] certain allegations based on ... marketplace events since the filing of the original complaint." Burst Mot. at 2. But it is obviously true that "marketplace events" in the digital media field are rapidly occurring, and Microsoft, as an important innovator in the field, is likely to be involved in them. This case, however, should not become a vehicle by which Burst, after having its asserted claims constructions rejected, can merely shift positions or assert new claims as new products enter the market place.[9] If that is allowed to happen, there may be no end in sight to the discovery in this case.

Additionally, allowance of these amendments would prejudice Microsoft because their allowance would delay resolution of this case. Burst seems to hope that it can extract a settlement from Microsoft by engaging Microsoft in a never-ending discovery process that is extremely disruptive to Microsoft's business. For example, Burst has deposed – and continues to seek to depose – numerous high level executives at Microsoft, who had no involvement with Burst, including Bill Gates himself. Burst's request to extend discovery yet again by

---

[9] It is interesting to note that Burst fundamentally accuses features that involve the simple file transfer involved in "ripping" and "burning" CDs. It is well-known that many of Microsoft's competitors offer these features, but Burst has not sued them, presumably because this case provides a very convenient vehicle for adding new patent suits to lost ones.

9

"approximately" 60 days is only the latest in its string of efforts to extend discovery in this case in the hope that Microsoft will eventually tire and settle the case:

- Burst asked to cancel the long-scheduled hearing on its own collateral estoppel motion, asking that it be postponed until after the resolution of summary judgment motions – and then shortly thereafter, filed this motion.

- Burst has asked to take another deposition of Mr. Gates, even though it has presented no basis for that request of which it was not aware before it took his first deposition and which it could not have presented before then.

- Since June of 2003, Burst has told Microsoft that its search for responsive documents was not "custodian based," *i.e.*, it was not limiting its search to documents from the files of certain individuals, but rather, was searching *all* of Burst's documents for responsive documents. (See Ex. M). On September 2, 2004, Burst informed Microsoft for the first time that this wasn't true. (See Ex. N). Specifically, after the October 2003 deposition of a Burst employee showed massive and deliberate document destruction by Burst in November 2000, Burst mysteriously discovered it could "access" an email server that it had previously claimed it was unable to access. (See Ex. )) But just this month, Burst informed Microsoft for the first time that it was *not* searching all documents on that server, but only the mailboxes of selected employees. (See Ex. N) Obviously, Microsoft has asked Burst to produce documents from the mailboxes of certain key employees that Burst had conveniently failed to search.

- Burst's discovery about discovery, as opposed to discovery about the merits of its claim, has gone further and further afield. For example, in recent weeks, it has sent Rule 30(b)(6) deposition notices demanding testimony about (a) who set the mailbox size restrictions that apply to thousands of Microsoft employees' email and why they were set and (b) the capabilities of data bases created by Microsoft's outside counsel (which is information clearly protected from discovery). (See Ex. P).

The pattern is unmistakable. The issue is whether the Court should indulge it. Microsoft believes that this lawsuit – without the newly-minted patent infringement allegations – is ready to proceed to disposition on the merits, and Burst's continued efforts to avoid that disposition should be rejected.

## Conclusion

For the reasons stated herein, Burst's motion to file the First Amended and Supplemental Complaint should be denied, and Burst should be directed to file, if it wishes, an amended complaint that does not assert new patent infringement allegations.

Dated: September 28, 2004

MICROSOFT CORPORATION

By: /s/ Charles W. Douglas
Charles W. Douglas
Richard A. Cederoth
David M. Schiffman
John W. Treece
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Of Counsel:
David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

Michael F. Brockmeyer
  (Fed. Bar No. 02307)
Jeffrey D. Herschman
  (Fed. Bar No. 00101)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-3000

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052
(425) 936-8080

Karen A. Popp (D. Md. No. 26145)
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005

*Attorneys for Defendant Microsoft Corporation*

**CERTIFICATE OF SERVICE**

Jeffrey D. Herschman, an attorney, hereby certifies that on September 28, 2004, he caused a true and correct copy of the foregoing document, Microsoft's Response to Burst's Motion For Leave To File A First Amended And Supplemental Complaint, to be served upon the following counsel for the Plaintiff:

Spencer Hosie (via Email and Overnight Delivery)
Bruce J. Wecker
HOSIE, FROST, LARGE & McARTHUR
One Market Spear Street Tower, 22nd Floor
San Francisco, CA 94105

Robert Yorio (via Email and Overnight Delivery)
Mary A. Wiggins
CARR & FERRELL, LLP
2200 Geng Road
Palo Alto, California 94303

_____
Jeffrey D. Herschman