IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION<br><br>This Document relates to:<br><br>*Burst.com, Inc.* v. *Microsoft Corp.*,<br>Civil Action No. C-02-2952 | MDL Docket No. 1332<br><br>Hon J. Frederick Motz<br><br>**FILED UNDER SEAL** |

**MICROSOFT'S SURREPLY MEMORANDUM IN OPPOSITION TO
BURST'S MOTION TO COMPEL MICROSOFT TO PRODUCE
DOCUMENTS RELATING TO ITS DOCUMENT PRESERVATION POLICY**

David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

Charles W. Douglas
John W. Treece
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Michael F. Brockmeyer
(Fed. Bar No. 02307)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

Thomas W. Burt
Richard J. Wallis
C. Andrew Culbert
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052-6399
(425) 706-8080

*Attorneys for Defendant Microsoft Corporation*

October 1, 2004

## TABLE OF CONTENTS

Page

Companies May Adopt Document Retention Policies
That Do Not Require Preservation of Documents
Prior to Commencement or Anticipation of Litigation.................................................. 2

Burst Provides No Basis To Invade Microsoft's Privilege............................................. 6

`<`

-ii-

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Gumbs* v. *Int'l Harvester, Inc.*, 718 F.2d 88 (3d Cir. 1983) .......................................... 3

*In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515 (N.D. Ill. 1990) ...... 7 n.5

*Lewy* v. *Remington Arms Co.*, 836 F.2d 1104 (8th Cir. 1988) ...................................... 2

*Procter & Gamble Co.* v. *Haugen*, 179 F.R.D. 622 (D. Utah 1998) ............................ 3

*Rambus* v. *Infineon Tech. AG*, 222 F.R.D. 280 (E.D. Va. 2004) ............................ 8-10

*Scott* v. *IBM Corp.*, 196 F.R.D. 233 (D.N.J. 2000) ....................................................... 3

### OTHER AUTHORITIES

7 James Wm. Moore, Moore's Federal Practice (3d ed. 2003) ............................ 2

1 John W. Strong, McCormick on Evidence (5th ed. 1999) .................................. 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION<br><br>This Document relates to:<br><br>*Burst.com, Inc.* v. *Microsoft Corp.*,<br>Civil Action No. C-02-2952 | MDL Docket No. 1332<br><br>Hon J. Frederick Motz<br><br>**FILED UNDER SEAL** |

**MICROSOFT'S SURREPLY MEMORANDUM IN OPPOSITION TO
BURST'S MOTION TO COMPEL MICROSOFT TO PRODUCE
DOCUMENTS RELATING TO ITS DOCUMENT PRESERVATION POLICY**

Burst's reply makes clear that its motion is devoted solely to events taking place several years before Burst filed this action in June 2002, and long before Microsoft had any reason to anticipate litigation with Burst.[1] There is no basis for Burst's accusations and requested relief.[2]

Moreover, the focus of Burst's motion are on issues that do not deal with Burst at all, but instead relate to 1997 contracts between Microsoft and RealNetworks. Yet Burst is dropping allegations based on those contracts in its proposed Amended Complaint, implicitly admitting that its far-fetched conspiracy theory involving Microsoft and Real has no merit. So, the document issues raised in Burst's motion — which were

---

[1] Burst makes one comment about documents that were removed from Microsoft servers by Mr. Ochs (at other employees' requests) in 2002 and 2003. (Burst Reply at 9-10.) But as explained in Microsoft's opposition brief (at page 14, footnote 6), Mr. Ochs was not instructed to delete documents of identified custodians on servers he maintained. Burst does not contend (it could not) that Mr. Ochs (an IT employee) independently had any potentially responsive documents.

[2] Burst's reply requests for the first time an *in camera* review by this Court. Although Microsoft does not believe that such a review is necessary, it does not object.

never raised, let alone pursued or litigated by the parties involved in those matters — would not even have impacted preservation of documents relevant to this action.

> *Companies May Adopt Document Retention Policies*
> *That Do Not Require Preservation of Documents*
> <u>*Prior to Commencement or Anticipation of Litigation*</u>.

Burst now concedes (Burst Reply at 19-20 & n.11) that a company is entitled to establish a document retention policy prior to the commencement or anticipation of litigation. *See, e.g.*, 7 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 37A.11[3][a], at 37A-27 (3d ed. 2003) ("In general, the duty to preserve evidence arises when a party is aware or should be aware that evidence in its possession or control is relevant to litigation or potential litigation. . . . [T]he potential litigation must be probable and not merely possible.").

Many courts — including this one (*see* Transcript of May 20, 2004 Hearing at 4-5) — have recognized that implementing such document retention policies means that a company will not preserve all documents that are relevant to some later-filed litigation. This is proper and legitimate, so long as reasonable efforts are made to preserve and collect potentially discoverable documents once litigation is commenced or imminent. *See, e.g.*, MOORE, *supra*, § 37A.12[5][d], at 37A-54 ("In general, the destruction of a document does not raise an adverse inference of spoliation if it is done in accordance with a routine housekeeping records retention and disposition policy and without knowledge that the destroyed document is relevant to the claim or defense of any party in pending or imminent litigation."); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988) (a document retention policy is not considered "instituted in bad faith" if any consequent "'destruction was a matter of routine with no fraudulent intent'")

(quoting *Gumbs* v. *Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3rd Cir. 1983)); *Scott* v. *IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J. 2000) (spoliation finding requires "direct evidence that the documents were knowingly destroyed after plaintiff filed his . . . complaint"). And, contrary to Burst's unsupported suggestion (Burst Reply at 19), American corporations commonly establish document retention policies that result in the destruction of e-mails and other documents that would, if they had been preserved, become discoverable in litigation. *See, e.g., Scott*, 196 F.R.D. at 246 (IBM); *Procter & Gamble Co.* v. *Haugen*, 179 F.R.D. 622, 631 (D. Ut. 1998) (Procter & Gamble). It would be impractical, to say the least, to promulgate a rule requiring more than this.

Burst itself has destroyed many relevant documents, even after it had decided to pursue litigation against identified adversaries. In November 2000, when Burst recognized that its business was collapsing, it started firing many employees and began a phase of its business that would be more focused on litigation.[3] Nevertheless, the record in this case demonstrates that even when it expected soon to sue, (1) Burst did nothing to preserve documents, (2) Burst "wiped clean" the hard drives of the computers

---

[3] *See, e.g.*, BUR5024746-49 (attached as Exhibit 1 hereto) (August 10, 2000 list of priorities for Burst's general counsel is to "[p]repare and execute an enforcement readiness plan for Burst.com's patent portfolio," which "is important, since we will have to produce these documents to the other side during the discovery phase of litigation."); BUR5131721-24 (attached as Exhibit 2 hereto) (minutes from a November 1, 2000 Burst Board of Directors Meeting with motion passing after "RealNetworks Status Report" that "the Board hereby authorizes management to work with Brown & Bain, P.A, to pursue measures necessary to protect the Company's intellectual property against infringement"); BUR5131713-20 (attached as Exhibit 3 hereto) (November 9, 2000 "Special Telephonic Meeting of the Board of Directors" indicating that Burst would reduce its staff, and that Richard Lang would remain to "[m]anage IP and litigation." The document recommends that Burst "[p]roceed immediately with Real Networks litigation process.").

of those employees it laid off and sold those computers, and (3) several Burst employees deleted e-mails and/or destroyed hard copy documents in their possession. For example,

- Richard Lang, Burst's Rule 30(b)(6) witness on document retention issues, testified that when Burst laid off its employees in November 2000, their computers "were wiped and then sold." (Lang Dep. (Ex. 4) at 10.) He further testified that Burst did not have a document retention policy. (*Id.* at 9.)

- Sonja Erickson, Burst's Director of Information Technology, testified that during the November 2000 layoffs, Burst did nothing to preserve the electronic documents that were stored on Burst personal computers and did not recall whether Burst made any effort to preserve paper files. (Erickson Dep. (Ex. 5) at 15-16.) Erickson further testified that Burst had no document retention policy, and that within her department each person decided what to do with their documents on an individual basis. (*Id.* at 17.)

- Mike Moskowitz, Burst's Vice President of Marketing, testified that, at the time his employment ended with Burst in November 2000, he deleted all of his e-mail messages (Moskowitz Dep. (Ex. 6) at 23) and the handwritten notes that he had taken during Burst's meeting with Microsoft in October 1999 (*id.* at 48-49).

- Don Apodaca, one of Burst's salespeople, testified that, when Burst laid off most of its staff in November 2000, he "threw a lot of [his documents] away." (Apodaca Dep. (Ex. 7) at 9.)

- Beginning in early 1999, Burst implemented a computer database for managing its customer relationships called, aptly, "Goldmine." As Burst's Rule 30(b)(6) deponent testified, Goldmine contained customer information and feedback from customers that would have been extremely valuable in discovery in this case, including customer feedback and complaints, customer questions, customer requests for certain features and functionality, sales forecast information, records of Web demonstrations and downloads and product evaluations. (Walters Dep. (Ex. 8) at 35, 56, 60, 62-64, 67-68, 77.) Burst's deponent testified that this information was "valuable in the sense that it's good to know what customers had to say about the product and what our employees, you know, the notes they were taking and so on . . . ." (*Id.* at 118; *see also id.* at 124.) Despite its admitted value, in November to December 2000, the Goldmine database was wiped clean from *all* of Burst's employees' hard drives *and* a central Burst server. (*See id.* at 32-33, 204, 206; *see also id.* at 84-85.)

Whether Burst's conduct was proper or improper is, of course, not the subject of the present motion. It does show, however, that corporations do not always

retain every e-mail or other document that an employee might send or receive. In Burst's case, this occurred despite the fact that it was planning to commence litigation.

Burst does not dispute that it brought suit in June 2002 and that Microsoft had no reason to anticipate any such suit prior to that time, and thus no obligation to preserve any documents for Burst. Instead, Burst refers to Microsoft conduct in prior litigation where Microsoft's adversaries made no complaint about Microsoft's document retention. Burst cites not a single authority for the proposition that a court should evaluate a company's document preservation efforts in years-old litigation or investigations, particularly when the record and memories of those matters have long since faded and the parties in those litigations have not complained.[4]

In any event, Burst provides absolutely no evidence that Microsoft intentionally sought to destroy documents that might be responsive to anticipated or pending litigation. After Microsoft has produced thousands of documents to adversaries that were marked as exhibits at trials and trumpeted by those adversaries as damaging to Microsoft, no such assertion could plausibly be made.

Although Burst insinuates that Microsoft intentionally failed to preserve relevant documents from the files of Phillips and Engstrom, this is not so. After discussions concerning a CID, the Department of Justice formulated a list of 20 document custodians (including Engstrom) whose files would be searched for documents concerning Microsoft's July 1997 agreement with Real. Those files were searched in the

---

[4] Notably, after filing its motion, Burst sought Microsoft's permission to speak to the Department of Justice about the subject of its motion. Microsoft agreed, and yet Burst's reply does not contain any evidentiary submission from the DOJ (or, for that matter, from Sun or the other litigants referenced by Burst).

fashion requested by the DOJ, and no one contends that Microsoft failed to produce all relevant documents from the requested files.

The fact that Phillips and Engstrom were not among those listed by Microsoft in response to an interrogatory (although Engstrom was among the DOJ's list of 20 custodians) was neither sinister nor part of some plot to hide evidence, as explained in Microsoft's opposition brief (at pp. 3-10). Indeed, in a deposition conducted by Burst just yesterday, Mr. Engstrom testified repeatedly that he and Mr. Phillips had "[z]ero" involvement in negotiating any deal with RealNetworks. (Engstrom Dep. (Rough Transcript) (Ex. 9) at 136; *see also id*. at 133-35.) Mr. Engstrom testified that Bob Muglia negotiated the second RealNetworks deal "without talking to me." (*Id*. at 114-15.) Mr. Engstrom explained that the label "the Chris Phillips deal" was a misnomer (*id*. at 115-16) likely originating in the fact that he and Phillips had worked on "a shopping list" of technical items Microsoft wanted to obtain from RealNetworks. (*Id*. at 96.) This list "was not part of the actual deal that was signed," Engstrom clarified. (*Id*. at 95.) "Everything we were doing was flipped aside. . . . The document that I worked on was never used as the basis" for "negotiating the contracts that were signed." (*Id*. at 95-96.) In any event, many documents from or to Phillips and Engstrom were produced from the files of others, including Muglia, who actually negotiated and struck the deal with Real, as the documents submitted with Burst's papers reveal.

### *Burst Provides No Basis To Invade Microsoft's Privilege*.

Burst's original motion contained no argument or authority for the proposition that document retention notices sent to Microsoft employees are not privileged. (*See* Burst Motion at 24.) And Burst nowhere even requested discovery of a

1996 e-mail from Microsoft's General Counsel (William Neukom) that it now states is the subject of its motion. (Burst Reply at 3.) As set forth in Microsoft's opposition, the notices are attorney-client privileged and protected by the attorney work product doctrine because they were drafted by Microsoft's legal department and were sent as legal advice to clients, namely Microsoft employees, in connection with actual or contemplated litigation. (*See* Microsoft Opp. at 15-16 & n.8.) Similarly, the e-mail from Mr. Neukom providing legal advice about document retention constitutes a privileged attorney-client communication. While attempting to distinguish the authority cited by Microsoft, Burst provides no authority to the contrary, except to refer to a single decision distinguished by one of the authorities cited by Microsoft. (Burst Reply at 19-22.)[5]

Burst's original basis for arguing that Microsoft waived its privilege was that Microsoft lawyer Tom Burt testified at a deposition about Microsoft's document retention policy. (Burst Motion at 24-26.) Microsoft's opposition noted Burst's failure to inform the Court that the Burt deposition was conducted pursuant to an agreement

---

[5] Microsoft disagrees with Burst's arguments concerning the authorities cited by Microsoft. Because those arguments — although incorrect on the merits — are appropriate for a reply brief, Microsoft does not here address those points. The only new decision cited by Burst, *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515 (N.D. Ill. 1990) (Burst Reply at 20-21), is distinguishable from the facts here. The *Air Crash Disaster* court reasoned that documents "sent by in-house counsel to 500 General Electric employees telling them to comply with a court order not to destroy documents" were not privileged because "[t]here can be no expectation of confidentiality when 500 people are sent a memorandum (indeed the memoranda do not even contain a notation requiring confidentiality)." 133 F.R.D. at 521. Here, the notices in question were sent either individually or to groups of employees, not to hundreds of people. Moreover, the notices state explicitly that they are attorney-client privileged and the e-mail from Mr. Neukom states that it should not be forwarded and is "important information from legal"; these statements provide the very expectation of confidentiality missing in *Air Crash Disaster*.

between counsel that Mr. Burt's testimony would not constitute a waiver, and that such agreements are routinely enforced. (Microsoft Opp. at 17.)

Apparently conceding that Mr. Burt's deposition cannot provide a basis for waiver, Burst now posits two new bases for invading Microsoft's privilege. Burst argues, based on two decisions in *Rambus* v. *Infineon Technologies AG* (not cited in Burst's original motion papers), that (1) "selective disclosure of part of a privileged communication[] waives the privilege as to all communications relating to that subject matter" (Burst Reply at 23-25), and (2) the "crime/fraud exception" applies to "activities of a lawyer that result in spoliation of evidence" (Burst Reply at 25-27). There is no merit to Burst's new arguments.

As to the first theory, Microsoft has not disclosed *any* part of its privileged communications. The only evidence of "selective disclosure" to which Burst points is a brief in which Microsoft states that its "document retention policies and practices . . . rest upon appropriate business judgment." (Burst Reply at 25.) If such a statement constituted waiver, then virtually every statement that a company acted appropriately would waive the privilege concerning the company's decision. That is not the law. *See, e.g.*, 1 JOHN W. STRONG, MCCORMICK ON EVIDENCE 374 (5th ed. 1999) ("[T]he mere voluntary taking the stand by the client as a witness in a suit to which he is party and testifying to facts which were the subject of consultation with his counsel is no waiver of the privilege for secrecy of the communications to his lawyer. It is the communication which is privileged, not the facts.").

The second theory is even more illogical. As the *Rambus* decision makes clear, "[i]n order to establish spoliation, the movant must show (1) that the adverse party

-8-

had a duty to preserve evidence and (2) that it nevertheless intentionally destroyed the evidence." *Rambus* v. *Infineon Tech. AG*, 222 F.R.D. 280, 288 (E.D. Va. 2004). As discussed above, the duty to preserve evidence arises when litigation has been commenced or during "the period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* Nothing of that sort is arguably at issue here.

Burst does not even argue that Microsoft anticipated the *Burst* litigation when the conduct at issue took place. It did not. And no allegation of intentional wrongdoing has been or could be made. Thus, the situation is nothing like the situation in *Rambus*, where the plaintiff set about to destroy documents that would be relevant to litigation it was about to commence:

> Where, as here, Rambus intended to engage in a specified kind of litigation, with specified, carefully selected litigation targets in specified venues and, as part of its plan to do so, set about to destroy documents relevant to those litigations, the courts cannot sanction a document retention program as legitimate. Here, the program was set up for what, on the record to date, rather clearly appears to have been an impermissible purpose — the destruction of relevant, discoverable documents at a time when Rambus anticipated initiating litigation to enforce its patent rights against already identified adversaries.

*Id.* at 298.

Rather than acknowledging these facts, Burst attempts to portray the holding of *Rambus* as requiring a company to maintain documents if any "litigation is 'reasonably foreseeable.'" (Burst Reply at 27.) That is not the law. If it were, every major company (each of which faces dozens of pending lawsuits and always will) could never maintain any document retention policy other than "keep everything." Rather, the *Rambus* decision stands for the proposition that a company cannot destroy documents

that it knows will be discoverable in a *particular* litigation with specific parties that has been commenced or is anticipated. 222 F.R.D. at 298.

The *Burst* v. *Microsoft* litigation was not reasonably foreseeable to Microsoft before Burst filed its complaint in June 2002. Hence, the facts to which Burst points do not involve spoliation and the *Rambus* decision (even if it correctly states the law of the crime/fraud exception) does not apply here.

And Microsoft acted perfectly properly in the DOJ Litigation. According to Burst, the selection of 20 custodians in 1997 pertaining to the Real Agreement was imperfect. Even if this is so, there was nothing sinister or impermissible about that selection. Microsoft ultimately produced approximately 550,000 pages of documents to the Department of Justice, which marked more than 1,200 trial exhibits from among them. The notion that Microsoft's selection of custodians or its production of documents was designed to hide anything is false. No evidence, as opposed to insinuation, exists to support it.

Finally, Burst itself — when it knew of the possibility of litigation — "wiped clean" the hard drives of employees with relevant files. Burst is hardly in a position to complain that in 1997, before it knew that Burst would sue or had any meeting with Burst, Microsoft improperly negotiated a list of 20 custodians pertaining to Real, and that Microsoft should have designated an additional custodian. The two employees at issue were well known to the DOJ and their e-mails to the other custodians were presumably picked up in various productions in any event. And, despite the DOJ's knowledge of Phillips and Engstrom, it never complained that Microsoft did anything improper regarding obtaining documents from them.

Burst's motion is baseless. It is another tactic — such as the recent motion for leave to amend the complaint — to draw attention away from Burst's meritless claims and to prolong unnecessarily the period of discovery. It is time instead to move this case towards dispositive motions and, if necessary, trial.

Dated: October 1, 2004

Respectfully submitted,

_____
Michael F. Brockmeyer (Fed. Bar No. 02307)
PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

Thomas W. Burt
Richard J. Wallis
C. Andrew Culbert
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052-6399
(425) 706-8080

Charles W. Douglas
John W. Treece
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza, 10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Microsoft Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2004, I caused a copy of the foregoing Microsoft's Motion to File Surreply Brief and attached Surreply Memorandum in Opposition To Burst's Motion to Compel Microsoft to Produce Documents Relating to its Document Preservation Policy (Filed Under Seal) by overnight courier and e-mail to:

Spencer Hosie
HOSIE, FROST, LARGE & McARTHUR
One Market Spear Street Tower, 22nd Floor
San Francisco, CA 94105

Robert Yorio
CARR & FERRELL, LLP
2200 Geng Road
Palo Alto, CA 94303

_____
Michael F. Brockmeyer