Exhibit 3



SPECIAL TELEPHONIC MEETING OF THE
BOARD OF DIRECTORS

November 9, 2000   8:00 AM PDT

Pursuant to notice duly given, a Joint Meeting of the Directors of Burst.Com, Inc., a Delaware corporation ("Burst.Com") and the Directors of Burst.Com's wholly owned subsidiary, Explore Technology, Inc., an Arizona corporation ("Explore"), was held on Thursday, November 9, 2000 and called to order at 8:00 am.

The Board of Burst.Com and the Board of Explore are identical, each consisting of the following seven members: Richard Lang, John Micek III, Brian Murphy, Joseph Barletta, Doug Glen, Trevor Bowen, and Mark Hubscher. Board members present were Richard Lang, John Micek III, Brian Murphy, Joseph Barletta, Doug Glen and Trevor Bowen. Also present were Edward H. Davis, VP, Secretary, and General Counsel and John C. Lukrich, Chief Financial Officer.

1. **Status of Financing Efforts**:  Doug Glen reported that all efforts to raise additional capital have been unsuccessful. Discussion followed regarding the various options available for the Company.

2. **Financial Report**:  John Lukrich reported that the current financial position is insufficient to meet the November 30th payroll.

3. **Additional Staff Reduction**:  In accordance with the motion passed at the November 1, 2000 regular meeting of the Board, it was decided that it is necessary to make the second level staff reduction. Staff will be reduced to a core group of 13 that will handle finances and fundraising, merger, and customer service. This is a preliminary group that may be adjusted as necessary.

This staff reduction will occur on Friday, November 10, 2000, with the last day of employment on November 15, 2000. Accrued vacation will be paid to all eligible employees. The vesting schedule for stock options for eligible employees who sign an Agreement and General Release will be as follows:

> Employees with stock options with less than one year of service, for whom their termination date is within 90 days of their annual vesting date (i.e., their one year anniversary date), will vest as if terminated on the date of that annual vesting date. (For example, an employee with 6,000 options vesting at 25% after one year (1,500), whose one year anniversary date is Dec. 1, 2000, will vest with one year's vesting rights (1,500 options).)

> Employees with less than one year of service with stock options for whom their termination date is more than 90 days from their first anniversary date will vest at the rate of one-third of the rate they would vest as if vesting had commenced pro rata on the date of their hire. (For example, an employee with 6 full months of service and 6,000 stock options, 1,500 of which would vest after one year of service, would vest one-third of a pro rata share of 750 shares, or 250 shares.)

500 Sansome Street  San Francisco, CA 94111  tel 415.391.4455  fax 415.391.3392  www.burst.com

CONFIDENTIAL

BUR5131713

BUR5131713

Board of Directors Meeting                                                                                  Page 2

> Employees with more than one year of service and who have stock options that have already vested, will not receive any additional vesting rights beyond those afforded by their termination date.
>
> The time to exercise options after termination shall be extended from 90 days to 6 months after their termination date, or 90 days after the effective registration date, if any, whichever is later.

4. **Withdrawal of Wilmer, Cutler & Pickering as Outside Counsel**: Ed Davis reported that Wilmer, Cutler has withdrawn as Outside Counsel. Bay Venture Counsel will return in that capacity.

There being no further business; the meeting upon motion was adjourned.

Dated: November 9, 2000

Respectfully Submitted,

*Edward H. Davis* (signature)

Edward H. Davis
Corporate Secretary, Vice President and General Counsel

CONFIDENTIAL                                                                                            BUR5131714

BUR5131714

## Burst Staff Reduction

| Name | Function | Annual | Month | Cum |
|---|---|---|---|---|
| Richard Lang | Manage IP and litigation | 240 | 20 | 20 |
| Doug Glen | Sell the company | 325 | 27 | 47 |
| John Lukrich | Manage finances, sell assets, negotiate deals | 200 | 17 | 64 |
| Andy Rifkin | Manage technology and assist in sale of company | 265 | 22 | 86 |
| Arthur Allen | Head technical architect | 176 | 15 | 101 |
| Jeff Wilson | Controller, manages creditors | 95 | 8 | 108 |
| Michelle Chen | Payables | 22 | 2 | 110 |
| Ed Davis | Legal work, drafting in-house | 175 | 15 | 125 |
| Sonja Erickson | Keep IT running, sell assets | 130 | 11 | 136 |
| Dave Egan | Sales, maintain key account relations, revenues | 150 | 13 | 148 |
| Sales engineer - tbd | Minimum level of customer support | 75 | 6 | 154 |
| Jena Barker | Administrative assistant, office manager | 51 | 4 | 159 |
| Barbara Neilsen | Legal assistant | 65 | 5 | 164 |
| Subtotal salaries | | 1,969 | 164 | |
| Payroll taxes and benefits @ 25% | | 492 | 41 | |
| Total | | 2,461 | 205 | |

| Severance | | |
|---|---|---|
| Contractual (8 months) | | 687 |
| Non-contractual (3 months) | | 235 |
| Total | | 921 |

CONFIDENTIAL

BUR5131715

BUR5131715

## Stripped Down Plan

| Item | Unit/Month | November | December | January | February | March | April | Total |
|---|---|---|---|---|---|---|---|---|
| Salaries and benefits | | 800 | 205 | 205 | 205 | 205 | 205 | 1,825 |
| Severance | | 800 | | | | | 921 | 1,721 |
| Accrued vacation | | 300 | | | | | | 300 |
| Travel | | 35 | 35 | 35 | 35 | 35 | 35 | 210 |
| Rent | | 50 | 50 | 50 | 50 | 50 | 50 | 300 |
| Legal expense (IP mainly) | 100.0 | 100 | 100 | 100 | 100 | 100 | 100 | 600 |
| Telephone | 0.5 | 15 | 7 | 7 | 7 | 7 | 7 | 48 |
| Equipment rental and lease | 5.0 | 5 | 5 | 5 | 5 | 5 | 5 | 30 |
| Insurance | 20.0 | 20 | 20 | 20 | 20 | 20 | 20 | 120 |
| Postage and supplies | 2.0 | 2 | 2 | 2 | 2 | 2 | 2 | 12 |
| Professional services | 20.0 | 20 | 20 | 20 | 20 | 20 | 20 | 120 |
| Total | | 2,147 | 444 | 444 | 444 | 444 | 1,365 | 5,286 |

CONFIDENTIAL

BUR5131716

BUR5131716

### Burst - Options

**On2 Merger** On2.com has proposed a merger with Burst.com. The strategy is to combine two market-leading technologies - theirs in compression, ours in media delivery. Additional smaller companies may be rolled up to create a viable end-to-end package. On2 believes that the combined entity is financable and marketable to the street.

> **Proposal** 7/10 of an On2.com share for each Burst share. With On2 trading at $2.20/share, that works out to $1.50/share for Burst. On a common + preferred basis, On2's valuation comes to $63.8 million and Burst comes to $32.5 million; giving Burst 33.6% of the combined entity. Their offer is contingent on a minimum $10 million raise approval from both boards, due diligence, and less than ± 25% stock price movement. We have 5 business days from Wednesday, November 08, 2000 to respond. Implication: immediately reduce overhead to a minimum required to market the company.
>
> **Pro** The combined entity could be greater than the sum of the parts, from several perspectives. On2's compression + Burst's backend architecture is arguably the best media delivery solution, with a sustainable competitive advantage in the form of IP. The combined story could be perceived as fresh and exciting, vis à vis the rather tired stories of the separate companies. On2 contends that they can raise upwards of $40 million to finance the combined entity to cash flow positive.
>
> **Con** On2 is almost as broke as we are, with a larger burn. Their compression technology, while excellent, is vulnerable to competition, while ours is less vulnerable. Our IP is broad, with categorical claims. Theirs is narrow, algorithm-specific. On2 has $15 million of preferred stock, whose liquidation preferences could consume the sale of our IP.
>
> **Recommendation** Proceed to non-binding LOI, ideally succeeding in negotiating two conditions: (i) a $500K to $1 million loan, which becomes a kill fee if they back out; (ii) our IP is held back from the merger until such time as the new entity's market cap surpasses $200

CONFIDENTIAL

BUR5131717
BUR5131717

million. Complete staff reduction immediately, subject to On2's possible election to pay the cost of key development staff.

**Sale to a Major Public Company** Burst's IP portfolio is the essential asset of the company. In the hands of one of the major media delivery companies, the IP represents a sustainable competitive advantage. While the value of Burst as a NPV of future cash flows is dubious, the NPV of the competitive advantage that Real, Apple, Microsoft, Qwest, Exodus, etc. could gain is substantial. This strategy is contingent on securing financing of about $4 million (see attached schedule) from an investor who is willing to bet that we can sell the company for more than today's stock market valuation.

**Proposal** Engage a banker to package and help shop Burst to the Internet media community. Target a minimum of $10 per share on a fully diluted basis. If the price is not met, sell to the highest bidder as of March 31, 2001. Make the sale more provocative by filing an infringement suit against Real Networks as soon as possible. Immediately reduce overhead to a minimum required to market the company.

**Pro** The infringement suit will focus the street's attention on Burst's value and Real's vulnerability. Real will be motivated to come to the table, while Real competitors will potentially be motivated to keep the transaction away from Real. In any event, the process represents a definitive exit for Burst shareholders.

**Con** This strategy precludes the alternative of a far richer exit if the company is financed to execute the business plan. Additionally, once the company is gutted to reduce overhead, the possibility of re-start is far less feasible.

**Recommendation** Negotiate a $4 million investment earmarked for this strategy. Proceed immediately with staff reduction and engagement of a banker. Proceed immediately with the Real litigation process. Proceed immediately to present the company as an acquisition to the leading candidates, except for Real. Probable terms for the $4 million investment:
- Convertible preferred

CONFIDENTIAL

BUR5131718

BUR5131718

- $1.00 per share
- Liquidation preference
- Board control

**Strategic Investor** Pursue a strategic investor who needs Burst's technology, but is not currently interested in an outright acquisition. Such strategic investors could include SBC, Microsoft, Philips, and Eagle Wireless, among others.

> **Proposal** The strategic investor could buy up to 1/2 interest in Burst for a $20 million investment. The investor would gain control of Burst and be able to align Burst's priorities with their own. The investor would also obtain an option to acquire the balance of Burst according to a valuation formula.
>
> **Pro** Best upside for Burst stakeholders.
>
> **Con** Lowest likelihood of success, and probably the longest gestation period of the options. Unless a strategic investors acts almost immediately, Burst will need additional funding, the terms of which may make this option less viable.
>
> **Recommendation** Make the proposal to SBC and Microsoft as soon as possible.

**Bootstrap** If all else fails, obtain as much angel (e.g. Gordon Rock) financing as possible, reduce headcount to a couple of people (or hire an agent), and sell the IP to the highest bidder.

> **Proposal** Negotiate a grace period with the creditors, creating asset-secured loans. Empower a very small team of executives to negotiate the best deal they can to dispose of the patents.
>
> **Pro** Ends it all fairly quickly and cleanly.
>
> **Con** Little chance that the shareholders will see much money.
>
> **Recommendation** Make this the last resort.

## Immediate Initiatives

- Establish a creditors' committee to forestall lawsuits (Jeff).
- Renegotiate agreements with key employees to motivate them to stay (indemnification, re-priced options, success fees on sale, etc.) (Comp Committee)
- Renegotiate leases and professional services contracts (John, Ed, Jeff).
- Prepare press release (Doug, Richard, Ed)
- Move On2 along to LOI, ask them if they want to keep key developers (Doug, John)
- Obtain six month funding on best possible terms (Doug, Richard)
- Pursue SBC strategic funding (Richard)
- Pursue Microsoft strategic funding (Doug)
- Sell surplus assets (John, Sonya)
- Layoff all non-essential employees (executive team)
- Prioritize sales prospects and target highest potential (Dave)
- Develop strategy for maintaining technology integrity (Andy)
- Develop presentation to potential acquirers (Doug, John, Andy)

CONFIDENTIAL

BUR5131720

BUR5131720