**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE MICROSOFT CORP. ANTITRUST LITIGATION** | **MDL Docket No. 1332** |
| This Document relates to: | **Hon. J. Frederick Motz** |
| *Burst.com, Inc. v. Microsoft Corp.* | |
| **Civil Action No JFM-02-cv-2952** | |

**BURST'S REPLY TO MICROSOFT'S OPPOSITION TO BURST.COM, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

**I.   INTRODUCTION**

"[Windows Media Player] 10 just **slightly refines** [Windows Media 9], but from a core format point of view, **there's very little difference**."

Amir Majidimehr, Microsoft's Corporate Vice President for the Windows Digital Media Division, Deposition of A. Majidimehr (Exhibit A) (emphasis added).

In that statement, Microsoft reduces the present dispute to its very essence—Burst's present motion seeks only to 'refine' its allegations of patent infringement. As explained below, these refinements will make 'very little difference' to Microsoft's defense to this case. See Section II, below.

Despite Microsoft's predications that Burst's motion for leave to amend represents fundamental "change[s in] the character of the litigation" that are "clearly belated," "would clearly prejudice Microsoft" and "would require substantial new preparation and would delay resolution of this case," Microsoft fails to provide *any* support for this broad-based hyperbole. MSFT Opposition, 2-3. The present motion is, in fact, of largely of Microsoft's own creation in that it elected to push the limits of discovery stonewalling legitimate discovery by interposing an unwarranted objection as to the scope of the "accused software product." Microsoft contended information on Windows Media Player 10 to be beyond the scope of the "accused software product" and discovery on the topic would require amendment of the Complaint. Burst complied and now Microsoft objects characterizing the amendment far differently than its true scope.

## II.    Windows Media 10 and Burst's Discovery Requests

Burst's Complaint, as filed, never alleged Windows Media Player 9 by name as the infringing product but, instead, the "Corona suite of digital media products" including Microsoft's ".NET Media Server, which runs its Corona Media Services software, and/or its Movie Maker software product, and/or other products utilizing, incorporating, and/or encompassing the apparatus or methodology" of the alleged patents.  Complaint ¶¶ 84, 123 (Exhibit B).  Over time, however, Corona evolved to become commercially known as Windows Media 9.  Through subsequent refinement of certain features in Windows Media Player 9, Microsoft released Windows Media Player 10.  Thus, Windows Media Player 10 is merely part of an *ongoing evolution* of the initially alleged Corona digital media suite.  Microsoft's own product literature, too, characterizes this as an evolution—versus a wholly new product—in referring to Windows Media Player 10 as a "Windows XP digital music update" in response to "user feedback" concerning the 9 Series Player.  (Exhibit C).

On or about June 2, 2004, Microsoft released a preliminary version of a step in that evolution—a beta version of Microsoft Windows Media Player 10.  On July 7, Burst propounded its Seventh Set of Requests for Production of Documents on Microsoft requesting, *inter alia*, the source code for "Windows Media Player 10 Technical Beta."  (Exhibit D).  Microsoft, as has become commonplace throughout the course of this litigation, objected to *each and every one* of Burst's requests—including the code for Windows Media Player 10—alleging, *inter alia*, that any requests related to Windows Media Player 10 were beyond the scope of Burst's June 2, 2003 claims charts.  (Exhibit E).

On July 9, Burst propounded its Eighth Set of Requests for Production of Documents on Microsoft requesting, *inter alia*, certain documents pertaining to Loudeye Corporation and MovieLink LLC and their use of Windows Media Player 10 Beta.  (Exhibit F).  Again, Burst was rebuffed as Microsoft asserted, on August 11, Windows Media Player 10 to be "beyond the scope of Burst's [patent] claims."  (Exhibit G).

In an effort to bring joint and amicable resolution to the matter, counsel for Burst and Microsoft met and conferred on September 2.  The meet and confer continued on September 7.  Counsel for Microsoft, at that time, indicated that with regard to all aspects of Windows Media 10 Beta, such requests were beyond the scope of the present litigation as Windows Media Player 10 was not an 'accused software product.'  Microsoft, apparently, made this objection on the basis of the definition of the 'accused software product' determined in September 2002:

2

> Microsoft's Windows Media 9 Series (including the Windows .NET Server, Windows Media 9 Series in Windows .NET Server, the Windows Media Services 9 Series, the Windows Media Player 9 Series, the Windows Media Encoder 9 Series, the Windows Media Audio and Video 9 Series, and the Windows Media 9 Series SDK) when used alone and/or in combination with other software. (Exhibit H).

Microsoft, in making this objection, failed to recognize the fact that this definition was established in 2002—over **twenty months** prior to the release of Windows Media Player 10 Technical Beta. The reason Windows Media Player 10 Technical Beta was not a part of the 'accused software product' definition was because Windows Media Player 10 Technical Beta **did not exist** when the 'accused software product' definition was drafted.

The same logic applies to Microsoft's subsequent *final release* of Windows Media Player 10 on September 2, 2004. Windows Media Player 10 final, too, was not a part of the 'accused software product' definition because Windows Media Player 10 final—like Windows Media Player 10 Technical Beta—**did not exist** at the time of the definition's drafting. To subsequently argue Windows Media Player 10 is beyond the scope of discovery tries the limits of logic as Microsoft would require Burst to see into the future to encompass any and all versions of the initial and still infringing product—Corona—that might later be released.

Microsoft's argument that Windows Media Player 10 is not a derivation of Windows Media 9 is further countered by Microsoft's electronic-mail correspondence of September 14, 2004. Following Burst's submission of updated claim charts in response to a Microsoft interrogatory, Microsoft sought to confirm their understanding that "the current infringement contentions (re: WMS 10 (*sic*) – Windows Media 10 player, the Portable Media Center, and the WSN (*sic*) Music Service)" were "derivative of [Burst's] prior contentions, i.e., are they subsumed within what you allege for WMS 9 (*sic*)?" (Exhibit I). Microsoft's present opposition, however, indicates the exact opposite and suggests the making of an 'argument of convenience.'

Despite Burst's counsel explaining that Windows Media 10 Player simply represented the next iteration in Microsoft's streaming media technology platform—and Microsoft's apparent admission of the same—Microsoft remained steadfast in its refusal to produce any documents related to Windows Media Player 10 Technical Beta or the final release. All of Burst's arguments fell on deaf ears as production of such documents would, according to counsel for Microsoft, require an amending of the complaint. Burst *complied with Microsoft's demand* by filing the September 10 motion for leave to amend.

**III.     Burst's Motion is Timely and a *Direct Result* of Failed Efforts to Resolve *Microsoft's* Refusal to Provide Discovery**

3

Microsoft asserts Burst's motion to amend should be denied as untimely because, pursuant to a July 7 status call, Burst informed Microsoft of Burst's intent to amend the complaint and, in August, provided a draft complaint "which lacked the patent infringement claims its FASC now asserts." MSFT Opposition, 3; see also MSFT's Ex. B. The reasoning for an absence of amended patent claims in July and August was a direct result of Burst believing it was legitimately entitled to discovery of Windows Media 10 as evidenced by Burst's Seventh and Eighth Requests for Production served in July. It was only after **two months** of stonewalling by Microsoft, several fruitless meet and confers and Microsoft demanding amending of the Complaint that Burst was forced to resort to the present measures.

Burst still believes it is legitimately entitled to information regarding Windows Media 10 through discovery under the initial Complaint as will be further evidenced in Burst's forthcoming Motion to Compel Discovery on the Seventh and Eighth Requests for Production of Documents. This motion for leave to amend was filed *only* after Microsoft refused to comply with discovery and Burst was forced to make every effort to preserve its rights in light of Microsoft pushing its delaying tactics to the close of discovery.

While the basis for Burst's belief that it is entitled to discovery on Windows Media Player 10 will be addressed in a forthcoming Motion to Compel, that basis deserves at least a cursory examination in support of the present motion for leave to amend. A prime example of reasoning to grant leave to amend resides in Microsoft's *very own opposition papers* wherein it admits "the features of Windows Media 10 that Burst targets in the FASC **are refinements of features contained in Windows Media 9**." MSFT Opposition, 4 (emphasis added). This is the *very* argument propounded by Burst during its meet and confers concerning its Seventh and Eighth Requests for Production of Documents and, again, in a meet and confer concerning a 30(b)(6) deposition in which Burst presented the following arguments:

> [I]n Microsoft's recently released WMP 10 *Reviewers Guide*, Microsoft touts WMP 10 to "build[ ] upon and enhance[ ] many features from Windows Media Player 9 Series." In fact, Microsoft represents WMP 10 as a "Windows XP digital music update" in response to "user feedback" concerning the 9 Series Player. Similarly, Microsoft touts WMP 10 to "improve[ ] the experience of working with [digital music] devices" supported by the 9 Series Player.
>
> While WMP 10 does not represent a complete 'platform' as was the case of Windows Media 9 Series (*e.g.,* the server, the encoder, the player, DRM and related SDKs), WMP 10 *is* an updated piece of Microsoft's streaming media platform. The integration of WMP 10 with the 9 Series platform is evidenced by Microsoft's own discussion of a "user using **Windows Media Player 10** [to] play[ ] streaming content from a Web site or service that uses **Windows Media Services 9 Series** as a streaming server" (emphasis added). WMP 10, too, allows for the continued operability of the "fast streaming" suite of features that were the keystones of the 9 Series Platform. Additionally, WMP 10 supports various WMA and Video *9* Series codecs. (Exhibit J).

Microsoft contends Burst was "indisputably aware of these *features* long before now, but elected not to allege that they infringe any Burst patents until now." MSFT Opposition, 4 (emphasis added).[a] This statement is **demonstrably untrue**. Burst propound discovery in a timely fashion as evidenced by the initial request for source code less than 45 days after release of Windows Media Player 10 Technical Beta. Microsoft admits as much in its footnote number 3 noting "Burst issued its Seventh set of Requests for Production, which related to Windows Media 10, in early July 2004." MSFT Opposition, 4, n.3. Microsoft further admits it "did not honor these requests because they related to products that were not accused." Id. Despite the **inconsistency** between Microsoft's own statements as to whether Windows Media Player 10 represents a *new product*, Burst has *always* believed Windows Media Player 10 to merely be a refined version of the *originally accused product* and **consistently** countered any Microsoft argument to the contrary. It was only after good-faith negotiations as to the scope of the original Complaint failed, did Burst serve the present motion.

This fact makes Microsoft's reliance on Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA, Inc. entirely inappropriate. 43 F.3d 922 (4th Cir. 1995). In Lone Star, the party seeking to amend its complaint in the closing days of discovery actually had factual information *in its possession* for 90 days prior to filing its motion to amend. Id. at 940. Burst, on the other hand, was making a concerted effort—albeit to little avail—to *initially obtain* the necessary information from Microsoft shortly after Player 10 Beta's public release. Burst's effort to **obtain possession** of information distinguishes the holding of Lone Star where the party already had the requisite information. It was only after 60-days of Microsoft's refusal to comply with discovery requests and subsequent 'foot dragging' through futile meet and confers that Burst found itself forced to file this motion in order to preserve its rights.

Burst was prompt and forthright in its attempts to obtain information through discovery. Burst engaged in no delay as evidenced by its timely Seventh and Eighth Requests. Because of Microsoft's unjust actions in withholding discovery, Federal Rule 15(a)'s grant of leave "when justice so requires" could not be more apt as to otherwise reward Microsoft's delaying tactics through refusing leave to amend would be unjust. FRCP 15(a). Amendment should only be refused if the plaintiff is guilty of undue delay, bad faith, or the defendant would suffer undue prejudice. *The Pittson Company v. United States*, 199 F.3d 694, 705-06 (4th Cir. 1999). None of these factors are present and leave should be granted.

---

[a] In arguing Burst's indisputable awareness of these features, Microsoft implicitly concedes that Windows Media Player 10 is **not a new product** but mere **refinements in features** of the **same infringing product.** See also MSFT Opposition, 4.

### IV. Microsoft Will Not Suffer Any Undue Prejudice Through a Factually Unsupported 'Substantial Alteration of the Litigation' Proffered by the Proposed Amendment

Microsoft, should the court grant the present motion, will not suffer any prejudice as Microsoft's own actions forced Burst to file this motion. For example, Microsoft contends that the proposed amendment would change the nature of the patent claim in that the amendment "drops references to 'FastStart' and 'FastCache,' the two features that the Court heard so much about in connection with the claim construction hearing." MSFT Opposition, 1-2. Such an allegation is simply **factually incorrect** on, at least, two fronts.

First, the court never heard *anything* about FastCache and FastStart from Burst's counsel, its expert or in Burst's claim construction briefs during "the claim construction hearing" as asserted by Microsoft. MSFT Opposition, 1-2. Burst never made mention of these accused features because construction of a claim in light of the accused device is legally improper. See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed.Cir. 1985). The only party that *improperly* mentioned FastStart or FastCache during claim construction was Microsoft. Thus, the perceived importance of FastCache and FastStart in Microsoft's opposition papers is a perception of Microsoft—*not* of Burst.

Second, Burst has never made any statement that FastStart and FastCache are no longer a part of this litigation despite Microsoft's contention that the proposed amendments "drop references to 'FastStart' and 'FastCache.'" MSFT Opposition, 1-2. Burst's original Complaint broadly accused Microsoft's multimedia delivery *platform*—of which FastStart and FastCache are a part—with infringement and not any one particular feature such as FastStart or FastCache. These features, too, were and remain an important part of Burst's case-in-chief including its trade secret,[b] breach of contract and antitrust claims.

Microsoft additionally suggests that the proposed amended complaint represents "a very fundamental shift" from "server side products" to "client side products." MSFT Opposition, 2 (emphasis in the original). Again, Microsoft's assertion is incorrect and unfounded. Burst has, from the very beginning, asserted the Windows Media *Platform* to infringe, which includes both server and client side products. For example, in Burst's original claims charts as to the '995 Patent, Burst noted:

---

[b] For the record, Burst notes that Microsoft's assertion in footnote 1 of its opposition that Burst's trade secrets are limited to supposedly "published patents and publicly available information" as being, again, incorrect. MSFT Opposition, 1 fn. 1.

>Additionally evidencing that Microsoft Windows Media 9 Series satisfies the output requirement of transmitting time compressed audio/video source information, at Exhibit B, page 7, under the heading "Reduced Costs." The White Paper concludes that "because Windows Media Viewer 9 Professional delivers approximately three times the compression efficiency of MPEG-2, dramatic improvements can be made in video quality for download-and-play or for delivery via physical media such as CDs or DVDs. (Exhibit K).

Burst further identified a Microsoft White Paper evidencing the Windows Media Player 9 Series reflecting "Streaming" and "Download and Play" devices—both client side interactions. Id.

Another example, in the context of Burst's infringement charts, exists with regard to the '705 Patent where Burst discussed Microsoft's infringement of the transmission means to a client device as:

>you follow a process of combining sets of files into single compressed files with a .zip file name extension. Then the end user only has to download one file that contains all of the pieces. . . . The Player downloads and reads the compressed file . . . ." (Exhibit L).

Additionally, the perceived importance of client-side versus server-side functionality—like that of FastCache and FastStart—is a distinction created *entirely* by Microsoft in an attempt to limit the scope of damages. Burst made the existence of client side interactions in its original claims charts abundantly clear to Microsoft in its meet and confer letter of September 21 (Exhibit J):

>First, the "ripping" and "burning" of a CD clearly falls within the context of "creating, hosting, securing, and delivering digital media . . . for playback . . . [in] entertainment systems that use physical formats such as CDs and DVDs." Our claim charts also discussed "[c]hoosing a source" including a real-time source such as a "CD player" and delivery of content to destinations such as "CDs or DVDs." The same is reflected in the oft-referenced *Create It-Deliver It-Play It* illustration from Microsoft's *Media and Entertainment Content Distribution on the Web*. Here, a personal music device, computer and DVD player are *all* representative of potential recipients of audio/visual content.

Notwithstanding these facts, Microsoft now asserts Burst "seeks to file essentially a new patent infringement case at the eleventh hour." MSFT Opposition, 2. This is simply incorrect as evidenced by Burst's initial claim charts and recent attempts to resolve this dispute with Microsoft prior to Burst's filing of a motion for leave to amend.

Microsoft's argument that Burst's alleged "exceedingly high levels of generality [made] in its previous [infringement] contentions" bar the "particular features that Burst now injects into the litigation" are equally untenable. Following the February 2004 claim construction hearing and March 2004 motion for reconsideration, the Court issued its final claim construction order on June 22, 2004. Microsoft then served its Fifth Set of Interrogatories, in July 2004, querying:

> "[f]or each accused Microsoft software product, explain your infringement allegations for each asserted claim including how each claim element is allegedly satisfied (in claim chart form, identifying the components, portions, features and/or aspects of each accused Microsoft software product, or its manner of use, which allegedly correspond to each element of each allegedly infringed patent claim), and whether the alleged infringement is literal or under the doctrine of equivalents." (Exhibit M).

Burst, having undertaken a detailed review of its patent claims since the Court's claim construction order,[c] responded. That response—despite its volume—was made in good-faith and most certainly within the scope of the Court's claim construction order.

The responses provided to Microsoft were made with painstaking detail but are now summarily deemed improper by Microsoft as being too voluminous and failing to narrow the issues. See MSFT Opposition, 5. This is not an instance of 'new infringement allegations,' as asserted by Microsoft but an *incredibly detailed and focused* indication of *exactly* how Burst contends Microsoft's Corona suite of products to infringe. Microsoft has incorrectly equated quantity with new infringing *products* when, in fact, that volume represents a concerted effort to better focus and highlight the infringing nature of the previously accused Corona product following the Court's claim construction order.

Microsoft also suggests that Burst is somehow barred from supplementing its infringement allegations by reference to the holdings of Integrated Circuit Systems, Inc. and Atmel Corp. in its footnote 5. These claims are equally unfounded. Integrated and Atmel both involve litigation in the Northern District of California that has a very structured set of local rules for orderly progression of patent litigation including supplementing claim charts post-claim construction.[d]

The present action, in the U.S. District Court for the District of Maryland, has not proceeded according to the Northern District's local patent rules. Nor has there ever been any agreement, suggestion or order between counsel, the court or any other party even suggesting the applicability of the Northern District local patent rules. Nevertheless, the present litigation is proceeding in the *spirit* of the Northern District's local patent rules as claim construction and final infringement contentions have been produced over a span of, approximately, seven months. Notwithstanding such progression, reliance on—or any suggestions of the need to rely on—the Northern District's local patent rules as a basis for determining this motion is entirely improper.

---

[c] As is the procedural norm in a patent infringement case.

[d] For example, and as noted by the Court in Atmel, requests to revise claim charts through "eleventh hour 'discovery' of facts" are routinely denied. 1998 WL 775115, * 2 (N.D.Cal.)). In the present case—which is not governed by the Northern District's local patent rules—Burst has not 'revised its claim charts through eleventh hour discovery of facts' but, in fact, increased the detail and accuracy of those charts previously produced as they pertain to the initially alleged Corona suite of products and based upon the Court's claim construction orders thereby allowing infringement analyses by the parties to proceed in a more accurate and streamlined fashion.

Notwithstanding the inapplicability of the Northern District's local patent rules, Microsoft fails to reconcile the local patent rule's provisions for supplementing infringement allegations wherein "[a]mendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause." N.D.Cal. Patent L.R. 3-7. That is, "[a] plaintiff who later desires to accuse additional *products* must do so by obtaining leave of court to amend its disclosures." Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co., Ltd., 308 F.Supp.2d 1106, 1107 (N.D. Cal. 2004) (emphasis added). But Burst does not seek to allege new *products*—only a subsequent iteration—Windows Media Player 10—of the Corona/Windows Media Platform.

Thus, if the present case were to follow the Northern District's local rules, Burst would most certainly have an opportunity to seek leave to amend, which is *exactly* what Burst seeks to do. Notwithstanding, Microsoft presents a circular argument seeking to have the court find for Microsoft in denying leave to amend on the basis of inapplicable local patent rules but also denying the provisions of those very rules that provide for leave to amend.

Microsoft's argument that the amendment would require a new round of discovery is equally incorrect. See MSFT Opposition, 7. Burst has determined that it needs *no new discovery* based on these amendments beyond the previously—and timely—served Seventh and Eighth Request for Production of Documents. Microsoft also argues that "another Markman hearing might be required to construe Burst's newly-asserted claims" but, tellingly, fails to identify a single term on which a new construction might be required to be held. This assertion is also incorrect as no new construction will be necessary.

Microsoft's suggestion that Windows Media Player 10—despite there being 'very little difference' from Windows Media 9—requires additional claim construction can *only* be based on Microsoft improperly seeking to construe the claims based on the accused product. The impropriety of such a construction was previously discussed in the context of SRI Int'l v. Matsushita Elec. Corp. of Am. Absent an argument of what claims might require a construction and the reasoning for the same, Microsoft's allegations are simply its attempt to establish an environment of uncertainty and never-ending discovery. The reality is that Burst alleges the exact same patents, the exact same claims and the exact same accused product—the Windows Media Platform.[e]

---

[e] Footnote 6 of Microsoft's Opposition is a further example of the *reducto ad absurdum*—reduction to the absurd—arguments that Microsoft has made throughout the course of this litigation in an attempt to taint the perceived validity of Burst's patent claims. Burst has never asserted its patents to cover "simple file transfers" just as it never claimed to

Microsoft, finally, attempts to cloud the present motion concerning amendment with a plethora of unrelated discovery disputes before the court. For example, Microsoft refers to the request for further deposition of Bill Gates, a motion for collateral estoppel, production of responsive documents concerning email servers and Microsoft Corporation mailbox size restrictions. MSFT Opposition, 9-10. These issues have *nothing* to do with the present patent claims that are dispute in this motion.

**V.     Conclusion**

Burst has clearly evidenced its attempts at gaining access to Windows Media 10 related information within weeks of that information's release in the marketplace. Only because of stonewalling by Microsoft—intentional or otherwise—in failing to respond to Burst's discovery and Microsoft contending that Burst must amend its complaint in order to obtain this discovery did this motion to amend become necessary.

Further, Microsoft has failed to provide any evidence—beyond hyperbole and presumption—that Burst's motion will cause any undue prejudice. All discovery requests necessary have been timely served. That discovery—more likely than not—could have been provided in the time that Microsoft has spent making unsubstantiated claims to the very motion it invited.

Ultimately, the need for this motion was of Microsoft's own making. Had Microsoft merely responded to Burst's discovery concerning Windows Media Player 10—technology that clearly falls within the Windows Media Platform—this motion would not have been necessary.

The present motion for leave to amend should be granted.

Respectfully submitted,

**October 11, 2004**

SPENCER HOSIE (Ca Bar # 101777)
BRUCE J. WECKER (Ca Bar # 078530)
GEORGE F. BISHOP (Ca Bar # 89205)
**HOSIE, FROST, LARGE & McARTHUR**
One Market, Spear Street Tower, 22nd Floor
San Francisco, CA 94105
Telephone: 415-247-6000

ROBERT YORIO (Ca Bar # 93178)

---

have invented 'faster-than-real-time' transmission. MSFT Opposition, 7, n.6. These mischaracterizations are Microsoft's and Microsoft's alone.

        V. RANDALL GARD (Ca Bar # 151677)
        COLBY B. SPRINGER (Ca Bar # 214868)
        **CARR & FERRELL, LLP**
        2200 Geng Road
        Palo Alto, CA 94303
        Telephone: 650-812-3400

By:     /s/_____
        Bruce J. Wecker

**PROOF OF SERVICE**

I am employed in the State of California, County of Santa Clara.  I am over 18 years of age and am not party to the within action.  My business address is 2200 Geng Road, Palo Alto, California, 94303.

On October 11, 2004, I served **BURST'S REPLY TO MICROSOFT'S OPPOSITION TO BURST.COM, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT** upon counsel named below as indicated:

John W. Treece *(via e-mail)*
**SIDLEY AUSTIN BROWN & WOOD LLP**
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603
Fax:  312.853.7036


**October 11, 2004**              By:        /s/_____
                                                        Janine DeAndre