# EXHIBIT J



## CARR & FERRELL LLP
### ATTORNEYS AT LAW

WRITER'S DIRECT DIAL NUMBER
(650) 812-3496
CSpringer@CarrFerrell.com

September 21, 2004

**By Facsimile to 1.312.853.7036**

Douglas I. Lewis
**Sidley Austin Brown & Wood LLP**
Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603

    Re:    MDL 1332: *Burst.com v. Microsoft Corporation*
             30(b)(6) Depositions

Dear Doug:

    I write in response to your letter of September 17 concerning my September 10 30(b)(6) deposition notices. Before getting to the issue of the scope of the notices, as was addressed in the second paragraph of your letter, I feel we might be best served addressing Microsoft's Windows Media Player 10 (WMP 10) and 'functionality' objections.

    As to WMP 10, while Burst understands Microsoft's *objection* to be that WMP 10 "is not accused in this case," we do not understand the *reasoning* for this objection. Microsoft would appear to be arguing that WMP 10 and Windows Media 9 Series (WM9) are products that exist at opposite ends of a spectrum. Burst simply does not believe that to be the case as WMP 10 and WM9 are inextricably linked.

    For example, in Microsoft's recently released WMP 10 *Reviewers Guide*, Microsoft touts WMP 10 to "build[ ] upon and enhance[ ] many features from Windows Media Player 9 Series." In fact, Microsoft represents WMP 10 as a "Windows XP digital music update" in response to "user feedback" concerning the 9 Series Player. Similarly, Microsoft touts WMP 10 to "improve[ ] the experience of working with [digital music] devices" supported by the 9 Series Player.

    While WMP 10 does not represent a complete 'platform' as was the case of Windows Media 9 Series (*e.g.*, the server, the encoder, the player, DRM and related SDKs), WMP 10 *is* an updated piece of Microsoft's streaming media platform. The integration of WMP 10 with the 9 Series platform is evidenced by Microsoft's own discussion of a "user using **Windows Media Player 10** [to] play[ ] streaming content from a Web site or service that uses **Windows Media Services 9 Series** as a streaming server" (emphasis added). WMP 10, too, allows for the continued operability of the "fast streaming" suite of features that were the keystones of the 9 Series Platform. Additionally, WMP 10 supports various WMA and Video 9 Series codecs.

2200 GENG ROAD, PALO ALTO, CA 94303
TELEPHONE (650) 812-3400, FACSIMILE (650) 812-3444
www.CarrFerrell.com

Douglas I. Lewis
Re: 30(b)(6) Depositions
September 21, 2004
Page 2 of 3

Put simply, Burst does not accept Microsoft's assertion that WMP 10 is beyond the scope of our Complaint. Please recall, Burst's Complaint alleges Microsoft to be offering infringing products "such as, **but not limited to**, its Corona product, its Corona Media Services software, and its .NET Media Server, which runs its Corona Media Services" (emphasis added). Corona, as you are well aware, represented an umbrella term for Microsoft's suite of streaming media technologies that became a part of a commercial product known as Windows Media 9.

Additionally, Burst's Complaint alleged "this Corona suite of digital media technologies [to have] only been released in Beta version." Would Microsoft argue that with the final release of 9 Series, Burst was somehow limited to discovery *only* as to the Beta release? The answer is no as to suggest otherwise would be ludicrous. The logic is no different as to WMP 10. It is simply another step in the evolution of Microsoft's streaming technology.

This arbitrary encirclement around 9 Series as the only infringing product at bar is one created entirely by Microsoft. Burst has never represented 9 Series to be the only infringing product at issue. As such, Burst insists Microsoft provide the designees for WMP 10 as set forth in my letter of September 10.

Second—and with regard to your 'functionality' concerns—Burst must disagree with Microsoft's assertion that it is too late to make these assertions as these assertions were, in fact, introduced long ago. Microsoft references, for example, "ripping" and "burning" as functionality beyond the scope of discovery. In support of this argument, Microsoft asserts that this functionality was not present in Burst's 2003 claim charts. First, the "ripping" and "burning" of a CD clearly falls within the context of "creating, hosting, securing, and delivering digital media . . . for playback . . . [in] entertainment systems that use physical formats such as CDs and DVDs." Our claim charts also discussed "[c]hoosing a source" including a real-time source such as a "CD player" and delivery of content to destinations such as "CDs or DVDs." The same is reflected in the oft-referenced *Create It-Deliver It-Play It* illustration from Microsoft's *Media and Entertainment Content Distribution on the Web*. Here, a personal music device, computer and DVD player are *all* representative of potential recipients of audio/visual content.

Furthermore, these functionalities are *explicitly* referenced in Burst's response to Microsoft's Interrogatory Number Five. If you recall, Interrogatory Five had but one prompt: "[f]or each accused Microsoft software product, explain your infringement allegations." Burst took great pains to reply to this interrogatory with detail and did just that—providing a list of allegation and related support such as using "the Player to copy (rip) and create (burn) CDs" and noting that "Windows Media Services also receives audio/video source information, for example, from a CD or a personal media library, and then allows for transmission/transfer of that audio/video information to another CompactDisc or alternative storage device such as an MP3 player." Microsoft cannot ask a question and, simply because it does not like the answer, pretend the question to never have been asked. These functionalities are very much a part of our infringement case and, like WMP 10, we would insist on Microsoft providing the requisite designees.

Douglas I. Lewis
Re: 30(b)(6) Depositions
September 21, 2004
Page 3 of 3

      In this regard, I would look for Microsoft's stance on the WMP 10 issue in light of my comments above. Should Microsoft agree that WMP 10 *is* a part of the suit, then I will gladly meet and confer to more accurately define the scope of my September 10 30(b)(6) designations as you have requested. In the absence of such agreement, we will address the WMP 10 issue as necessary. Similarly, I would ask that you identify those 30(b)(6) notices that Microsoft contends to introduce inapplicable functionalities. As I have hopefully made clear, each and every one of our requests is most certainly valid and should have the requisite designee produced.

      We would, therefore, ask Microsoft to note those requested designations on which Microsoft contends it will *not* produce a designee and the basis for not doing so (*e.g.*, WMP 10 or new functionality). Burst will undertake immediate efforts to identify those designees on which there is *no objection* with the increased degree of particularity that you request. Burst will, concurrently, proceed as necessary concerning your objections as to the alleged impropriety of any designee on WMP 10 or functionality grounds.

      If you have any questions, please do not hesitate to contact me.

      I would appreciate an expedient reply for, as you have noted, time is of the essence.

                                                        Sincerely,

                                                        Colby B. Springer

cc:      Hosie Frost et al.