# TAB A

LEXSEE 1997 US DIST LEXIS 24068

**Concord Boat Corporation, et al, PLAINTIFFS VS. Brunswick Corporation, a Delaware Corporation, DEFENDANT**

NO. LR-C-95-781

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, WESTERN DIVISION**

*1997 U.S. Dist. LEXIS 24068*

**August 29, 1997, Decided
September 2, 1997, Filed; September 3, 1997, Entered**

**DISPOSITION:** [*1] Plaintiff's Motion to Compel the Production GRANTED in part and DENIED in part. Plaintiffs' request for a spoliation jury instruction DENIED. Plaintiffs' request for costs and fees in connection with this motion DENIED.

**COUNSEL:** For CONCORD BOAT CORPORATION, GALAXIE BOAT WORKS, INC., SEA ARROW MARINE INC, MARIAH BOATS INC, HARRIS KAYOT INC, ARMADA MANUFACTURING COMPANY, INC., BAHA CRUISERS/FRP INDUSTRIES, INC., CAMPTION MARINE INC, CARAVELLE BOATS INC, KCS INTERNATIONAL/CRUISERS, INC., MIRAGE HOLDINGS INC, PLAY TIME MANUFACTURING BY OHIO MARINE DISTRIBUTOR, INC., POWERQUEST BOATS INC, SILVERTON MARINE CORPORATION, INDEPENDENT BOAT BUILDERS, INC., WTYS NO 4 INC, CENTURY CRAFT INDUSTRIES, LTD., AVENGER MANUFACTURING, G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., WEERES INDUSTRIES CORPORATION, plaintiffs: Amy Lee Stewart, Rose Law Firm, Jerry C. Jones, Acxiom Corporation, Little Rock, AR.

For CONCORD BOAT CORPORATION, GALAXIE BOAT WORKS, INC., SEA ARROW MARINE INC, MARIAH BOATS INC, HARRIS KAYOT INC, ARMADA MANUFACTURING COMPANY, INC., BAHA CRUISERS/FRP INDUSTRIES, INC., CAMPION MARINE INC, CARAVELLE BOATS INC, KCS INTERNATIONAL/CRUISERS, [*2] INC., MIRAGE HOLDINGS INC, PLAY TIME MANUFACTURING BY OHIO MARINE DISTRIBUTOR, INC., POWERQUEST BOATS INC, SILVERTON MARINE CORPORATION, INDEPENDENT BOAT BUILDERS, INC., WTYS NO 4 INC, CENTURY CRAFT INDUSTRIES, LTD., AVENGER MANUFACTURING, G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., WEERES INDUSTRIES CORPORATION, plaintiffs: Christopher W. Madel, Robins, Kaplan, Miller & Ciresi, K. Craig Wildfang, Robert R. Weinstine, Steven C. Tourek, Brooks F. Poley, Benjamin R. Mulcahy, Laura A. Pfeiffer, Winthrop & Weinstine, P.A., Minneapolis, MN.

For DORAL INTERNATIONAL, INC., ALBEMARLE BOATS, INCORPORATED, plaintiffs: K. Craig Wildfang, Laura A. Pfeiffer, Winthrop & Weinstine, P.A., Minneapolis, MN.

For WTYS NO 4 INC, CENTURY CRAFT INDUSTRIES, LTD., AVENGER MANUFACTURING, G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., WEERES INDUSTRIES CORPORATION, DORAL INTERNATIONAL, INC., ALBEMARLE BOATS, INCORPORATED, plaintiffs: Steven E. Uhr, Winthrop & Weinstine, P.A., Minneapolis, MN.

For DORAL INTERNATIONAL, INC., ALBEMARLE BOATS, INCORPORATED, plaintiffs: Jerry C. Jones, Acxiom Corporation, Little Rock, AR.

For BRUNSWICK CORPORATION, defendant: James [*3] M. Simpson, Jr., Friday, Eldredge & Clark, Little Rock, AR.

For BRUNSWICK CORPORATION, defendant: James Donato, Stephen C. Neal, Gordon C. Atkinson, Benjamin K. Riley, Anita F. Stork, Cooley Godward LLP, San Francisco, CA.

For BRUNSWICK CORPORATION, defendant: Robert F. Finke, Mark McLaughlin, Andrew S. Marovitz, John M. Carroll, Diane Green Smith, Veronica L. Young, Bettina Getz, Mayer, Brown & Platt, Chicago, IL.

For BRUNSWICK CORPORATION, defendant: Roya Behnia, Brunswick Corporation, Legal Department, Lake Forrest, IL.

For DETROIT DIESEL CORPORATION, movant: William H. Edwards, Jr., Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR.

For VOLVO PENTA OF THE AMERICAS, INC., movant: Steven T. Shults, Shults Law Firm LLP, Little Rock, AR.

For VOLVO PENTA OF THE AMERICAS, INC., movant: Robert L. Green, Jr., Howrey Simon Arnold & White, LLP, Washington, DC.

For BRUNSWICK CORPORATION, counter-claimant: James M. Simpson, Jr., Friday, Eldredge & Clark, Little Rock, AR.

For BRUNSWICK CORPORATION, counter-claimant: James Donato, Stephen C. Neal, Gordon C. Atkinson, Benjamin K. Riley, Anita F. Stork, Cooley Godward LLP, San Francisco, CA.

For [*4] BRUNSWICK CORPORATION, counter-claimant: Robert F. Finke, Mark McLaughlin, Andrew S. Marovitz, John M. Carroll, Diane Green Smith, Veronica L. Young, Bettina Getz, Mayer, Brown & Platt, Chicago, IL.

For BRUNSWICK CORPORATION, counter-claimant: Roya Behnia, Brunswick Corporation, Legal Department, Lake Forrest, IL.

For CONCORD BOAT CORPORATION, GALAXIE BOAT WORKS, INC., SEA ARROW MARINE INC, MARIAH BOATS INC, HARRIS KAYOT INC, ARMADA MANUFACTURING COMPANY, INC., BAHA CRUISERS/FRP INDUSTRIES, INC., CAMPTION MARINE INC, CARAVELLE BOATS INC, KCS INTERNATIONAL/CRUISERS, INC., MIRAGE HOLDINGS INC, PLAY TIME MANUFACTURING BY OHIO MARINE DISTRIBUTOR, INC., POWERQUEST BOATS INC, SILVERTON MARINE CORPORATION, VANGUARD INDUSTRIES, INDEPENDENT BOAT BUILDERS, INC., G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., counter-defendants: Amy Lee Stewart, Rose Law Firm, Jerry C. Jones, Acxiom Corporation, Little Rock, AR.

For CONCORD BOAT CORPORATION, GALAXIE BOAT WORKS, INC., SEA ARROW MARINE INC, MARIAH BOATS INC, HARRIS KAYOT INC, ARMADA MANUFACTURING COMPANY, INC., BAHA CRUISERS/FRP INDUSTRIES, INC., CAMPION MARINE INC, CARAVELLE BOATS INC, KCS INTERNATIONAL/CRUISERS, INC. [*5] , MIRAGE HOLDINGS INC, PLAY TIME MANUFACTURING BY OHIO MARINE DISTRIBUTOR, INC., POWERQUEST BOATS INC, SILVERTON MARINE CORPORATION, VANGUARD INDUSTRIES, INDEPENDENT BOAT BUILDERS, INC., G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., counter-defendants: Christopher W. Madel, Robins, Kaplan, Miller & Ciresi, K. Craig Wildfang, Robert R. Weinstine, Steven C. Tourek, Brooks F. Poley, Benjamin R. Mulcahy, Winthrop & Weinstine, P.A., Minneapolis, MN.

For ALBEMARLE BOATS, INCORPORATED, counter-defendant: Jerry C. Jones, Acxiom Corporation, Little Rock, AR.

For ALBEMARLE BOATS, INCORPORATED, counter-defendant: K. Craig Wildfang, Winthrop & Weinstine, P.A., Minneapolis, MN.

For G W INVADER, MALIBU BOATS WEST, MAVERICK BOAT COMPANY, INC., ALBEMARLE BOATS, INCORPORATED, counter-defendants: Laura A. Pfeiffer, Winthrop & Weinstine, P.A., Minneapolis, MN.

**JUDGES:** James M. Moody, United States District Judge.

**OPINIONBY:** James M. Moody

**OPINION:**

ORDER

Plaintiffs have filed a Motion to Compel the Production of E-mail and for Jury Instruction (Docket #'s

251-255 & 319-320). Defendant has responded (Docket #'s 273 & 338). The reference to the Magistrate Judge is canceled as to this [*6] motion because the District Court appeal process has proved unwieldy and time-consuming for both counsel and the Court. The Court has available the moving papers and the transcript of the oral arguments on this motion, as well as the input of the Magistrate Judge.

Background

Over the last year, the parties have been attempting to resolve numerous issues concerning Defendant's electronic information. Plaintiffs have questioned the adequacy of Defendant's hard-copy production and the adequacy of its search of electronic files, including e-mail. On February 3, 1997, the Court instituted a "spot-checking" procedure to help determine the adequacy of *all* parties' productions. This procedure allowed Plaintiffs and Defendant each to identify fifteen of the other's officers or employees from whom all electronic files would be produced, including all e-mail. The process is complete as to Defendant's officers and employees. The instant motion is a product of the results of that procedure.

Plaintiffs say the spot check has revealed that Defendant's e-mail production is incomplete and that Defendant has destroyed e-mail. Plaintiffs want the Court to order Defendant to produce all e-mail [*7] in its computer system. They further request the Court to instruct the jury that it may infer that the alleged destroyed or "spoliated" e-mail was unfavorable to Defendant. The Court will address the spoliation issue first; then, production of e-mail.

Spoliation Instruction

A. Defendant's E-Mail Systems

From 1990 to approximately August of 1996, Defendant utilized an e-mail system brand-named "Fisher." Plaintiffs filed this lawsuit on December 7, 1995, and Defendant's initial sweep for materials responsive to Plaintiffs' discovery requests occurred from March to May of 1996. Beginning in the spring of 1996, Defendant began installation and utilization of the Lotus Notes e-mail system at its various marine divisions across the country. This was done on a progressive basis. The Fisher system apparently has continued in use at some locations. Defendant's initial search for responsive materials occurred before the implementation of Lotus Notes at any location. As a result, very little Lotus e-mail, if any, was included in the initial production. The final update search is ongoing, and Defendant states that it intends to produce all relevant Lotus e-mail in existence.

The [*8] Fisher system has been more of a problem than Lotus. It appears that Defendant never conducted a full-scale search of the electronic data resident on the Fisher system. Once the Fisher system became an issue, disputes arose concerning the technical capabilities of the system. The Court recognized that more information would be necessary to evaluate whether a further search would be justified, so a questionnaire concerning the technical capabilities of the Fisher system was submitted to Defendant's computer personnel. The response to the Fisher E-Mail Questionnaire has been submitted (Docket # 346) and will be discussed further below. Also, Defendant's employees had been sent an earlier questionnaire designed to determine which of them generated or reviewed e-mail relevant to Plaintiffs' claims since 1990. Some ninety-seven employees indicated that had done so, and approximately eighty-one said they may have. The questionnaire did not reach the question of when such use occurred.

B. The Alleged Destruction of E-mail

On October 18, 1996, the Court entered a preservation order requiring all parties to retain all marine-related materials, including e-mail. Plaintiffs allege that [*9] relevant Fisher and Lotus e-mail have been intentionally destroyed by Defendant.

(1) Lotus E-mail

Plaintiffs' allegations of destruction of Lotus e-Mail focus on one individual covered by the spot-checking procedure: Barry Eller, a senior vice president at Mercury Marine. Plaintiffs allege that the oldest "received" Lotus e-mail present in Eller's production was dated October 7, 1996. However, from August 23, 1996, to October 18, 1996, Eller sent approximately sixty e-mails, as demonstrated by the contents of his "sent" folder. Plaintiffs reason that because Eller was using the Lotus system frequently from August 23, 1996, to October 18, 1996, then he should have also had numerous e-mails that he received during that period. No received e-mails are present for this time frame; thus, Plaintiffs maintain that they have been permanently deleted from the system. Plaintiffs point to correspondence from Defendant's counsel admitting that employees were allowed to delete Lotus Notes e-mails after he or she ". . . logged out of the e-mail portion of notes." (Madel Aff. Ex. A.)

Defendant responds by stating that Plaintiffs have not identified a single e-mail that was deleted after the [*10] Court's entry of the preservation order of October 18, 1996. Defendant argues that prior to the entry of the preservation order, Defendant's employees were not required to maintain every e-mail. Eller has submitted an affidavit, stating in relevant part:

> When I first started using Lotus Notes e-mail in August 1996, I deleted messages unless I had a business reason to keep the message. I have not deleted messages that I sent on Lotus Notes. . . . I was aware at the time of the need to retain documents in connection with the IBBI litigation, and I and my secretary were following the instructions of Brunswick's lawyers and keeping paper documents. However, since I was just learning how to use my computer and e-mail, I did not realize that I should save e-mail in connection with the IBBI litigation. I don't recall what any of these e-mails were about. However, I am confident that any significant information I received during this time would also be reflected in my paper documents. I simply did not, and do not today, make major decisions on the e-mail system without also creating a paper record.

(Eller Aff. PP 5 & 6). Eller also states that during the August to October time [*11] frame he was traveling extensively with his laptop computer and that he had difficulty accessing Lotus Notes while away from his office. Id. at P 4.

In summary, Eller deleted received e-mail during this period which might have been responsive, since he kept only that which he needed for a business purpose. However, that which he did not need for a business purpose would most likely have limited significance. Further, he has stated under oath that he made a paper record as to any significant decisions.

(2) Fisher E-mail

Plaintiffs' allegations regarding Fisher e-mail are more widespread. First, Plaintiffs state that of the fifteen individuals on Plaintiffs' spot-checking list, eleven had Fisher e-mail addresses on the Fisher system. Of those eleven individuals, only four had Fisher e-mail resident in the system. Thus, seven individuals did not have any Fisher e-mail on the system at all. Plaintiffs argue that because this system was in place from 1990 to mid-1996, hundreds and maybe thousands of e-mails have been deleted.

Next, Plaintiffs point to an e-mail dated January 24, 1996 from Dennis Sheller, Mercury Marina vice president, addressed in the body of the message to [*12] "all vice presidents." This e-mail discusses Yamaha's acquisition of Skeater boats and thus, it is relevant to Plaintiffs' case. However, Plaintiffs state that the e-mail was not disclosed in Sheller's spot-check production. Father, Plaintiffs discovered the e-mail because it was produced in hard copy during the initial document production. Plaintiffs argue that this proves the e-mail was deleted from the system.

Finally, Plaintiffs point to the lack of production of "copied" Fisher e-mail as evidence of the destruction of e-mail. Plaintiffs identify several Fisher e-mails which were produced as part of the spot check. These e-mails indicated several carbon copy recipients who were also on the spot-checking list. However, several of these carbon copied e-mails did not show up in the carbon copy recipients' productions. Plaintiffs argue that this indicates the carbon copy recipients intentionally deleted these e-mails.

Defendant responds to Plaintiffs' Fisher e-mail allegations by stating that four of the seven individuals who did not produce Fisher e-mail did not in fact have access to the Fisher system. According to Defendant, these individuals' Fisher e-mail boxes were merely forwarding [*13] addresses, which automatically forwarded the message to the e-mail system at Defendant's Lake Forest headquarters.

As to the Sheller e-mail of January 24, 1996, and the lack of carbon copied e-mails, Defendant states that, until entry of the Court's preservation order, individual employees were allowed to use their own discretion in deciding whether to delete an e-mail. If an e-mail was marked for deletion, the Fisher system automatically removed the message from the system after three days. Defendant restates its position that until entry of the preservation order on October 18, 1996, its employees were not under an obligation to save an electronic copy of every Fisher e-mail that they sent or received. According to Defendant: "there simply is no evidence that any Mercury Marine employee has violated the Court's preservation order by deleting electronic copies of marine-related e-mail after October 18, 1996." (Def.'s Resp. to Pls.' Supp. Mem. at 7.)

In summary, the proof shows that Defendant did routinely delete Fisher e-mail over the years from 1990. Also, Fisher e-mail was deleted after the suit was filed. Some may have been relevant. On the other hand, the Fisher system was more [*14] cumbersome than Lotus and less likely to have been used to convey highly significant material. Although it was possible to import files for transmission, attachment was not possible. Therefore, it appears although some responsive information is lost, it would be speculative to say that the lost information would have a significant impact on the body of proof in this case.

C. Defendant's Efforts to Preserve Relevant Materials

On December 11, 1995, the first business day after Defendant was served with Plaintiffs' Complaint, Robert McNaney, counsel for Defendant, issued the following internal memorandum to seven high-ranking Brunswick officials:

> On December 8, 1995, at approximately 3:30 p.m., we were served with a Summons and Complaint filed by Independent Boat Builders, Inc. and eighteen Mercruiser Customers alleging various antitrust, contract law, and other claims against the company. In order to aid us in the preparation of our defense, no documents, records, or correspondence of any kind should be destroyed without the express consent of the Law Department. Please take immediate steps to make sure that this requirement is implemented.

(See Ex. 10 to [*15] Def.'s Resp. to Pls.' Supp. Mem.) Various members of Defendant's organization were reminded of their duties to maintain marine-related materials on February 26, 1996, June 13, 1996, and August 15, 1996. (See Ex. 11 to Def.'s Resp.) On October 21 and 23, 1996, following entry of the Court's preservation order, memoranda and e-mail went out to all employees quoting the mandate of the order that all marine materials, regardless of form, ware to be preserved. (See Ex. 12 to Def.'s Resp.).

Discussion

As a threshold matter, the Court must determine at what point Defendant's duty to preserve relevant materials arose. As a general rule, a duty to preserve evidence arises once a party has notice of its relevance. *Turner v. Hudson Transit, 142 F.R.D. 68 (S.D.N.Y. 1991)*. The Eighth Circuit has indicated that "if the corporation knew or should have known that the documents would become material at some point in the future then such documents should have been preserved." *Lewy v. Remington Arms Co., 836 F.2d 1104, 1112 (8th Cir. 1988)* (discussing reasonableness of a document retention policy). Another formulation of the duty-to-preserve rule states [*16] that:

> While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

*Turner, 142 F.R.D. at 72* (quoting *William T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984))*. The Court finds that once the instant matter was filed, a duty arose for Defendant to preserve all e-mail relevant to the action.

As stated previously, Plaintiffs are placing at issue all Fisher e-mail, including that deleted prior to the filing of this case. Plaintiffs argue that because Defendant was embroiled in various antitrust matters from 1992 to present, Defendant was under a duty to preserve all e-mail relevant to antitrust issues from that data on.

The Court has several problems with this argument. First, to hold that a corporation is under a duty to preserve all e-mail potentially relevant to any future [*17] litigation would be tantamount to holding that the corporation must preserve all e-mail. This would be especially burdenance where the e-mail system apparently was used primarily for routine communication rather than to convey material significant to antitrust violations. Any corporation the size of Defendant (or even much smaller) is going to be frequently involved in numerous types of litigation. Whether it be patent, trademark, labor or antitrust suits, the threat of litigation is ever present for large, successful corporations. Arguably, most e-mails, excluding purely personal communications, could fall under the umbrella of "relevant to potential future litigation." For example, the e-mail could contain "stray remarks" which would have a bearing on some legal issue. Thus, it would be necessary for a corporation to basically maintain all of its e-mail. Such a proposition is not justified. By its own estimation, it would cost Defendant approximately $ 50,000 to configure its system to print out a copy of every e-mail. The long-term storage expenses would be staggering. Furthermore, hard disk or tape storage of data is very costly. With corporations spending enormous amounts of money [*18] to preserve business-related and financial data (the information that is really of the most value in determining the issues in this case), they should not be required to preserve every e-mail message at significant additional expense.

One additional reason for rejecting this proposition lies in the nature of e-mail itself. Many corporations have hundreds of employees who undoubtedly receive several e-mails a day. These employees are in no position to evaluate the potential relevance of a given e-mail to future litigation. The modern reality of e-mail is that it will be retained if the recipient has a business reason for doing so. If the recipient reads the e-mail and has no business reason to keep it, it is discarded, even though the contents of that communication could possibly, at a

later data, have some relevance to a lawsuit. n1 It would not be appropriate to sanction these individuals and their employers for such benign actions.

> n1 For examples, suppose employee # 1 sends an e-mail to employee # 2 saying "Let's get together and talk about Program X. The CEO is backing the program, but I think its time we terminate it." If litigation arises two years later placing Program X at issue, then arguably, this e-mail could be relevant to the lawsuit. However, most likely employee # 2 would read this e-mail and simply delete it. Employee # 2 would not have any "business reason" for keeping it and certainly would not be able to evaluate its significance to a future lawsuit.

[*19]

It is not the Court's position that any e-mail can be deleted as long as a complaint has not been filed which would establish the relevance of that particular e-mail. However, given the facts of this case and considering the nature of the Fisher e-mail system, an e-mail that may have been deleted by a user before the filing of the complaint, even though it might have some tangential relevance, should not be a basis for a negative inference or spoliation jury instruction.

In accordance with the above, it is clear that Defendant had a duty to preserve relevant e-mails once the complaint was filed in this case. It is also clear that after the filing of the complaint some Fisher e-mails and also some Lotus e-mails were deleted from the system by individual users. The Court finds that no e-mails have been deleted since the entry of the preservation order on October 18, 1996.

In determining whether a spoliation instruction is warranted under these circumstances, the Court must focus on "the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed. [*20] " *Turner, 142 F.R.D. at 74*. The Eighth Circuit has cited with approval the following language:

> Such a presumption or inference arises, however, only when the spoliation or destruction [or evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.

*Lewy, 836 F.2d at 1112* (quoting *Gumbs v. International Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983))*. In Lewy, which involved a document retention policy, the Eighth Circuit directed the district court to "determine whether the document retention policy was instituted in bad faith." *Lewy, 836 F.2d at 1112* (quoting *Gumbs, 718 F.2d at 88*). Additionally, the Eighth Circuit has upheld a refusal to give an adverse inference instruction where the magistrate's decision "explicitly indicated the lack of bad faith." *SDI operating Partnership v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992)*.

The court recognizes there is some dispute among the circuits as to whether bad faith is a prerequisite for an adverse inference [*21] instruction. See generally, *Turner, 142 F.R.D. at 74-77; Skeete v. McKinsey & Co., 1993 U.S. Dist. LEXIS 9099, 1993 WL 256659, No. 91 Civ. 8093 (PKL), at *5-8, (S.D.N.Y. Jul. 7, 1983)*. Indeed, the Eighth Circuit has upheld the giving of an adverse inference instruction where the magistrate failed to make a specific bad faith finding. *Dillon v. Nissan Motor Co., 986 F.2d 263 (8th Cir. 1993)*. However, the facts of that case were extreme; the destroyed evidence was the very automobile that was the subject of the products liability action. The court in Dillon ultimately ruled:

> We do not hesitate in determining that the findings in this case -- a retained witness and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation -- are sufficient for imposing sanctions.

*Id. at 267*. The court also listed in a footnote several later discovered facts that "might have supported a finding of bad faith." *Id. at 269 n.3*. Given the pronouncements in Lewy, Neuwirth, and Dillon, the Court finds that bad faith is arguably a prerequisite to giving an adverse inference jury instruction. [*22] If it is not a prerequisite *per se* it is definitely the primary factor to consider in weighing the appropriateness of the instruction.

Immediately upon receipt of the complaint, Defendant took steps to apprise all relevant personnel of the obligation to preserve marine-related materials. Defendant reminded its employees of its continuing retention obligations on three separate occasions. The fact that Defendant allowed individual employees to use discretion whether to retain e-mail is simply not indicative of bad faith. Furthermore, Plaintiffs have not convinced the Court that any of the Fisher or Lotus deletions was motivated by "fraud or a desire to suppress the truth," *Lawy, 836 F.2d at 1112*, or that Defendant

"intended to prevent use of the [e-mails] in litigation." *Turner*, 142 F.R.D. at 74. Accordingly, the Court finds that the deletion of Fisher and Lotus e-mail was not the result of an intentional or bad faith effort to destroy evidence. This finding weighs heavily against the awarding of an adverse inference jury instruction.

The second factor to consider in determining the appropriateness of an adverse inference instruction is the [*23] content of the evidence destroyed. This factor is generally broken down into three subparts: (1) whether the evidence was relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-destroying party has suffered prejudice from the destruction of the evidence. See *Dillon*, 986 F.2d at 267-69; *Turner*, 142 F.R.D. at 74-77; *Skeete*, 1993 U.S. Dist. LEXIS 9099, 1993 WL 256659 at *5-8.

Subparts (1) and (2) overlap somewhat. Plaintiffs maintain that they are not obligated to demonstrate the relevance of any of the destroyed e-mails because the e-mails have been destroyed, and they have no way to directly show their relevance. However, "some extrinsic evidence of the content of the evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental." *Turner*, 142 F.R.D. at 77. Furthermore, "before an adverse inference may be drawn, there must be some inference and the information contained in the lost evidence." *Id.* at 76.

Plaintiffs have attempted to demonstrate the relevance of any deleted e-mail by providing copies [*24] of several Lotus e-mails from Barry Eller's Lotus mailbox and all of the Fisher e-mails which were disclosed during the spot-check procedure. The Court has examined these e-mails, and it is clear that some of them would be relevant to Plaintiffs' claims while others could only be described as "tangentially relevant." However, it is undisputed that these e-mails were disclosed to Plaintiffs and were not deleted.

Plaintiffs have asked the Court to make an inferential leap that, because some relevant Fisher and Lotus e-mails are in existence, then the deleted e-mails must have been relevant also. The Court questions whether it can do so. Plaintiffs have not offered any extrinsic evidence of any specific, relevant e-mails that have been deleted. n2 However, this issue need not be reached. Assuming for the moment that relevant e-mails have been deleted, the Court finds that Plaintiffs have not presented any evidence that the "relevant" e-mails would support the inference they have requested. It would simply be inappropriate to give an adverse inference instruction based upon speculation that deleted e-mails would be unfavorable to Defendant's case. Without some evidence, direct or circumstantial, [*25] of the unfavorable content of the deleted e-mails, the Court simply cannot justify giving the adverse inference instruction.

n2 Plaintiffs have shown that one relevant e-mail was deleted, Barry Sheller's January 24, 1996, Fisher e-mail. However, it was produced to Plaintiffs in hard copy during the initial document production.

The final factor to determine whether an adverse inference instruction would be appropriate is the extent to which the non-spoliating party would be prejudiced in the ability to put on its case. In most instances the prejudice is readily apparent. For example, in *Dillon, supra*, the spoliated evidence was the actual automobile which was the subject of the plaintiff's products liability action.

Even if relevant e-mails have been deleted, it is unclear whether Plaintiffs would suffer any significant prejudice. The time frame at issue is December 7, 1995, to October 18, 1996. Assuming that every e-mail deleted during that time frame was relevant in some way to the issues of [*26] this case, it is doubtful Plaintiffs would be prejudiced enough in their ability to put on their case to warrant an adverse inference instruction. Defendant has produced well over a million documents covering every aspect of its business over the last decade. It has been stated that Plaintiffs' case challenges, to use Defendant's words, "the entire structure of the marine industry for the last decade." It is doubtful that e-mails deleted over a recent nine-month period would have that great of an affect upon the overall body of proof in this case. The outcome of this matter will be decided on economics, not upon the content of a few e-mails. Accordingly, the Court finds that, even if the deleted e-mails were relevant to Plaintiffs' case, Plaintiffs have not suffered the requisite prejudice necessary for the giving of an adverse inference instruction.

Plaintiffs' request for an adverse inference jury instruction on the spoliation of e-mail is DENIED.

Further Discovery of E-Mail

Defendant's computer system contains two types of e-mail: Fisher and Lotus Notes. As stated previously, relevant Lotus e-mail will be searched for and produced in connection with Defendant's ongoing final [*27] update search. The remaining issue is the extent to which Defendant will be required to search for and produce Fisher e-mail. The "Fisher E-mail Questionnaire" answers provide guidance as to what type of search must be undertaken.

Case 1:02-cv-02952-JFM   Document 189-3   Filed 12/01/2004   Page 9 of 10

Page 8
1997 U.S. Dist. LEXIS 24068, *

Defendant's Fisher e-mail database is stored in ten files on a mainframe computer (the "Host Server") at Affiliated Computer Services, Inc. in Dallas, Texas. (See Def.'s Resp. to Fisher E-mail Quest. at 9-10.) The Host Server is completely backed up weekly, and incremental backups are taken daily. n3 (See William H. Porath Aff. PP 7.2 - 7.5, Ex. B to Def.'s Resp. to Fisher E-mail Quest.). At the end of a fourteen--day period, the daily back up tapes are recycled and written over. Id. The Fisher system is also backed up separately every night for one week and then the tapes are recycled. Id. In describing the nature of the back up system used by Defendant, Bill Porath, Defendant's information systems support manager states:

> The central point to be understood is that our back-up system is a disaster recovery system. As such it is intended to take only "snapshots" of our computer files so that if a catastrophic event occurs, the information [*28] from the immediately preceding period can be reloaded to get us running again with the most minimal loss. . . . Our computer backup is not an archiving system designed to preserve all information going into our computers. . . . Our back-up is not designed to capture, and will not capture, deleted information or data.

Id at 7.3. Defendant states that there is no way to recover a deleted Fisher e-mail from within the Fisher e-mail system itself. In terms of the backup system, Defendant states that:

> it is possible that a backup copy of the Fisher e-mail system contains e-mail messages that were in a user's e-mail box at the time of the backup and which the user subsequently deleted. In order to retrieve these messages, it would be necessary to restore the backup copy of the Fisher e-mail system. . . .
>
> Restoring a backup copy of the Fisher e-mail system onto mercury Marine's Host Server would destroy the current version of the Fisher e-mail system and jeopardize Mercury Marine's continuing data processing activities. It would therefore be necessary to duplicate Mercury Marine's computing environment as it existed at the time the back up tape was created on a separate [*29] computer system. The back up tape could then be loaded onto that duplicate system in order to restore the backed-up version of the Fisher e-mail system. Once the backed-up version of the Fisher e-mail system was loaded, it would be necessary to do a one for one comparison between the messages on the backed up Fisher e-mail system and messages on the current Fisher e-mail system in order to identify any messages deleted since the time of the back-up.

(Def.'s Resp. to Fisher E-mail Quest. at 10-11.)

   n3 An incremental backup only backs up information that has changed since the previous backup.

There are two separate issues. First, should Defendant search the existing Fisher e-mail system for responsive e-mail? Second, should Defendant search the back up tapes for deleted Fisher e-mails that may have been captured during the back up?

The Court finds that Defendant must search the existing Fisher system for responsive Fisher e-mails. In order to obtain these e-mails the system administrator will merely have [*30] to log on as an individual user and print out any e-mails stored in that user's Fisher e-mail box. This process does not appear to be unduly burdensome or expensive. The scope of this search shall be limited to those individuals who responded with "yes" or "maybe" responses to the original questionnaire.

Searching the Fisher back up tapes raises different issues. Under Rule 26(b)(2) the Court is required to limit discovery if:

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

*Fed. R. Civ. P. 26(b)(2)*. Defendant states that the back up retrieval procedure described above would be costly although it has not yet attempted to estimate the cost.

It is obvious to the Court that recreating the computing environment at the time the backup tape was created would involve significant cost. Furthermore, the potential gains are questionable. For example, the Host Server is backed-up for fourteen days, and then the tapes are recycled. [*31] Thus, the only definite back up

information available would be information that is only fourteen days older than the information on the existing Fisher system. Fourteen days worth of e-mail, which might contain a few deleted e-mail, seems to hardly justify the expense necessary to obtain it. Similarly, even if earlier back up tapes containing "snapshots" of the system were in existence, the potential limited gains from a search of such tapes would be outweighed by the substantial burden and expense of conducting the search. Accordingly, the Court finds that Defendant will not be required to restore and search any available back up tapes which might contain deleted Fisher e-mail.

Conclusion

In accordance with the above, Plaintiff's Motion to Compel the Production of E-mail and for Jury Instruction (Docket # 251) is GRANTED in part and DENIED in part. Plaintiffs' request for a spoliation jury instruction is DENIED. Defendant shall search for and produce all responsive e-mail on the existing Lotus and Fisher systems. Defendant shall not be required to restore back up tapes in order to search for deleted Fisher e-mail. Plaintiffs' request for costs and fees in connection with this [*32] motion is DENIED.

IT IS SO ORDERED this 29 day of August, 1997.

James M. Moody

United States District Judge