# TAB C

1993 U.S. Dist. LEXIS 9099

PATRICIA SKEETE, Plaintiff, v. McKINSEY & COMPANY, INC., and RICHARD PORTH, Defendants.

91 Civ. 8093 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1993 U.S. Dist. LEXIS 9099

July 7, 1993, Decided
July 7, 1993, Filed

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, employer and supervisor, sought to preclude evidence or alternatively to impose an adverse inference on plaintiff ex-employee, as a sanction for plaintiff's loss and destruction of evidence. Defendants further sought an award of reasonable costs, including attorney fees.

**OVERVIEW:** Plaintiff ex-employee filed an action against defendants, employer and supervisor, alleging that she was discriminated against on the basis of her race, sex, and national origin. Defendants filed a motion to preclude evidence or alternatively to impose an adverse inference on plaintiff as a sanction for plaintiff's loss or destruction of evidence. Defendants also sought an award of reasonable costs, including attorney fees. The court denied defendants' motion in its entirety. The court held that a sanction of adverse inference against plaintiff due to her loss or destruction of cassette tapes was improper where plaintiff did not act intentionally and defendants failed to demonstrate that they were prejudiced from the denial of access to the tapes. The court noted the loss or destruction of evidence was the result of plaintiff's negligence and defendant did not provide any extrinsic evidence that the subject matter of the tapes would have been unfavorable to plaintiff or relevant. The court determined monetary damages were unwarranted because of the sophistication of plaintiff, the absence of willful conduct, the nature of the evidence, and the financial strength of the parties.

**OUTCOME:** The court denied a motion filed by defendants, employer and supervisor, to preclude evidence or alternatively to impose an adverse inference. The court held that a sanction of adverse inference due to plaintiff ex-employee's loss or destruction of cassette tapes was unwarranted where plaintiff's conduct was unintentional and defendants failed to demonstrate they were prejudiced. The court also denied defendants' request for monetary sanctions.

**CORE TERMS:** tape, adverse inference, conversation, destruction, destroyed, message, destruction of evidence, recording, annexed, inherent power, duty to preserve, discovery request, discovery, mail, failure to produce, spoliator, deposition, relevance, lawsuit, answering machine, unintentional, commencement, in-person, telephone, missing, notice, save, spoliation of evidence, extrinsic evidence, unwarranted

**LexisNexis(TM) Headnotes**

*Civil Procedure > Sanctions > Discovery Misconduct*

[HN1]A court has discretion to impose sanctions on a litigant for failure to produce evidence. A violation of a court order is not a prerequisite for the imposition of sanctions. Instead, a court can rely on its broad inherent powers to sanction parties acting in bad faith, vexatiously, wantonly, or for oppressive reasons. This inherent power stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices. Accordingly, even in the absence of an order, a court clearly has the power to sanction the improper destruction of evidence by a party under its inherent powers.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*

*Civil Procedure > Sanctions > Discovery Misconduct*

[HN2]While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request. A discovery request places a litigant on notice that the documents or materials sought in the request are potentially relevant to the litigation and, thus, should be preserved. Even in the absence of a discovery request, the complaint itself may alert a party that certain information is relevant and likely to be sought in discovery. Moreover, this

duty to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced.

*Civil Procedure > Sanctions > Discovery Misconduct*

[HN3]One sanction which a court can impose for a party's loss or destruction of evidence is an adverse inference charge which instructs the jury that it may infer from the loss and destruction of the evidence that it would have been damaging to the party's case. The use of an adverse inference as a sanction for the spoliation of evidence serves both a remedial and punitive purpose. The remedial purpose is to restore the prejudiced party to the same position with respect to its ability to prove its case that it would have held if there had been no spoliation. Moreover, the punitive component of such a sanction is based upon the rationale that allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial. A court must consider the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed.

*Civil Procedure > Sanctions > Discovery Misconduct*

*Evidence > Procedural Considerations > Inferences & Presumptions*

[HN4]Before an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence. Thus, the moving party must show that they suffered prejudice as a result of the failure to produce the requested evidence. The moving party usually sets forth some type of extrinsic evidence as to the content of missing materials which demonstrates the extent to which such materials would have been harmful to the spoliator. This corroboration is especially important where the destruction is merely negligent since there is no bad faith in such cases from which to infer the evidence would have been detrimental to the spoliator. Where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence.

*Civil Procedure > Sanctions > Discovery Misconduct*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN5]Even in instances involving negligence, monetary sanctions have been determined to be appropriate. Moreover, even when rejecting an adverse inference, courts impose monetary sanctions for the destruction of evidence.

**COUNSEL:** [*1] SCHREIBER, SIMMONS, MACKNIGHT & TWEEDY, 9 West 57th Street, New York, N.Y. 10019, Andrew N. Krinsky, Esq., of counsel, Counsel for Plaintiff.

EPSTEIN BECKER & GREEN, P.C., 250 Park Avenue, New York, N.Y. 10177-0077, Carol S. Bernheim, Esq., of counsel, Counsel for Defendants.

**JUDGES:** Leisure

**OPINIONBY:** PETER K. LEISURE

**OPINION: OPINION AND ORDER**

LEISURE, District Judge,

This is an action arising out of allegations by plaintiff, Patricia Skeete ("Skeete"), that she was discriminated against on the basis of her race, sex, and national origin. On December 2, 1991, Skeete commenced this action against her former employer, McKinsey & Company, Inc. ("McKinsey"), and supervisor, Richard Porth, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and Section 1981 of Title 42 of the United States Code, each as amended by the Civil Rights Act of 1991. Defendants filed a motion to preclude evidence, or alternatively to impose an adverse inference on plaintiff, as a sanction for plaintiff's loss and destruction of evidence. Defendants further seek an award of reasonable costs, including attorney fees. For the reasons stated below, [*2] the Court denies defendants' motion in its entirety.

**BACKGROUND**

In the complaint, plaintiff Skeete alleges that, during the course of her employment, she was subjected to racial and sexual harassment and was discharged from her employment on November 6, 1990 "because of her race and/or her sex and/or her national origin and in retaliation for her requests that defendant McKinsey provide a work place [sic] free from sexual and racial harassment." Complaint, dated December 2, 1991, at P 6, annexed as Exhibit A to the Affidavit of Carol S. Bernheim, Esq., sworn to on April 16, 1993 ("Bernheim Affidavit"). From May 1990, when Skeete alleges that false and pretextual claims were being made against her by her supervisor, until the time of her discharge in November 1990, Skeete taped several in-person conversations with employees, voice mail messages from her office, and conversations and messages on her answering machine at home.

Page 2

On January 22, 1992, Skeete was served with defendants' First Request for Production of Documents. The defendants sought production of, inter alia:All diaries, logs, calendars, appointment books, telephone recordings, tape recordings and documents, [*3] whether prepared or maintained for personal or business-related purposes, which contain your records, notes, descriptions or thoughts concerning your work assignments, work environment, job positions, peers, supervisors and managers, and any other aspects of the terms and conditions of your employment.See Defendants' First Request for Production of Documents, Request No. 10, dated January 22, 1992 ("Document Request No. 10"), at 5, annexed as Exhibit C to the Bernheim Affidavit. On March 4, 1992, Skeete responded to this request by noting that:A transcript of certain taped telephone conversations is being prepared and will be provided. No other such documents exist, other than any documents annexed hereto numbered 1 through 106 which may be included within this request.See Plaintiff's Response to Defendants' Document Request, Response No. 10, dated March 4, 1992, at 6, annexed as Exhibit D to the Bernheim Affidavit.

On April 20, 1992, defendants requested that Skeete produce the original tapes of the aforementioned telephone conversations. See Letter of Defense Counsel, dated April 20, 1992, annexed as Exhibit E to the Bernheim Affidavit. On April 27, [*4] 1992, Skeete's counsel produced one microcassette tape and one standard-size cassette tape containing certain recordings created by plaintiff during her employment at McKinsey. On May 1, 1990, plaintiff's deposition was commenced. During plaintiff's deposition, defendants learned of the existence of original recordings that were not disclosed in response to defendants' earlier request. Plaintiff testified that she attempted to tape record several (1) voice mail messages from the office, (2) in-person conversations with other employees, and (3) messages or conversations on her answering machine at home.

At plaintiff's deposition, defendants orally requested that all of these tapes, which were not disclosed in response to defendants' discovery request, be produced. Skeete maintains that this request was made "after the materials had been innocently and unknowingly lost" in the almost two years that transpired between the creation of the tapes and defendants' request for their production. See Plaintiff's Memorandum in Opposition to Motion to Preclude Evidence, dated April 28, 1993, at 4. Skeete disputes whether these tapes fell within the scope of Discovery Request No. 10, which [*5] defendants argue clearly put her on notice as to the need to produce such tapes. Instead, Skeete contends that prior to May 1, 1992, she did not know that defendants wanted such tapes and was not aware of any duty to save them. See Affidavit of Patricia Skeete, sworn to on April 24, 1993 ("Skeete Affidavit"), at P 18. Skeete concedes that she may have re-recorded over some of the conversations or lost certain tapes. See Skeete Affidavit, at PP 3, 18. More specifically, Skeete notes that "I had left the tapes on my credenza or night table and on occasion my sister would use them to record music." Skeete Affidavit, at P 18. n1 In addition, Skeete also states that "other tapes may have been misplaced during my move from New York to Atlanta, but at no time did I set out to erase a recording." Id. Thus, Skeete contends that their loss or destruction was unintentional.

---------------Footnotes---------

n1 At her deposition, plaintiff noted, as an example, that sometime during the week of April 20-24, 1992 she had allowed her sister to tape some jazz over an original tape because she had given a copy of the tape to her attorney. See Deposition of Patricia Skeete, dated May 1, 1992, at 135, annexed as Exhibit F to the Bernheim Affidavit.

------------End Footnotes--------

[*6]

Defendants also sought the production of notes describing plaintiff's thoughts about her employment which were created by plaintiff during her employment at McKinsey. Plaintiff disclosed the one-time existence of such notes, but stated that she did not possess any such notes because (1) she customarily would discard them shortly after they were made and (2) while she would save some notes on occasion in a box under her desk which contained other personal papers, she never recovered that box after she was discharged from her employment at McKinsey. See Skeete Deposition, at 116-121, annexed as Exhibit O to the Bernheim Affidavit; Skeete Affidavit, at P 19. Therefore, Skeete contends that, to the extent such notes may still exist and have some relevance to the litigation, they are in the possession of McKinsey.

Defendants have moved to preclude plaintiff from offering evidence concerning certain recordings of in-person conversations, telephone conversations, voice mail and answering machine messages, and handwritten notes on the grounds that plaintiff has destroyed or lost the original tapes and documents upon which such evidence is derived, as well as other tapes and documents [*7] which may have been

favorable to defendants. In the alternative, if the Court permits such evidence, defendants seek to impute an adverse inference to the plaintiff that the destroyed or lost evidence would have been favorable to defendants.

DISCUSSION

I. AUTHORITY FOR IMPOSING SANCTIONS

It is well established that [HN1]a court has discretion to impose sanctions on a litigant for failure to produce evidence. In the instant case, no court order was in effect addressing the documents and tapes at issue and, therefore, the Court appears to have no authority to impose sanctions under Rule 37(b) of the Federal Rules of Civil Procedure. n2 However, a violation of a court order is not a prerequisite for the imposition of sanctions. See Sassower v. Field, 973 F.2d 75, 80-81 (2d Cir. 1992), cert. denied, 123 L. Ed. 2d 497, 113 S. Ct. 1879 (1993); United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("International Brotherhood of Teamsters"), 948 F.2d 1338, 1345 (2d Cir. 1991); Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 552 (S.D.N.Y. 1989). [*8] Instead, the Court can rely on its broad inherent powers to sanction parties "acting in bad faith, vexatiously, wantonly, or for oppressive reasons." Sassower, 973 F.2d at 81 (citing Chambers v. NASCO, Inc., 115 L. Ed. 2d 27, 111 S. Ct. 2123, 2133 (1991)); International Brotherhood of Teamsters, 948 F.2d at 1345. The Second Circuit has noted that this inherent power "stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" International Brotherhood of Teamsters, 948 F.2d at 1345 (quoting Chambers, 111 S. Ct. at 2132); see also Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981) ("A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices."); Capellupo v. FMC Corp., 126 F.R.D. 545, 550-51 (D. Minn. 1989) (with respect to the destruction of documents, "the [*9] Court relies on its inherent power to regulate litigation, preserve and protect the integrity of proceedings before it, and sanction parties for abusive practices"). Accordingly, even in the absence of an order, the Court clearly has the power to sanction the improper destruction of evidence by a party under its inherent powers. See, e.g., Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991); Capellupo, 126 F.R.D. at 550-51.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 Rule 37(b) is only applicable for violations of an order of the Court relating to the specific discovery sought. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363-64 (2d Cir. 1991); Salahuddin v. Harris, 782 F.2d 1127, 1131-32 (2d Cir. 1986); Israel Aircraft Indus., Ltd. v. Standard Precision, 559 F.2d 203, 208 (2d Cir. 1977). Since there was no court order in effect in the instant case, the Court cannot impose sanctions pursuant to Rule 37(b). See Daval Steel Prods., 951 F.2d at 1364 ("there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"); but see Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (suggesting that courts have the power to sanction the destruction of evidence under Rule 37(b) even prior to the issuance of a discovery order).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*10]

II. DUTY TO PRESERVE EVIDENCE

In assessing whether sanctions are appropriate in the instant case, the Court must address the threshold issue of whether or not Skeete had a duty to preserve the now lost or destroyed evidence. In Turner, supra, where a sanction of $ 6,723.65 was levied against defendants and their attorneys for the destruction of evidence and other discovery abuses, United States Magistrate Judge James C. Francis IV discussed the parameters of this duty to preserve:[HN2]

"While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."Turner, 142 F.R.D. at 72 n3 (quoting Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (citations omitted)); see also Computer Assocs. Int'l, Inc. v. American Fundware, Inc., 133 F.R.D. 166, 169 (D. Colo. 1990). [*11]

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n3 In Turner, the defendants filed objections to the Magistrate Judge's order assessing sanctions on the grounds that the

decision was clearly erroneous and contrary to law. This Court rejected that motion and upheld the order imposing the sanctions. See Turner v. Hudson Transit Lines, Inc., No. 89 Civ. 4252 (PKL), 1992 WL 51570 (S.D.N.Y. March 9, 1992).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Under this standard, it is clear that a discovery request places a litigant on notice that the documents or materials sought in the request are potentially relevant to the litigation and, thus, should be preserved. See Turner, 142 F.R.D. at 73. Even in the absence of a discovery request, "the complaint itself may alert a party that certain information is relevant and likely to be sought in discovery." Turner, 142 F.R.D. at 73 (citing Computer Assocs. Int'l., Inc., 133 F.R.D. at 169; and Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 127 (S.D. Fla. 1987)). [*12] Moreover, some courts have held that this duty to preserve evidence "even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." Id. at 73 (citing Capellupo, 126 F.R.D. 550-51 & n.14; and Alliance To End Repression v. Rochford, 75 F.R.D. 438, 440 (N.D. Ill. 1976)).

In the instant case, it appears that a substantial number of the missing tapes were lost or destroyed after the commencement of the action and after plaintiff received Discovery Request No. 10. For example, Skeete notes that in April of 1992, she allowed her sister to re-use one of the original tapes at issue to record some jazz. Skeete argues that the missing tapes, which involved conversations or messages from third parties, did not fall within the scope of Request No. 10. Thus, Skeete contends that Request No. 10 did not put her on fair notice that she had an obligation to produce such tapes.

The Court finds this argument unpersuasive. The issue of whether or not all of the tapes fell within Document Request No. 10 is not critical to the analysis because, independent of that request, Skeete had [*13] general notice that all the tapes were potentially relevant to the action. In other words, the complaint in the instant case, by itself, would alert a reasonable plaintiff as to the potential relevance of these tape recordings in the litigation. The complaint involves allegations of racial and sexual discrimination and harassment. A plaintiff bringing such an action should realize, upon commencement of the action, that tape recordings that she made during the course of her employment consisting of voice mail messages from the office, in-person conversations, and messages or conversations on her answering machine at home, could become relevant to the litigation and, therefore, should be preserved. The need to preserve such evidence should have been especially obvious to plaintiff in the instant case in light of the fact that her apparent motivation in gathering such information on tapes was to obtain proof of harassment and discrimination, as well as to defend herself against unfounded charges relating to her performance. See Skeete Affidavit, at PP 7, 10. Under these circumstances, a reasonable person would safeguard all tapes relating to her employment upon commencement of the [*14] litigation. Accordingly, the Court finds that, upon commencement of the action, Skeete had a duty to preserve these tape recordings relating to her employment. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n4 With respect to the handwritten notes, Skeete explained that she discarded most of the notes shortly after she made them during the course of her employment and the remaining notes were left in a box at her desk after her discharge in November 1990 and, thus, should be in the possession of McKinsey. See Skeete Affidavit, at P 19. The Court finds her sworn statement to be credible. Accordingly, no duty to preserve arose with respect to these handwritten notes.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

### III. AN ADVERSE INFERENCE CHARGE

Having found that Skeete had a duty to preserve the tapes, the Court now must determine the appropriate sanction, if any, which should be imposed upon Skeete for the loss or destruction of such evidence. [HN3]One sanction which the Court can impose is an adverse inference charge which instructs the jury that it may infer from the loss and destruction of the [*15] evidence that it would have been damaging to Skeete's case. The use of an adverse inference as a sanction for the spoliation of evidence serves both a remedial and punitive purpose. The remedial purpose of such an inference is to "restore the prejudiced party to the same position with respect to its ability to prove its case that it would have held if there had been no spoliation." Turner, 142 F.R.D. at 74. Moreover, the punitive component of such a sanction is based upon the rationale that "'allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." Turner, 142 F.R.D. at 74 (quoting Nation-Wide Check Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214, 218 (1st Cir. 1982)). With these basic purposes in

Page 5

mind, the Court must consider "the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed." Turner, 142 F.R.D. at 74.

The [*16] Court will first address the plaintiff's state of mind which is a key factor in determining whether an adverse inference, relating to the loss or destruction of documents, is appropriate. It is clear that an adverse inference is an appropriate sanction when the spoliation of evidence is intentional. n5 See, e.g., Turner, 142 F.R.D. at 74 ("where the destruction is intentional -- that is, where the destroyer intended to prevent use of the evidence in litigation -- courts clearly have the power to invoke such an inference."); Capellupo, 126 F.R.D. at 551 ("Purposeful impairment of the opposing party's ability to discover information justifies invocation of [sanction] powers."); INA Aviation Corp. v. United States, 468 F. Supp. 695, 700 (E.D.N.Y.) (an adverse inference may be appropriate if party shows that the spoliator purposely destroyed the evidence), aff'd mem., 610 F.2d 806 (2d Cir. 1979).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n5 There are some cases which indicate that, under certain circumstances, it is an abuse of discretion not to draw an inference when the party destroyed evidence in bad faith. See, e.g., Alexander v. National Farmers Org., 687 F.2d 1173, 1205-06 & n.40 (8th Cir. 1982), cert. denied, 461 U.S. 937 (1983).

- - - - - - - - - - - End Footnotes- - - - - - - -

[*17]

The Court has reviewed the entire record, including Skeete's detailed affidavit in which she provided a credible and satisfactory explanation for the loss or destruction of the materials, and finds that there is no evidence that Skeete intentionally lost or destroyed materials to prevent their use in the litigation. In her affidavit, Skeete states that the loss or destruction of the materials was unintentional:McKinsey's and Porth's motion is based on allegations that I intentionally destroyed, or "misplaced", or selectively saved materials relevant to this case. As demonstrated below, this simply is not so. At worst, I unintentionally dubbed over, or inadvertently failed to save, or am unable to locate, certain tapes which were created, and lost, long before I had any idea that there might be a duty to save them. . . .

I acted properly with respect to all materials to the best of my limited technical abilities, and in accordance with my understanding of my obligations. I have complied with all of the discovery requests that have been made of me; and have spent hours reviewing tapes trying to locate materials on behalf of defendants.Skeete Affidavit, at PP 3, 4. Skeete [*18] then describes the circumstances which led to her taping these events and also provides an explanation as to why she is now unable to produce certain tapes and notes. See Skeete Affidavit, at PP 6-19. Finally, Skeete again emphasized that it was a failure to understand the potential relevance of these items, rather than bad faith, which led to the loss or destruction of these items:I am not a professional recording engineer, and I attempted as best as I could to preserve what I thought would enable me to defend myself to McKinsey, the company I had worked for eleven years and expected to stand-up for me against Mr. Porth's unfounded contentions. What I have succeeded in saving, whether beneficial or harmful to me, I have produced. I have never intentionally destroyed any tapes or notes relating to this lawsuit.Skeete Affidavit, at P 21.

The Court finds Skeete's explanation as to why the tapes were lost or destroyed to be credible. Based upon the current record, Skeete's conduct appears to be the product of her ignorance about the need to preserve such materials. There is no evidence suggesting that Skeete was acting in bad faith. In assessing Skeete's state of mind, [*19] the Court has taken into consideration many factors including the explanation of the plaintiff, the sophistication of the plaintiff, her conduct during the course of the discovery, the nature of the lawsuit, and the type of evidence involved. Accordingly, under the circumstances of the instant case, the Court concludes that the loss or destruction of evidence was the result of Skeete's negligence, rather than as part of some intentional effort to destroy evidence.

There is a split of authority on whether a finding of bad faith is necessary for an adverse inference to be appropriate. See Turner, 142 F.R.D. at 74-75 (discussing case authority on this issue). Courts have held that an adverse inference is appropriate only when the spoliation of evidence was intentional. See, e.g., Britt v. Block, 636 F. Supp. 596, 606-07 (D. Vt.) ("Destruction of records through misunderstanding or negligence is not sufficient to supply evidence or recast the burden of proof."), aff'd mem., 805 F.2d 390 (2d Cir. 1986); INA Aviation Corp., 468 F. Supp. at 700 ("one cannot justify [*20] the drawing of [an adverse] inference where the destruction of evidence is unintentional or where the failure to produce evidence is satisfactorily explained"). Other courts have held

that the negligent or reckless destruction of evidence may warrant the imposition of an adverse inference against the spoliator. See, e.g., Pressey v. Patterson, 898 F.2d 1018, 1024 (5th Cir. 1990); Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc., 692 F.2d 214, 219 (1st Cir. 1982); Turner, 142 F.R.D. at 75-76. The rationale behind a sanction for negligent conduct is that "the adverse inference provides the necessary mechanism for restoring the evidentiary balance." Turner, 142 F.R.D. at 75. As the Court noted in Turner, "the inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." Id. (emphasis in original).

The Second Circuit has never clearly addressed this issue. In Berkovich v. Hicks, 922 F.2d 1018 (2d Cir. 1991), [*21] the Second Circuit addressed a request for an adverse inference and held that "on the facts of this case, 'one cannot justify the drawing of . . . an [adverse] inference where the destruction of evidence is unintentional.'" 922 F.2d at 1024 (quoting INA Aviation Corp., 468 F. Supp. at 700). By using the phrase "on the facts of this case," the Second Circuit implied that, in other circumstances, the use of an adverse inference as a sanction may be warranted even where the destruction was merely negligent. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n6 The Court notes that the use of adverse inferences in cases involving conduct which is merely negligent seems to undermine, to some extent, the Second Circuit's limitations on a court's inherent power to impose sanctions. In United States v. International Brotherhood of Teamsters, supra, the Second Circuit noted that "this Court, in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power." 948 F.2d at 1345 (citing Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987)).

- - - - - - - - - - - - End Footnotes- - - - - - - -

[*22]

Assuming arguendo that an adverse inference may be appropriate on a finding of mere negligence, the Court finds that an adverse inference is still unwarranted in the instant case because defendant has failed to demonstrate that the lost evidence bears some relationship to the inference sought. Courts have held that [HN4]"before an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence." Turner, 142 F.R.D. at 76; see also Stanojev v. Ebasco Servs., Inc., 643 F.2d 914, 923-24 & n.7 (2d Cir. 1981) (court will not allow an adverse inference charge where the failure to produce records bears no logical relationship to inference sought); Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 133 (S.D. Fla. 1987) (in sanctioning a party for destruction of evidence, the Court found that documents at issue were directly relevant to plaintiff's grievances). Thus, defendants must show that they suffered prejudice as a result of Skeete's failure to produce the requested evidence. The moving [*23] party usually sets forth some type of extrinsic evidence as to the content of missing materials which demonstrates the extent to which such materials would have been harmful to the spoliator. This corroboration is especially important where the destruction is merely negligent since there is no bad faith in such cases from which to infer the evidence would have been detrimental to the spoliator. See Turner, 142 F.R.D. at 77 ("where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence").

In the instant case, the Court finds the defendants have not demonstrated prejudice from the denial of access to the destroyed or lost materials. Defendants fail to provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to Skeete or would have been relevant to the issues in this lawsuit. Instead, defendants engage in pure speculation as to the content of these materials. The defendants' inability to produce such evidence is especially problematic [*24] given that the lost tapes consist of messages and conversations of persons who are still available to McKinsey and whose testimony on these conversations could be elicited and provided to the Court. n7 It is entirely possible that the lost taped voice mail messages and conversations were entirely innocuous and irrelevant to any issues in this litigation. Under these circumstances, where defendants have not demonstrated a nexus between the content of the materials and the inference the defendants wish to have drawn, an adverse inference is unwarranted. See Turner, 142 F.R.D. at 77 ("where, as here, there is no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate"); see also Stanojev, 643 F.2d 914, 923-24

Page 7

& n.7 (2d Cir. 1981) (employer's failure to produce certain records creates no adverse inference of age discrimination where such records appeared to have no relevance on that issue).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 With respect to a particular taped conversation that is missing regarding a voice mail message from Tom Woodward, a McKinsey employee, to another employee, Dolores Roebuck, Skeete concedes that the conversation involves Mr. Woodward accusing Skeete of sending "racially-harassing letters" to herself. See Skeete Affidavit, at P 15. Since Ms. Skeete has described the conversation and conceded that it took place, the Court finds no prejudice to the defendants. Furthermore, the defendants may call as witnesses those involved in the conversation contained on this lost tape.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*25]

Based upon the current record, the Court concludes that Skeete's mere negligence in losing the materials at issue, without any showing as to the relevance of such materials to the lawsuit or prejudice to the defendants, clearly does not support the exercise of the Court's inherent power to sanction Skeete by giving an adverse inference charge to the jury at the time of trial. The use of an adverse inference under the circumstances of the instant case is simply inappropriate and would not promote the remedial or punitive rationales underlying this type of sanction. The disposition of these disputed facts and credibility issues, including any inferences which should be drawn from Skeete's conduct, will be made by the jury at trial after hearing all of the evidence and arguments from counsel. Accordingly, the request for an adverse inference is denied. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 For all of the above stated reasons, the Court also finds that the more severe penalty of preclusion of evidence is inappropriate. Accordingly, the request for such relief is similarly denied.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*26]

## IV. COSTS AND ATTORNEY'S FEES

Defendants also request an award of attorney's fees and costs, including the costs and fees incurred in investigating the destruction of the evidence and the preparation of this motion. While such sanctions are usually awarded for willful destruction of evidence, the Court recognizes that, [HN5]even in instances involving negligence, courts have found these sanctions to be appropriate. See Turner, 142 F.R.D. at 77-78. Moreover, "even when rejecting an adverse inference, courts impose monetary sanctions for the destruction of evidence." Turner, 142 F.R.D. at 77. However, having considered the peculiar circumstances of the instant case, including inter alia, the nature of the lawsuit, the sophistication of the plaintiff, the absence of willful conduct, the nature of the evidence involved, and the relative financial strength of the parties, the Court, in its discretion, finds that sanctions in the form of attorney's fees and costs are unwarranted.

Plaintiff's request for an award of attorney's fees and costs in connection with opposing this motion also is denied.

## CONCLUSION

For the [*27] reasons stated above, defendants' motion for the preclusion of evidence, or in the alternative for the use of an adverse inference, is denied.

Defendants' request for costs and attorney's fees is denied. Plaintiff's request for an award of costs and attorney's fees in opposing the motion also is denied.

## SO ORDERED

Dated: July 7, 1993
New York, New York

Peter K. Leisure

U.S.D.J.