# TAB J

SECTION OF LITIGATION
American Bar Association

CIVIL DISCOVERY STANDARDS

August, 1999

PREFACE

These Standards are intended as guidelines to assist the parties, counsel and the court in civil discovery. They are based on the premise that discovery can be costly and inefficient if it is conducted (or resisted) without a clear set of goals or a careful, reasoned plan. The Standards recognize the interrelated roles of the court and the parties and counsel in fairly and efficiently managing discovery, and therefore include suggested practices to guide both judges and the parties. Each Standard is intended (i) to eliminate unnecessary effort and expense, (ii) to restrict the opportunities for misusing the discovery process, both offensively and defensively, and (iii) where possible, to encourage a cooperative rather than adversarial approach to discovery. Attorneys should select the means and the methods of discovery which maximize the possibility that these intended goals will be achieved.

The Standards do not provide definitions. Words are used according to their ordinary legal meaning. In particular, the definition of what is "relevant" and the permissible scope of discovery will be governed by the rule or rules in the relevant jurisdiction.

The Standards also are not a restatement of the law, nor are they intended to replace existing law or rules. They seek, instead, to address practical aspects of the discovery process that may not be covered by the rules or other law in a given jurisdiction or may be covered only in part. In the event of a conflict or inconsistency between existing substantive law or procedural rules and these Standards, the existing law or rules of the jurisdiction will govern. Counsel should therefore always review each court's rules and governing law to see whether a particular issue has been settled.

I. JUDICIAL MANAGEMENT AND PARTY INVOLVEMENT

1. Discovery Conferences and Plan.

   a. Discovery Plan. As a general practice, the court should (i) direct or encourage (as appropriate under the governing rules) the parties to develop a reasonable, comprehensive discovery plan and (ii) promptly set a scheduling conference where they will submit a proposed case management plan, including discovery, for the court's approval.

1

interrogatories served near the outset of the case can be useful in narrowing the issues to define the scope of necessary discovery, contention interrogatories ordinarily are more appropriate after the bulk of discovery has already taken place. At that point, the party on whom the interrogatories are served should have the information necessary to give specific, useful responses. *See, e.g.,* Fed. R. Civ. P. 33(c); Va. Sup. Ct. R. 4:8(e).

**9. Supplementation of Interrogatory Responses. A party should timely supplement or correct any answer provided in its original response if it acquires new material information or otherwise learns that the answer is incomplete or incorrect in some material respect and if the parties to whom the original response was due do not have written notice or other notice through discovery of the additional or corrective material information.**

Comment

This Standard, which is based on Fed. R. Civ. P. 26(e) and analogous state court provisions such as N.Y. C.P.L.R. 3101(h) and Tex. R. Civ. P. 193.5, establishes a reasonable requirement if the goals of discovery are to be achieved. Supplementation should be made promptly, and particularly when a case is approaching a discovery cut-off, pre-trial conference or trial date. In determining whether newly discovered information is material, both the party and counsel should consider the effect on the party's case if favorable information were to be precluded at trial or, conversely, the consequence of a bar on any evidence to rebut information that would appear to favor the other side. Depending on the circumstances, the court may consider sanctions or remedies other than exclusion of evidence for a party's failure to timely supplement an interrogatory answer.

IV. DOCUMENT PRODUCTION

**10. The Preservation of Documents. When a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences of failing to do so.**

Comment

This Standard is derived from various sources, including court decisions that imply a duty to preserve potentially relevant material from the discovery rules or a court's inherent powers. *E.g.,* Figgie Int'l v. Alderman, 698 So. 2d 563, 567 (Fla. Dist. Ct. App. 1997); Hirsch v. General Motors Corp., 628 A.2d 1108 (N.J. Super. Ct. Law Div. 1993); Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991); Struthers Patent Corp. v. Nestle Co., 558 F. Supp. 747, 765 (D.N.J. 1981) (quoting Bowmar Instrument Corp. v. Texas Instruments, Inc., 25 Fed. R. Serv. 2d (Callaghan) 423, 427 (N.D. Ind. 1977)

17

(improper for a party, "with knowledge that [a] lawsuit would be filed, [to] wilfully destroy[] documents which it knew or should have known would constitute evidence relevant to [the] case")).

Other cases recognize "spoliation of evidence" as an independent tort. *E.g.,* Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986); Bondu v. Gurvich, 473 So. 2d 1307 (Fla. Dist. Ct. App. 1984); Smith v. Superior Court, 198 Cal. Rptr. 829 (Ct. App. 1984). Because of its importance and the significant penalties that can be imposed for its violation, *Computer Assocs. Int'l, Inc. v. American Fundware, Inc.,* 133 F.R.D. 166 (D. Colo. 1990) (default), an attorney should make certain that the client is fully aware of the duty and the potential consequences of failing to comply with it.

The point at which the duty to preserve materials arises is not the same in all cases. Although the language of Fed. R. Civ. P. 37 and similar state rules suggests that sanctions may be levied only when the document destruction conflicts with a court order (issued in the course of the case), this limitation has not been widely followed. The more common rule is that the duty is triggered when a party becomes aware that litigation has commenced, and arises even earlier where the party has notice that litigation is likely to take place. *E.g.,* Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73 (S.D.N.Y. 1991).

For the duty to attach before a suit has been filed, however, the litigation must be probable, not merely possible. *E.g.,* Iowa Ham Canning, Inc. v. Handtmann, Inc., 870 F. Supp. 238, 245 (N.D. Ill. 1994) (the requisite knowledge for imposing sanctions is not the "potential" for litigation, but the "contemplation" or "anticipation" of litigation).

In addition to notifying a client of its duty to preserve documents once litigation has been filed or appears imminent, counsel should instruct the client as to what documents or types of documents it needs to preserve. The client should be told to preserve any documents that are directly at issue, as well as other documents that the opposing party would be entitled to obtain in discovery. *E.g.,* Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984).

The duty to preserve documents is an affirmative one that requires the party and its counsel to ensure that necessary steps are taken when potentially relevant documents might otherwise be destroyed. For example, corporate officers and corporate counsel who have notice of discovery obligations should communicate these obligations to relevant employees. If documents are destroyed, it is no defense that the employees responsible did not know of the duty to preserve them, so long as the company itself had notice. *E.g.,* National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543 (N.D. Cal. 1987).

By the same token, a party that is on notice of the potential relevance (and therefore discoverability) of documents may not destroy them simply by following a preexisting document retention and disposal policy. Once the duty to preserve documents comes into play, producible documents should be preserved even if they ordinarily would not be preserved in the normal course of business. *E.g.*, Shaffer v. RWP Group, 169 F.R.D. 19 (E.D.N.Y. 1996).

11. **What to Do When a Document Request Is Received.**

   a. **Advising the Client. On receiving a document request, counsel should promptly confer with the client and take reasonable steps to ensure that the client (i) understands what documents are being requested, (ii) has adopted a reasonable plan to obtain the documents in a timely manner and (iii) is actually implementing that plan.**

   b. **Interpreting Document Requests. A document request should be interpreted reasonably, in good faith, and according to the meaning the plain language of the requests would naturally import.**

   Comment

   Subsection (a). Counsel should take an active role in ensuring that a client properly complies with a document request. Counsel should develop or oversee the client's development of a plan that will achieve a timely and complete production, and should take whatever follow-up steps are necessary to ensure that the plan is effectively carried out. In particular, counsel should look for areas where the plan may have broken down. For example, where a person who is likely to have responsive documents has not provided anything in response, an attorney should confirm that someone has contacted that person to verify that an appropriate search was made. In the final analysis, as in many areas of discovery compliance, counsel must accept the client's word as to what searches have been made and what documents have been found. It is the lawyer's responsibility, however, to guide the client in devising and implementing a procedure that satisfies its obligations under the discovery rules. *E.g.*, Meeropol v. Meese, 790 F.2d 942, 950-51 (D.C. Cir. 1986) (*FOIA* case: "[I]n determining whether an agency has discharged its responsibilities 'the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>.'") (quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

   Subsection (b). Both counsel and the party who receives a document request should bear in mind that the propounding party may have drafted it without knowing what specific documents or types of documents the other side possesses. While objections may be asserted where this gap in the

19