# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION<br><br>This Document relates to:<br><br>*Burst.com, Inc.* v. *Microsoft Corp.*,<br>Civil Action No. JFM-02-cv-2952 | MDL Docket No. 1332<br><br>Hon J. Frederick Motz<br><br>**PUBLIC VERSION** |

## EXHIBIT INDEX TO MICROSOFT'S SUR-REPLY IN OPPOSITION TO BURST'S MOTION FOR SPOLIATION INSTRUCTION, WITNESS PRECLUSION, AND RELATED RELIEF

Charles W. Douglas
Richard A. Cederoth
John W. Treece
David M. Schiffman
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza, 10 South Dearborn
Chicago, Illinois 60603
(312) 853-7000

David B. Tulchin
Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

G. Stewart Webb, Jr.
(Fed. Bar No. 00828)
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201
(410) 244-7400

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
C. Andrew Culbert
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98502
(425) 936-8080

*Attorneys for Defendant Microsoft Corporation*

March 9, 2005

# EXHIBITS

**Exhibit**

Schiefelbein Dep, p. 99 (11/30/04)……………………………………………………43

Privilege Log Entries……………………………………………………………………44

MS98 0171139-0171140……………………………………………………………………45

*Hynix Semiconductor v. Rambus* (Jan. 31, 2005) Opinion………………………………...46

BUR5024746 (*Filed Under Seal*)………………………………………………………47

Burst.com's Initial Expert Report concerning
patent damages, ¶¶15-21 (*Filed Under Seal*)…………………………………………..…..48

Sharon Oster Expert Report, pp. 34-35…………………………………………………49

MS-CC-BU 270898-99  (*Filed Under Seal*)……………………………………………50

MS-CC-BU 284084-87………………………………………………………………………51

BUR0090903-90904 (*Filed Under Seal*)……………….…………………………………52

BUR0056459 (*Filed Under Seal*)………………………….……………….……………53

BUR0072377 (*Filed Under Seal*)……………………………………..……………...54

Leitzinger Expert Report, pp. 17, 29 (*Filed Under Seal*)……………………..……...    55

Windows NT Article, "Control Mailbox Size with Mailbox Manager…..……………56

# EXHIBIT 43

BILL SCHIEFELBEIN; November 30, 2004

Page 1

1                 IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF MARYLAND

3

4    IN RE MICROSOFT CORP.                )

5    ANTITRUST LITIGATION.                )

6                                          )

7    this Document relates to:            )

8    Burst.com, Inc. Vs.                  )

9    Microsoft Corp.,                     )

10                                         )

11   Civil Action No. JPM-02-cv-2952 )

12

13             VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION

14                              OF

15                      BILL SCHIEFELBEIN

16

17

18                        11:48 A.M.

19                   NOVEMBER 30, 2004

20             925 FOURTH AVENUE, SUITE 2900

21                 SEATTLE, WASHINGTON

22

23

24

25   DIANE MILLS, CCR #2399

BILL SCHIEFELBEIN; November 30, 2004

**Page 98**

1  know, I brought up Lotus as well saying, you know, I
2  forget what exactly I said, but I brought up Lotus, you
3  know, in one of these contexts.
4      Q. When was the last time you spoke with Jeffrey
5  Friedberg?
6      A. Pardon me?
7      Q. When was the last time you spoke with Jeffrey?
8      A. Oh, boy. Jeffrey is in the privacy group now,
9  and I remember probably three months ago or something
10  talking to -- or two months ago talking to him about a
11  privacy issue.
12      Q. Ever talk to him about this meeting after the
13  meeting?
14      A. About this meeting?
15      Q. Yes.
16      A. I -- I don't remember this, the meeting
17  itself, so I mean, I don't know if I talked with him in
18  the halls after the meeting, you know, or not. I
19  certainly don't remember, you know, recently talking
20  with him.
21      Q. Now, your own e-mails from the period of July
22  2000, after you came back from leave you mass deleted
23  these e-mails, isn't that true?
24      A. For July 2001?
25      Q. E-mails for July 2000.

**Page 99**

1      A. E-mails for July 2000.
2      Q. When you came back from leave and got a
3  different job, you went back and mass deleted all your
4  old e-mail; true?
5      A. When I -- when I left for paternity leave I
6  came back to a different role at Microsoft. I can't
7  remember when exactly I deleted the mails, but with
8  like 100,000 e-mails and multiple gigabytes, I'm bad
9  about that, you know, it was a new role altogether, so
10  I delete it.
11      Q. And you would have deleted any e-mails related
12  to Burst in July of 2000 when you mass deleted;
13  correct?
14      A. I deleted all my e-mails, I purged all my
15  e-mails whether it was, you know, a letter from my mom
16  or, you know, work or whatever.
17      (Deposition Exhibit No. 59 was marked for
18      identification.)
19      Q. (BY MR. HOSIE) Let me show you what's been
20  marked as Exhibit 59.
21      Now, how was the Burst issue resolved, sir, do
22  you recall?
23      MR. TREECE: Object as vague.
24      Q. (BY MR. HOSIE) Do you find the question -- I
25  can rephrase it, sir, if you'd like.

**Page 100**

1      A. Yeah, when you say "Burst issue," what -- what
2  specific issue?
3      Q. Let me be more specific. How was the issue of
4  whether Burst should be permitted to send content in
5  ASF to the 7.0 Player resolved, if you recall?
6      MR. TREECE: Object to the form of the
7  question.
8      A. So is your -- is your question how was the --
9  did they sign the license agreement?
10      Q. (BY MR. HOSIE) How about this. What
11  happened?
12      A. Okay. What happened specifically about the
13  bridge not working?
14      Q. Yes.
15      A. With Version 7?
16      Q. Yes.
17      A. From what I recall, after the licensing issue,
18  I made another alternate suggestion to use, you know,
19  asynchronous plugable protocols which was yet another
20  platform API.
21      Q. Known as the URLMON or URLMON solution?
22      A. Yeah. URLMON is the broader component, and in
23  particular the interface had to do with asynchronous
24  plugable protocols.
25      Q. And you proposed this URLMON solution after

**Page 101**

1  you realized that the SDK licensing prohibited a direct
2  SDK plugin; correct?
3      A. The solution was proposed when -- you know,
4  again, I had concerns that they would be restricted
5  according to the license agreements. You know, I'm
6  not, you know, a lawyer or whatever, but after I
7  realized the concerns with the license agreement, I did
8  propose the URLMON solution.
9      Q. Did you tell Burst at some point that contrary
10  to your comments on May 10th, Microsoft would not give
11  them the APIs for a direct SDK plugin?
12      A. Did I inform them that they wouldn't be able
13  to use the SDK?
14      Q. Yes.
15      A. In that way? I can't remember how it was
16  communicated to them, whether I did it or Will Friedman
17  or legal department. I do recall it was communicated
18  to them.
19      Q. Now, the URLMON solution, there were technical
20  deficiencies with that solution, were there not, sir?
21      A. And again, trying to go through the time frame
22  issue here, it's difficult to recall, you know, what
23  the first suggestions were and so forth. You know, I
24  do recall that, you know, we pointed them to these
25  APIs. They had -- they did have some issues and

26 (Pages 98 to 101)

# EXHIBIT 44

Privilege Log
Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 000501 - 000510 | 07/25/2002 | Attorney-Client Privilege | Email thread containing legal advice with attached draft memo re: Wisdows Media (WM) 9. | **Recipient** Batecbery, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel Weresh, John - Microsoft (LCA) - Attorney **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** Andresen, Noelle - Microsoft (LCA) Jones, Jennifer - Microsoft (LCA) **Custodian** Battecbery, Troy - Microsoft **Author of Attachment** Gross, Michael - Shook Hardy & Bacon - Outside Counsel |
| PMS-CC-Bu 000516 - 000517 | 08/06/2002 | Attorney-Client Privilege | Email thread communicating information requested by Legal and soliciting information sufficient to provide legal advice re: Media Foundation patents. | **Recipient** Dobique, Kirt - Microsoft Schmidt, Kymerie - Microsoft (LCA) **Author** Crites, Brian - Microsoft **Copyee** Battecbery, Troy - Microsoft Eppemaur, Bart - Microsoft (LCA) - Attorney Stewart, Jim - Microsoft **Custodian** Battecbery, Troy - Microsoft |
| PMS-CC-Bu 000518 - 000541 | 08/09/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged requesting and containing legal advice re: Corona/DX licensing. | **Recipient** Averell, Linda - Microsoft Battecbery, Troy - Microsoft Beckerman, Mike - Microsoft Byargon, Preston - Microsoft Crites, Brian - Microsoft Flanigan, Dennis - Microsoft Friedberg, Jeffrey - Microsoft Glueck, Sue - Microsoft (LCA) - Attorney Keenan, Brian - Microsoft (LCA) - Attorney Pennington, Stan - Microsoft Schiefelbein, Bill - Microsoft Vicars-Harris, Nick - Microsoft **Author** Knowlton, Chadd - Microsoft **Custodian** Battecbery, Troy - Microsoft |

Page 6 of 2107

Privilege Log
Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003380 - 003381 | 01/30/2001 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged requesting legal advice re: Burst patents. | **Recipient**<br>Bawcutt, Trey - Microsoft<br>Beckerman, Mike - Microsoft<br>O'Rourke, Bret - Microsoft<br>Poole, Will - Microsoft<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author**<br>Schiefelbein, Bill - Microsoft<br>**Copyee**<br>Buecheler, Kurt - Microsoft<br>**Custodian**<br>Wereh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003382 - 003383 | 01/31/2001 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged requesting and containing legal advice re: Burst patents. | **Recipient**<br>Bawcutt, Trey - Microsoft<br>Beckerman, Mike - Microsoft<br>O'Rourke, Bret - Microsoft<br>Poole, Will - Microsoft<br>Schiefelbein, Bill - Microsoft<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author**<br>Buecheler, Kurt - Microsoft<br>**Custodian**<br>Wereh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003384 - 003387 | 02/01/2002 | Attorney-Client Privilege | Email containing legal advice re: attached Burst patent table. | **Recipient**<br>Schmid, Kymeric - Microsoft (LCA)<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author of Attachment**<br>Jones, Jennifer - Microsoft (LCA) |
| PMS-CC-Bu 003388 - 003397 | 07/25/2002 | Attorney-Client Privilege | Email thread containing legal advice with attached draft report re: WM. | **Recipient**<br>Battenberg, Trey - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Copyee**<br>Anderson, Noelle - Microsoft (LCA)<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>Wereh, John - Microsoft (LCA) - Attorney<br>**Author of Attachment**<br>Jones, Jennifer - Microsoft (LCA) |

Privilege Log
Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003398 - 003407 | 07/26/2002 | Attorney-Client Privilege/Work Product | Email thread with attached draft memo, both containing legal advice prepared in anticipation of Burst litigation re: draft opinion. | **Recipient** <br> Colbert, Andy - Microsoft (LCA) - Attorney <br> **Author** <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> Wersh, John - Microsoft (LCA) – Attorney <br> **Author of Attachment** <br> Shook Hardy & Bacon – Outside Counsel |
| PMS-CC-Bu 003408 - 003408 | 08/06/2002 | Attorney-Client Privilege | Email thread containing legal advice re: WM. | **Recipient** <br> Batterberry, Troy - Microsoft <br> Gross, Michael - Shook Hardy & Bacon - Outside Counsel <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Author** <br> Jones, Jennifer - Microsoft (LCA) <br> **Copyee** <br> Andrews, Noelle - Microsoft (LCA) <br> **Custodian** <br> Wersh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003409 - 003409 | 06/07/2001 | Attorney-Client Privilege/Work Product | Memo marked Attorney-Client Privileged/Work Product prepared in anticipation of litigation containing legal advice re: Burst patents/infringement assessment. | **Author** <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> Wersh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003410 - 003410 | 11/20/2001 | Attorney-Client Privilege/Work Product | Memo marked Attorney-Client Privileged/ Work Product prepared in anticipation of litigation containing legal advice re: Burst patents/infringement assessment. | **Author** <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> Wersh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003411 - 003412 | 12/04/2000 | Attorney-Client Privilege | Memo containing legal advice re: patent application. | **Author** <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> Wersh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003413 - 003414 | 12/12/2000 | Attorney-Client Privilege/Work Product | Memo marked Attorney/ Work Product prepared in anticipation of litigation containing legal advice re: Burst patents/infringement assessment. | **Author** <br> Wersh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> Wersh, John - Microsoft (LCA) - Attorney |

**Privilege Log**
**Burst.com Inc. vs. Microsoft Corp**

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003755 - 003757 | 10/24/2001 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged communicating information requested by Legal and containing legal advice re: DOJ settlement negotiations. | **Recipient**<br>Alchin, Jim - Microsoft<br>Averett, Linda - Microsoft<br>Beckerman, Mike - Microsoft<br>Fade, Richard - Microsoft<br>Heiner, David - Microsoft (LCA) - Attorney<br>Peterson, Joe - Microsoft<br>Poole, Will - Microsoft<br>Wallent, Michael - Microsoft<br>Jones, Chris - Microsoft<br>**Author**<br>Jones, Chris - Microsoft<br>**Copyee**<br>Burt, Tom - Microsoft (LCA) - Attorney<br>D'Arcangelo, Diane - Microsoft (LCA) - Attorney<br>Holley, Steve - Sullivan & Cromwell - Outside Counsel<br>Meyers, Chris - Microsoft (LCA) - Attorney<br>Rule, Rick - Fried Frank Harris - Outside Counsel<br>Tanzi, Lisa - Microsoft (LCA) - Attorney<br>**Custodian**<br>Beckerman, Mike - Microsoft |
| PMS-CC-Bu 003758 - 003764 | 05/10/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: attached draft WM specification. | **Recipient**<br>Batterberry, Troy - Microsoft<br>**Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Copyee**<br>St. Clair, Mariah - Microsoft (LCA)<br>Werrich, John - Microsoft (LCA) - Attorney<br>**Custodian**<br>Werrich, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Author of Attachment**<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |
| PMS-CC-Bu 003765 - 003772 | 05/20/2002 | Attorney-Client Privilege | Email thread communicating information requested by Legal and soliciting information sufficient to provide legal advice re: attached draft WM specification. | **Recipient**<br>Jones, Jennifer - Microsoft (LCA)<br>Batterberry, Troy - Microsoft<br>**Copyee**<br>St. Clair, Mariah - Microsoft (LCA)<br>Werrich, John - Microsoft (LCA) - Attorney<br>**Custodian**<br>Werrich, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Author of Attachment**<br>Batterberry, Troy - Microsoft<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |

# Privilege Log
## Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003773 - 003774 | 05/30/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and requesting legal advice re: WM specification. | **Recipient**<br>Grana, Mike - Shook Hardy & Bacon - Outside Counsel<br>Sheghanmani, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Copies**<br>St. Clair, Mariah - Microsoft (LCA)<br>Werash, John - Microsoft (LCA) - Attorney<br>**Custodian**<br>Werash, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Batterberry, Troy - Microsoft |
| PMS-CC-Bu 003775 - 003846 | 06/21/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged containing and requesting legal advice with attached documentation compiled in anticipation of litigation re: Burst/patents. | **Recipient**<br>Culbert, Andy - Microsoft (LCA) - Attorney<br>Werash, John - Microsoft (LCA) - Attorney<br>**Author**<br>Eppsmeuer, Bart - Microsoft (LCA) - Attorney<br>**Copies**<br>Ansahbacher, Steve - Microsoft (LCA) - Attorney<br>Batterberry, Troy - Microsoft<br>Beckerman, Mike - Microsoft<br>Chou, Philip A. - Microsoft<br>**Custodian**<br>Werash, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Goetlick, Mark - Microsoft (LCA) - Attorney<br>Simmati, Cheryllee - Microsoft<br>WDMD Competitive Discussion - Microsoft<br>**Author of Attachment**<br>Microsoft Legal<br>Morrison, Craig - Microsoft (LCA)<br>**Recipient of Attachment**<br>Chou, Philip A. - Microsoft<br>**Name in Email Thread on Attachment**<br>Bradley, Jack - Microsoft (LCA)<br>Cate, Megan - Microsoft (LCA)<br>Malvar, Henrique (Rico) - Microsoft |

**Privilege Log**
**Burst.com Inc. vs. Microsoft Corp**

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003847 - 003848 | 06/21/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged requesting and containing legal advice in anticipation of litigation re: Burst patent. | **Recipient** Culbert, Andy - Microsoft (LCA) - Attorney Eppenauer, Bart - Microsoft (LCA) - Attorney Worrah, John - Microsoft (LCA) - Attorney **Author** Chou, Philip A. - Microsoft **Copyee** Aeschbacher, Steve - Microsoft (LCA) - Attorney Batterberry, Troy - Microsoft Beckerman, Mike - Microsoft **Custodian** Worrah, John - Microsoft (LCA) - Attorney **Name on Email Thread** Gustlich, Mark - Microsoft (LCA) - Attorney Simonetti, Cherylene - Microsoft WDMD Competitive Discussion - Microsoft |
| PMS-CC-Bu 003849 - 003850 | 06/21/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged requesting and containing legal advice in anticipation of litigation re: Burst patent | **Recipient** Chou, Philip A. - Microsoft Culbert, Andy - Microsoft (LCA) - Attorney Eppenauer, Bart - Microsoft (LCA) - Attorney Worrah, John - Microsoft (LCA) - Attorney **Author** Batterberry, Troy - Microsoft **Copyee** Aeschbacher, Steve - Microsoft (LCA) - Attorney Beckerman, Mike - Microsoft **Custodian** Worrah, John - Microsoft (LCA) - Attorney **Name on Email Thread** Gustlich, Mark - Microsoft (LCA) - Attorney Simonetti, Cherylene - Microsoft WDMD Competitive Discussion - Microsoft |
| PMS-CC-Bu 003851 - 003851 | 07/18/2002 | Attorney-Client Privilege/Work Product | Email thread requesting and containing legal advice in anticipation of litigation re: Burst patent. | **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Jackson, Patty - Microsoft Jones, Jennifer - Microsoft (LCA) Worrah, John - Microsoft (LCA) - Attorney **Author** Poole, Will - Microsoft **Copyee** St. Clair, Mariah - Microsoft (LCA) **Custodian** Worrah, John - Microsoft (LCA) - Attorney |

**Privilege Log**
**Burst.com Inc. vs. Microsoft Corp**

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003852 -003852 | 07/22/2002 | Attorney-Client Privilege/Work Product | Email thread containing and requesting legal advice in anticipation of litigation re: Burst patent. | **Recipient** Jones, Jennifer - Microsoft (LCA) St. Clair, Mariah - Microsoft (LCA) **Author** Weresh, John - Microsoft (LCA) - Attorney **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Jackson, Patty - Microsoft Poole, Will - Microsoft |
| PMS-CC-Bu 003853 -003855 | 07/23/2002 | Attorney-Client Privilege/Work Product | Email threads containing and requesting legal advice in anticipation of litigation re: Burst patent. | **Recipient** St. Clair, Mariah - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney **Author** Jones, Jennifer - Microsoft (LCA) **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Jackson, Patty - Microsoft Poole, Will - Microsoft **Author of Attachment** Jackson, Patty - Microsoft **Recipient of Attachment** Jones, Jennifer - Microsoft (LCA) **Name in Email Thread on Attachment** Batenberry, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel Poole, Will - Microsoft St. Clair, Mariah - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney |
| PMS-CC-Bu 003856 -003857 | 07/23/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged requesting and containing legal advice in anticipation of litigation re: Burst patent. | **Recipient** Jackson, Patty - Microsoft Weresh, John - Microsoft (LCA) - Attorney **Author** Poole, Will - Microsoft **Copyee** Jones, Jennifer - Microsoft (LCA) St. Clair, Mariah - Microsoft (LCA) **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Jackson, Patty - Microsoft |

**Privilege Log**
**Burst.com Inc. vs. Microsoft Corp**

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 003858 - 003859 | 07/23/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged requesting and containing legal advice in anticipation of litigation re: Burst patent. | **Recipient**<br>Poole, Will - Microsoft<br>Werash, John - Microsoft (LCA) - Attorney<br>**Author**<br>Jackson, Patty - Microsoft<br>**Copyee**<br>Jones, Jennifer - Microsoft (LCA)<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>Werash, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel |
| PMS-CC-Bu 003860 - 003861 | 07/23/2002 | Attorney-Client Privilege/Work Product | Email thread marked Attorney-Client Privileged requesting and containing legal advice in anticipation of litigation re: Burst patent. | **Recipient**<br>Hoang, Anh - Microsoft (LCA)<br>Werash, John - Microsoft (LCA) - Attorney<br>**Author**<br>Jackson, Patty - Microsoft<br>**Copyee**<br>Jones, Jennifer - Microsoft (LCA)<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>Werash, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Poole, Will - Microsoft |
| PMS-CC-Bu 003862 - 003888 | 08/23/1999 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged containing and requesting legal advice with attached draft agreement re: Beam (with FYI from Chaddha to Bawcutt and Friedman). | **Recipient**<br>Bawcutt, Tony - Microsoft<br>Friedman, Will - Microsoft<br>**Author**<br>Chaddha, Navin - Microsoft<br>**Custodian**<br>Bawcutt, Tony - Microsoft<br>**Name on Email Thread**<br>Glueck, Sue - Microsoft (LCA) - Attorney<br>Kennedy, Carolyn - Microsoft (LCA)<br>Peterson, Marianne Moran - Microsoft (LCA)<br>Van Arsdale, Cory - Microsoft (LCA) - Attorney<br>Williamson, Mary - Preston Gates Ellis - Outside Counsel<br>**Author of Attachment**<br>Spence, Jeannie - Microsoft<br>Williamson, Mary - Preston Gates Ellis - Outside Counsel |

Page 110 of 2107

Privilege Log
Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 005550 -005565 | 05/02/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged containing information requested by Legal and soliciting information sufficient to provide legal advice re: attached draft WM specification | **Recipient** Jones, Jennifer - Microsoft (LCA) **Author** Batterberry, Troy - Microsoft **Copyee** St. Clair, Mariah - Microsoft (LCA) Wereah, John - Microsoft (LCA) - Attorney **Custodian** Wereah, John - Microsoft (LCA) - Attorney **Author of Attachment** Batterberry, Troy - Microsoft |
| PMS-CC-Bu 005566 -005582 | 05/03/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged soliciting information sufficient to provide legal advice and containing information requested by Legal re: attached draft WM specification. | **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Shojfanimi, Ladi - Shook Hardy & Bacon - Outside Counsel **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** St. Clair, Mariah - Microsoft (LCA) Wereah, John - Microsoft (LCA) - Attorney **Custodian** Wereah, John - Microsoft (LCA) - Attorney **Author of Attachment** Batterberry, Troy - Microsoft |
| PMS-CC-Bu 005583 -005585 | 05/11/2000 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged requesting and containing legal advice re: WM licensing. | **Recipient** Bawcutt, Tony - Microsoft Friedman, Will - Microsoft O'Rourke, Bret - Microsoft Schiefelbein, Bill - Microsoft Van Arsdale, Cory - Microsoft (LCA) - Attorney **Author** Bockerman, Mike - Microsoft **Copyee** Glueck, Sue - Microsoft (LCA) - Attorney **Custodian** Bawcutt, Tony - Microsoft |
| PMS-CC-Bu 005586 -005611 | 05/25/2000 | Attorney-Client Privilege | Email thread requesting and containing legal advice re: attached draft cache license. | **Recipient** Bawcutt, Tony - Microsoft Bockerman, Mike - Microsoft Friedman, Will - Microsoft Glueck, Sue - Microsoft (LCA) - Attorney **Author** Schiefelbein, Bill - Microsoft **Custodian** Bawcutt, Tony - Microsoft **Author of Attachment** Glueck, Sue - Microsoft (LCA) - Attorney |

Privilege Log
Burst.com Inc. vs. Microsoft Corp

| Bates Range | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PMS-CC-Bu 031161 -031165 | 07/11/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged requesting legal advice re: DRN protocols. | **Recipient**<br>Allove, Jim - Microsoft<br>Andersen, Noel - Microsoft<br>Chellis, Gene - Microsoft<br>Ganssam, K. - Microsoft<br>Glueck, Sue - Microsoft (LCA) - Attorney<br>Klemetz, Anders - Microsoft<br>Karovitzen, Chadd - Microsoft<br>Meyers, Chris - Microsoft (LCA) - Attorney<br>Pfenning, Thomas - Microsoft<br>Strem, Cliff - Microsoft<br>Syck, Gary - Microsoft<br>Ward, Richard B. - Microsoft<br>Weiker, Aric - Microsoft<br>Poole, Will - Microsoft<br>Williamson, Mary - Preston Gates Ellis - Outside Counsel<br>**Author**<br>Batterberry, Troy - Microsoft<br>**Copyee**<br>DeJong, Charlie - Microsoft<br>Poole, Will - Microsoft<br>**Custodian**<br>Batterberry, Troy - Microsoft |
| PMS-CC-Bu 031166 -031175 | 07/25/2002 | Attorney-Client Privilege | Email thread containing legal advice re: attached draft WM report. | **Recipient**<br>Batterberry, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Woreh, John - Microsoft (LCA) - Attorney<br>**Author of Attachment**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>**Author**<br>Ieeas, Jennifer - Microsoft (LCA)<br>**Copyee**<br>Andresen, Noelle - Microsoft (LCA)<br>**Custodian**<br>Batterberry, Troy - Microsoft |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005000544 - 0005000546 | 8/22/2000 | Attorney-Client Privilege / Portion Redacted | Email thread marked Attorney-Client Privileged requesting legal advice re: Windows Media SDK license. Produced as MS-CC-BU 9023212-9023214. | **Author** Friedman, Will - Microsoft **Copyee** Friedberg, Jeffrey - Microsoft Schiefelbein, Bill - Microsoft **Custodian** Friedberg, Jeffrey - Microsoft **Recipient** Williamson, Mary - Preston Gates & Ellis - Outside Counsel |
| PBUR 0005000547 - 0005000548 | 3/1/2001 | Attorney-Client Privilege / Portion Redacted | Handwritten marginalia containing legal advice re: Burst patent. Produced as MS-CC-BU 9023215-9023216. | **Author** Wersh, John - Microsoft (LCA) - Attorney **Custodian** Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005000549 - 0005000679 | 8/26/2002 | Attorney-Client Privilege Work Product | Memo marked Attorney-Client Privileged/Work Product containing legal advice with attached research, all prepared in anticipation of litigation re: Windows Media (WM) technology patents. | **Author** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Custodian** Wersh, John - Microsoft (LCA) - Attorney **Recipient** Poole, Will - Microsoft |
| PBUR 0005000680 - 0005000813 | 8/26/2002 | Attorney-Client Privilege Work Product | Memo marked Attorney-Client Privileged/Work Product containing legal advice with attached research, all prepared in anticipation of litigation re: WM technology patents. | **Author** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Custodian** Wersh, John - Microsoft (LCA) - Attorney **Recipient** Poole, Will - Microsoft |
| PBUR 0005000814 - 0005000942 | 8/26/2002 | Attorney-Client Privilege Work Product | Memo marked Attorney-Client Privileged/Work Product containing legal advice with attached research, all prepared in anticipation of litigation re: WM technology patents. | **Author** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Custodian** Wersh, John - Microsoft (LCA) - Attorney **Recipient** Poole, Will - Microsoft |
| PBUR 0005000943 - 0005001016 | 8/26/2002 | Attorney-Client Privilege Work Product | Memo marked Attorney-Client Privileged/Work Product containing legal advice with attached research, all prepared in anticipation of litigation re: WM technology patents. | **Author** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Custodian** Wersh, John - Microsoft (LCA) - Attorney **Recipient** Poole, Will - Microsoft |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001163 - 0005001163 | 8/26/2002 | Attorney-Client Privilege<br><br>Work Product | Email soliciting information sufficient to provide legal advice in anticipation of litigation re: Burst patent opinion. | **Author**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Recipient**<br>Andresen, Noelle - Microsoft (LCA)<br>Batterbery, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Jones, Jennifer - Microsoft (LCA)<br>Poole, Will - Microsoft<br>Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005001164 - 0005001164 | 11/1/1999 | Attorney-Client Privilege | Email thread containing legal advice re: Instant Video Technologies patents. | **Author**<br>Chang, Sindie - Microsoft (LCA) - Paralegal<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Name on Email Thread**<br>Schmidt, Kymerie - Microsoft (LCA)<br>**Recipient**<br>Walden, Tamara - Microsoft (LCA) |
| PBUR 0005001165 - 0005001167 | 3/1/2000 | Attorney-Client Privilege | Email thread containing legal advice re: attached draft patent summary. | **Author**<br>Schmidt, Kymerie - Microsoft (LCA)<br>**Author on attachment**<br>Eppenauer, Bart - Microsoft (LCA) - Attorney<br>Schmidt, Kymerie - Microsoft (LCA)<br>**Copyee**<br>Eppenauer, Bart - Microsoft (LCA) - Attorney<br>Francisco, Janice - Microsoft (LCA)<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Name on Email Thread**<br>Shernick, Sandra - Microsoft (LCA)<br>Welby, Katherine - Microsoft (LCA)<br>**Recipient**<br>Savacool, Victoria - Microsoft (LCA) |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

Preston|Gates|Ellis LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001288 - 0005001289 | 6/8/2001 | Attorney-Client Privilege | Email requesting legal advice re: FEC patent disclosure. | **Author** <br> Maclin, Richard - Microsoft <br> **Copyee** <br> Batterberry, Troy - Microsoft <br> Stafford, Jane - Microsoft (LCA) <br> **Custodian** <br> LCA Patent Procurement Group - Microsoft (LCA) <br> **Recipient** <br> Jolly, Tom - Lee & Hayes - Outside Counsel |
| PBUR 0005001290 - 0005001290 | 4/25/2000 | Attorney-Client Privilege | Email containing legal advice re: Instant Video Technologies patents. | **Author** <br> Pipal, Christi - Microsoft (LCA) - Paralegal <br> **Copyee** <br> Hoggard, Geoffrey - Microsoft (LCA) <br> **Custodian** <br> LCA Conflicts Group - Microsoft (LCA) <br> **Recipient** <br> Davidson, Ian - Microsoft (LCA) <br> Kujoth, Tamara - Microsoft (LCA) |
| PBUR 0005001291 - 0005001291 | 2/15/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: patent file histories. | **Author** <br> St. Chair, Mariah - Microsoft (LCA) <br> **Custodian** <br> LCA Conflicts Group - Microsoft (LCA) <br> **Recipient** <br> Gross, Mike - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005001292 - 0005001292 | 10/31/2001 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Fast Startup patent. | **Author** <br> Jones, Jennifer - Microsoft (LCA) <br> **Custodian** <br> LCA Conflicts Group - Microsoft (LCA) <br> **Recipient** <br> Batterberry, Troy - Microsoft <br> Eppensauer, Bart - Microsoft (LCA) - Attorney <br> St. Chair, Mariah - Microsoft (LCA) <br> Werosh, John - Microsoft (LCA) - Attorney |
| PBUR 0005001293 - 0005001293 | 12/4/2000 | Attorney-Client Privilege | Memo containing legal advice re: patent prosecution history. | **Author** <br> Werosh, John - Microsoft (LCA) - Attorney <br> **Custodian** <br> LCA Conflicts Group - Microsoft (LCA) <br> **Recipient** <br> Microsoft Patent Group/File - Microsoft (LCA) |

# Microsoft Privilege Log

**Burst v. Microsoft (updated hard copy document privilege log)**

Preston|Gates|Ellis LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001371 - 0005001372 | 8/14/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: Burst product description. | Author<br>Jones, Jennifer - Microsoft (LCA)<br>Copyee<br>Andresen, Noelle - Microsoft (LCA)<br>Custodian<br>LCA Conflicts Group - Microsoft (LCA)<br>Name on Email Thread<br>Batterberry, Troy - Microsoft<br>Weresh, John - Microsoft (LCA) - Attorney<br>Recipient<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005001373 - 0005001373 | 8/6/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: Burst product description. | Author<br>Jones, Jennifer - Microsoft (LCA)<br>Copyee<br>Andresen, Noelle - Microsoft (LCA)<br>Custodian<br>LCA Conflicts Group - Microsoft (LCA)<br>Recipient<br>Batterberry, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Weresh, John - Microsoft (LCA) - Attorney |
| PBUR 0005001374 - 0005001374 | 7/1/2002 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Burst patents. | Author<br>Jones, Jennifer - Microsoft (LCA)<br>Custodian<br>LCA Conflicts Group - Microsoft (LCA)<br>Recipient<br>Batterberry, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Weresh, John - Microsoft (LCA) - Attorney |
| PBUR 0005001375 - 0005001376 | 5/20/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and communicating information requested by Legal re: WM product. | Author<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Custodian<br>LCA Conflicts Group - Microsoft (LCA)<br>Name on Email Thread<br>Jones, Jennifer - Microsoft (LCA)<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>Weresh, John - Microsoft (LCA) - Attorney<br>Recipient<br>St. Clair, Mariah - Microsoft (LCA) |

**Preston|Gates|Ellis** LLP

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001377 - 0005001377 | 7/25/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: Burst product description. | **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** Andrsen, Noelle - Microsoft (LCA) **Custodian** LCA Conflicts Group - Microsoft (LCA) **Recipient** Batterberry, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005001378 - 0005001386 | 7/25/2002 | Attorney-Client Privilege | Draft product description prepared by outside counsel subject to legal review/revision re: WM product. | **Author** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Custodian** LCA Conflicts Group - Microsoft (LCA) |
| PBUR 0005001387 - 0005001394 | 5/20/2002 | Attorney-Client Privilege | Email thread communicating information requested by outside counsel and soliciting information sufficient to provide legal advice re: attached draft product description. | **Author** Batterberry, Troy - Microsoft **Author on attachment** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Copyee** St. Clair, Mariah - Microsoft (LCA) Wersh, John - Microsoft (LCA) - Attorney **Custodian** LCA Conflicts Group - Microsoft (LCA) **Name on Email Thread** Shogbuminu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Jones, Jennifer - Microsoft (LCA) |
| PBUR 0005001395 - 0005001401 | 5/10/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: attached draft product description. | **Author** Jones, Jennifer - Microsoft (LCA) **Author on attachment** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Copyee** St. Clair, Mariah - Microsoft (LCA) Wersh, John - Microsoft (LCA) - Attorney **Custodian** LCA Conflicts Group - Microsoft (LCA) **Name on Email Thread** Shogbuminu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Batterberry, Troy - Microsoft |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001402 - 0005001403 | 5/3/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged soliciting information sufficient to provide legal advice and communicating information requested by Legal re: Burst review. | **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** St. Clair, Mariah - Microsoft (LCA) Werech, John - Microsoft (LCA) - Attorney **Custodian** LCA Conflicts Group - Microsoft (LCA) **Name on Email Thread** Batterbery, Troy - Microsoft **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005001404 - 0005001419 | 5/2/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged communicating information requested by Legal and soliciting information sufficient to provide legal advice re: attached draft WM specification. | **Author** Batterbery, Troy - Microsoft **Author on attachment** Batterbery, Troy - Microsoft **Copyee** St. Clair, Mariah - Microsoft (LCA) Werech, John - Microsoft (LCA) - Attorney **Custodian** LCA Conflicts Group - Microsoft (LCA) **Recipient** Jones, Jennifer - Microsoft (LCA) |
| PBUR 0005001420 - 0005001422 | 4/17/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and containing legal advice with attached table re: patent applications. | **Author** St. Clair, Mariah - Microsoft (LCA) **Author on attachment** St. Clair, Mariah - Microsoft (LCA) **Custodian** LCA Conflicts Group - Microsoft (LCA) **Name on Email Thread** Jones, Jennifer - Microsoft (LCA) Werech, John - Microsoft (LCA) - Attorney **Recipient** Gross, Mike - Shook Hardy & Bacon - Outside Counsel Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |

**Preston|Gates|Ellis** LLP

## Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001423 - 0005001424 | 4/17/2002 | Attorney-Client Privilege | Email thread containing legal advice re: patent applications. | **Author**<br>Weruah, John - Microsoft (LCA) - Attorney<br>**Copyee**<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Recipient**<br>Gross, Mike - Shook Hardy & Bacon - Outside Counsel<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>St. Clair, Mariah - Microsoft (LCA) |
| PBUR 0005001425 - 0005001426 | 4/17/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: patent applications. | **Author**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Copyee**<br>Jones, Jennifer - Microsoft (LCA)<br>Weruah, John - Microsoft (LCA) - Attorney<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Recipient**<br>Gross, Mike - Shook Hardy & Bacon - Outside Counsel<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005001427 - 0005001430 | 4/12/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice with attached tables re: patent applications. | **Author**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Author on attachment**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Name on Email Thread**<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Recipient**<br>Jones, Jennifer - Microsoft (LCA)<br>Weruah, John - Microsoft (LCA) - Attorney |
| PBUR 0005001431 - 0005001431 | 4/12/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: patent applications. | **Author**<br>Weruah, John - Microsoft (LCA) - Attorney<br>**Custodian**<br>LCA Conflicts Group - Microsoft (LCA)<br>**Name on Email Thread**<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Recipient**<br>Jones, Jennifer - Microsoft (LCA)<br>St. Clair, Mariah - Microsoft (LCA) |

**Preston|Gates|Ellis** LLP

# Microsoft Privilege Log
Burst v. Microsoft (updated hard copy document privilege log)

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005001432 - 0005001432 | 4/9/2002 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Burst matter. | **Author** Jones, Jennifer - Microsoft (LCA) **Custodian** LCA Conflicts Group - Microsoft (LCA) **Recipient** Butterbery, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel St. Clair, Mariah - Microsoft (LCA) Wersch, John - Microsoft (LCA) - Attorney |
| PBUR 0005001433 - 0005001433 | 3/14/2002 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Burst patents. | **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** St. Clair, Mariah - Microsoft (LCA) **Custodian** LCA Conflicts Group - Microsoft (LCA) **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005001434 - 0005001437 | 1/1/2000 | Attorney-Client Privilege | Handwritten notes containing legal advice with attached table re: Instant Video Technologies patents. | **Author** Wersch, John - Microsoft (LCA) - Attorney **Author on attachment** Wersch, John - Microsoft (LCA) - Attorney **Custodian** LCA Conflicts Group - Microsoft (LCA) |
| PBUR 0005001438 - 0005001439 | 8/21/2002 | Attorney-Client Privilege | Letter communicating information requested by outside counsel re: Japanese patent application. | **Author** Tani, Yoshikazu - Tani & Abe - Outside Counsel **Custodian** Sidley/Lee & Hayes - Outside Counsel **Recipient** Jolly, Tom - Lee & Hayes - Outside Counsel |
| PBUR 0005001440 - 0005001441 | 5/13/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: patent application. | **Author** Kre, Laura - Kelly Services - Microsoft LCA Agent/Contractor **Custodian** Sidley/Lee & Hayes - Outside Counsel **Name on Email Thread** LRDocket - Lee & Hayes Patent Group Docketing Dept. - Microsoft (LCA) Schmidt, Kymerie - Microsoft (LCA) Sponseller, Allan - Lee & Hayes - Outside Counsel Stafford, Jane - Microsoft (LCA) Stewart, Jim - Microsoft Wynn, Tong - Microsoft **Recipient** Rothenberg, David - Microsoft |

**Preston|Gates|Ellis** LLP

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005002167 - 0005002167 | 10/31/2001 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: patent review. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Batterberry, Troy - Microsoft<br>Eppeauer, Bart - Microsoft (LCA) - Attorney<br>St. Clair, Mariah - Microsoft (LCA)<br>Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005002168 - 0005002168 | 11/13/2001 | Attorney-Client Privilege | Email thread containing legal advice re: Burst patent review. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>St. Clair, Mariah - Microsoft |
| PBUR 0005002169 - 0005002169 | 2/6/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and communicating information requested by outside counsel re: Burst patent. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Schmidt, Kymeric - Microsoft (LCA)<br>**Recipient**<br>St. Clair, Mariah - Microsoft |
| PBUR 0005002170 - 0005002170 | 2/15/2002 | Attorney-Client Privilege | Email thread communicating information requested by outside counsel re: patent file histories. | **Author**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Grose, Mike - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005002171 - 0005002171 | 3/14/2002 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Burst patents. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Copee**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Grose, Michael - Shook Hardy & Bacon - Outside Counsel |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005002172 - 0005002172 | 4/1/2002 | Attorney-Client Privilege | Email soliciting information sufficient to provide legal advice re: Burst patents. | **Author** Jones, Jennifer - Microsoft (LCA) **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Recipient** Batterberry, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel St. Clair, Mariah - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney |
| PBUR 0005002173 - 0005002173 | 4/12/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: patent review. | **Author** Weresh, John - Microsoft (LCA) - Attorney **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Jones, Jennifer - Microsoft (LCA) St. Clair, Mariah - Microsoft (LCA) |
| PBUR 0005002174 - 0005002177 | 4/12/2002 | Attorney-Client Privilege | Email thread communicating information requested by outside counsel and soliciting information sufficient to provide legal advice with attached draft tables re: patent review. | **Author** St. Clair, Mariah - Microsoft (LCA) **Author on attachment** St. Clair, Mariah - Microsoft (LCA) **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Jones, Jennifer - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney |
| PBUR 0005002178 - 0005002179 | 4/17/2002 | Attorney-Client Privilege | Email thread communicating information requested by outside counsel and soliciting information sufficient to provide legal advice re: patent review. | **Author** St. Clair, Mariah - Microsoft (LCA) **Copyee** Jones, Jennifer - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005002180 - 0005002182 | 4/17/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and communicating information requested by outside counsel with attached draft table re: patent review. | **Author** St. Clair, Mariah - Microsoft (LCA) **Author on attachment** St. Clair, Mariah - Microsoft (LCA) Werash, John - Microsoft (LCA) - Attorney **Name on Email Thread** Jones, Jennifer - Microsoft (LCA) **Recipient** Gross, Mike - Shook Hardy & Bacon - Outside Counsel Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005002183 - 0005002184 | 5/3/2002 | Attorney-Client Privilege | Email thread marked Attorney-Client Privileged soliciting information sufficient to provide legal advice and communicating information requested by outside counsel re: streaming media technology. | **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** St. Clair, Mariah - Microsoft (LCA) Werash, John - Microsoft (LCA) - Attorney **Custodian** Werash, John - Microsoft (LCA) - Attorney **Name on Email Thread** Batterberry, Troy - Microsoft **Recipient** Gross, Michael - Shook Hardy & Bacon - Outside Counsel Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel |
| PBUR 0005002185 - 0005002185 | 4/17/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and communicating information requested by outside counsel re: patent review. | **Author** Werash, John - Microsoft (LCA) - Attorney **Copyee** Jones, Jennifer - Microsoft (LCA) **Custodian** Werash, John - Microsoft (LCA) - Attorney **Recipient** Gross, Mike - Shook Hardy & Bacon - Outside Counsel Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel St. Clair, Mariah - Microsoft (LCA) |
| PBUR 0005002187 - 0005002187 | 5/2/2002 | Attorney-Client Privilege | Email thread communicating information requested by counsel and soliciting information sufficient to provide legal advice re: Burst patents. | **Author** Batterberry, Troy - Microsoft **Copyee** St. Clair, Mariah - Microsoft (LCA) Werash, John - Microsoft (LCA) - Attorney **Custodian** Werash, John - Microsoft (LCA) - Attorney **Recipient** Jones, Jennifer - Microsoft (LCA) |

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

**Preston|Gates|Ellis** LLP

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| FBUR 0005002188 - 0005002194 | 5/10/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice with attached draft product description re: WM patent. | **Author** Jones, Jennifer - Microsoft (LCA) **Author on attachment** Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Copyee** St. Clair, Mariah - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Batterbery, Troy - Microsoft |
| PBUR 0005002195 - 0005002202 | 5/20/2002 | Attorney-Client Privilege | Email thread communicating information requested by counsel and soliciting information sufficient to provide legal advice with attached draft product description re: WM patent. | **Author** Batterbery, Troy - Microsoft **Author on attachment** Batterbery, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel **Copyee** St. Clair, Mariah - Microsoft (LCA) Weresh, John - Microsoft (LCA) - Attorney **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Name on Email Thread** Shoghamimu, Ladi - Shook Hardy & Bacon - Outside Counsel **Recipient** Jones, Jennifer - Microsoft (LCA) |
| PBUR 0005002203 - 0005002203 | 8/6/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: WM patent. | **Author** Jones, Jennifer - Microsoft (LCA) **Copyee** Andreaen, Noelle - Microsoft (LCA) **Custodian** Weresh, John - Microsoft (LCA) - Attorney **Recipient** Batterbery, Troy - Microsoft Gross, Michael - Shook Hardy & Bacon - Outside Counsel Weresh, John - Microsoft (LCA) - Attorney |

**Preston|Gates|Ellis** LLP

# Microsoft Privilege Log

Burst v. Microsoft (updated hard copy document privilege log)

| Doc. No. | Date | Privilege | Subject Matter | Names |
|---|---|---|---|---|
| PBUR 0005002204 - 0005002213 | 7/25/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice with attached draft product description re: WM patent. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Author on attachment**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>**Copyee**<br>Andresen, Noelle - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Batterberry, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005002214 - 0005002214 | 7/1/2002 | Attorney-Client Privilege<br><br>Work Product | Email soliciting information sufficient to provide legal advice in anticipation of litigation re: Burst patents. | **Author**<br>St. Clair, Mariah - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Batterberry, Troy - Microsoft<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>Jones, Jennifer - Microsoft (LCA)<br>Wersh, John - Microsoft (LCA) - Attorney |
| PBUR 0005002215 - 0005002216 | 5/20/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice and communicating information requested by counsel re: Burst patent. | **Author**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Batterberry, Troy - Microsoft<br>Jones, Jennifer - Microsoft (LCA)<br>Shogbamimu, Ladi - Shook Hardy & Bacon - Outside Counsel<br>**Recipient**<br>St. Clair, Mariah - Microsoft (LCA) |
| PBUR 0005002217 - 0005002218 | 8/14/2002 | Attorney-Client Privilege | Email thread soliciting information sufficient to provide legal advice re: WM patent. | **Author**<br>Jones, Jennifer - Microsoft (LCA)<br>**Copyee**<br>Andresen, Noelle - Microsoft (LCA)<br>**Custodian**<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Name on Email Thread**<br>Batterberry, Troy - Microsoft<br>Wersh, John - Microsoft (LCA) - Attorney<br>**Recipient**<br>Gross, Michael - Shook Hardy & Bacon - Outside Counsel |

# EXHIBIT 45

| | |
|---|---|
| From: | Bill Gates |
| Sent: | Wednesday, October 15, 1997 9:59 AM |
| To: | Bill Gates; Jim Allchin (Exchange); Joachim Kempin; Rich Tong; On Lee; Marshall Brumer; Mike Porter; Craig Mundie; Jonathan Roberts; Adam Taylor |
| Cc: | Christine Turner |
| Subject: | RE: Discussion about Intel |

A message I sent to Andy this morning:

——Original Message——
From:   Bill Gates
Sent:   Wednesday, October 15, 1997 9:48 AM
To:     'Andy Grove'
Subject:   RE: Heads up

I'll see what I can do on the demonstration.

One thing I need some help on is to understand your tentative NC plans. Will Swoopa came and presented a plan than had a $500 and $700 NC which were cheaper than the NetPC. We need to understand what hardware changes allow for the lower cost. The most demanding application – the biggest, the one that pages the most and grows the fastest is the browser. The PC can run diskless as well as any other device.

Our whole plan had been to tell people to write applications assuming the latest Intel processor. Hydra because it has no local execution model does not encourage redirection of the industry to applications that don't push the processor. The load on the server uses up the chip power and with full compatibility the user moves up to a state of the art client. However Intel seems now to think exposing APIs on cheap clients and directing development there is a good idea. I need to understand this better.

This is fairly important for seeing if we can get back in sync or not.

One of the interesting things about NCs/JAVA is the byte codes. The byte codes controlled by SUN will eliminate the compatibility problems of running software on different microprocessors. We are assuming that someone at Intel has decided that it ok to endorse byte codes. We didn't think byte codes made sense but since the call from Gelsinger we have been looking at this a whole new way. I will discuss this next Wednesday. One breakthrough involves the ability to ship software in C, Visual Basic - all Microsoft software in byte codes very easily in the next 6 months

——Original Message——
From:       Andy Grove [SMTP:Andy_Grove@ccm.sc.intel.com] <mailto:
            [SMTP:Andy_Grove@ccm.sc.intel.com]>
Sent:       Tuesday, October 14, 1997 6:10 PM
To: Bill Gates
Subject:   Heads up

Bill,

I just walked through my demos for Agenda.

I have some 8 demos, all looking super. However, I have a problem  I have chartered our people to develop two special demos for me that would illustrate how our processors shine in new environments: one, in a set top computer running Navio sw, and another, running Win CE. Navio works, and looks good; the WinCE demo (Rel 2.0) booted  up for the first time today on a Pentium MMX —— and runs a simple word processor.  It's not very exciting.

I realize it's late in the game but if your people can come through with something whizzy, I'd love to show it.  My talk is next Tue morning.

a

MS98 0171139
CONFIDENTIAL

From:          Jonathan Roberts
Sent:          Wednesday, October 15, 1997 8:12 PM
To:            Bill Gates
Subject:       RE: Discussion about Intel

this is a great piece of mail  It is not a rant, but a very logical dissection of the issue with the threat of thermal nuclear war very well and politely delivered.

-----Original Message-----
From:      Bill Gates
Sent:      Wednesday, October 15, 1997 9:59 AM
To:        Bill Gates; Jim Allchin (Exchange); Joachim Kempin; Rich Tong; On Lee; Marshall Brumer; Mike Porter; Craig Mundie; Jonathan
           Roberts; Adam Taylor
Cc:        Christine Turner
Subject:   RE: Discussion about Intel

A message I sent to Andy this morning:

-----Original Message-----
From:      Bill Gates
Sent:      Wednesday, October 15, 1997 9:48 AM
To:        'Andy Grove'
Subject:   RE: Heads up

I'll see what I can do on the demonstration.

One thing I need some help on is to understand your tentative NC plans. Will Swoope came and presented a plan than had a $500 and $700 NC which were cheaper than the NetPC  We need to understand what hardware changes allow for the lower cost. The most demanding application - the biggest, the one that pages the most and grows the fastest is the browser. The PC can run diskless as well as any other device.

Our whole plan had been to tell people to write applications assuming the latest Intel processor. Hydra because it has no local execution model does not encourage redirection of the industry to applications that don't push the processor. The load on the server uses up the chip power and with full compatibility the user moves up to a state of the art client  However Intel seems now to think exposing APIs on cheap clients and directing development there is a good idea  I need to understand this better

This is fairly important for seeing if we can get back in sync or not

One of the interesting things about NCs/JAVA is the byte codes. The byte codes controlled by SUN will eliminate the compatibility problems of running software on different microprocessors. We are assuming that someone at Intel has decided that it ok to endorse byte codes. We didn't think byte codes made sense but since the call from Gelsinger we have been looking at this a whole new way. I will discuss this next Wednesday. One breakthrough involves the ability to ship software in C, Visual Basic - all Microsoft software in byte codes very easily in the next 6 months

-----Original Message-----
From:      Andy Grove [SMTP:Andy_Grove@ccm.sc.intel.com] <mailto:
           [SMTP:Andy_Grove@ccm.sc.intel.com]>
Sent:      Tuesday, October 14, 1997 6:10 PM
To:        Bill Gates
Subject:   Heads up

Bill,

I just walked through my demos for Agenda.

I have some 8 demos, all looking super.  However, I have a problem  I have chartered our people to develop two special demos for me that would illustrate how our processors shine in new environments: one, in a set top computer running Navio sw, and another, running Win CE.  Navio works, and looks good; the WinCE demo (Rel 2.0) booted  up for the first time today on a Pentium MMX ---- and runs a simple word processor. It's not very exciting.

I realize it's late in the game but if your people can come through with something whizzy, I'd love to show it.  My talk is next Tue morning.

a

MS98 0171140
CONFIDENTIAL

# EXHIBIT 46

02/23/2005 13:40 FAX 4082956895                                    ☒002

1

2                                         **FILED**

3

4                                      JAN 3 1 2005

5                              CLERK, U.S. DISTRICT COURT
                              NORTHERN DISTRICT OF CALIFORNIA
6                                        SAN JOSE

7

8              IN THE UNITED STATES DISTRICT COURT          

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12   HYNIX SEMICONDUCTOR INC., HYNIX          No. CV-00-20995 RMW
     SEMICONDUCTOR AMERICA INC.,
13   HYNIX SEMICONDUCTOR U.K. LTD., and       ORDER COMPELLING PRODUCTION OF
     HYNIX SEMICONDUCTOR                      DOCUMENTS (Spoliation – Redacted Public
14   DEUTSCHLAND GmbH,                        Version)

15                    Plaintiffs,             **[Re: Docket No. 697]**

16           v.

17   RAMBUS INC.,

18                    Defendant.

19

20        By the present motion plaintiffs Hynix Semiconductor Inc., Hynix Semiconductor America

21   Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor Deutschland Gmbh ("Hynix") seek

22   an order compelling defendant Rambus Inc. ("Rambus") to produce documents obtained and

23   deposition testimony taken in its ongoing litigation against Infineon Technologies AG ("Infineon")

24   regarding Rambus's document retention policy and destruction of documents pursuant to that policy.

25        Hynix previously moved to dismiss patent claims asserted by Rambus as a sanction for

26   litigation misconduct, alleging that Rambus's implementation of its document retention policy in

27   1998 resulted in spoliation of evidence critical to Hynix's defense against those patent claims. In so

28   doing, Hynix asserted that a finding of spoliation by Judge Payne in *Rambus, Inc. v. Infineon Techs.*

1  *AG*, 222 F.R.D. 280, 297 (E.D. Va. 2004), had collateral estoppel effect in this matter. In the

2  alternative, Hynix moved to compel documents pertaining to the Rambus document retention policy

3  so that it could independently establish the extent to which Rambus had engaged in spoliation.

4  Rambus objects to Hynix's motion to compel on the grounds that the documents Hynix seeks are

5  subject to the attorney-client privilege. Hynix argues that the crime-fraud exception applies to these

6  documents, thereby making the privilege unavailable to Rambus. After conducting an *in camera*

7  review of the contested documents, the court requested the parties to submit additional briefing on

8  the question of whether the crime-fraud exception to the attorney-client privilege applies. The court

9  has reviewed the requested briefing and, on January 28, 2005, heard argument on the matter.  The

10  court concludes that there is sufficient cause to believe that Rambus has engaged in spoliation to

11  justify discovery of certain otherwise privileged documents and orders those documents produced to

12  Hynix for review.

### I. FACTS

14        In July 1998, Rambus, through its Vice President of Intellectual Property, Joel Karp,

15  distributed a two-page document retention policy to Rambus employees. O'Rourke Dec. Supp Mot.

16  Dismiss ("O'Rourke Dec."), Ex. 24. This document retention policy was developed by Rambus with

17  the assistance of outside counsel. On September 3, 1998, Rambus organized the first of its "Shred

18  Days."  After being instructed on Rambus's document retention policy, employees were given burlap

19  bags and told to clear their workspaces of documents according to the policy.  Rambus's initial Shred

20  Day apparently resulted in the destruction of approximately 20,000 pounds of documents. Rambus

21  held a second Shred Day in August 1999, and a third in conjunction with a December 2000 move of

22  its offices to new facilities.

23        In June 1999, Rambus obtained the first of the patents-in-suit, U.S. Patent No. 5,915,105,

24  covering DDR SDRAM devices. In September 1999 it obtained U.S. Patent No. 5,953,263 thought

25  to cover an SDRAM device that was in high-volume production by its competitors. Rambus

26  commenced suit against Hitachi based on these patents in January 2000. Since the Hitachi suit,

27  Hynix, Micron, Inc., and Infineon have been subject to patent infringement claims on the same

28  patents.

ORDER COMPELLING PRODUCTION OF DOCUMENTS (Spoliation)
C-00-20905 RMW                                      2

1      In late 1997 or early 1998, Rambus hired Joel Karp, a non-lawyer, as its Vice President of

2  Intellectual Property. Karp brought with him a belief that Rambus's intellectual property covered

3  SDRAM technology and began to propose to Rambus a licensing and litigation strategy targeting

4  SDRAM manufacturers in the industry. At Karp's direction, Rambus met with attorneys from Cooley

5  Godward LLP ("Cooley Godward"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮to discuss

6  setting up a general licensing and litigation strategy on February 12, 1998. ▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] Prior to 1998, Rambus

8  did not have a formal document retention policy and it characterizes its employees as "pack rats"

9  who had retained an unwieldy volume of documents. ▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13     Rambus continued to work with outside counsel to develop its document retention policy

14 through the summer of 1998. In July 1998, ▮▮▮▮▮assisted Karp in developing internal

15 presentations regarding the document retention policy for presentation to Rambus managers and the

16 company at large prior to implementing the document retention policy in September 1998. In late

17 December 1999 and early January 2000, Rambus's patent counsel, Neil Steinberg, who was hired in

18 April 1999, and Karp established a litigation hold by instructing Rambus employees and outside

19 counsel with potentially relevant documents to retain such documents.[2]

20                     **II. ANALYSIS**

21     **A.    Spoliation Can Constitute Basis for Exception to Attorney-Client Privilege**

22     Communications otherwise protected by the attorney-client privilege are not protected if the

23 communications are made in furtherance of a crime or fraud. *United States v. Zolin*, 491 U.S. 554,

24 563 (1989); *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) ("When a lawyer's advice is

---

25

26     [1]    The court has shadowed all material that has been redacted from the public copy of this order. If Rambus believes some material it asserts is privileged has not been redacted, it should advise the court immediately.

27

28     [2]    Rambus argues that this litigation hold on the document retention policy was in effect during Rambus's December 2000 move to new facilities. Hynix has presented no evidence contradicting this assertion.

1    sought to further a crime or fraud, those communications are not privileged."). "It is the purpose of

2    the crime-fraud exception . . . to assure that the 'seal of secrecy' between lawyer and client does not

3    extend to communications made for the purpose of getting advice for the commission of a fraud or

4    crime." *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997) (quoting *Zolin*, 491 U.S. at 563).

5    Accordingly, the Ninth Circuit provides that "[t]he protection afforded by the attorney-client

6    privilege does not extend to any communication 'in furtherance of intended, or present, continuing

7    illegality.'" *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (internal quotation and

8    citation omitted). Thus, the crime or fraud exception applies if the attorney-client communications

9    "were in furtherance of an intended or present illegality and . . . there is some relationship between

10    the communications and the illegality." *Bauer*, 132 F.3d at 509.

11         Hynix bears the burden of proving that the attorney-client privilege does not apply to the

12    documents at issue under the crime-fraud exception. *United States v. Laurins*, 857 F.2d 529, 540 (9th

13    Cir. 1988). "To trigger the crime-fraud exception, the [party seeking to pierce the privilege] must

14    establish that the client was engaged in or planning a criminal or fraudulent scheme when it sought

15    the advice of counsel to further the scheme." *In re Grand Jury Proceedings*, 87 F.3d at 381. The

16    crime or fraud need not be proved beyond a reasonable doubt, "[r]ather, the district court must find

17    reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing

18    unlawful scheme." *Id.*; *see also Bauer*, 132 F.3d at 509.

19         Here, Hynix asserts that Rambus has engaged in spoliation, which is a misdemeanor crime

20    under California law. Cal. Penal Code § 135. Section 135 provides:

21              Every person who, knowing that any book, paper, record, instrument in
               writing or other matter or thing, is about to be produced in evidence
22              upon any trial, inquiry, or investigation whatever, authorized by law,
               willfully destroys or conceals the same, with intent thereby to prevent
23              it from being produced, is guilty of a misdemeanor.

24

25

26

27

28

1   *Id.* Hynix thus asks the court to determine that there is reasonable cause to believe that Rambus's

2   counsel's services were utilized in furtherance of a scheme to commit misdemeanor spoliation under

3   California law.[3]

4          Hynix and Rambus do not contest that the document retention policy resulted in the

5   destruction of documents. They dispute, first, whether Rambus had the requisite intent to prevent the

6   destroyed documents from being produced in an anticipated litigation and, second, whether the

7   document retention policy resulted in the destruction of any relevant documents.

8   **B.     Intent to Prevent Production in Anticipated Litigation**

9          In general, before spoliation may be found, "the party having control over the evidence must

10  have had an obligation to preserve the evidence at the time it was destroyed." *Kronisch v. United*

11  *States*, 150 F.3d 112, 126 (2d Cir. 1998). Under California law, that obligation is expressed as

12  "knowing that [any document] is about to be produced in evidence upon any trial, inquiry, or

13  investigation . . . ." Cal. Penal Code § 135.

14         Rambus contends that California criminal law requires the litigation to be both anticipated

15  and imminent. Rambus argues that because no litigation was imminent at the time it implemented

16  the document retention policy and because it established a litigation hold on the policy in the month

17  or so leading up to the Hitachi litigation, a finding of spoliation is not warranted. As Hynix points

18  out, California's penal statutes are to be construed ". . . according to the fair import of their terms,

19  with a view to effect [their] objects and to promote justice." *People v. Fields*, 105 Cal. App. 3d 341,

20  343 (1980) (examining whether Penal Code § 135 applies only to items described in the statute or

21  extends to other types of evidence). Requiring litigation to be imminent as well as anticipated for a

22  finding of spoliation would permit companies to destroy documents while intending to commence

23

24  ────────────
25  [3]     Hynix also argues that spoliation "strikes at the very foundations of the adversary system and judicial process," *In re Sealed Case*, 754 F.2d 395, 401 (D.C. Cir. 1985), and thus that the court may pierce the attorney-client privilege because consultation with an attorney to commit
26  spoliation is a fraud on the court. Rambus, on the other hand, argues that courts have generally rejected applying the crime-fraud exception where the accused wrong is merely a tort. *See, e.g.,*
27  *Freedom Trust v. Chubb Group of Ins. Cos.*, 38 F. Supp. 2d 1170, 1172 (C.D. Cal. 1999) ("[T]o go beyond the conventional exceptions would open up 'too large an area of nullification of the
28  privilege...'"). As set forth in the discussion below, it is difficult to see how spoliation would not constitute such a fraud.

1    litigation without encountering spoliation liability, so long as the company waited long enough after

2    destroying evidence to file suit. Rambus's interpretation would not "effect the object" of Penal Code

3    § 135, nor would it promote justice. Thus, where a party anticipates litigation, it becomes obligated

4    to preserve evidence relevant to the litigation. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591

5    (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also

6    extends to that period before the litigation when a party reasonably should know that the evidence

7    may be relevant to anticipated litigation.") (citing *Kronisch*, 150 F.3d at 126). As set forth below, the

8    court concludes that Rambus anticipated litigation at the time it implemented its document retention

9    policy.

10        Rambus argues that there is no evidence that its outside counsel assisted the development of

11   its document retention policy with knowledge of anticipated litigation or intending to prevent

12   production of any document. Based on the document retention policy distributed by Karp ▉▉▉▉▉

13   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, there appears to

14   be nothing necessarily improper about the document retention policy ▉▉▉▉▉▉▉▉▉▉▉▉

15   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

16   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

17   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

18   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

19   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

20   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

21   ▉▉▉▉▉▉▉▉

22        However, when determining whether the crime-fraud exception applies to documents

23   claimed to be attorney-client privileged, the attorney's intent and knowledge are not dispositive. The

24   court examines the client's knowledge and intent in committing the crime or fraud at issue. *Martin*,

25

26   ⁴    Rambus stated in its papers and asserted in oral argument that it is an industry-wide
     practice to remove documents from patent prosecution files in order to conform them to the USPTO
27   file after the patent has issued. The court has doubt as to whether this practice is standard in patent
     prosecution practice, and, to the extent it is, questions the propriety of the practice. It is clear,
28   however, that such a practice would not be appropriate when specific litigation is anticipated or
     pending.

1   278 F.3d at 1001. ("It does not matter that [the attorney] was unaware of [his client's] criminal

2   purpose or that he took no affirmative step to further that purpose; the client's knowledge and

3   intentions control.") (citing *In re Grand Jury Proceedings*, 87 F.3d at 381-82). The question, then, is

4   whether Rambus had commenced or intended to commence litigation at the time it implemented its

5   document retention policy and began destroying documents pursuant to its guidelines.

6         The non-privileged evidence submitted by Hynix in the original motion to dismiss establishes

7   that Rambus anticipated commencing litigation against industry competitors at least as of the second

8   Shred Day in August 1999. A document titled "IP Q3 '99 Goals – First Cut" lists the following as

9   bullet items under the heading "Licensing/Litigation Readiness":

10          D.      Prepare licensing positions against 3 manufacturers
            E.      Prepare litigation strategy against 1 of the 3 manufacturers (re:
11                  3D)
            F.      Ready for litigation with 30 days notice
12          G.      Organize 1999 shredding party at Rambus

13  O'Rourke Dec., Ex.15. ████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████ By February 1998, the same month Rambus first consulted with Cooley

16  Godward, Rambus had begun to develop its litigation strategy against competitors in the industry.

17  And the evidence is clear that as of the date of the first Shred Day in September 1998 Rambus had

18  formulated its litigation campaign and demonstrated its intent to commence litigation against

19  accused infringers.

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████

26  ████████████████████████████████████

27  ████████████████████████████████████

28  ████████████████████████████████████████████



18    At oral argument, Rambus suggested that the patents-in-suit had not issued at the time it

19  implemented its document retention policy and thus Rambus could not have anticipated litigation.

20  However, the evidence demonstrates that Rambus was nonetheless considering litigation based on its

21  unissued patents.

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ███████████████████████████████████ there is no evidence that Rambus modified its

5  planned document retention policy once it began making significant progress toward commencing

6  litigation against its competitors. ████████████████████████████ that litigation plan

7  was well underway when Rambus undertook its first Shred Day in September 1998. From this

8  progression, ██████████████████████████████████████████████████████

9  ████████ the court reasonably infers that Rambus anticipated litigation before the initial September

10  1998 Shred Day.

11       Rambus argues that there is no evidence that its adoption of a document retention policy was

12  intended to prevent the production of documents in the event of litigation. It has cited deposition

13  testimony that its primary discovery-related concerns prompting it to institute a document retention

14  policy related only to the costs of searching through Rambus's backlog of documents. For example,

15  Karp testified that his concern about retaining backup tapes absent a document retention policy was

16  that, in the event of a production request, determining what the tapes contained "would be beyond

17  human endurance." Ostroff Dec. Supp. *In Camera* Br. ("Ostroff Dec."), Ex. 11, Joel Karp Dep. at

18  348. A former Rambus employee, Richard Barth, confirmed his recollection of Karp's document

19  retention policy stating "I don't recall him being so much worried about documents that were harmful

20  to Rambus in that it would reveal you know, some dastardly secret . . . [t]he concern was that if we

21  had to go and grind through all that and produce it, it would just kill us." *Id.*, Ex. 10, Richard Barth

22  *Micron* Dep. at 343-344.

23       Rambus's concerns about the volume of material through which it would have to search are

24  borne out in the *in camera* documents, ████████████████████████████████████████

25  ██████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████

28  ███████████████████████████████████████

ORDER COMPELLING PRODUCTION OF DOCUMENTS (Spoliation)
C-00-20905 RMW                           9

1

2

3     While these policies may have been appropriately implemented in the absence of anticipated

4 litigation, they were inadequate given the evidence of Rambus's progressing litigation plan. Thus, the

5 court finds that there is reasonable cause to believe that Rambus anticipated litigation at the time it

6 implemented its document retention policy on September 3, 1998 and through its institution of a

7 litigation hold in December 1999.

8     **C.    Destruction of Relevant Documents**

9     The next inquiry is whether Rambus destroyed evidence relevant to the litigation pursuant to

10 its document retention policy. *See* Cal. Penal Code § 135 (crime of spoliation requires that the

11 document is "to be produced in evidence"); *see also United States v. Kitsap Physicians Serv.*, 314

12 F.3d 995, 1002 (9th Cir. 2002) (parties "engage in spoliation of documents as a matter of law only if

13 they had 'some notice that the documents were potentially relevant' to the litigation before they were

14 destroyed.") (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

15     The two courts to have previously considered the spoliation implications of Rambus's

16 document retention plan came to different conclusions regarding whether material documents were

17 discarded pursuant to Rambus's document retention policy. The FTC Administrative Law Judge,

18 while describing Rambus's actions as "troublesome," found "no indication that any documents,

19 relevant and material to the disposition of the issues in this case, were destroyed." *In re Rambus,*

20 *Inc.*, 2004 WL 390647 (FTC Feb. 23, 2004). Judge Payne in the *Infineon* litigation, however, found

21 that "[t]he destroyed documents appear to have included many of the kinds of documents usually

22 generated in the course of business that contain information that is useful in ascertaining truth and in

23 testing the validity of positions taken in litigation, e.g., email communications, notes of license

24 negotiations, contract drafts, as well as information about activities at JEDEC." *Rambus v. Infineon,*

25 222 F.R.D. at 297.

26     Hynix has not demonstrated what particular material evidence was destroyed, but due to the

27 implementation of the document retention policy, it obviously faces a difficult task in identifying the

28 specific documents that have been made unavailable. What is known based on documents submitted

ORDER COMPELLING PRODUCTION OF DOCUMENTS (Spoliation)
C-00-20905 RMW                                    10

1  by both Hynix and Rambus is that pursuant to Rambus's document retention policy, employees were

2  encouraged to discard certain categories of documents. ████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  Hynix argues that this instruction to Rambus employees resulted in the destruction of material

7  documents. In support of its argument, it has produced some evidence regarding what documents

8  may have been destroyed.

9       Hynix cites deposition testimony of Richard Crisp, Rambus's JEDEC representative, that he

10 discarded JEDEC-related documents in compliance with Karp's document retention policy.

11 ████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████  Rambus counters that Crisp did not destroy

18 anything material. Crisp testified before the FTC ALJ that he took care to preserve copies of

19 electronic records of JEDEC-related materials, which he described as trip reports and

20 contemporaneous notes, by sending them to his computer at home when he found it too difficult to

21 transfer them to the server at Rambus. He testified to turning over copies of these documents to

22 Steinberg when he later discovered them. The destroyed JEDEC-related paper materials, Crisp

23 testified, were mostly unopened ballots, paper copies of meeting minutes and copies of JEDEC

24 standards that had been passed. Ostroff Dec., Ex. 26, Off. Tr, of Trial Proceedings, *In re Rambus,*

25 *Inc.,* D09302 at 3570-3574 (May 28, 2003).

26       The reliability of Crisp's testimony has been called into question by Judge Payne's findings in

27 the original trial in the *Infineon* matter. When addressing Infineon's assertions of litigation

28 misconduct against Rambus, Judge Payne found that Rambus had failed to list notes by Lester

1  Vincent on its privilege log establishing "that Rambus' JEDEC representative Richard Crisp was

2  intimately involved in the patent-drafting efforts -- an involvement which Crisp denied under oath in

3  deposition." *Rambus, Inc. v. Infineon Technologies AG*, 155 F. Supp. 2d 668, 681 (D. Va. 2001).

4  This court views Judge Payne's finding on this matter to be significant.

5       The destruction of some JEDEC-related materials at a time when litigation was being

6  considered, the discarding of some patent prosecution records, and the questioned credibility of the

7  Rambus's witness to the disposal of records does provide reasonable cause to believe that relevant

8  material documents were destroyed pursuant to Rambus's document retention policy.

9       At oral argument, Hynix emphasized that documents that should have been produced from

10  inventor Mark Horowitz had been destroyed. Horowitz, a part-time employee of Rambus, was one of

11  two participants in meetings with IBM and a key inventor of the patents-in-suit. He testified that he

12  took notes at these meetings. During one of the Shred Days, documents in his office were cleared out

13  while he was absent. ███████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████

21      ███████████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████████████████████

28



The court finds the question of whether Hynix has presented sufficient evidence to support a finding of reasonable cause to believe that Rambus destroyed documents relevant to the litigation it then anticipated instituting to be a close one. However, the court so finds but emphasizes that it has only found reasonable cause to believe spoliation occurred, which is not the same as finding that Rambus did, in fact, spoliate evidence.

**D.    Some Relationship Between the Communications and Illegality**

Once reasonable cause for spoliation or fraud has been established, there still must be a showing that there is some relationship between the communications and the asserted illegality to allow piercing of the attorney-client privilege. *Bauer*, 132 F.3d at 509. Hynix asserts that all of the documents produced pursuant to Judge Payne's order over which Rambus asserts privilege are closely related to the spoliation scheme. The court agrees that the documents produced *in camera* link the document retention program with Rambus's licensing and litigation strategy and show the progression of Rambus's plans to litigate against certain defendants in advance of the Shred Days. *See Rambus v. Infineon*, 222 F.R.D. at 297.

## III. ORDER

The court hereby orders:

1. By Thursday, February 3, 2005, Rambus shall produce to Hynix all discovery previously ordered produced in the *Infineon* litigation pertaining to Rambus's document retention plan, including the plan's conception, development, adoption, implementation and relationship to Rambus's patent litigation strategy.

2. Rambus shall also produce by February 3, 2005 all deposition transcripts and orders of the *Infineon* court which discuss or relate to the topics set forth in 1. above.

3. On February 3, 2005, unless this order is stayed, the court will make the redacted copy of this order publically available.

4. Should Rambus file a writ of mandate or other appellate proceedings to contest this order, the production of the above documents will be automatically stayed for ten (10) days or until the date on which the court of appeals rules on a further stay, whichever occurs first;

5. No additional depositions or other discovery shall be permitted as a result of this order absent agreement of the parties or court order after application to the court stating specifically what discovery is being sought on the issue of spoliation.

6. Hynix's original motion to dismiss as a sanction for litigation misconduct shall proceed on the following schedule:

   a. Hynix's supplemental brief on its motion to dismiss as a litigation sanction: February 18, 2005

   b. Rambus's supplemental opposition brief: February 25, 2005

   c. Hynix's supplemental reply brief: March 2, 2005

   d. Hearing on Hynix's motion to dismiss: March 11, 2005

DATED:    1/31/05

RONALD M. WHYTE
United States District Judge

1   THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:

2   **Counsel for Plaintiff:**

3   Kenneth L. Nissly
    Susan van Keulen
4   Geoffrey H. Yost
    Thelen Reid & Priest LLP
5   225 West Santa Clara Street,
    12th Floor
6   San Jose, CA 95113-1723

7   Theodore G. Brown, III
    Townsend & Townsend & Crew LLP
8   379 Lytton Ave
    Palo Alto, CA 94301
9
    Patrick Lynch
10  Kenneth R. O'Rourke
    O'Melveny & Myers
11  400 So Hope St Ste 1060
    Los Angeles, CA 90071-2899
12
13  **Counsel for Defendant:**

14  Gregory P. Stone
    Kelly M. Klaus
15  Andrea W. Jeffries
    Munger Tolles & Olson
16  355 So Grand Ave Ste 3500
    Los Angeles, CA 90071-1560
17

18

19

20  Date:  1/31/05                        ᵧmAG
21                                     Chambers of Judge Whyte

22

23

24

25

26

27

28

ORDER COMPELLING PRODUCTION OF DOCUMENTS (Spoliation)
C-00-20905 RMW                          15

# EXHIBIT 49

*HIGHLY CONFIDENTIAL*
*SUBJECT TO PROTECTIVE ORDER*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION | ) ) ) | MDL Docket no. 1332 |

| | | |
|---|---|---|
| BURST.COM, INC., Plaintiff, v. MICROSOFT CORPORATION Defendant. | ) ) ) ) ) ) ) ) ) | Civil Action No. JFM-02-cv-2952 |

## EXPERT REPORT OF SHARON OSTER, Ph.D.

## February 10, 2005

*HIGHLY CONFIDENTIAL*
*SUBJECT TO PROTECTIVE ORDER*

companies bankrupt and an equal number that have shut shop, as many as 600,000 telecom workers are now without a paycheck." "The biggest bubble in the history of the modern world was not the dot-com bubble but the telecom bubble."[167]

The general market decline led to a significant decrease in venture capital investing. As Exhibit 12 shows, venture capital investment in the software industry declined from $21.1 billion in 2000 to $8.9 billion in 2001.[168] Burst was not unaffected by this drop in funding. In April 2002, Richard Lang wrote, "In 2001 we witnessed the implosion of the capital markets, especially in the technology sector. The market downturn and our limited revenues forced us to cancel plans for growth, radically downsize our staff and completely rethink our market strategy."[169] In an early 2002 interview, Richard Lang stated, "Our investors wanted us to compete with RealNetworks, Apple, and Microsoft …The required growth was too ambitious, given what was happening in the capital markets."[170]

## IV.    PATENT DAMAGES – REASONABLE ROYALTY

### A.    Hypothetical Negotiation Framework

In addition to analyzing Burst's business strategy, I have been asked to analyze damages due to Burst in the event that Microsoft is found liable for infringement of Burst's patented technology. Specifically, I have analyzed reasonable royalty damages in the context of a "hypothetical negotiation" between the licensor, here Burst, and the licensee, here Microsoft, over the rights to the patents-in-suit. The patents are assumed to be valid and infringed and the two parties to the negotiation are assumed to be willing to negotiate a non-exclusive, naked license to the patents-in-suit. The hypothetical negotiation is assumed to take place immediately prior to the date of first infringement. In this case, the first sale of the allegedly infringing

[167] Malik, Om, Broadbandits, John Wiley & Sons, Inc. (2003), pp. ix - x.
[168] Thomson Venture Economics, 2004 National Venture Capital Association Yearbook (2004), p. 48.
[169] Lang, Richard, "Message from the Chairman," April 17, 2002. *Available at* http://www.burst.com/new/newsevents/press.htm <viewed January 13, 2004>.
[170] Stevens, Loralee, "Wild ride lands a new Burst.com in Santa Rosa," *North Bay Business Journal*, February 25, 2002 (BUR5085012), pp. 8-9.

34

*HIGHLY CONFIDENTIAL*
*SUBJECT TO PROTECTIVE ORDER*

product occurred in April 2003 with the launch of Windows Server 2003.[171] The earliest point at which Burst alleges that Microsoft may have developed Fast Start and Fast Cache, and used the features internally, was December 2001, when Microsoft first announced Windows Media 9 and Fast Stream technology.[172] Thus, I have considered the outcome of a hypothetical negotiation taking place in the December 2001 to April 2003 time-period. Within this time-period, the specific date of the hypothetical negotiation would not be expected to have a significant impact on its outcome.

I have used a three-step process to estimate the reasonable royalty or license fee that would be the likely outcome of such a negotiation. First, I determined the form that the royalty resulting from the hypothetical negotiation would take. Second, I estimated the appropriate range over which the negotiations would take place based upon the minimum that the licensor would be willing to accept and the maximum that the licensee would be willing to pay. Third, I undertook an analysis of the *Georgia-Pacific* factors, which are widely used by courts in determining reasonable royalties in patent infringement litigation.[173] Application of the *Georgia-Pacific* factors facilitates a determination of the appropriate reasonable royalty from among a range of possibilities.

## B. Form of Royalty

The outcome of a hypothetical negotiation between Burst and Microsoft over a non-exclusive license to the patents-in-suit most likely would have resulted in a lump-sum payment. Such a form of payment is the one considered both by Burst and Microsoft during their actual negotiations. Further, a lump-sum payment is consistent

---

[171] Press Release, "Microsoft Windows Server 2003 Is Available Worldwide Today," April 24, 2003. *Available at* http://www.microsoft.com/presspass/press/2003/apr03/04-24WindowsServer2003LaunchPR.asp <viewed January 28, 2005>.

[172] At the time of the December 2001 announcement, Windows Media 9 was referred to as "Corona." *See,* "Microsoft Previews the Next Version of Windows Media Technologies, Code-Named 'Corona,'" *available at* http://www.microsoft.com/presspass/press/2001/dec01/12-11CoronaPreviewPR.asp <viewed January 3, 2005>.

[173] *Georgia-Pacific v. United States Plywood Corp.*, 318F. Supp. 1116, 1120-21 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971).

# EXHIBIT 51

| | |
|---|---|
| **From:** | Will Poole |
| **Sent:** | Tuesday, February 13, 2001 10:50 AM |
| **To:** | Kurt Buecheler; Mike Beckerman; Tony Bawcutt; Erik Huggers; Tom Gershaw; David Misakian |
| **Cc:** | John Weresh (LCA); Bill Schiefelbein; Bret O'Rourke |
| **Subject:** | RE: Burst redux |

I suggest we tell them that we intend to include similar functionality in the platform over time (some potentially as early as WMT9); that if they purchase burst we'd be happy to negotiate an inexpensive one-time buyout license to technology and patents so that we can incorporate it in future platforms. They would get the TTM benefit of using current burst implementations plus long term alignment (but not necessarily compatibility) between current burst technology and our future platform.

----Original Message----
**From:** Kurt Buecheler
**Sent:** Tuesday, February 13, 2001 10:43 AM
**To:** Mike Beckerman; Tony Bawcutt; Erik Huggers; Tom Gershaw; David Misakian
**Cc:** John Weresh (LCA); Bill Schiefelbein; Bret O'Rourke; Will Poole
**Subject:** RE: Burst redux

Burst acquisition interest growing
Kurtb

Hi Kurt,

Thanks for the quick reply.

In a nutshell, our European subsidiary, UPC/Chello has a significant interest in adopting the Burst.com technology to their backbone system across Europe, due to the potential OPEX reduction the Burst technology may be able to achieve regarding bandwidth expense, and the superior streaming elements of the Burst technology would generally benefit our interactive services significantly.

From our viewpoint, the Burst company operation appears to be on life-support. We are potentially interested in acquiring Burst if that plan makes economic sense for us, and the plan doesn't put us cross-ways with Microsoft in any way, given Microsoft's equity interest in UnitedGlobalCom, Inc.

It has been represented to us that Microsoft would support a general plan for United to acquire Burst, assuming no cross-purposes develop, in an effort to also be diligent about the Burst technology being acquired by other third parties, in an alternative strategy that I don't want to detail in this forum.
In our proposed conference call, we'd like to speak with you about Microsoft's position on this issue, as well as your opinion of software licensing revenue projections to Microsoft or other parties, if United were to acquire Burst.

I'm hesitant to detail anything else in this email, but these are the main issues. Could you give me some idea of your availability to participate in a conference call with myself and our President, Mike Fries, ASAP?

Thanks,

Doug Stewart
UnitedGlobalCom, Inc.
Denver
303.770.4001 Office Phone

----Original Message----
**From:** Mike Beckerman
**Sent:** Thursday, February 08, 2001 9:06 AM

1

MS-CC-Bu 000000284084
HIGHLY CONFIDENTIAL

**To:**   Tony Bawcutt; Kurt Buecheler
**Cc:**    John Weresh (LCA); Bill Schiefelbein; Bret O'Rourke; Will Poole
**Subject:** RE: Burst redux

Sure.

------Original Message------
**From: Tony Bawcutt**
**Sent:**    Thursday, February 08, 2001 8:17 AM
**To:**     Mike Beckerman; Kurt Buecheler
**Cc:**     John Weresh (LCA); Bill Schiefelbein; Bret O'Rourke; Will Poole
**Subject:**      RE: Burst redux

I just got off the phone with Doug where I delivered the message that we would not be pursuing them further, and that the only opportunity that made sense to us was to get a license to specific patents as an insurance policy, and that the cost for that would have to be well under $1Mill.

He advised that there was a company, apparently friendly to us, that was interested in acquiring some or all of the company and there would be an announcement on Monday. Clearly their stock has been on the rise, now trading at $0.84, which raises their capex to $20M.

He went on further to say that UPC the cable company in UK, is very enamoured with their technology, but has not wherewithall to develop the technology. Not clear whether he was talking about the same company as above, or whether this was an alternate deal. So he intimated that they may be interested in owning the technology, and then working out some license for us to use. I left the door open for details of that deal to come forward, but was clear that it was not just a cash problem to us; we would need to see the value equation.

He is going to get back in the next few days. I will be in Mexico for two weeks starting Sunday. I would like him to be able to talk to either KurtB or MikeBeck. You guys OK with me giving you as contacts?

-----Original Message-----
**From:**       John Weresh (LCA)
**Sent:**        Wednesday, January 31, 2001 9:05 AM
**To:**         Bill Schiefelbein; Mike Beckerman; Tony Bawcutt; Bret O'Rourke; Will Poole
**Cc:**         Kurt Buecheler
**Subject:**    RE: Burst redux

<div align="center">

**Privileged**

</div>

-----Original Message-----
**From:**       Bill Schiefelbein
**Sent:**        Tuesday, January 30, 2001 11:44 PM
**To:**         Mike Beckerman; Tony Bawcutt; John Weresh (LCA); Bret O'Rourke; Will Poole
**Cc:**         Kurt Buecheler
**Subject:**    RE: Burst redux

<div align="center">

**Privileged**

</div>

-----Original Message-----
**From:**       Mike Beckerman
**Sent:**        Tuesday, January 30, 2001 6:37 PM
**To:**         Tony Bawcutt; Bill Schiefelbein; John Weresh (LCA); Bret O'Rourke; Will Poole
**Cc:**         Kurt Buecheler
**Subject:**    RE: Burst redux

ATTORNEY / CLIENT PRIVILEGED COMMUNICATION

<div align="center">

**Privileged**

</div>

2

MS-CC-Bu 000000284085
HIGHLY CONFIDENTIAL

Privileged

-----Original Message-----
**From:**     **Tony Bawcutt**
**Sent:**     Tuesday, January 30, 2001 5:37 PM
**To:** Mike Beckerman; Bill Schiefelbein; John Weresh (LCA); Bret O'Rourke; Will
      Poole
**Cc:** Kurt Buecheler
**Subject:**  Burst redux

I had a call with Doug Glen and Chuck Cortwright this evening. They claim to have
a buyer lined up and will be entering into a no-shop period, which will involve a
technical trial, presumably leading to acquisition. But they still wanted to give us an
opportunity to participate. They positioned this suitor as not friendly (by later
characterizing UPC as friendly).

Doug offered that we might still be able to get a non-exclusive license to the patents
we cared about (and which frankly equates to any and all the patents since they
ascribe the same value) for something in the order of $1M per year for a multi year
deal (say 3 to 5 years). They said they went more for the total portfolio and more if
we use their actual technology/algorithms. We could extend the term, or we could
propose a net present value for a one-time buyout.

They then asked why we would do that, and forego the revenue opportunity while
also allowing others access to the differentiation (through also licensing or
acquiring).

They discussed the option of an asset sale or the outright purchase of the company,
which is the same dollar value to them, just give us as the acquirer options in how to
dispose of the bones. Stock swap is a further option.

When I asked him what price he was considering, he went into a long diatribe about
how the investors were all in at $3+ range but would probably be OK with $1.75 per
share. When I pointed out that that would be $35M plus debt (based on 20Mill
shares) they seemed almost to be surprised; and when I said that was grossly above
where we had previously talked where they shares have hovered in the $0.50 range,
meaning they have been in the $10-$12M range (as low as $8M since we have
talked, $11M today http://moneycentral.msn.com/scripts/webquote.dll?
iPage=qd&Symbol=BRST ) plus the debt and "value overhang" putting previous
number in the $15M range. Maybe they have always been thinking higher but that is
where I have always interpreted them to be.

Note on the capitalization of the company: their share volume is 50K shares traded
today on 20Million outstanding, which means virtually no volume. When that
capitalization enters the discussion, you have to ask "value to who". If there is not
acquirer, it is difficult to see this company sustaining any value as they run out their
cash reserves. It has no value to new, small-stake shareholders, since there is no
business model left. So the current market cap is a bit of a levitation feat.

So I think they indicated we could get a perpetual non-exclusive license for $3-5Mill,
and could get the whole company for under $10M + debt, which feels like they have
come down by about half.

Final wildcard: they said that they had shopped themselves to UPC (UK cableco)
and their CTO felt they could save the cost of the company in annual bandwidth
savings. UPC felt acquiring the company was outside of their core competence, but
Doug felt that we could maybe triangulate a deal whereby they acquired
rights/technology through us and paid the lion's share.

3

MS-CC-Bu 000000284086
HIGHLY CONFIDENTIAL

I don't think they would sell for the $1M we have bandied around, but I think we if we gave negotiators $5 Million to play with they could come back with effectively the company.

So the questions is as before:

•                         **Privileged**

•   what value does the technology have to us in furthering our development, and
•   what is the value to (revenue from) others such as UPC (@Home had also noted interest in other discussions) in form of sub-license or products.

I promised them 24 hour turnaround on an answer, and I think this needs to be go/no go.

History chart here: :
http://moneycentral.msn.com/investor/charts/chartdl.asp?
Symbol=BRST&DateRangeForm=1&CP=0&PT=5&C5=1&C6=&C7=1&C8=&C9=0
&ComparisonsForm=1&CE=0&DisplayForm=1&D9=1&D0=1&D4=1&D7=&D6=&D3=
0&ShowChtBt.x=45&ShowChtBt.y=10

Tony Bawcutt
Group Manager Business Development
Digital Media Division, Microsoft
425-936-7611

4

MS-CC-Bu 000000284087
HIGHLY CONFIDENTIAL

# EXHIBIT 56



**WindowsITPro**

*Connecting the IT Community*

Keyword Search [GO►]    InstantDoc ID [GO►]    Ac

| Home | Forums | Events | Hot Topics | Publications Archive |

Related Hot Topics: **Exchange & Outlook | Storage**

**Reduce cost and consolidate e-mail storage.**

[Feature]
# Control Mailbox Size with Mailbox Manager

Tony Redmond
InstantDoc #6253
November 1999

Most email users are pack rats: They keep as much mail and other items as you'll let them stuff into their <u>Exchange Server</u> mailbox. Because many large Exchange <u>Server</u> implementations allocate each mailbox 50MB by default—mailboxes that hold 1GB or more are not unknown—you can see how the private Information Store (IS) can easily grow to 60GB or larger. Such large databases have extremely long backup times and make getting the server back online quickly after hardware failures a difficult task. A large email repository also worries legal departments around the world because of the information that investigators might find in the messages. The best example of incriminating messages, of course, is the role of email in Microsoft's battle with the US Department of Justice.

You can exert control over the size of the private IS by imposing mailbox quotas. You can also control mailbox size by encouraging users to regularly clean up their mailboxes. Enterprise-style messaging systems have long incorporated tools to help administrators manage mailbox contents. For example, ALL-IN-1, Digital Equipment's office system that dominated email for most of the 1980s and early 1990s, had the Janitor, a background process that deleted any messages older than a set number of days.

In Exchange Server 5.5 Service Pack 3 (SP3) Microsoft has finally introduced an effective email-management tool—Mailbox Manager. Although the utility comes with an Exchange Server 5.5 service pack, you can run it on any Exchange Server 5.0 or 5.5 server. Let's look at how Mailbox Manager evolved and how you install, configure, and use the utility to keep mailbox size manageable.

## Earlier Products

Microsoft made some earlier attempts to help you control mailbox size, but those tools have been inadequate. The Microsoft Exchange Administrator program's Clean Mailbox option lets you select a group of mailboxes and examine and clean their contents according to set criteria. You can select anything from one mailbox to every mailbox on a server. However, this utility is limited because it performs the process in the foreground; you can't schedule it to occur automatically. And although processing one user's mailbox this way is feasible, selecting and processing all the mailboxes on a large server isn't practical.

An improved utility, Mailbox Cleanup Agent, appeared in the *Microsoft BackOffice Resource Kit (BORK)*. Early releases had many bugs, and even the less buggy later versions had nagging problems such as lack of support for the Alpha platform. Another problem with the agent was that some installations refuse to put any *BORK* utility into production because *BORK* tools aren't part of the Exchange product and administrators fear that Microsoft won't support the tools. If you use the Mailbox Cleanup Agent correctly, however, it works fine.

## Installing Mailbox Manager

Mailbox Manager's documentation is an HTML file. Although Mailbox Manager is included with Exchange Server 5.5 SP3, the service pack doesn't automatically install the program because the program can run on any Exchange Server 5.0 or 5.5 server. However, because of a memory leak that Mailbox Manager exposes, Microsoft recommends that you run the program only on servers running Exchange Server 5.5 SP2 or later. You can run Mailbox Manager on one server within a site and have the utility process mailboxes on all the site's servers, so you don't have to upgrade every server to SP2. Running a program to process mailboxes on remote servers can generate a lot of network traffic, so you need to make a trade-off. I recommend that everyone upgrade to Exchange Server 5.5 because it's the best version of the software to date.

Mailbox Manager replaces *BORK*'s Mailbox Cleanup Agent; the two programs can't coexist on the same server, so remove the Mailbox Cleanup Agent before installing Mailbox Manager. The installation kit for Mailbox Manager is in the \ENG\SERVER\SUPPORT\MBMNGR\ SETUP\<hardware-platform> directory on the Exchange Server 5.5 SP3 CD-ROM. You can also download the kit (20MB) as part of the SP3_55 SS Server support files at http://www.microsoft.com/exchange/ DeployAdmin/sp3.htm. Installation is quick and easy. The installation prompts you for an account to run Mailbox Manager service under (the default is to use the Exchange Service account) and a disk location for the temporary files created during processing. After the installation is complete, you must specify policies for Mailbox Manager to enforce before you can set a schedule and start cleaning up your server.

## Setting Policies

Microsoft describes Mailbox Manager as a tool that helps enforce corporate message-retention policies. Every company is different and must factor its message-retention policy into the broader landscape of document and knowledge management. The message journaling feature that Exchange Server 5.5 SP2 introduced is another example of a document management extension for Exchange. You need to balance the need to protect confidential messages against the need to preserve important information.

As Screen 1 shows, Mailbox Manager installs into the site's Configuration container. Double-clicking the add-in lets you amend its properties that cumulatively form the message retention policy for Mailbox Manager to obey.

The General Properties page, which you see in Screen 2, contains several important options. First, you must specify the mailbox you want to receive administration reports. Second, you must decide whether you want the program to clean mailboxes or run in audit mode. Audit mode means that the program scans mailboxes to identify items that the program would delete according to the retention policy but the program doesn't take any action. Instead, the program provides a report that shows how effective the policy will be if you put it into effect.

The third important choice is where to move messages that the program deletes. The cleanest approach is to delete messages immediately, but use that option only when you're sure that users understand that the program will permanently delete messages from their mailboxes after a set period. On Exchange Server 5.5 servers, you can always recover deleted messages if you set the deleted-items retention period to more than zero days. The other options are to move items into the standard Deleted Items folder or into a special set of folders in each user's mailbox under a root called System Cleanup (e.g., move items from the Inbox to an Inbox folder under the

System Cleanup root). In most cases, the best choice is to simply move items into the Deleted Items folder because users expect to find deleted items there. However, remember that Outlook lets users choose to empty the Deleted Items folder each time they exit; therefore, if Mailbox Manager moves items to the Deleted Items folder, the program might empty the folder before users realize that Mailbox Manager has cleaned their mailbox.

As Screen 3 shows, Mailbox Manager lets you set general policies and per-container policies. General policies include details of the message classes that the program processes and lifetime limits of large items. You can, for example, define a policy to remove all items larger than 5MB that are more than 60 days old. Message classes include IPM.Note (the standard class used for email), IPM.Contact, IPM.Task, and IPM.Appointment. You can choose to process all or none of these classes, and you can incorporate message classes that special applications use.

In most cases, you want to exclude IPM.Contact, IPM.Task, and IPM.Appointment from processing for two reasons. First, these items take up a small proportion of the overall store. Second, users tend to like to keep contacts, tasks, and calendar items until they're ready to remove them. Typically, contacts have a much longer lifetime than messages because users explicitly create contacts so that they can send email to external correspondents.

Screen 4 shows how you can exclude specific mailboxes from processing. Mailbox Manager skips excluded mailboxes when it reads through a recipient container.

## Running Mailbox Manager

On the Schedule tab, you specify when to run Mailbox Manager. As Screen 5 shows, you can run the program immediately by clicking Clean Now. This option first checks whether the Mailbox Manager service (i.e., Microsoft Exchange Server Mailbox Manager) is running and whether Exchange Administrator has committed any policy changes to the Exchange Directory Store. You must commit policy details by clicking Apply on each property page. If the service isn't running, you can start it. The service stays running until you shut down the system or stop the service manually.

The Mailbox Manager service runs as a process called mbclean.exe, which doesn't consume many system resources because it waits until a scheduled run comes due and then starts to issue instructions to the IS process (store.exe). Store.exe takes the brunt of the work necessary to navigate through the recipient containers and scan items. During my tests, store.exe peaked at over 50 percent of the CPU and took some extra memory from the system. Dynamic buffer allocation (DBA), a feature Microsoft introduced in Exchange Server 5.5, lets the IS request more memory from Windows NT whenever the IS needs it and return memory to NT when other programs need it. You appreciate the value of DBA's automatic tuning when programs such as Mailbox Manager generate additional load. Finally, Mailbox Manager creates a set of transaction logs at rapid intervals. You expect this behavior because the utility needs to access many folders and items in user mailboxes to decide whether they meet the criteria for deletion. If the utility processes items, it creates transactions that Exchange must log. Because Mailbox Manager generates substantial overhead, schedule it for late at night when the system load is lightest. The utility might take up to 12 hours to process the IS on servers that support thousands of mailboxes or whose priv.edb is larger than 20GB.

## Reporting

Mailbox Manager includes several reporting facilities to inform you about the tasks the program has performed. The utility logs error and informational messages as events in the application event log. These events report when Mailbox Manager begins and completes processing and when the utility encounters errors during a run. It also reports a 1016 event for each mailbox that it processes, which signifies that an account that isn't the primary NT account for the mailbox (i.e., the account that runs mbclean.exe—usually the Exchange site services account) has logged onto the mailbox. Some installations monitor the event log for event 1016 to detect unauthorized

attempts to access mailboxes, so expect to see a lot of events logged.

Users receive a message containing details of the work Mailbox Manager has performed in their mailbox. The message informs the user that Mailbox Manager has removed some messages and explains where the deleted messages are. As Screen 6 shows, you can customize some of the message text. You can tell users to call the Help desk if they need assistance to retrieve deleted messages or explain that Mailbox Manager is a scheduled, automatic process. Mailbox Manager processes only server-based mailboxes, so if you want to hide messages from this type of processing, create a personal folders (.pst) file and move the messages there. PSTs are purely personal, and no server-based utility, including system backups, ever processes their contents.

The assigned administrator receives summary information about everything Mailbox Manager has done. This report comes as a text message that contains a brief summary with an attached Comma Separated Values (CSV) file that includes detailed information you can use for analysis and reporting. You can open CSV files with Notepad, but using a program such as Microsoft Excel or Access is easier and more functional. Screen 7 shows an Excel spreadsheet containing Mailbox Manager data edited to remove some columns and make the column headings more understandable. You can write a macro to edit the information every time you receive a report. Screen 7 shows typical data (note that the utility shows no data for mailboxes that it skips) and summary information at the end.

## Going Forward
Mailbox Manager is such a useful tool that you might wonder why Microsoft took so long to incorporate it into Exchange. All enterprise-level messaging systems need this functionality to help administrators rein in the insatiable demands for more mailbox quota.

Implementing tools such as Mailbox Manager is easier when an Exchange user community is new, especially if the company has migrated from another email system with similar functionality. Implementing Mailbox Manager for experienced users who have had years to build up a lot of rubbish is more difficult.

For older servers, you can use Mailbox Manager to gradually clean up and remove older items according to a well-publicized schedule (e.g., first you'll remove items 2 years old, then items 1 year old, later those 6 months old). When you've removed the older items, you can implement a long-term cleanup schedule to maintain the mailboxes. For new servers, you need to put the procedure in place from day one.

Screen 1



Screen 2



Screen 3

Case 1:02-cv-02952-JFM     Document 208-2     Filed 03/09/2005     Page 64 of 67



Screen 4



Screen 5



Screen 6



Print - Control Mailbox Size with Mailbox Manager                                    Page 8 of 9

Screen 7



## Reader Comments

I use Mailbox Manager to control the age of messages on Exchange 5.5, but how can I control
messages on .PST files on individual PCs? Is there a tool to use in the enterprise?

**Jay Miller** -May 07, 2003

Is this feature is free or not. how can we down load this mail box. Can we use it with hotmail?

**Abdul Mateen** -April 29, 2004

Can Mailbox Manager differentiate between READ and UNREAD emails? We only want to delete
READ emails. Is there an add-on for Exchange 5.5 that can facilitate this exception?

**hatchparent** -July 28, 2004

| **Windows IT Pro Marketplace** | **Featured Links** |
| --- | --- |
| **Archive Manager for Exchange**<br>Reduce cost and consolidate e-mail storage with Quest!<br>**Free Seminar!**<br>Building Application Specific Blade Servers with David Chernicoff<br>**Find Oracle Answers Fast** | **Get 2 Sample Issues of Windows IT Pro!**<br>Get the latest tips & tricks, and become an IT hero!<br>**Get SQL Server Magazine and Get Answers**<br>Order SQL Server Magazine today and get the "69 Top Tips"<br>Guide FREE!<br>**Find Out the Latest IM Risks** |

Over 700 how-to articles and simple tips. Get answers now!

**Join Mike Otey to...**
Discover All You Need to Know on 64-bit Computing in the Enterprise

**Save Time and Money with Network Faxing**
Read the free white paper from Esker Software

**Free White Paper from NSI Software**
Protecting the Enterprise - Edge to Core (ESG Research)

**Protect Your Company from Within!**
Learn how to Manage Your Users' Internet Access

**Argent versus MOM 2005**
Experts Pick the Best Windows Monitoring Solution

Learn which risks to address in this free Web seminar.

**New Network Security eBook**
Securely implement a network around Microsoft products.

**Free Patch Management eBook**
Learn about Microsoft's patch deployment tools.

**Essential Guide to Antispam Developments**
Increase mail server efficiency, decrease storage requirements.

**Free - Server Consolidation Roadshow**
Take a strategic approach to IT planning. Win an iPod! Register now!

**Ads by Google**

| **Microsoft exchange server** | **Microsoft OLAP Tutorial** | **Reach Computer Users** | **Business Intelligence** |
|---|---|---|---|
| Connect Operations, Lower Costs. Upgrade To Windows Server System. www.Microsoft.com | Free SQL Server Analysis Services Tutorial. www.freedatawarehouse.com | Computer Users Your Target Market? Maximum Response Mail & Email Lists www.l-i-s-t.com | Transform data into knowle SQL Server 2000, Analysis www.solien.com |

**Our Other Websites:** CertTutor | Connected Home | JSI FAQ | IT Library/eBooks | SuperSite | Windows FAQ | WinInfo News

Home | Subscribe / Register | About Us | Contact Us / Customer Service | Affiliates / Licensing | Press Room | Media Kit | RSS ▶

Windows IT Pro is a Division of Penton Media Inc.
Copyright © 2005 Penton Media, Inc., All rights reserved. Legal | Privacy Policy

Penton